ACCEPTED
04-14-00569-CV
FOURTH COURT OF APPEALS
SAN ANTONIO, TEXAS
3/17/2015 7:29:49 PM
KEITH HOTTLE
CLERK

NO. 04-14-00569-CV

IN THE COURT OF APPEALS

FILED IN
4th COURT OF APPEALS
SAN ANTONIO, TEXAS
3/17/2015 7:29:49 PM
KEITH E. HOTTLE
Clerk

FOR THE FOURTH DISTRICT OF TEXAS

AT SAN ANTONIO

BURTON KAHN,

*Appellant,*

v.

HELVETIA ASSET RECOVERY, INC.,

*Appellee.*

## BRIEF OF APPELLEE

Werner A. Powers
State Bar No. 16218800
HAYNES AND BOONE LLP
2323 Victory Avenue, Suite 700
Dallas, Texas 75219
Telephone: (214) 651-5000
Facsimile: (2 14) 651-5940
*werner.powers@haynesboone.com*

Lisa S. Barkley
State Bar No. 17851450
HAYNES AND BOONE LLP
112 E. Pecan, Suite 1200
San Antonio, Texas 78205
Telephone: (210) 978-7427
Facsimile: (210) 554-0427
*lisa.barkley@haynesboone.com*

*Counsel for Appellee*

ORAL ARGUMENT NOT REQUESTED

## IDENTITY OF PARTIES AND COUNSEL

Appellee certifies that the following is a complete list of the parties, attorneys and any other person who has any interest in the outcome of this lawsuit:

**Appellant:**                  Burton Kahn

**Attorneys for Appellant:**    Appellant has represented himself pro se since December 14, 2013. His previous counsel was:

L. Terry George[1]
Fort Worth, Texas

Jay R. Petterson
Jay R. Petterson, Attorney at Law, PLLC
12274 Bandera Road, Suite 210
Helotes, Texas 78023

Kathleen A. Cassidy Goodman
Law Office of Kathleen Cassidy Goodman
12274 Bandera Road, Suite 210
Helotes, Texas 78023

Richard H. Sommer
8610 N. New Braunfels Ave., Suite 309
San Antonio, Texas 78217

Robert W. Wachsmuth
Zachary J. Fanucci
Robert Wachsmuth & Associates
9311 San Pedro, Suite 707
San Antonio, Texas 78216

---

[1] Mr. George died on June 29, 2014.

|                            |                                                           |
|----------------------------|-----------------------------------------------------------|
| **Appellee:**              | Helvetia Asset Recovery, Inc.                             |
| **Attorneys for Appellee:**| Werner A. Powers                                          |

**Appellee:** Helvetia Asset Recovery, Inc.

**Attorneys for Appellee:**

Werner A. Powers
State Bar No. 16218800
Haynes and Boone, LLP
2323 Victory Avenue, Suite 700
Dallas, Texas 75219
Telephone: (214) 651-5000
Facsimile: (214) 651-5940
werner.powers@haynesboone.com

Lisa S. Barkley
State Bar No. 17851450
Haynes and Boone, LLP
112 E. Pecan, Suite 1200
San Antonio, Texas 78205
Telephone: (210) 978-7427
Facsimile: (210) 554-0427
lisa.barkley@haynesboone.com

**Other Interested Parties:**

Paradiv Corporation
c/o Appellant
Appellant formed Paradiv Corporation on or about September 3, 2013 and dissolved it on or about February 18, 2014.

Puerto Verde, Ltd., a corporation formed in The Bahamas
c/o counsel for Appellee
Puerto Verde, Ltd. is Helvetia's sole shareholder.
Robert Ripley is Puerto Verde's sole shareholder.

**Trial Judge:** Hon. Michael Mery, 37th Judicial District

# RELATED LITIGATION

The following litigation matters are related to this appeal:

## I.    APPEALS IN THE FOURTH COURT OF APPEALS:

1. **Appeal No. 04-14-00012-CV**
   *Burton Kahn v. Helvetia Asset Recovery, Inc.* (Cause No. 2013-CI-18355)

   Kahn appealed the trial court's December 2013 temporary injunction. The Court dismissed the interlocutory appeal on July 16, 2014 as moot, after the trial court entered a permanent injunction as part of its June 11, 2014 final judgment.

   The Court denied Kahn's motion for reconsideration, motion for en banc reconsideration, and plea for justice and fairness. Kahn sought further review by the Texas Supreme Court as noted below.

2. **Appeal No. 04-14-00258-CV**
   *In re a Purported Lien or Claim Against Helvetia Asset Recovery, Inc.* (Cause No. 2013-CI-18394)

   Under Helvetia's name, Kahn appealed the trial court's December 2013 order setting aside a judicial finding that Helvetia filed fraudulent warranty deeds. The Court dismissed the appeal on August 20, 2014 for lack of jurisdiction because the order was neither final nor an appealable interlocutory order.

3. **Appeal No. 04-14-00319-CV**
   *Burton Kahn v. Helvetia Asset Recovery, Inc.* (Cause No. 2013-CI-18355)

   Kahn appealed the trial court's April 2014 order allowing the registry of the court to distribute funds to Helvetia that Kahn had been ordered to deposit in December 2013. On Kahn's motion, the Court dismissed this appeal on July 9, 2014.

iii

**4.     Appeal No. 04-14-00357-CV**
*In re a Purported Lien or Claim Against Helvetia Asset Recovery, Inc.*
(Cause No. 2013-CI-18394)

Kahn appealed the trial court's April 2014 final judgment and order of sanctions. The appeal was advanced for submission on January 6, 2015.

**II.     APPEALS IN THE TEXAS SUPREME COURT:**

**1.     Case No. 14-0821**
*Burton Kahn v. Helvetia Asset Recovery, Inc.*

The Texas Supreme Court denied Kahn's petition for review on February 13, 2015, without requesting briefing from Helvetia. (The Fourth Court of Appeals dismissed this appeal, Appeal No. 04-14-00012-CV, on July 16, 2014).

**III.     BANKRUPTCY COURT PROCEEDINGS:**

**1.     *In re: Burton M. Kahn*, Debtor, Case No. 14-50980, United States Bankruptcy Court for the Western District of Texas, San Antonio Division.**

Kahn filed for Chapter 7 bankruptcy on April 14, 2014. On October 17, 2014, the bankruptcy judge approved the Chapter 7 trustee's request for authorization to sell Kahn's non-exempt assets, claims and causes of action to Helvetia, including his defensive appellate rights in the instant appeal. As referenced below, Kahn has appealed this order to the United States District Court for the Western District of Texas.

**2.     *In re: Burton M. Kahn, Debtor, Helvetia Asset Recovery, Inc. v. Burton M. Kahn*, Adversary Proceeding Case No. 14-5052, United States Bankruptcy Court for the Western District of Texas, San Antonio Division.**

Helvetia's motion for summary judgment, requesting that the bankruptcy court find that its two state court judgments against Kahn are nondischargeable, is pending.

**IV.** **APPEALS IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF TEXAS:**

1. *In re: Burton M. Kahn, Debtor, Helvetia Asset Recovery, Inc. v. Burton M. Kahn,*
   Civil Action No. 5:14-CV-1109-HLH.

   As referenced above, Kahn appealed the bankruptcy judge's October 17, 2014 order approving the Chapter 7 trustee's sale to Helvetia of Kahn's non-exempt assets, claims and causes of action, including the instant appeal. Kahn filed his appellant's brief on February 10, 2015, and Helvetia filed its appellee's brief on February 24, 2015.

**V.** **BEXAR COUNTY DISTRICT COURT LITIGATION:**

1. *Burton Kahn v. Joabert Development Company and John Ripley*, Cause No. 2013-CI-17012, 37th Judicial District, Bexar County, Texas.

   The trial court entered a final judgment dismissing Kahn's claims with prejudice on November 6, 2014.

2. *Paradiv Corporation and [Helvetia Asset Recovery, Inc.] v. ACSBLDR and Robert Ripley*, Cause No. 2013-CI-17889, 166th Judicial District, Bexar County Texas. (Burton Kahn filed this action under Helvetia's name).

   All claims have been dismissed and Helvetia filed a notice of nonsuit on July 24, 2014.

3. *Burton Kahn v. Robert Ripley, et al.*, Cause No. 2014-CI-3453, 225th Judicial District, Bexar County, Texas. (This action was severed from Cause No. 2013-CI-18355 in May 2014.)

# TABLE OF CONTENTS

IDENTITY OF PARTIES AND COUNSEL ........................................................ i

RELATED LITIGATION ........................................................................ iii

TABLE OF CONTENTS ...................................................................... vi

TABLE OF AUTHORITIES .................................................................. ix

DEFINITIONS AND ABBREVIATIONS ............................................. xviii

STATEMENT OF THE CASE ................................................................ xix

STATEMENT REGARDING ORAL ARGUMENT ............................... xxi

RECORD REFERENCES ...................................................................... xxii

ISSUES PRESENTED .......................................................................... xxiv

JURISDICTION .................................................................................... 1

STATEMENT OF FACTS ..................................................................... 2

    A.    After Helvetia terminated Kahn, he took Helvetia's money and real property ............................................................... 2

    B.    Kahn's Lien Suit lays groundwork for his claim to own Helvetia's stock ............................................................................ 4

    C.    Kahn is sanctioned $253,416 in the final judgment entered in the Lien Suit ..................................................................... 7

    D.    Kahn filed a Chapter 7 bankruptcy petition; the automatic stay is modified to allow this suit and the Lien Suit to proceed to judgment and appeal ................................................... 8

    E.    Helvetia is awarded almost $2 million in the trial of the underlying suit ................................................................................. 9

SUMMARY OF THE ARGUMENT ...................................................... 10

ARGUMENT AND AUTHORITIES ..................................................... 11

I.      Because Helvetia acquired Kahn's right to prosecute this appeal Kahn lacks standing, depriving this Court of jurisdiction..............................11

II.     Standard of Review...............................................................................15

III.    The Court did not err in applying collateral estoppel..........................17

        A.      Kahn failed to provide a concise argument or supporting citations to the record or legal authority and so has waived his claim.................................................................17

        B.      Kahn failed to make any offer of proof for evidence he claimed should have been admitted and so has failed to preserve error.......................................................................19

        C.      Kahn misconstrues the doctrine of collateral estoppel.........................20

        D.      Despite Kahn's appeal of the Sanctions Judgment, it is final for purposes of collateral estoppel.............................................24

        E.      Kahn's conclusory allegations about the merits of the Sanction Judgment are waived...........................................................26

IV.     The trial court properly denied Kahn's motion for JNOV ...........................27

        A.      Jury Question No. 2 – Misappropriation and Lost Profit damages caused by Breach of Fiduciary Duty and "Money Had and Received."...................................................29

                1.      Uncontroverted evidence shows Kahn misappropriated at least $721,166 ...........................................30

                        a.      Kahn misappropriated at least $392,202.87 from Helvetia in 2013.....................................................30

                        b.      Kahn misappropriated $380,166 in 2012 .......................32

                2.      The evidence supports the jury's finding that Kahn caused Helvetia to incur $133,000 in lost profits ....................34

                3.      The evidence supports the jury's award of punitive damages and attorneys' fees .......................................37

V.      Kahn failed to preserve any error about witnesses he claimed were not allowed to testify ............................................................... 37

VI.     The Court did not abuse its discretion in striking Kahn's untimely-filed Amended Counterclaim ........................................... 39

VII.    Kahn's vague "catch-all" issue fails to specify any alleged error by the trial court .................................................................... 41

VIII.   Because Kahn's Brief overall violates appellate rules and law, he has waived appellate review ................................................... 42

CONCLUSION ................................................................................................ 49

CERTIFICATE OF COMPLIANCE WITH RULE 9.4 ........................................ 50

CERTIFICATE OF SERVICE ........................................................................... 51

# TABLE OF AUTHORITIES

**CASES**

*Aguilera v. Aguilera*,
 No. 04-13-00034-CV, 2014 WL 769445 (Tex. App.—San Antonio
 May 6, 2013, orig. proceeding) (mem. op.)............................................................41

*Alaniz v. State*,
 No. 04-13-00118-CR, 2014 WL 954545 (Tex. App.—San Antonio
 July 18, 2013, no pet.)............................................................................................46

*Barr v. Resolution Trust Corp.*,
 837 S.W.2d 627 (Tex. 1992) ..................................................................................21

*Basic Energy Serv., Inc. v. D-S-B Props., Inc.*,
 367 S.W.3d 254 (Tex. App.—Tyler 2011, no pet.)................................................20

*Bay Area Healthcare Grp., Ltd. v. McShan*
 239 S.W.3d 231 (Tex. 2007) (per curiam) ............................................................15

*Bay, Inc. v. Ramos*,
 139 S.W.3d 322 (Tex. App.—San Antonio 2004, pet. denied)..............................28

*In re Bishop*,
 No. 07-12-00455-CV, 2013 WL 6529304 (Tex. App.—Amarillo
 Dec. 4, 2013, no pet.).............................................................................................41

*Bland Indep. Sch. Dist. v. Blue*,
 34 S.W.3d 547 (Tex. 2000).....................................................................................11

*BMC Software Belgium, N.V. v. Marchand*,
 83 S.W.3d 789 (Tex. 2002).....................................................................................25

*Bobbora v. Unitrin Ins. Servs.*,
 255 S.W.3d 331 (Tex. App.—Dallas 2008, no pet.) ..............................................19

*Bolling v. Farmers Branch Indep. Sch. Dist.*,
 315 S.W.3d 893 (Tex. App.—Dallas 2010, no pet.) ..............................................45

*Bonniwell v. Beech Aircraft Corp.*,
 663 S.W.2d 816 (Tex. 1984) ..................................................................................21

*Bright v. Addison*,
171 S.W.3d 588 (Tex. App.—Dallas 2005, pet. dism'd) ...................................28

*In re C.Z.B.*,
151 S.W.3d 627 (Tex. App.—San Antonio 2004, no pet.) ...............................48

*Cain v. Bain*,
709 S.W.2d 175 (Tex. 1986) .......................................................................28

*Canton-Carter v. Baylor Coll. of Medicine*,
271 S.W.3d 928 (Tex. App.—Houston [14th Dist.] 2008, no pet.) .............46, 48

*Citizens Nat'l Bank v. Allen Rae Invs., Inc.*,
142 S.W.3d 459 (Tex. App.—Fort Worth 2004, no pet.)..................................44

*City of Keller v. Wilson*,
168 S.W.3d 802 (Tex. 2005) ...................................................................... 16, 28

*Crawford v. McDonald*,
88 Tex. 626, 33 S.W. 325 (1895) .....................................................................16

*In re Croft*,
737 F.3d 372 (5th Cir. 2013) .....................................................................12, 13

*Croucher v. Croucher*,
660 S.W.2d 55 (Tex. 1983)..............................................................................27

*Daniel v. Falcon Interest Realty Corp.*,
190 S.W.3d 177 (Tex. App.—Houston [1st Dist.] 2005, no pet.).....................48

*Douglas v. Delp*,
987 S.W.2d 879 (Tex. 1999) ...........................................................................12

*Downer v. Aquamarine Operators, Inc.*,
701 S.W.2d 238 (Tex.1985)..............................................................................15

*In re Educators Grp. Health Trust*,
25 F.3d 1281 (5th Cir. 1994) ...........................................................................12

*E-Z Mart Stores, Inc. v. Ronald Holland's A-Plus Transmission & Auto., Inc.*,
358 S.W.3d 665 (Tex. App.—San Antonio 2011, pet. denied).........................20

x

*ERI Consulting Eng'rs, Inc. v. Swinnea*,
    318 S.W.3d 867 (Tex. 2010) ...................................................................30, 36

*First State Bank v. Keilman*,
    851 S.W.2d 914 (Tex. App.—Austin 1993, writ denied)...................................29

*Fletcher v. Minn. Mining & Mfg. Co.*,
    57 S.W.3d 602 (Tex. App.—Houston [1st Dist.] 2001, pet. denied ..................19

*Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*,
    960 S.W.2d 41 (Tex. 1998)...........................................................................28, 34

*Fredonia State Bank v. American Life Ins.*,
    881 S.W.3d (Tex. 1994).................................................................................42, 46

*In re Guardianship of Winn*,
    372 S.W.3d 291 (Tex. App.—Dallas 2012, no pet.) ..............................41, 42, 46

*Greenberg Traurig of N.Y., P.C. v. Moody*,
    161 S.W.3d 56 (Tex. App.—Houston [14th Dist.] 2004, no pet.) .....................16

*Greenhalgh v. Service Lloyds Ins. Co.*,
    787 S.W.2d 938 (Tex. 1990) ..............................................................................40

*Greenstein, Logan & Co. v. Burgess Mktg., Inc.*,
    744 S.W.2d 170 (Tex. App.—Waco 1987, writ denied)....................................38

*Gulf States Utils. Co. v. Low*,
    79 S.W.3d 561 (Tex. 2002)...........................................................................29, 36

*Halmos v. Bombardier Aerospace Corp.*,
    314 S.W.3d 606 (Tex. App.—Dallas 2010, no pet.) ..........................................40

*Hernandez v. Hernandez*,
    318 S.W.3d 464 (Tex. App.—El Paso 2010, no pet.) ........................................47

*Holt Atherton Indus., Inc. v. Heine*,
    835 S.W.2d 80 (Tex. 1992)..........................................................................34, 36

*Houston Pipeline Co. LP v. Bank of Am., N.A.*,
    213 S.W.3d 418 (Tex. App.—Houston [1st Dist.] 2006, no pet.).....................12

*Houtex Ready Mix Concrete & Materials v. Eagle Constr. & Envt'l Servs. L.P.*,
226 S.W.3d 514 (Tex. App.—Houston [1st Dist.] 2006, no pet.)......................40

*Huckaby v. A.G. Perry & Son, Inc.*,
20 S.W.3d 194 (Tex. App.—Texarkana 2000, pet. denied)..............................16

*J.J. Gregory Gourmet Servs., Inc. v. Antone's Import Co.*,
927 S.W.2d 31 (Tex. App.—Houston [1st Dist.] 1995, no writ) .......................24

*John G. & Marie Stella Kenedy Mem'l Found. v. Dewhurst*,
90 S.W.3d 268 (Tex. 2002)...............................................................................21

*Kane v. Nat'l Union Fire Ins. Co.*,
535 F.3d 380 (5th Cir. 2008) ............................................................................12

*Keyes Helium Co. v. Regency Gas Servs., L.P.*,
393 S.W.3d 858 (Tex. App.—Dallas 2012, no pet.) ...................................18, 44

*King Ranch, Inc. v. Chapman*,
118 S.W.3d 742 (Tex. 2003) .............................................................................28

*King v. Deutsche Bank Nat'l Trust Co.*,
No. 04-12-00605-CV, 2013 WL 3871067 (Tex. App.—San
Antonio July 24, 2013, no pet.) ........................................................................45

*Lone Star Gas Co. v. State*,
137 Tex. 279, 153 S.W.2d 681 (1941) ..............................................................25

*Lott v. First Bank*,
No. 04-13-00531-CV, 2014 WL 4922896 (Tex. App.—San
Antonio Oct. 1, 2014, no pet.) (mem. op.) ...................................................18, 44

*Lowry v. Croft (In re Croft)*,
2012 BL 321154 (W.D. Tex. Dec. 10, 2012) ....................................................13

*Lucky Merk, LLC v. Greenville Landmark Venture, Ltd.*,
No. 05-12-00848-CV, 2014 WL 4261204 (Tex. App.—Dallas
Aug. 28, 2014, no pet.) (mem. op.)....................................................................41

*Ludlow v. DeBerry*,
959 S.W.2d 265 (Tex. App.—Houston [14th Dist.] 1997, no writ)..................37

*Lueg v. Lueg*,
976 S.W.2d 308 (Tex. App.—Corpus Christi 1998, pet. denied) ......................48

*In re M.S.*,
115 S.W.3d 534 (Tex. 2003) ...............................................................................20

*Mancorp, Inc. v. Culpepper*,
802 S.W.2d 226 (Tex. 1990) ..............................................................................27

*Mansfield State Bank v. Cohn*,
573 S.W.2d 181 (Tex. 1978) ..............................................................................44

*Mayberry v. Tex. Dep't of Agric.*,
948 S.W.2d 312 (Tex. App.—Austin 1997, writ denied)...................................29

*McInnes v. Yamaha Motor Corp.*,
673 S.W.2d 185 (Tex. 1984) ..............................................................................39

*Mensa-Wilmot v. Smith Int'l*,
312 S.W.3d 771 (Tex. App.—Houston [1st Dist.] 2009, no pet).......................40

*Mid-Continent Cas. Co. v. Safe Tire Disposal Corp.*,
2 S.W.3d 393 (Tex. App.—San Antonio 1999, no pet.) ....................................21

*In re Moore*,
608 F.3d 253 (5th Cir. 2010) .............................................................................12

*Morrill v. Cisek*,
226 S.W.3d 545 (Tex. App.—Houston [1st Dist.] 2006, no pet.)......................47

*In re N.R.C.*,
94 S.W.3d 799 (Tex. App.—Houston [14th Dist.] 2002, pet. denied).........38, 39

*Nguyen v. Kosnoski*,
93 S.W.3d 186 (Tex. App.—Houston [14th Dist.] 2002, no pet.) ...............47, 48

*Niera v. Frost Nat'l Bank*,
No. 04-09-00224-CV, 2010 WL 816191 (Tex. App.—San Antonio
Mar. 10, 2010, pet. denied) (mem. op.) .......................................................18, 44

*Plummer v. Reeves*,
93 S.W.3d 930 (Tex. App.—Amarillo 2003, pet. denied) .................................47

*Potter v. GMP, L.L.C.*,
  141 S.W.3d 698 (Tex. App.—San Antonio 2004, pet. dism'd) ..........................29

*Quick v. City of Austin*,
  7 S.W.3d 109 (Tex. 1998)..................................................................................25

*Quinney Elec., Inc. v. Kondos Entm't, Inc.*,
  988 S.W.2d 212 (Tex. 1999) ............................................................................21

*Republic Underwriters Ins. Co. v. Mex.-Tex., Inc.*,
  150 S.W.3d 423 (Tex. 2004) ............................................................................48

*Saenz v. Saenz*,
  No. 04-14-00033-CV, 2014 WL 6687284 (Tex. App.—San
  Antonio Aug. 14, 2014, no pet.) ......................................................................48

*Schade v. Tex. Workers' Comp. Comm'n*,
  150 S.W.3d 542 (Tex. App.—Austin 2004, pet. denied) ..................................25

*Scurlock Oil Co. v. Smithwick*,
  724 S.W.2d 1 (Tex. 1986)..................................................................................24

*In re S.I. Acquisition, Inc.*,
  817 F.2d 1142 (5th Cir. 1987) ..........................................................................12

*Sink v. Sink*,
  364 S.W.3d 340 (Tex. App.—Dallas 2012, no pet.) .........................................19

*Shull v. United Parcel Serv.*,
  4 S.W.3d 46 (Tex. App.—San Antonio 1999, pet. denied)...............................45

*Southwest Country Enters., Inc. v. Lucky Lady Oil Co.*,
  991 S.W.2d 490 (Tex. App.—Fort Worth 1999, pet. denied)...........................19

*State v. Cent. Expressway Sign Assocs.*,
  302 S.W.3d 866 (Tex. 2009) ............................................................................20

*State v. Wood Oil Distrib., Inc.*,
  751 S.W.2d 588 (Tex. 1986) ............................................................................16

*Sw. Bell Tel. Co. v. Public Util. Comm'n*,
  571 S.W.2d 503 (Tex. 1978) ............................................................................25

*Sweed v. City of El Paso*,
    195 S.W.3d 784 (Tex. App.—El Paso 2006, no pet.) ........................................46

*SWEPI, L.P. v. Camden Resources, Inc.*,
    139 S.W.3d 332 (Tex. App.—San Antonio 2004, pet. denied)..........................21

*Tanner v. Nationwide Mut. Fire Ins. Co.*,
    289 S.W.3d 828 (Tex. 2009) ........................................................................28

*Tesoro Petroleum Corp. v. Nabors Drilling USA, Inc.*,
    106 S.W.3d 118 (Tex. App.—Houston [1st Dist.] 2002, pet. denied) ..............46

*Tex. Ass'n of Bus. v. Tex. Air Control Bd.*,
    852 S.W.2d 440 (Tex. 1993) ........................................................................11

*Texas Dep't of Pub. Safety v. Petta*,
    44 S.W.3d 575 (Tex. 2001)............................................................................21

*Texas Instruments, Inc. v. Teletron Energy Mgmt., Inc.*,
    877 S.W.2d 276 (Tex. 1994) ........................................................................34

*Valadez v. Avitia*,
    238 S.W.3d 843 (Tex. App.—El Paso 2007, no pet.) ................................45, 48

*Valenciana v. Hereford Bi-Products Mgmt., Ltd.*,
    No. 07-05-00051-CV, 2005 WL 3803144 (Tex. App.—Amarillo
    Feb. 24, 2005, no pet.) ................................................................................12

*Van Dyke v. Boswell, O'Toole, Davis & Pickering*,
    697 S.W.2d 381 (Tex. 1985) ........................................................................21

*Vela v. Wagner & Brown, Ltd.*,
    203 S.W.3d 37 (Tex. App.—San Antonio 2006, no pet.) ................................29

*Vickery v. Comm'n for Lawyer Discipline*,
    5 S.W.3d 241 (Tex. App.—Houston [14th Dist.] 1999, pet. denied)................16

*Wal-Mart Stores, Inc. v. McKenzie*,
    997 S.W.2d 278 (Tex. 1999) ........................................................................20

*Walker v. Gutierrez*,
    111 S.W.3d 56 (Tex. 2003)............................................................................15

*Walker v. Packer*,
827 S.W.2d 833 (Tex.1992)..................................................................15

*Washington v. Bank of New York*,
362 S.W.3d 583 (Tex. App.—Dallas 2012, no pet.) ............................44

*Williams v. Tooke*,
116 S.W.2d 1114 (Tex. Civ. App.—Texarkana 1938, writ dism'd) ..................16

*Witherspoon v. Johnson*,
No. 04-06-00403-CV, 2007 WL 3171304 (Tex. App.—San
Antonio, Oct. 31, 2007, pet. denied) (mem. op.).................................46

*WorldPeace v. Comm'n for Lawyer Discipline*,
183 S.W.3d 451 (Tex. App.—Houston [14th Dist.] 2005, pet. denied).......18, 44

*Yarbrough's Dirt Pit, Inc. v. Turner*,
65 S.W.3d 210 (Tex. App.—Beaumont 2001, no pet.) ........................26

## STATUTES AND RULES

TEX. CONST. ART. V ...................................................................................25

11 U.S.C. § 363 .......................................................................................8

11 U.S.C. § 541 .....................................................................................12

11 U.S.C. § 541(a)(1)..............................................................................12

11 U.S.C. § 704 .......................................................................................8

11 U.S.C. § 704(a)(1)..............................................................................14

TEX. CIV. PRAC. & REM. CODE § 51.001.................................................25

TEX. GOV'T CODE § 51.903.............................................................3, 4, 22

TEX. R. APP. P. 33.1 ...............................................................................42

TEX. R. APP. P. 38.1(e)...........................................................................42

TEX. R. APP. P. 38.1(h)......................................................................42, 45

TEX. R. APP. P. 38.1(i)......................................................................42, 47

TEX. R. APP. P. 33.1(a) ...................................................................................20

TEX. R. APP. P. 33.1(a)(1) .............................................................................19

TEX. R. APP. P. 33.1(a)(1)(A)-(B) ................................................................20

TEX. R. APP. P. 33.1(a)(2)(A) .......................................................................20

TEX. R. APP. P. 38.1 .............................................................18, 27, 31, 42, 45

TEX. R. APP. P. 38.1(i) ...................................................................................45

TEX. R. APP. P. 38.1 (f) ............................................................................45, 48

TEX. R. APP. P. 38.1(g) .............................................................................45, 48

Tex. R. Civ. 63 ...............................................................................................40

TEX. R. EVID. 103(a)(2) ......................................................................19, 37, 39

FED. R. BANKR. P. 6004 ...................................................................................8

## RESTATEMENTS

RESTATEMENT (SECOND) OF JUDGMENTS § 13 (1982) .............................................24

## DEFINITIONS AND ABBREVIATIONS

"Brief" or "Br."     -     Refers to the brief filed by Appellant Burton Kahn.

"Lien Suit"     -     Refers to the lawsuit *In re a Purported Lien or Claim Against Helvetia Asset Recovery, Inc.*, Cause No. 2013-CI-18394, filed November 5, 2013, 224th Judicial District, Bexar County, Texas. Burton Kahn filed this suit under Helvetia's name, claiming that Helvetia's sales of real estate lots in September and October 2013, after it terminated Kahn's employment, were fraudulent.

"Lien Order"     -     The order signed by the Hon. John Gabriel on November 5, 2013 as part of the Lien Suit, after an *ex parte* hearing.

"Sanctions Judgment"  -     Refers to the trial court's April 1, 2014 Final Judgment and Order of Sanctions entered in the Lien Suit, and the basis of collateral estoppel rulings by the trial court in the underlying lawsuit. Kahn's appeal of the Sanctions Judgment to the Fourth Court of Appeals, No. 04-14-00357-CV, is pending.

# STATEMENT OF THE CASE

*Nature of the Case:* Helvetia owns and sells real estate lots to homebuilders in Bexar County, Texas. Burton Kahn was president of Helvetia from 2009 until he was terminated in August 2013. In retaliation, Kahn transferred over $340,000 from Helvetia's bank account to his own control, recorded fraudulent warranty deeds purporting to convey all of Helvetia's 200 plus real estate lots in the Key Largo subdivision in Converse, Texas to his separate corporation, filed a fictitious lawsuit under Helvetia's name, and created a fake stock certificate identifying himself as Helvetia's sole shareholder. Helvetia sued Kahn in November 2013 for his misconduct. In December 2013, the trial court temporarily enjoined Kahn from taking additional actions under Helvetia's name. In the separate fictitious lawsuit brought by Kahn, the trial court entered a final judgment in April 2014 sanctioning Kahn over $253,000 for, among other things, falsely claiming he owned Helvetia's stock.

*Course of the Proceedings:* In May 2014, a unanimous jury found in Helvetia's favor on all questions submitted. It awarded over $800,000 in actual damages, $900,000 in exemplary damages and over $280,000 in attorneys' fees. The trial court entered a final judgment on June 11, 2014 incorporating the damages awards and also permanently enjoining Kahn from acting under Helvetia's name. (3CR185.) On May 27, 2014, Kahn filed a Motion for Judgment Notwithstanding the Verdict. He filed an amended motion on June 1, and a second amended motion on July 7. (3CR41, 228, 652.) The motions were denied. (4CR442.) Kahn also filed a motion for new trial on July 7, and it was denied. (3CR237, 4CR441.) Kahn filed a notice of appeal on August 7, 2014. (4CR444.)

On October 17, 2014, Helvetia purchased Kahn's appellate rights in this appeal from the Chapter 7 bankruptcy trustee. Kahn has appealed the bankruptcy court's order approving the sale. The appeal has been briefed.

***Disposition of the Case:*** The Court dismissed Helvetia's motion to dismiss the litigation on jurisdictional grounds on January 9, 2015. Kahn filed his appellant's brief with this Court on February 5, 2015.

## STATEMENT REGARDING ORAL ARGUMENT

Helvetia does not believe oral argument is necessary. This case turns on whether Kahn has standing to pursue this appeal in light of Helvetia's purchase of his defensive appellate rights from the bankruptcy trustee, whether Kahn has either preserved any error, or shown any error by the trial court, and whether Kahn has waived error by filing a brief that violates Texas appellate rules and law, determinations that can be made from the parties' briefing.

# RECORD REFERENCES

Volumes 1 to 8 of the Reporter's Record, filed October 20, 2014, will be cited as follows:

[Vol.]RR[page]

Volume 9 of the Reporter's Record, filed the same day, will be cited as follows:

9RR[page]

The page number refers to the "pdf" page number in Volume 9 of the Reporter's Record. The entire Volume 9 is composed of trial exhibits, and the pages are not individually numbered, making it necessary to use the "pdf" number.

The Clerk's Record, filed October 8, 2014, will be cited as follows:

[Vol.]CR[page]

The Supplemental Clerk's Record, **filed December 5, 2014**, will be cited as follows:

[Vol.]SCR[page]

In addition, to the extent the Court finds it appropriate, Helvetia incorporates by reference its Appellee's Brief in the separate appeal brought by Kahn, and presently pending before the Court, *In re a Purported Lien or Claim Against Helvetia Asset Recovery, Inc.*, No. 04-14-00357-CV. Helvetia filed its Appellee's Brief on November 3, 2014.

The Lien Suit was the underlying trial court matter for that appeal, and Kahn appealed the trial court's Sanctions Judgment. The Lien Suit and the Sanctions Judgment gave rise to the trial court's invoking collateral estoppel in the trial

underlying this appeal.  Kahn has appealed the issue of collateral estoppel in this appeal.

# ISSUES PRESENTED

**ISSUE NO. 1:** As a threshold matter, because Helvetia has purchased Kahn's appellate rights in this appeal from the bankruptcy estate Kahn lacks standing to pursue this appeal; consequently, the Court lacks jurisdiction and the appeal should be dismissed.

**ISSUE NO. 2:** Kahn failed to preserve error of the trial court's evidentiary rulings, and otherwise failed to show the trial court abused its discretion by invoking collateral estoppel to bar the parties' relitigation of the ownership of Helvetia's stock that was already resolved in the Lien Suit.

**ISSUE NO. 3:** Because under legal and factual sufficiency analyses the evidence supported the jury's findings, the trial court properly denied Kahn's motion for JNOV.

**ISSUE NO. 4:** Appellant failed to preserve error in his complaint the trial court improperly excluded witness testimony, and otherwise failed to show the trial court abused its discretion in rulings disallowing witness testimony.

**ISSUE NO. 5:** The trial court did not abuse its discretion by striking Kahn's untimely-filed amended counterclaim.

**ISSUE NO. 6:** Kahn failed to preserve error in his complaint he was not allowed to introduce evidence of financial data, and the subject data is inadmissible hearsay.

**ISSUE NO. 7:** The appeal should be dismissed because Kahn's Brief violates TEX. R. APP. P. 38.1. and other appellate rules and law.

## JURISDICTION

This Court lacks jurisdiction to hear this appeal. On October 17, 2014, the Hon. Craig A. Gargotta, United States Bankruptcy Court for the Western District of Texas, approved the Chapter 7 bankruptcy trustee's motion to sell all of Kahn's non-exempt assets, claims and causes of action to Helvetia, including Kahn's rights in this appeal.[2] The sale was finalized effective the same day.[3] Kahn has appealed the order approving the sale to the United States District Court for the Western District of Texas.[4] Kahn filed his appellant's brief on February 10, 2015 and Helvetia filed its appellee's brief on February 24, 2015.[5]

As a result of the sale, Kahn has no standing to prosecute this appeal. Accordingly the Court lacks jurisdiction. Helvetia provides further jurisdictional argument as part of its Issue No. 1.

---

[2] The October 17, 2014 order approving the sale is attached as Appendix 1.

[3] The Chapter 7 Trustee's Bill of Sale and Quit Claim Deed, effective October 17, 2014, is attached as Appendix 2.

[4] Kahn's October 31, 2014 Notice of Appeal is attached as Appendix 3.

[5] Helvetia's February 24, 2015 appellee's brief is attached as Appendix 4, without exhibits.

## STATEMENT OF FACTS

**A.    After Helvetia terminated Kahn, he took Helvetia's money and real property.**

Helvetia is a Texas corporation. (5RR67-68.)  Its sole shareholder is Puerto Verde, Ltd., a corporation organized in The Bahamas ("Puerto Verde"). (5RR60; 9RR263-64.)  Robert Ripley ("Ripley") owns Puerto Verde.  (5RR60, 65; 9RR263-264.)

Puerto Verde capitalized Helvetia and acquired its 1,000 shares of stock in 2007 with a $1.2 million cash infusion. (5RR60-62, 65-67; 9RR12-13, 263-264.) Kahn personally oversaw the transaction.   (5RR133-36; 9RR12-13, 15-23.) Helvetia used the funds to acquire over 200 real estate lots in the Key Largo subdivision in Converse, Texas. (5RR60-61; 9RR263-64.) Helvetia sells its residential lots to homebuilders.  (4RR211-12; 9RR264.)

Helvetia hired Kahn in late 2009 and terminated him for misconduct on August 26, 2013.  (9RR264.)  Ripley replaced Kahn and continued Helvetia's operations. (9RR295.)  The company sold six lots in September and October 2013, and Ripley signed and recorded the conveyancing warranty deeds as president of Helvetia.  (9RR194-218.)

Kahn had been Helvetia's sole signatory on bank accounts.  (4RR8, 71, 98-99.)  After Ripley gained access, it became obvious Kahn had drained the accounts dry. (9RR70-71, 264.)  Kahn took $50,000 three weeks before he was terminated,

2

and over \$340,000 in the days just after. *Id*.; (4RR64-67, 71-73; 9RR34, 70-73.) For several weeks Kahn rapidly moved the money around to bank accounts under his control. (4RR48-58, 62-81, 92-99, 104-10; 9RR34, 70-73, 264.)

After taking Helvetia's cash, Kahn next turned his attention to Helvetia's valuable inventory of real estate lots, worth over \$1 million. In September and October 2013, Kahn recorded warranty deeds in the Bexar County records that purported to convey all of Helvetia's lots to his newly-created corporation, Paradiv Corporation ("Paradiv") for no consideration. (4RR110-19; 9RR75-83; 265.) Kahn signed the warranty deeds as "president" of Helvetia. (9RR76, 79, 82.)

Helvetia promptly sought relief against Kahn under TEX. GOV'T CODE § 51.903 on October 21, 2013 by filing the action *In re: A Purported Lien or Claim against Helvetia Asset Recovery, Inc.* in Bexar County district court. (9RR353-80.) In an October 23 *ex parte* hearing permitted by the statute the Hon. David Canales declared Kahn's warranty deeds fraudulent and set them aside.[6] (9RR296.)

By then it was apparent Kahn intended to takeover Helvetia from its owner and sole shareholder Puerto Verde. Consequently, on November 4, 2013, Helvetia sued Kahn and Paradiv for damages and injunctive relief to enjoin Kahn from

---

[6] Judge Canales presides over the 73rd District Court, Bexar County, Texas; a copy of the October 23, 2103 Order is attached as Appendix 5.

3

further misconduct using Helvetia's name.[7] (1CR168, 221.) That lawsuit gives rise to this appeal.

## B. Kahn's Lien Suit lays groundwork for his claim to own Helvetia's stock.

Ignoring Helvetia's request to schedule an injunction hearing, Kahn sued Helvetia the next day, November 5, 2013, under TEX. GOV'T CODE § 51.903 (the "Lien Suit") with a pleading virtually identical to Helvetia's § 51.903 suit against Kahn. (4RR60-61; 9RR91-165, 263, 271-272.) Even the style was identical, *In re: A Purported Lien or Claim against Helvetia Asset Recovery, Inc.,* to make it appear Helvetia authorized Kahn to file the lawsuit. *Id.* Kahn's lawyers signed the pleading as "Attorney for Movant, Helvetia Asset Recovery, Inc." and Kahn signed the supporting affidavit as "president" of Helvetia. (9RR98-100.)

Although the Lien Suit ostensibly attacked the validity of the six warranty deeds Helvetia had recorded for its lot sales in September and October 2013, Kahn used the suit to challenge Puerto Verde's original acquisition of Helvetia's stock in 2007. (9RR271-72.) Kahn retained a widely discredited handwriting expert, Curtis Baggett, to testify by affidavit that the stock certificate Helvetia issued to Puerto Verde in 2007 was forged. (9RR158-65, 268-70.) Kahn personally signed an affidavit with additional destructive testimony about Helvetia's corporate

---

[7] A copy of Plaintiff's Original Petition and Application for Temporary and Permanent Injunctive Relief is attached as Appendix 6.

4

documents, including similar allegations that the stock certificate Helvetia issued to Puerto Verde was "a fraudulent document" and was "clearly a forgery." (9RR98-100.)

These allegations paved the way for Kahn's next unlawful steps in claiming ownership of Helvetia. First, contrary to Helvetia's books and records, Kahn "concluded" Helvetia never sold its stock to Puerto Verde or anyone, and implausibly had been operating since inception without any shareholders. (4RR180-83, 9RR90.) Equally inconceivable, Kahn claimed Helvetia's lack of shareholders provided him the opportunity to step in and buy its stock. (4RR59; 9RR266.) At that time, in 2013, Helvetia's net worth was well in excess of $1 million due to Puerto Verde's infusion of $1.2 million in cash in 2007, and enhanced by six years of operations. (4RR88-89; 9RR60, 266.) Kahn ignored the company's current value and instead claimed to "buy" Helvetia's stock for just $1,000, a price less than .01% of its value. (4RR58-60, 81-83; 9RR51-52.) Kahn then created a fake stock certificate showing he was Helvetia's sole shareholder. (5RR81-83; 9RR53.) He dated the certificate September 7, 2013, a mere twelve days after he had been fired from the company for misconduct. *Id.*

The Hon. John Gabriel heard Kahn's Lien Suit the morning it was filed on November 5 in an *ex parte* proceeding and entered an order finding Helvetia's six warranty deeds were fraudulent (the "Lien Order"). (9RR166-68.) Neither the

5

Lien Suit nor the Lien Order mentioned Judge Canales' October 23, 2013 Order that found Kahn's warranty deeds purporting to convey all of Helvetia's property to his sole control were fraudulent. (9RR91-168.)

Helvetia promptly sought to set aside the Lien Order and requested sanctions against Kahn and his attorney for filing the fictitious Lien Suit under Helvetia's name and without its authority. (4RR174; 9RR291.) On November 15, 2013, the parties filed a Rule 11 agreement in both the Lien Suit and the case underlying this appeal, agreeing to seek orders from the trial court in the Lien Suit setting aside the Lien Order, and temporarily enjoining Kahn from acting on behalf of Helvetia as part of this action. (4RR141-48, 163-68; 9RR84-87, 263, 274-75; 1CR1-4.) Shortly thereafter Kahn disavowed the Rule 11 agreement and discharged his legal counsel. (3RR63l; 4RR144; 9RR274.)

Helvetia immediately reset its motion to set aside the Lien Order in the Lien Suit, and to enter a temporary injunction against Kahn in this suit. (4RR142-68.) The Hon. Karen Pozza held a 3-day evidentiary hearing on both issues in December 2013, where Kahn was represented by new legal counsel. *Id.*

Judge Pozza entered orders that (1) set aside the Lien Order; (9RR172-74) (2) enjoined Kahn from acting on behalf of Helvetia (9RR321-36) and (3) ordered Kahn to deposit money he had taken from Helvetia into the registry of the Court.

*Id*. Kahn deposited the sum of $291,280.51 into the court registry. (3CR81, 85-86.)

### C. Kahn is sanctioned $253,416 in the final judgment entered in the Lien Suit.

On somewhat of a parallel track, the Lien Suit proceeded to a final judgment with the adjudication of the only remaining issue, Helvetia's sanctions motion. After a 3-day evidentiary hearing, the Hon. Martha Tanner entered a Final Judgment and Order of Sanctions on April 1, 2014, sanctioning Kahn and his attorney for $253,416 (the "Sanctions Judgment"). (9RR261-90.) The trial court found:

- Puerto Verde owned Helvetia, and paid for its stock. (9RR263-64, 268, 271.)

- There was no evidence Kahn owned Helvetia's stock. His legal arguments were groundless and his claim of ownership constituted a fraud on the court and on Helvetia. (9RR262, 266-70, 272, 274, 280, 282, 287.)

- The court gave no weight to Kahn's persistence that forged or fraudulent documents allowed him to buy Helvetia's stock. (9RR268-70.)

- Puerto Verde contributed approximately $1.2 million in cash in 2007 to capitalize Helvetia and to acquire all 1,000 shares of its stock. The investment was not a "loan." (9RR263-68, 271.)

- After Helvetia terminated Kahn's employment, Kahn emptied Helvetia's bank accounts, transferring approximately $300,000 to other bank accounts he controlled. (9RR264.)

The trial court denied Kahn's motion for reconsideration on April 11, 2014.[8] Kahn appealed the Sanctions Judgment in No. 04-14-00357-CV, and the appeal is pending before the Court.

**D.**     **Kahn filed a Chapter 7 bankruptcy petition; the automatic stay is modified to allow this suit and the Lien Suit to proceed to judgment and appeal**.

Kahn filed a pro se voluntary Chapter 7 bankruptcy petition on April 14, 2014. (1CR475.) The bankruptcy court partially lifted the automatic stay on April 28, 2014 to allow this suit and the Lien Suit to proceed to judgment and appeal.[9]

On August 29, 2014, the Chapter 7 bankruptcy Trustee moved for authorization from the bankruptcy court to sell Kahn's non-exempt assets, claims and causes of action to Helvetia for $10,000, pursuant to 11 U.S.C. §§ 363 and 704 and FED. R. BANKR. P. 6004.[10] After notice and a hearing the bankruptcy court entered an order on October 17, 2014 authorizing the sale as in the best interest of the estate, and found Kahn lacked standing to object to the sale.[11] The order expressly includes the sale of Kahn's defensive appellate rights in this appeal. *Id.*

---

[8]   *See* Appendix 7.

[9]   *See* Appendix 8.

[10]   *See* Appendix 9.

[11]   *See* Appendix 1.

8

The sale transaction closed effective that same day.[12] Kahn appealed the order and the appeal has been briefed.[13]

### E. Helvetia is awarded almost $2 million in the trial of the underlying suit.

The Hon. Michael Mery conducted the jury trial in the present suit beginning May 12, 2014. (2RR1-3.) Shortly after midnight that day Kahn served Helvetia with an amended counterclaim. (2RR4-6; 2CR350.) Judge Mery granted Helvetia's motion to strike the untimely pleading. (2RR14.) The trial court also found that collateral estoppel barred the parties from relitigating issues already fully litigated in the Lien Suit, including ownership of Helvetia's stock. (2RR66-68, 100, 101, 107, 109.)

A jury was seated. As part of the trial, Helvetia introduced substantial and competent evidence establishing that Kahn breached his fiduciary duty owed to Helvetia, he took money belonging to Helvetia, he slandered Helvetia's title, his conduct constituted theft, and was committed maliciously and intentionally. The jury returned its unanimous verdict on May 21, 2014 in favor of Helvetia. (7RR16-19; 3CR26.)

The trial court denied Kahn's various post-trial motions that sought to set aside the jury's verdict, including his motion for judgment notwithstanding the

---

[12] *See* Appendix 2.

[13] *See* Appendix 3 and 4.

verdict. (3CR228, 4CR441-43.) Judge Mery entered a Final Judgment on June 11, 2014, awarding Helvetia actual damages in excess of $800,000, punitive damages of $900,000, attorneys' fees and costs, and pre- and post-judgment interest. (3CR185.) The Final Judgment accounted for the funds the registry of the court distributed to Helvetia on May 22, 2014 by crediting that amount against the total amount of damages owed by Kahn. (3CR186.) The Final Judgment also permanently enjoined Kahn from taking actions under Helvetia's name. (3CR187.)

## SUMMARY OF THE ARGUMENT

This Court lacks jurisdiction because Kahn has no standing to pursue this appeal. Upon filing for bankruptcy, Kahn's appellate rights became vested exclusively with the bankruptcy trustee, and those rights were sold to Helvetia in a sale approved by the bankruptcy court.

Two court orders in the record best detail the basis of Kahn's misconduct towards Helvetia: (1) the trial court's supplemental temporary injunction, and (2) the trial court's Sanctions Judgment, entered in the parallel case also on appeal. (9RR261, 328.) The trial court here properly invoked collateral estoppel based on detailed and annotated findings in the Sanctions Judgment that Kahn has no ownership or other rights to Helvetia. The Sanctions Judgment incorporated evidence from the temporary injunction proceedings.

10

Kahn failed to preserve error in his complaints about evidentiary rulings by failing to offer the evidence or by identifying a ruling denying a proffer. The trial court properly denied Kahn's JNOV because ample competent evidence supports the verdict, and the trial court did not abuse its discretion by striking Kahn's amended counterclaim filed the day of trial.

## ARGUMENT AND AUTHORITIES

**I.      Because Helvetia acquired Kahn's right to prosecute this appeal Kahn lacks standing, depriving this Court of jurisdiction.**

As a threshold matter, because Kahn lacks standing to pursue this appeal the Court lacks jurisdiction, and the appeal should be dismissed. Subject-matter jurisdiction is essential to the authority of a court to decide a case and is never presumed. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 443-44 (Tex. 1993); *see also Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 553-54 (Tex. 2000). Standing is a necessary component of subject-matter jurisdiction and cannot be waived. *Blue*, 34 S.W.3d at 553-54; *see also Texas Ass'n of Bus.*, 852 S.W.2d at 443 (explaining that concept of standing arises from separation of powers and constitutional prohibition on the issuance of advisory opinions).

Kahn's filing of a voluntary petition for bankruptcy impacts the issues of standing and jurisdiction in the instant appeal due to the creation of the bankruptcy estate. When a debtor like Kahn voluntarily files a petition for bankruptcy, an "estate" is created, comprised of "all legal or equitable interests of the debtor in

11

property as of the commencement of the case." 11 U.S.C. § 541. This includes causes of action or legal claims that belonged to the debtor before the petition was filed. 11 U.S.C. § 541(a)(1); *Douglas v. Delp*, 987 S.W.2d 879, 882 (Tex. 1999); *Houston Pipeline Co. LP v. Bank of Am., N.A.*, 213 S.W.3d 418, 424-25 (Tex. App.—Houston [1st Dist.] 2006, no pet.); *Kane v. Nat'l Union Fire Ins. Co.*, 535 F.3d 380, 385 (5th Cir. 2008); *see also*, *In re Moore*, 608 F.3d 253, 257-58 (5th Cir. 2010) (quoting *In re S.I. Acquisition, Inc.*, 817 F.2d 1142, 1149 (5th Cir. 1987). It also extends to a debtor's defensive appellate rights. *In re Croft*, 737 F.3d 372, 375 (5th Cir. 2013) (citing *In re Educators Grp. Health Trust*, 25 F.3d 1281, 1284 (5th Cir. 1994)); *see also*, *Valenciana v. Hereford Bi-Products Mgmt., Ltd.*, No. 07-05-00051-CV, 2005 WL 3803144, *1 (Tex. App.—Amarillo Feb. 24, 2005, no pet.) (internal citations omitted). Consequently, Kahn's Chapter 7 bankruptcy petition vested exclusive standing in the Chapter 7 bankruptcy trustee to pursue this appeal. *Id.*

Such was the finding in a recent case of first impression by the Fifth Circuit in *In re Croft*.[14] Similar to this case, *In re Croft* arose out of a Bexar County district court's sanctions order against a defendant, Bradley L. Croft. Like Kahn, Croft appealed the order to the Fourth Court of Appeals, and then filed for

---

[14] Copies of the *In re Croft* opinions are attached as Appendix 10 and 11.

bankruptcy in the United States Bankruptcy Court for the Western District of Texas.[15] *Id.*

In affirming the Hon. Xavier Rodriguez' opinion from the United States District Court for the Western District of Texas, the Fifth Circuit held in *In re Croft* held that a party's rights to appeal from an adverse state court judgment, or his "defensive appellate rights," are considered a valuable property right under Texas law. *In re Croft,* 737 F.3d at 376-77; *Lowry v. Croft (In re Croft)*, 2012 BL 321154 (W.D. Tex. Dec. 10, 2012). By filing for bankruptcy, those "defensive appellate rights" become part of the debtor's bankruptcy estate, precluding the debtor, here Kahn, from appealing the adverse state court judgment. Instead, the exclusive right to pursue an appeal is vested in the bankruptcy trustee. *Id.* at 378.

The Fifth Circuit rejected the debtor Croft's argument that such a finding took away his right to object to the trustee's prospective sale of his defensive appellate rights, noting that the bankruptcy court would hear the trustee's motion and would permit the debtor to express his objection. *Id.* The Fifth Circuit also rejected Croft's claim that his right to object was "farcical" because the only party interested in his defensive appellate rights would be the judgment holder who would then extinguish the appeal. *Id.* The Fifth Circuit noted that, while that "may be true, the trustee remains bound by its duty to maximize the value of the estate,

---

[15] Mr. Croft actually appealed two separate sanctions orders to the Fourth Court of Appeals, both arising out of litigation in Bexar County district courts.

13

11 U.S.C. § 704(a)(1), and will sell only if the price offered exceeds the expected value of litigating the appeal." *Id.* A second safeguard recognized by the Fifth Circuit was approval of the sale by the bankruptcy court. *Id.* Both of these safeguards were followed in this case in the bankruptcy action.[16]

The trustee in Kahn's bankruptcy proceedings chose not to pursue the instant appeal because the estate lacked money for litigating it.[17] On October 17, 2014, with court approval, the trustee sold Kahn's defensive appellate rights to Helvetia along with all of Kahn's other non-exempt assets, claims, and causes of action.[18] Both the bankruptcy court and the trustee acknowledged that the sale would preclude Kahn from further pursuing his litigation.[19] Consequently, with the sale, Kahn lost his rights and standing to pursue this appeal. Therefore this Court lacks jurisdiction, and the appeal should be dismissed.

Even if Kahn's pending appeal of the sale order is successful, and the sale is reversed, standing is not restored in Kahn. Exclusive standing is once again placed

---

[16] *See* Appendix 12, transcript excerpts from the October 15, 2014 hearing before the Hon. Craig Gargotta on the Trustee's Motion to Sell All Non-Exempt Assets, Claims and Causes of Action, in Case No. 14-50980-cag, *In re: Burton M. Kahn*, Debtor, United States Bankruptcy Court for the Western District of Texas, San Antonio Division.

[17] *See* Appendix 12, pp. 17, 22.

[18] *See* Appendix 3.

[19] *See* Appendix 12, p. 20

with the bankruptcy trustee, who, as referenced above, has already affirmed to the bankruptcy court that the estate will not pursue the appeal.[20]

## II.     Standard of Review.

Should the Court decline to dismiss the appeal on jurisdictional grounds, it should still affirm the trial court's judgment. Construing his brief liberally, Kahn argues in all of his issues that the trial court abused its discretion as follows: (1) misapplied the doctrine of collateral estoppel, (2) improperly denied his motion for JNOV, (3) improperly excluded witness testimony; (4) improperly struck his amended counterclaim, and (5) disallowed presentation of financial data.

A trial court abuses its discretion only when its action is arbitrary and unreasonable, without reference to guiding rules or principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex.1985); *Walker v. Gutierrez*, 111 S.W.3d 56, 62 (Tex. 2003); *Bay Area Healthcare Grp., Ltd. v. McShane*, 239 S.W.3d 231, 234 (Tex. 2007) (per curiam) (trial court's decision to admit or exclude evidence is reviewed for abuse of discretion). An abuse of discretion occurs if the trial court clearly failed to analyze and determine the law correctly or applied the law incorrectly to the facts. *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex.1992).

---

[20]  *See* transcript excerpt from October 17, 2014 bankruptcy hearing, Appendix 12, pp. 17, 22.

Kahn's issues are subject to other standards of review. For example Kahn contends the trial court denied his motion for JNOV. (Br. p.15.) A trial court's decision to grant or deny a motion for JNOV is reviewed under a legal sufficiency standard of review. *City of Keller v. Wilson*, 168 S.W.3d 802, 823 (Tex. 2005).

Kahn complains the trial court erred in granting Helvetia's motion to exclude evidence or alternatively that it granted Helvetia's motion in limine. Br. pp. 9, 10, 28, 29. A ruling on a motion in limine is not a ruling on the admissibility of evidence and does not preserve error. *State v. Wood Oil Distrib., Inc.*, 751 S.W.2d 588, 594 (Tex. 1986); *Greenberg Traurig of N.Y., P.C. v. Moody*, 161 S.W.3d 56, 91 (Tex. App.—Houston [14th Dist.] 2004, no pet.); *Huckaby v. A.G. Perry & Son, Inc.*, 20 S.W.3d 194, 203 (Tex. App.—Texarkana 2000, pet. denied). To the extent that Kahn complains otherwise of the trial court's rulings on admissibility of evidence, Kahn has failed to preserve any error.

Finally, "[p]ublic policy favors the validity of judgments." *Vickery v. Comm'n for Lawyer Discipline*, 5 S.W.3d 241, 251 (Tex. App.—Houston [14th Dist.] 1999, pet. denied) (citing *Crawford v. McDonald*, 88 Tex. 626, 33 S.W. 325, 328 (1895)). "Thus, there is a general presumption of validity extending to the judgments of courts of general jurisdiction. Without such a presumption, a court's judgment would have very little import and 'there would be no end to troublesome litigation.'" *Id*. (citing *Williams v. Tooke*, 116 S.W.2d 1114, 1120 (Tex. Civ.

16

App.—Texarkana 1938, writ dism'd)).  The Court should accordingly indulge every reasonable presumption in favor of the findings and judgment of the trial court, and no presumption should be indulged against the validity of the judgment.

III.    **The Court did not err in applying collateral estoppel.**

In his first issue, Kahn contends the trial court abused its discretion by invoking collateral estoppel as grounds for disallowing the parties from relitigating the issue of who owned Helvetia's stock, and he further appears to argue that the trial court disallowed admission of evidence based on collateral estoppel.  Br. pp. 9, 10.  His arguments are unavailing.

A.    **Kahn failed to provide a concise argument or supporting citations to the record or legal authority and so has waived his claim.**

Kahn's collateral estoppel argument is disjointed and ambiguous.  The legal authority he cites does not shed additional insight and in fact demonstrates a fundamental misunderstanding of collateral estoppel.  Kahn does not accompany his lengthy quotes from inapposite case law with any explanation or analysis.  His record citations references are similarly deficient.  He makes a bare reference to Helvetia's limine motion and to the Sanctions Judgment that he is separately appealing, but nothing more.  Moreover, he has repeated his same groundless and

17

confusing arguments relating to Judge Pozza and Judge Tanner from his other appeal without proper record citations.[21] (Br. pp. 6, 9, 10, 13, 14.)

It is well-settled that issues within an appellate brief may be waived absent clear and concise arguments, with appropriate citations to legal authorities and to the record. *See* TEX. R. APP. P. 38.1; *Lott v. First Bank*, No. 04-13-00531-CV, 2014 WL 4922896 (Tex. App.—San Antonio Oct. 1, 2014, no pet.) (mem. op.) (appellant waived appellate complaint "by failing to comply with the briefing rules set out in Rule 38.1 of the Texas Rules of Appellate Procedure") (citing *Keyes Helium Co. v. Regency Gas Servs., L.P.*, 393 S.W.3d 858, 861-62 (Tex. App.—Dallas 2012, no pet.) (holding failure to cite to relevant portions of record waives appellate review); *Niera v. Frost Nat'l Bank*, No. 04-09-00224-CV, 2010 WL 816191, at *3 (Tex. App.—San Antonio Mar. 10, 2010, pet. denied) (mem. op.) (holding failure to provide appropriate records citations or substantive analysis waived appellate issue); *WorldPeace v. Comm'n for Lawyer Discipline*, 183 S.W.3d 451, 460 (Tex. App.—Houston [14th Dist.] 2005, pet. denied) (providing that failure to offer argument, citations to record, or authority waives appellate review). Because Kahn failed to support his claim with any cogent or organized

---

[21] Helvetia addressed these issues in its Appellee's Brief in *In re a Purported Lien or Claim Against Helvetia Asset Recovery, Inc.*, No. 04-14-00357-CV, filed November 3, 2014, on pp. 34-36, pages attached hereto as Appendix 13.

argument, analysis, record citations, or pertinent legal authority, he has waived this issue.

**B.    Kahn failed to make any offer of proof for evidence he claimed should have been admitted and so has failed to preserve error.**

To the extent Kahn did not waive his first issue by violating appellate briefing rules, he has waived it by failing to preserve error for appellate review.  To preserve error concerning the exclusion of evidence, the complaining party must actually offer the evidence or a summary of the evidence and secure an adverse ruling from the court.  *Sink v. Sink*, 364 S.W.3d 340, 347 (Tex. App.—Dallas 2012, no pet.) (citing *Fletcher v. Minn. Mining & Mfg. Co.*, 57 S.W.3d 602, 607 (Tex. App.—Houston [1st Dist.] 2001, pet. denied)); *see also*, TEX. R. EVID. 103(a)(2); TEX. R. APP. P. 33.1(a)(1).  Without an offer of proof, the reviewing court cannot determine whether exclusion of the evidence was harmful. *Id.*

If a party fails to make an offer of proof, it must introduce the excluded testimony into the record by a formal bill of exception. *See Southwest Country Enters., Inc. v. Lucky Lady Oil Co.*, 991 S.W.2d 490, 494-95 (Tex. App.—Fort Worth 1999, pet. denied).  Failure to demonstrate the substance of the excluded evidence through an offer of proof or bill of exception results in waiver of any error in its exclusion.  *See id*. at 494; *Bobbora v. Unitrin Ins. Servs.*, 255 S.W.3d 331, 335 (Tex. App.—Dallas 2008, no pet.).

Kahn failed to make any offer of proof or bill of exception with regard to the ownership of Helvetia's shares or of any exclusion of evidence. He also cited no order signed by the trial court. (Br. pp. 9, 10.) The complaining party must show that the trial court ruled on the request, objection, or motion "either expressly or impliedly." TEX. R. APP. P. 33.1(a)(2)(A). Because of these deficiencies Kahn has waived error. *See* TEX. R. APP. P. 33.1(a) (preservation of error a prerequisite to presenting complaint for appellate review); *In re M.S.*, 115 S.W.3d 534, 547 (Tex. 2003) (error preservation is threshold to appellate review); *Basic Energy Serv., Inc. v. D-S-B Props., Inc.*, 367 S.W.3d 254, 264 (Tex. App.—Tyler 2011, no pet.); *Wal-Mart Stores, Inc. v. McKenzie*, 997 S.W.2d 278, 280 (Tex. 1999); TEX. R. APP. P. 33.1(a)(1)(A)-(B).

Kahn also failed to show that any error by the trial court probably caused the rendition of an improper judgment. *E-Z Mart Stores, Inc. v. Ronald Holland's A-Plus Transmission & Auto., Inc.*, 358 S.W.3d 665, 674-75 (Tex. App.—San Antonio 2011, pet. denied) (quoting *State v. Cent. Expressway Sign Assocs.*, 302 S.W.3d 866, 870 (Tex. 2009)). Absent this showing, Kahn's claim is unavailing.

## C.     Kahn misconstrues the doctrine of collateral estoppel.

If Kahn preserved error, he still failed to show the trial court abused its discretion in applying the doctrine of collateral estoppel to bar the parties' relitigating the issue of who owned Helvetia's stock. (Br. pp. 9-14).

20

Collateral estoppel prevents a party from relitigating an issue that it previously litigated and lost. *Quinney Elec., Inc. v. Kondos Entm't, Inc.*, 988 S.W.2d 212, 213 (Tex. 1999); *Barr v. Resolution Trust Corp.*, 837 S.W.2d 627, 628 (Tex. 1992); *see Mid-Continent Cas. Co. v. Safe Tire Disposal Corp.*, 2 S.W.3d 393, 396 (Tex. App.—San Antonio 1999, no pet.) The doctrine applies when an issue decided in the first action is actually litigated, is essential to the prior judgment, and is identical to an issue in a pending action. *Texas Dep't of Pub. Safety v. Petta*, 44 S.W.3d 575, 579 (Tex. 2001); *John G. & Marie Stella Kenedy Mem'l Found. v. Dewhurst*, 90 S.W.3d 268, 288 (Tex. 2002). Collateral estoppel is designed to promote judicial efficiency and to prevent inconsistent judgments by preventing relitigation of an ultimate issue of fact. *Petta*, 44 S.W.3d at 579.

Specifically, a party is collaterally estopped from raising an issue under Texas law when: (1) the facts sought to be litigated in the second case were fully and fairly litigated in the first; (2) those facts were essential to the prior judgment; and (3) the parties were cast as adversaries in the first case. *Bonniwell v. Beech Aircraft Corp.*, 663 S.W.2d 816, 818 (Tex. 1984)); *Texas Dept. of Pub. Safety*, 44 S.W.3d at 579. "Once an actually litigated and essential issue is determined, that issue is conclusive in a subsequent action between the same parties." *Van Dyke v. Boswell, O'Toole, Davis & Pickering*, 697 S.W.2d 381, 384 (Tex. 1985); *SWEPI,*

*L.P. v. Camden Resources, Inc.*, 139 S.W.3d 332, 339 (Tex. App.—San Antonio 2004, pet. denied) (collateral estoppel applies to issues expressly determined in a prior action.)

Here, Helvetia has met all of the elements of collateral estoppel. The ownership of Helvetia's stock was fully litigated in the Lien Suit. Helvetia's January 15, 2014 sanctions motion placed directly into issue Kahn's wrongful claim to own Helvetia:

> Kahn did not own any lots in Key Largo, so he filed his fictitious pleading in the name of Helvetia…whose stock he claimed to have purchased shortly before for $1,000….Kahn and [his attorney] hired Baggett, the discredited handwriting expert and convicted felon, to opine that Puerto Verde's stock certificate in…Helvetia was a forgery.

> Kahn improperly attached lengthy and substantive affidavits signed by him and by Baggett claiming that Puerto Verde did not own Helvetia because it had not paid for its stock in 2007, and asserting the stock certificate naming Puerto Verde as shareholder was "forged."

> Kahn's allegations and affidavits argued that he had the authority to act on behalf of Helvetia, and could properly challenge Ripley's authority to execute conveyance documents on behalf of Helvetia. But Kahn knew that the Court had already rejected his attempt to act on behalf of Helvetia, findings that were later echoed by Judges Sakai and Pozza when they each entered orders enjoining such conduct.

> Kahn and George should also be sanctioned under 10.001(d) because they intentionally violated § 51.903…by seeking impermissible findings, namely that Puerto Verde did not own the stock of Helvetia, and that corporate documents were "forged." [B]y claiming Kahn was a property owner [of Helvetia's lots], and thus had standing to bring an action under § 51.903, Kahn and George's actions made factual contentions that lacked any evidentiary support.

22

(9RR291, 293-94, 296-97, 301.)

Helvetia sought $760,000 in sanctions based on the fees and costs it incurred relating to the Lien Suit, and to serve as a deterrent for future bad acts. (9RR308.) Accordingly, Kahn was aware Helvetia was seeking a substantial monetary sanction. Kahn had six weeks' notice and time to prepare for the evidentiary hearing on Helvetia's, and he actively participated in the hearing. (9RR261; 2RR58-59.) Like in this case, Kahn and Helvetia were cast as adversaries in the Lien Suit.

In entering the Sanctions Judgment the trial court necessarily had to determine that Puerto Verde owned Helvetia's stock, and that Kahn did not own the stock, because the essential issue underlying Helvetia's motion was Kahn's filing a fictitious lawsuit under Helvetia's name, his false claim to buy Helvetia's stock, his fake stock certificate, and making an adverse claim of ownership for the purpose of damaging Helvetia's real estate sales. The Sanctions Judgment entered by Judge Tanner reflected a full and fair litigation, and expressly stated both that (1) Kahn did not own Helvetia's stock, and (2) Puerto Verde acquired Helvetia's stock when it capitalized the company in 2007, and otherwise as follows:

- Puerto Verde owned Helvetia, and paid for its stock. (9RR263-64, 268, 271.)

- There was no evidence Kahn owned Helvetia's stock. His legal arguments were groundless and his claim of ownership constituted a

23

fraud on the court and on Helvetia. (9RR262, 266-70, 272, 274, 280, 282, 287.)

- The court gave no weight to Kahn's persistence that forged or fraudulent documents allowed him to buy Helvetia's stock. (9RR268-70.)

- Puerto Verde contributed approximately $1.2 million in cash in 2007 to capitalize Helvetia and to acquire all 1,000 shares of its stock. The investment was not a "loan." (9RR263-68, 271.)

- After Helvetia terminated Kahn's employment, Kahn emptied Helvetia's bank accounts, transferring approximately $300,000 to other bank accounts he controlled. (9RR264.)

These facts relating to ownership of Helvetia's stock were essential to the Sanctions Judgment and for sanctioning Kahn. Because all elements of collateral estoppel were met, the trial court in this case did not abuse its discretion in barring relitigation of Puerto Verde's ownership of Helvetia's stock or any other ancillary issues that Kahn may complain of.

## D. Despite Kahn's appeal of the Sanctions Judgment, it is final for purposes of collateral estoppel.

Kahn disputes the Sanctions Judgment is final for purposes of collateral estoppel. (Br. pp. 9-10.) The Texas Supreme Court held that "a judgment is final for the purposes of issue and claim preclusion 'despite the taking of an appeal unless what is called an appeal actually consists of a trial *de novo.*'" *Scurlock Oil Co. v. Smithwick*, 724 S.W.2d 1, 6 (Tex. 1986) (quoting RESTATEMENT (SECOND) OF JUDGMENTS § 13 (1982)); *see also*, *J.J. Gregory Gourmet Servs., Inc. v.*

*Antone's Import Co.*, 927 S.W.2d 31, 33 (Tex. App.—Houston [1st Dist.] 1995, no writ). In contesting finality Kahn fatally confuses the terms "*de novo* review" and "trial *de novo*."

A trial *de novo* is a **trial**, and is available to appeal cases which were originally heard in courts which are not courts "of record." For example, justice courts and most municipal courts are not "courts of record." Appeals from those courts are by trial *de novo* in the county-level courts and, in some instances in the district court. *See, e.g.*, TEX. CONST. ART. V., TEX. CIV. PRAC. & REM. CODE § 51.001; *Lone Star Gas Co. v. State*, 137 Tex. 279, 153 S.W.2d 681, 682 (1941); *Sw. Bell Tel. Co. v. Public Util. Comm'n*, 571 S.W.2d 503, 509 (Tex. 1978).

In contrast, a *de novo* review is of course a standard of **review** recognized by Texas courts. When conducting a *de novo* review, a reviewing court exercises its own judgment and re-determines each issue of fact and law. *See Schade v. Tex. Workers' Comp. Comm'n*, 150 S.W.3d 542, 549 (Tex. App.—Austin 2004, pet. denied) (citing *Quick v. City of Austin*, 7 S.W.3d 109, 116 (Tex. 1998)); *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002). Because this Court's review of the Sanctions Judgment in the separately pending appeal No. 04-14-00357-CV is based on the record from the proceedings in the Bexar County district court, a court "of record," the Court is not conducting a new trial or a "trial *de novo*." Consequently the *Scurlock* exception does not apply, and the Sanctions

25

Judgment is final for purposes of invoking collateral estoppel to bar relitigation of ownership of Helvetia's stock.

Kahn's bare reference to an "offensive" use of collateral estoppel is unavailing. (Br. pp. 12-13.) Offensive collateral would apply only if a party other than Kahn litigated and lost the issue in the separate suit. *Yarbrough's Dirt Pit, Inc. v. Turner*, 65 S.W.3d 210, 216 (Tex. App.—Beaumont 2001, no pet.). Because Kahn and Helvetia were cast as adversaries in both the Lien Suit and the suit underlying this appeal, the trial court did not invoke "offensive" collateral estoppel.

### E. Kahn's conclusory allegations about the merits of the Sanction Judgment are waived.

Kahn obliquely complains in his Brief about the merits of the Sanctions Judgment (there are "several issues that by law require a review…") (Br. p. 10.) Kahn's only grounds for his allegations are: (1) a citation to an opinion about sanctions under Chapter 10 of the Texas Civil Practice & Remedies Code, (2) a reference to Judge Pozza's December 2013 injunction order, and (3) a reference to his lawyer as a "representative party." (Br. pp, 10, 11, 13.) Kahn fails to explain these facially ambiguous references.

Similarly, Kahn offered no analysis or pertinent legal authority to support his conclusory statements that (1) the trial court "acted unreasonable and without reference to guiding rules of principles when it did not consider the subject matter

26

jurisdiction is a question of law that is reviewed de novo;" and (2) the trial court's "allowance of collateral estopped without fully litigated on the issue of ownership of the shares of Helvetia was arbitrary and unreasonable without reference to guiding rules or principles." (Br. p.14.) Absent any cogent analysis, Kahn has waived this issue, and has otherwise failed to demonstrate any abuse of discretion with regard to the merits of the Sanction Judgment or to show it is insufficient to bar the parties' relitigation of the same issues. *See* TEX. R. APP. P. 38.1.

## IV. The trial court properly denied Kahn's motion for JNOV.[22]

In his second issue, Kahn contends the trial court erred in denying his motion for JNOV, complaining generally the "jury's answers [were] not based on the evidence presented." (Br. p.15.) A motion for JNOV should be granted when (1) the evidence is conclusive and one party is entitled to recover as a matter of law, or (2) a legal principle precludes recovery. *Mancorp, Inc. v. Culpepper*, 802 S.W.2d 226, 227 (Tex. 1990). When an appellant challenges the legal sufficiency of an adverse finding on which he did not have the burden of proof at trial, he must demonstrate that there is no evidence to support the adverse finding. *Croucher v. Croucher*, 660 S.W.2d 55, 58 (Tex. 1983).

---

[22] Although Kahn refers to a "motion for new trial" as part of this issue, Helvetia has interpreted his complaint as the trial court abused its discretion in denying Kahn's JNOV motion. *See* Br., pp. 15, 23, 24.

In reviewing the record, this Court determines whether any evidence supports the challenged findings; anything more than a scintilla of evidence is legally sufficient to support a finding. *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 48 (Tex. 1998); *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003). The Court considers and weighs all of the evidence and will set aside the verdict only if the evidence that supports the finding is so weak as to be clearly wrong and manifestly unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986); *Bay, Inc. v. Ramos*, 139 S.W.3d 322, 329 (Tex. App.—San Antonio 2004, pet. denied). In making this review, the Court is not a fact finder, and will not pass upon the credibility of the witnesses or substitute its judgment for that of the trier of fact, even if a different answer could be reached. *Bright v. Addison*, 171 S.W.3d 588, 595-96 (Tex. App.—Dallas 2005, pet. dism'd). The amount of evidence necessary to affirm a judgment is far less than necessary to reverse. *Id.* "We credit evidence favoring the jury verdict if reasonable jurors could and disregard contrary evidence unless reasonable jurors could not." *Tanner v. Nationwide Mut. Fire Ins. Co.*, 289 S.W.3d 828, 830 (Tex. 2009); *see also City of Keller v. Wilson*, 168 S.W.3d 802, 823 (Tex. 2005) ("The final test for legal sufficiency must always be whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review.") Under these standards, Kahn has failed to show any error or abuse of discretion by the trial court.

With regard to the measure of damages, as a general rule, the jury has broad discretion to award damages within the range of evidence presented at trial, as long as there is a rational basis for the jury's calculation. *Gulf States Utils. Co. v. Low*, 79 S.W.3d 561, 566 (Tex. 2002); *Mayberry v. Tex. Dep't of Agric.*, 948 S.W.2d 312, 317 (Tex. App.—Austin 1997, writ denied). If there is a rational basis for the jury's calculation, its damages award will not be disregarded and set aside, even if it is unclear in the record exactly how the jury calculated the award. *First State Bank v. Keilman*, 851 S.W.2d 914, 930 (Tex. App.—Austin 1993, writ denied); *Vela v. Wagner & Brown, Ltd.*, 203 S.W.3d 37, 49 (Tex. App.—San Antonio 2006, no pet.); *Potter v. GMP, L.L.C.*, 141 S.W.3d 698, 703 (Tex. App.—San Antonio 2004, pet. dism'd). When the trial evidence supports a range of damages, an award within that range is an appropriate exercise of the jury's discretion, and a reviewing court is not permitted to speculate on how the jury actually arrived at its award. *Id.* at 704; *see also Vela*, 203 S.W.3d at 49.

A.   **Jury Question No. 2 – Misappropriation and Lost Profit damages caused by Breach of Fiduciary Duty and "Money Had and Received."**

Kahn's challenge of misappropriation and lost profit damages is nebulous at best ("There were questions on the amount that was in the registry of the Court and it appeared confusing.") (Br. p. 16.) His repeated contention that "there is no evidence" is not supported with either proper record citations or cogent analysis,

and he associates legal presumptions to his bare conclusions that are both unfounded and illogical.[23]

### 1. Uncontroverted evidence shows Kahn misappropriated at least $721,166.

The jury properly found Kahn's breach of fiduciary duty and his removal of Helvetia's cash ("money had and received") caused Helvetia to incur misappropriation damages of $721,166.[24] (3CR193-97.) Uncontroverted bank records and Kahn's own testimony demonstrate he misappropriated at least $772,368.87 in just the years 2012 and 2013. That evidence shows Kahn withdrew $392,202.87 or more of Helvetia's cash from its bank account in the six weeks before and after his employment was terminated in August 2013. Helvetia's tax return, prepared under Kahn's oversight, shows he took $380,166 from Helvetia in 2012.

### a. Kahn misappropriated at least $392,202.87 from Helvetia in 2013.

Kahn admitted at trial that he took $340,000 from Helvetia in 2013. 4RR 64-67, 71-73; 9 RR 34, 70-73. In his first amended motion for JNOV, Kahn conceded he actually took $342,202.87 in funds from Helvetia that year, just in the days after

---

[23]  Helvetia could not locate any of Kahn's citations to the reporter's record.

[24]  As the Texas Supreme Court has instructed, it is not necessary to distinguish between different theories of recovery when particular damages were recoverable under two different theories, here breach of fiduciary duty and slander of title. *ERI Consulting Eng'rs, Inc. v. Swinnea*, 318 S.W.3d 867, 876 n.3 (Tex. 2010).

his employment was terminated. (3CR81-84.) Kahn provided bank records and other documents showing how he removed those funds, and those same records were admitted into evidence at trial. *Id.*, (9RR34, 70-73; 4RR33-50, 48-58, 62-81, 92-99, 104-10.) As his testimony revealed, Kahn transferred the funds to various bank accounts he controlled, including Ideal Travel of San Antonio ("Ideal"), Trail Construction, and Paradiv. *Id.* Helvetia bank records show Kahn misappropriated an additional $50,000 from Helvetia shortly before he was fired, on August 6, 2013, by transferring the funds to another company he controlled, Contour Construction Land Corp. (9RR71; 3CR84.) Consequently, uncontroverted evidence establishes Kahn misappropriated at least $392,202.87 from Helvetia in 2013.

Kahn appears to claim, without supporting legal authority, he should be absolved from liability for the funds he took from Helvetia after he was fired and that he involuntarily deposited into the registry of the court by court order. (Br. p. 17.) ("funds …not in the possession of Kahn…cannot be construed as misappropriated." )[25] Kahn omits that in the Final Judgment the trial court properly accounted for those registry funds distributed to Helvetia in May 2014 as a credit against the total amount of damages Kahn was adjudicated to owe:

---

[25] Kahn's conclusory statement that "The reality is that the funds were distributed as per 3 CR 41, 82" does not comply with TEX. R. APP. P. 38.1. (Br., p. 17.) The respective pages in Volume 3 of the clerk's record are not reflective of funds or distribution, and thus do not support his conclusion.

It is further ORDERED that Defendants [Kahn] receive a credit for sums Plaintiff [Helvetia] received from the registry of the Court in the amount of $291,453.61, said credit to be applied against the actual damages and accrued interest as of the date the Judgment is signed.

(3CR186.) Because the distributed funds were credited against the total amount of damages assessed against Kahn, his arguments that "nothing was stolen" or other illogical and unexplained contentions about the registry funds are groundless.

### b. Kahn misappropriated $380,166 in 2012.

Helvetia's 2012 tax return, prepared and filed under Kahn's watch, provided uncontroverted evidence to the jury that Kahn misappropriated at least $380,166 from Helvetia in 2012. (9RR60; 9RR54-69.) Kahn's after-the-fact attacks on the tax preparer, who he failed to call as a witness to testify at trial, does not diminish that the tax return by itself is far more than a scintilla of evidence proving Kahn misappropriated that amount in 2012.

Kahn admitted that while still employed as president of Helvetia he retained a tax preparer to prepare Helvetia's 2012 income tax return. (4RR83-88.) He admitted providing the financial information to the tax accountant that was required to prepare the tax return. (4RR89.) The tax return showed Kahn took at least $380,166 from Helvetia in 2012, accounting for it on the tax return as a "loan to shareholder." (9RR54-69.)

In Schedule G of the tax return, Kahn identified himself as Helvetia's sole shareholder. (4RR86-90; 9RR66.) He signed the tax return under oath. (4RR83-

32

88; 9RR60.) In Schedule L, where a corporation records its balance sheet accounts per its books and records, Kahn agreed that at the first of the year Helvetia had no loans to shareholders – it is blank. (9RR60.) Kahn agreed that at the end of 2012, the tax return reported Helvetia "loaned" the sum of $380,166 to its "shareholder," meaning that sum had been removed by Kahn in that one year alone. (4RR89-90; 9RR60.)

This sum was calculated by the tax preparer retained by Kahn, and with the financial documents Kahn provided to him. (4RR85-90.) Kahn admitted that he was "responsible for the numbers" and he swore to the accuracy of the tax return. *Id.* This evidence represents far more than a scintilla to support this component of the jury's damages award, and even Kahn admits the sum of $380,166 was part of the $721,166 the jury found Kahn had misappropriated from Helvetia.[26]

Kahn did not fool the jury with his contention that a lack of "loan documents" was evidence he did not misappropriate the money. Kahn purposefully did not create loan documents, or other appropriate indicia used by a corporation to record and account for a loan to an employee, both to conceal he was taking money from Helvetia, and also to evade paying personal income taxes on those funds as salary.

---

[26] Kahn's contention that Helvetia was "hiding something" by "preventing" Kahn's tax preparer Chris Kohn from testifying, is factually false and not supported by the record. (Br., pp. 18-19.)

33

**2.** **The evidence supports the jury's finding that Kahn caused Helvetia to incur $133,000 in lost profits.**

Kahn's flat assessment there were "no lost sales and no lost profits" is conclusory and contrary to the evidence. (Br. p.19.) Lost profits are recoverable for a breach of fiduciary duty when it is shown that the loss is the natural and probable consequence of the complained of act. *Texas Instruments, Inc. v. Teletron Energy Mgmt., Inc.*, 877 S.W.2d 276, 279 (Tex. 1994). In reviewing the legal sufficiency of a lost profits award, the Court determines whether the amount awarded was established with reasonable certainty through competent evidence. *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 50 n.3 (Tex. 1998); *Holt Atherton Indus., Inc. v. Heine*, 835 S.W.2d 80, 84 (Tex. 1992) (citations omitted).

Kahn knew his claim to own Helvetia would, as a natural consequence, chill Helvetia's property sales, and in particular would make homebuilders, lenders and title companies reluctant to close on sales if they thought Kahn would record adverse ownership claims to the property. (9RR281-82.) Kahn admitted he filed the Lien Suit specifically to shut down Helvetia's property sales, and the trial court in the Sanctions Judgment expressly found that Kahn's actions made it difficult or impossible for Helvetia to continue its sales of lots. (9RR281, 284.) Kahn intentionally prolonged the time Helvetia could not sell lots by reneging on a promise to remove his fraudulent lien. (9RR283.)

34

Amanda Tidmore, an escrow officer with title company First American Title, confirmed that Kahn's actions caused sales to fail. Ms. Tidmore handled title insurance matters for Helvetia's property sales in the Key Largo subdivision at the time the dispute arose. As would be expected, Ms. Tidmore knew of Kahn's ownership claims in Helvetia and its property in November 2013, when the Lien Suit and this suit were filed. Ms. Tidmore testified that the dispute halted property closings in Key Largo. Five pending property sales transactions never closed because of the dispute, and Helvetia lost those sales. (4RR208, 211-15, 222-24.)

Ms. Tidmore explained that multiple ownership claims to a parcel of property clouded title to that property. In other words, Kahn's ownership claim and fraudulent warranty deeds prevented Helvetia from conveying lots to prospective buyers with a clear title and prevented issuance of a clear title policy. Because title companies like her employer First American Title could not issue a clear title policy, mortgagors or lenders would not lend funds to the prospective homebuilder or homebuyer to buy the property and construct the home, and consequently the sale failed. (4RR187-92, 203.) Because of the conflicting ownership claims First American Title declined to distribute to Helvetia sales proceeds of $90,000 and $100,000 generated from four previous lot sales. (*Id.*; 4RR209.)

Homebuilder Adam Smith and a second homebuilder each held options to buy 100 of Helvetia's lots in Key Largo. (4RR223, 5RR169-70.) Mr. Smith

35

testified two prospective homeowners backed out of buying and building a home on Helvetia's lots as a result of Kahn's false ownership claims. (4RR222-25.) Had those sales closed, Smith would have paid Helvetia between $23,000 and $25,000 each, or a total of $46,000 to $50,000. (4RR214-15.) This is consistent with Kahn's 2013 letter to the Bexar Appraisal District where he represented Helvetia earned an average of $23,453.86 for each lot sale, with no associated expense. (SCR70-71.)

Counting just two of the five lost sales, substantial and competent evidence demonstrated that Helvetia lost profits in the range of $136,000 to $150,000.[27] The amount of $133,000 in actual damages found by the jury was actually less than the range established by the evidence. *See Gulf States Utils. Co. v. Low*, 79 S.W.3d 561, 566 (Tex. 2002) (jury has broad discretion to award damages within range of trial evidence). "Recovery for lost profits does not require that the loss be susceptible of exact calculation." *ERI Consulting Eng'rs, Inc. v. Swinnea*, 318 S.W.3d 867, 876 (Tex. 2010) (quoting *Holt Atherton Indus., Inc. v. Heine*, 835 S.W.2d 80, 84 (Tex. 1992)). Because ample objective and uncontroverted factual and legal evidence support the jury's award of lost profits of $133,000, Kahn's argument must fail.

---

[27] Ms. Tidmore: $90,000 to $100,000, plus Mr. Smith: $46,000 to $50,000, equals range of $136,000 to $150,000.

36

### 3. The evidence supports the jury's award of punitive damages and attorneys' fees.

Kahn's sole argument challenging the jury's findings of punitive damages and attorney's fees is his contention Helvetia established no actual damages were caused by his various torts and other wrongful conduct. (Br. pp. 22,23.) His claim fails because he made no appropriate appellate argument, he did not appeal the liability findings, and the evidence conclusively established Kahn's actions caused Helvetia to incur substantial actual damages, much more than the scintilla of evidence required. His issue should be overruled.

## V. Kahn failed to preserve any error about witnesses he claimed were not allowed to testify.

In his third issue, Kahn claims the trial court abused its discretion "by not allowing [Kahn] time to respond to [Helvetia's] claim of no knowledge which was another LIE." (Br. p.24.) Kahn's complaint that Helvetia "lied," "ambushed," and "sandbagged" Kahn about disclosures of trial witnesses is unsupported and demonstrably false.

If a trial court excludes the testimony of a witness, to challenge that ruling on appeal the party must show that the excluded testimony was preserved by an offer of proof or a formal bill of exception. *See* TEX. R. EVID. 103(a)(2). Error cannot be predicated on the exclusion of evidence unless the substance of the evidence was made known to the court by an offer of proof. *Ludlow v. DeBerry*,

37

959 S.W.2d 265, 269-70 (Tex. App.—Houston [14th Dist.] 1997, no writ). When making an offer of proof, the attorney should make a concise statement of what testimony would be elicited from each witness. *See In re N.R.C.*, 94 S.W.3d 799, 806 (Tex. App.—Houston [14th Dist.] 2002, pet. denied). Error is preserved by the trial court's explicit ruling that the evidence in the offer of proof is not admissible during trial. *See, e.g., Greenstein, Logan & Co. v. Burgess Mktg., Inc.*, 744 S.W.2d 170, 181 (Tex. App.—Waco 1987, writ denied) (error was not preserved because reporter's record did not show what evidence was refused).

Kahn failed to preserve any error about any witness he may be complaining was excluded from testifying. The trial court did not preclude either Tracy Plummer or Jeff Jenson. (Br. pp. 24-25.) Ms. Plummer, Judge Pozza's court reporter, testified until it became apparent Kahn intended to elicit testimony from her that was not relevant or that was barred by collateral estoppel. (Br. pp. 24-25.) 5RR73-79. Kahn did not attempt to offer any testimony from Ms. Plummer outside of the presence of the jury that related to "original documents," "wiring instructions," or ink-dating, as he addresses in his brief. (Br. pp. 24-25.) Kahn never called the second witness, FBI agent Jeff Jenson, to testify.

Because Kahn offered no "concise statement of what testimony would be elicited" from either Ms. Plummer or Mr. Jenson, or in fact any witness he claims was improperly precluded from testifying, he has failed to make any appropriate

38

offer of proof, and thus has failed to preserve any error. *N.R.C., id.*; *McInnes v. Yamaha Motor Corp.*, 673 S.W.2d 185, 187 (Tex. 1984). *See* TEX. R. EVID. 103(a)(2).

**VI.    The Court did not abuse its discretion in striking Kahn's untimely-filed Amended Counterclaim.**

In his fourth issue, Kahn contends the trial court abused its discretion by striking Defendants' First Amended Original Answer to Plaintiff's First Amended Original Petition and Application for Permanent Injunction Relief, Affirmative Defenses, Verified Denials, Third Party Claims, and Motion to Show Authority (the "Amended Counterclaim"). (Br. p. 26-28.)

Kahn served his Amended Counterclaim at 12:45 a.m. on May 12, 2014, the day of trial. (2CR350-60.) The Amended Counterclaim contained six new pages of factual allegations, including vague references to "schemes" using "several sham corporations," "money trails," and "secret numbered accounts," virtually all related to Kahn's continued claim he owned Helvetia, despite the preclusive findings otherwise in the April 2014 Summary Judgment. (2CR352-55.) Kahn also added new claims, including fraud, and also added a new party, Robert Ripley, that the trial court had previously severed into a different cause number. (1CR245.) Kahn did not seek leave of court to file the Amended Counterclaim. Helvetia filed a motion to strike it on the grounds of untimeliness and surprise, and the motion was granted. (*Id.*)

A trial court's decision to grant or strike a pleading amendment is reviewed for an abuse of discretion. *See Greenhalgh v. Service Lloyds Ins. Co.*, 787 S.W.2d 938, 939-40 (Tex. 1990). A trial court has discretion to refuse an amended pleading when the amendment asserts a new cause of action or defense. *Halmos v. Bombardier Aerospace Corp.*, 314 S.W.3d 606, 622 (Tex. App.—Dallas 2010, no pet.). Rule 63 provides that parties may amend their pleadings "as they may desire . . . at such time as not to operate as a surprise to the opposite party; provided, that . . . within seven days of the date of trial or thereafter" any pleading amendments may be filed only with prior leave of court, "which leave shall be granted" unless the opposing party makes a showing of surprise. *See* TEX. R. CIV. P. 63.

Because Kahn's Amended Counterclaim was filed less than seven days before trial, leave of court was necessary under Rule 63. *See Houtex Ready Mix Concrete & Materials v. Eagle Constr. & Env't'l Servs. L.P.*, 226 S.W.3d 514, 520 (Tex. App.—Houston [1st Dist.] 2006, no pet.). And, because Kahn added new claims and parties, and failed to obtain leave of court, the trial court did not abuse its discretion in refusing to consider his Amended Counterclaim. *See* TEX. R. CIV. P. 63; *Mensa-Wilmot v. Smith Int'l*, 312 S.W.3d 771, 778-79 (Tex. App.—Houston [1st Dist.] 2009, no pet); *Halmos*, 314 S.W.3d at 622.

**VII. Kahn's vague "catch-all" issue fails to specify any alleged error by the trial court.**

Kahn's final issue is unreasonably vague and ambiguous. To the extent he is using this issue as a basis to request that the Court review and consider perhaps 1,000 pages of check copies, information not properly in the record, his issue should be denied. Kahn's "compilation of financial data" is inadmissible hearsay, and is an attempt to inject self-serving but facially false "accounting" information into the record. (Br. p. 29.)

"[An] [a]ppellant's citations to his appendix are not sufficient. He must cite to the appellate record." *Aguilera v. Aguilera*, No. 04-13-00034-CV, 2014 WL 769445 (Tex. App.—San Antonio May 6, 2013, orig. proceeding) (mem. op.) (citing TEX. R. APP. P. 38.1(d), (g), (i)). "The 'record' to which these rules refer is the official court record." *Lucky Merk, LLC v. Greenville Landmark Venture, Ltd.*, No. 05-12-00848-CV, 2014 WL 4261204 (Tex. App.—Dallas Aug. 28, 2014, no pet.) (mem. op.); *In re Bishop*, No. 07-12-00455-CV, 2013 WL 6529304 (Tex. App.—Amarillo Dec. 4, 2013, no pet.) (evidentiary material omitted from the record cannot be considered in determining whether the trial court erred, "[a]nd, it matters not whether the litigants attached the information to their briefs or in an appendix accompanying their briefs") (citing *In re Guardianship of Winn*, 372 S.W.3d 291, 297 (Tex. App.—Dallas 2012, no pet.).)

To the extent Kahn's fifth issue seeks additional relief, it should be denied. Kahn provided no record citations, citations to legal authority, analysis or argument for this last issue. For these reasons, and because Kahn articulated this issue as a mere conclusion, he has waived the issue. *See* TEX. R. APP. P. 33.1, 38.1(e), 38.1(h), 38.1(i) (requiring brief to contain a clear and concise argument for the contentions made with appropriate citations to authorities); *Fredonia State Bank v. American Life Ins.,* 881 S.W.2d 279, 284 (Tex. 1994) (discussing "long-standing rule" that issue may be waived due to inadequate briefing).

## VIII. Because Kahn's Brief overall violates appellate rules and law, he has waived appellate review.

While the Court is to construe the Texas Rules of Appellate Procedure reasonably yet liberally, even the broadest review of Kahn's Brief demonstrates he has failed to comply with Rule 38.1 of the Texas Rules of Appellate Procedure. *See* TEX. R. APP. P. 38.1. Kahn's Brief is confusing and ambiguous, and is premised on inaccurate and unsupported assertions that are not part of the appellate record.

Kahn's attempt to insert unsupported allegations into the appellate record is particularly inappropriate because the trial court struck his untimely Amended Counterclaim that included these same statements. (2CR352-54.) The trial court's exclusion of such matters by striking the Amended Counterclaim is even one of Kahn's appeal issues, No. 4 discussed in ¶ VI above.

Kahn has twice been apprised in the last year by this Court that an appellate brief lacking appropriate record references to the appellate record in the statement of facts constitutes a formal defect. On March 26, 2014, the Court ordered Kahn to file an amended appellant's brief in an interlocutory appeal arising out of this same underlying lawsuit, No. 04-14-00012-CV, after finding Kahn's record citations constituted flagrant violations of Rule 38. Similarly, on July 3, 2014, in appeal No. 04-14-00357-CV, the Court entered the same order after finding Kahn's appellant's brief in that matter constituted a flagrant violation of Rule 38.

Underscoring the breadth of these violations is Kahn's record reference legend, which by itself is a confusing array of information that has completely prevented Helvetia from understanding the sources of Kahn's citations. *See* Br. p. xv. Helvetia has spent countless hours attempting unsuccessfully to find in the record the information Kahn has cited. Kahn appears to be citing records in separate lawsuits and separate appeals, but the particular appeal and record remain indecipherable. (Br. p. xv.)

Further, speaking overall about the Brief, the pervasive grammatical, typographical and punctuation errors have complicated Helvetia's attempts to understand Kahn's complaints. If the Court finds his Brief compliant, and if Helvetia has misinterpreted Kahn's issues or has failed to address an issue it did

not correctly interpret, Helvetia respectfully requests that it be permitted an opportunity to supplement its briefing.

It is well-settled that issues within an appellate brief may be waived absent clear and concise arguments, with appropriate citations to legal authorities and to the record. *Lott v. First Bank*, No. 04-13-00531-CV, 2014 WL 4922896 (Tex. App.—San Antonio Oct. 1, 2014, no pet.) (mem. op.) (appellant waived appellate complaint "by failing to comply with the briefing rules set out in Rule 38.1 of the Texas Rules of Appellate Procedure") (citing *Keyes Helium Co. v. Regency Gas Servs., L.P.*, 393 S.W.3d 858, 861-62 (Tex. App.—Dallas 2012, no pet.) (holding failure to cite to relevant portions of record waives appellate review); *Niera v. Frost Nat'l Bank*, No. 04-09-00224-CV, 2010 WL 816191, at *3 (Tex. App.—San Antonio Mar. 10, 2010, pet. denied) (mem. op.) (holding failure to provide appropriate records citations or substantive analysis waived appellate issue); *WorldPeace v. Comm'n for Lawyer Discipline*, 183 S.W.3d 451, 460 (Tex. App.—Houston [14th Dist.] 2005, pet. denied) (providing that failure to offer argument, citations to record, or authority waives appellate review); *Citizens Nat'l Bank v. Allen Rae Invs., Inc.*, 142 S.W.3d 459, 489 (Tex. App.—Fort Worth 2004, no pet.)

Pro se litigants like Kahn are held to these same standards, and they must therefore comply with all applicable rules of procedure. *See Mansfield State Bank v. Cohn*, 573 S.W.2d 181, 184-85 (Tex. 1978); *Washington v. Bank of New York*,

44

362 S.W.3d 583, 584 (Tex. App.—Dallas 2012, no pet.); *Valadez v. Avitia*, 238 S.W.3d 843, 845 (Tex. App.—El Paso 2007, no pet.); *King v. Deutsche Bank Nat'l Trust Co.*, No. 04-12-00605-CV, 2013 WL 3871067 (Tex. App.—San Antonio July 24, 2013, no pet.) citing *Shull v. United Parcel Serv.*, 4 S.W.3d 46, 52-53 (Tex. App.—San Antonio 1999, pet. denied).

In addition to the record deficiencies described above, Kahn's Brief fails to direct the Court's attention, with clear and concise argument, to the errors he asserts. An appellant must state concisely the complaint he may have, provide understandable, succinct, and clear argument for why his complaint has merit in fact and in law, and cite and apply law that is applicable to the complaint being made along with record references that are appropriate. TEX. R. APP. P. 38.1; *Bolling v. Farmers Branch Indep. Sch. Dist.*, 315 S.W.3d 893, 895 (Tex. App.—Dallas 2010, no pet.) (applying TEX. R. APP. P 38.1(f), (h), and (i)). To comply with the rules of appellate procedure, the brief must "guide [the Court] through the appellant's argument with clear and understandable statements of the contentions being made." *Bolling*, 315 S.W.3d at 896.

An appellant's brief must also contain a "succinct, clear, and accurate statement of the argument made in the body of the brief." TEX. R. APP. P. 38.1(g). "[U]ttering brief conclusory statements" unsupported by citations to the record or legal authority does not satisfy the rules. TEX. R. APP. P. 38.1(i); *Valadez*, 238

S.W.3d at 845; *Sweed v. City of El Paso*, 195 S.W.3d 784, 786 (Tex. App.—El Paso 2006, no pet.); *Tesoro Petroleum Corp. v. Nabors Drilling USA, Inc.*, 106 S.W.3d 118, 128 (Tex. App.—Houston [1st Dist.] 2002, pet. denied); *Witherspoon v. Johnson*, No. 04-06-00403-CV, 2007 WL 3171304 (Tex. App.—San Antonio, Oct. 31, 2007, pet. denied) (mem. op.). If the Court must speculate or guess about what contentions are being made, then the brief fails. *Id.* The Court is not responsible for identifying possible trial court error. *Canton-Carter v. Baylor Coll. of Medicine*, 271 S.W.3d 928, 931 (Tex. App.—Houston [14th Dist.] 2008, no pet.). The Court is also not responsible for searching the record for facts that may be favorable to a party's position. *Fredonia State Bank*, 881 S.W.2d at 283-84; *see also, Alaniz v. State*, No. 04-13-00118-CR, 2014 WL 954545 (Tex. App.—San Antonio July 18, 2013, no pet.) (Court struck amended brief after it still failed to acquaint the court with the issues or to present argument that would enable the court to decide the case).

Kahn provides no cogent argument in the body of his Brief that sufficiently augments his objectively inarticulate issues. The document is a series of brief conclusory utterings, disjointed and cryptic factual assertions and legal arguments far afield from the trial court's discretion in making the various rulings Kahn complains of. Even his summary of the argument lacks sufficient clarity to identify Kahn's contentions of error:

46

> The trial court abused its discretion by allowing collateral estoppel from a sanction order that was being appealed de novo and prevented Appellant to present a defense and having a fair trial. The judgment for Appellee without any evidence from Appellee. Thus the trial should be reversed and remanded for a new trial.

(Br. p. 9.)

Kahn provides no meaningful analysis or explanation to demonstrate the trial court abused its discretion in any of its rulings. While Kahn contended the standard of review for all of his issues was "abuse of discretion," he cited no supporting authority or argument tailored to his specific issues showing how the trial court abused its discretion, or any analysis applying the appropriate legal authority to the facts of his case. The Brief relies heavily on alleged facts outside the record, improper legal presumption, and simply false statements, and in general seeks to have this Court make determinations outside the scope of its review on issues not properly before the Court.

A brief must explain how the law that is cited is applicable to the facts of the case. *Hernandez v. Hernandez*, 318 S.W.3d 464, 466 (Tex. App.—El Paso 2010, no pet.); *Plummer v. Reeves*, 93 S.W.3d 930, 931 (Tex. App.—Amarillo 2003, pet. denied); *Nguyen v. Kosnoski*, 93 S.W.3d 186, 188 (Tex. App.—Houston [14th Dist.] 2002, no pet.). A party who fails to support his contentions with authority or citations to the record when appropriate waives the issue due to inadequate briefing. TEX. R. APP. P. 38.1(i); *see Morrill v. Cisek*, 226 S.W.3d 545, 548-49

(Tex. App.—Houston [1st Dist.] 2006, no pet.) (holding party waived issues by failing to cite to record and authority); *Lueg v. Lueg*, 976 S.W.2d 308, 310 (Tex. App.—Corpus Christi 1998, pet. denied) (same). Although appellate courts must interpret this requirement liberally, an issue not supported by authority is waived. *Republic Underwriters Ins. Co. v. Mex.-Tex., Inc.*, 150 S.W.3d 423, 427 (Tex. 2004); *Nguyen*, 93 S.W.3d at 188; *see also In re C.Z.B.*, 151 S.W.3d 627, 635 (Tex. App.—San Antonio 2004, no pet.); *Daniel v. Falcon Interest Realty Corp.*, 190 S.W.3d 177, 189 (Tex. App.—Houston [1st Dist.] 2005, no pet.) ("Issues on appeal are waived if an appellant fails to support his contention by citations to appropriate authority or cites only to a single non-controlling case"). Kahn's spare citations to legal authority in his Brief do not support any credible or concisely articulated argument.

Because Kahn's Brief fails to comply with the requirements of Texas Rule of Appellate Procedure 38 by presenting such attenuated, unsupported argument, Kahn has waived his issues on appeal. TEX. R. APP. P. 38.1 (f), (g); *Valadez*, 238 S.W.3d at 845; *see also*, *Saenz v. Saenz*, No. 04-14-00033-CV, 2014 WL 6687284 (Tex. App.—San Antonio Aug. 14, 2014, no pet.) (denying appellant's motion to file supplemental brief, and citing *Canton-Carter*, 271 S.W.3d at 931 (brief "provides a plethora of factual assertions and complaints with numerous citations

to various documents [but] fails to provide 'a clear and concise argument for the contentions made, with appropriate citations to authorities'.")

## CONCLUSION

Helvetia respectfully requests that the Court dismiss the appeal because it lacks jurisdiction as set forth herein, or because Kahn has waived appellate review. In addition, or alternatively, Helvetia requests that the Court affirm the trial court's Final Judgment in all respects. Helvetia further respectfully requests that the Court award it all such other and further relief to which it may be entitled.

Respectfully submitted,

HAYNES AND BOONE, LLP


*/s/ Lisa S. Barkley*
Werner A. Powers
State Bar No. 16218800
2323 Victory Avenue, Suite 700
Dallas, Texas 75219
Telephone: (214) 651-5000
Facsimile: (214) 651-5940
*Werner.Powers@haynesboone.com*

Lisa S. Barkley
State Bar No. 17851450
112 E. Pecan, Suite 1200
San Antonio, Texas 78205
Telephone: (210) 978-7427
Facsimile: (210) 554-0427
*Lisa.Barkley@haynesboone.com*

**ATTORNEYS FOR APPELLEE**
**HELVETIA ASSET RECOVERY, INC.**

## CERTIFICATE OF COMPLIANCE WITH RULE 9.4

This brief complies with the type-volume limitation of Texas Rule of Appellate Procedure 9.4(i) because, according to the Microsoft Word 2010 word count function, it contains **11,491** words, excluding the parts of the brief exempted by Texas Rule of Appellate Procedure 9.4(i)(2)(B).

This brief complies with the typeface requirements of Texas Rule of Appellate Procedure 9.4(e) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2010 software in Times New Roman 14 point font in text and Times New Roman 12 point font in footnotes.

*/s/ Lisa S. Barkley*
Lisa S. Barkley

## CERTIFICATE OF SERVICE

In accordance with the Texas Rules of Appellate Procedure, the undersigned certifies that a copy of the attached instrument was served on Appellant via email and at the following address on this 17th day of March, 2015:

Burton Kahn, *pro se*
1706 Alpine Circle
San Antonio, Texas  78248
glentrail@yahoo.com

*/s/ Lisa S. Barkley*
Lisa S. Barkley

# APPENDIX

Tab 01:    October 17, 2014 Bankruptcy Order approving the sale of assets to Helvetia

Tab 02     Chapter 7 Trustee's Bill of Sale and Quit Claim Deed, effective October 17, 2014

Tab 03     Kahn's October 31, 2014 Notice of Appeal to United States District Court for the Western District of Texas, appealing Bankruptcy Court's October 17, 2014 order approving sale of assets to Helvetia

Tab 04     Helvetia's February 24, 2015 Appellee's Brief (without exhibits)

Tab 05     Judicial Finding of Fact and Conclusion of Law Regarding a Document or Instrument Purporting to Create a Lien or Claim, entered October 23, 2013

Tab 06     Plaintiff's Verified Original Petition and Application for Temporary and Permanent Injunctive Relief, entered November 4, 2013.

Tab 07     Order Denying Kahn's Motion for Reconsideration, entered April 11, 2014.

Tab 08     Order Granting Helvetia Asset Recovery, Inc.'s Motion to Lift or Modify the Automatic Stay, entered April 28, 2014.

Tab 09     Trustee's Motion to Sell All Non-Exempt Assets, Claims and Causes of Action, entered August 29, 2014.

Tab 10     *In re Croft,* 737 F.3d 372 (5th Cir. 2013)

Tab 11     *Lowry v. Croft (In re Croft)*, 2012 BL 321154 (W.D. Tex. Dec. 10, 2013)

Tab 12     Transcript excerpts from hearing before the Hon. Craig Gargotta on the Trustee's Motion to Sell All Non-Exempt Assets, Claims and Causes of Action, October 15, 2014

Tab 13     Appellee's Brief in *In re a Purported Lien or Claim Against Helvetia Asset Recovery, Inc.*, No. 04-14-00357-CV, filed November 3, 2014, pp. 34-36

# **Tab 01**

October 17, 2014 Bankruptcy Order approving the sale of assets to Helvetia[1]

---

[1] Case No. 14-50980-cag, *In re: Burton M. Kahn*, Debtor, United States Bankruptcy Court for the Western District of Texas, San Antonio Division



**IT IS HEREBY ADJUDGED and DECREED that the below described is SO ORDERED.**

**Dated: October 17, 2014.**

_____
**CRAIG A. GARGOTTA**
**UNITED STATES BANKRUPTCY JUDGE**
_____

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **IN RE:** | ) | |
| | ) | |
| **BURTON M. KAHN,** | ) | **Bankruptcy Case No. 14-50980cag** |
| | ) | |
| **Debtor.** | ) | |
| | ) | **Chapter 7** |

**ORDER AUTHORIZING SALE OF**
**ALL NON-EXEMPT ASSETS, CLAIMS AND CAUSES OF ACTION**

On this date came on to be considered the Motion for Authority to Sell all non-exempt assets, claims and causes of action, filed by Johnny W. Thomas, Trustee. Due notice having been given and one objection having been overruled, the Court is of the opinion and so finds that the Movant's sale of all non-exempt assets, claims and causes of action attached herein, is in the best interest of the estate based on the reasons stated on the record which are incorporated by reference herein. As more fully explained on the record, the Court finds the debtor has shown no value or equity in the assets to be sold and therefore the Court further finds the debtor has no standing to object to this sale. The Court has determined there is no value to exceed the debts in

i:\jwt trustee cases\order authorizing sale of personal property3.docx

this bankruptcy, and the debtor has no pecuniary interest or value in the estate assets, with the result he has no standing to object to this sale.  It is accordingly,

ORDERED that movant, Johnny W. Thomas, Trustee, be and is hereby authorized and directed to sell all property owned or claimed to be owned by the Debtor to include all the Debtor's non-exempt assets, claims and causes of action now existing or hereafter arising, all rights, titles and interests in any business or business enterprise that currently exist or has ever existed to Helvetia Asset Recovery, Inc. or its assigns, for $10,000.00.  This property includes, but is not limited to, the following:

- All stock and any other interest in Joabert Development Company.

- All stock and any other interest in Helvetia Asset Recovery, Inc.

- All stock and any other interest in Terob, Inc.

- All stock and any other interest in any and all of the following businesses: (1) Contour Construction and Land Corporation; (2) Trail Construction Co.; (3) Paradiv Corporation; (4) Ideal Concepts of San Antonio; (5) Burton Kahn, P.E.; (6) Puerto Verde, Ltd.; (7) Key Largo Association, Inc. (8) Key Largo Home Owners Association; (9) Royal Crest Home Owners Association; (10) Maple Bush Ltd.; (11) Maple Bush Holding Ltd.

- All stock and any other interest in any and all businesses held by or through the debtor.

- All claims or causes of action held by or for the debtor, including but not limited to the following:

  o  *Burton Kahn v. Joabert Development Co., et al.,* Cause No. 2013-CI-17012, Bexar County, Texas.

i:\jwt trustee cases\order authorizing sale of personal property3.docx

o   *In re: A Purported Lien or Claim against Helvetia Asset Recovery, Inc.,* Cause No. 2013-CI-17516, Bexar County, Texas.

o   *Paradiv Corporation, et al. v. ASCBLDR, et al.,* Cause No. 2013-CI-17889, Bexar County, Texas.

o   *Helvetia Asset Recovery, Inc. v. Burton Kahn and Paradiv Corporation,* Cause No. 2013-CI-18355, Bexar County, Texas.

o   *In re: A Purported Lien or Claim against Helvetia Asset Recovery, Inc.,* Cause No. 2013-CI-18394, Bexar County, Texas.

o   *Burton Kahn v. John Ripley, et al.,* Cause No. 2014-CI00345, Bexar County, Texas.

o   *Burton Kahn v. Helvetia Asset Recovery, Inc.,* 04-14-00012-CV, Fourth Court of Appeals, San Antonio, Texas.

o   *In re: A Purported Lien or Claim against Helvetia Asset Recovery, Inc.,* No. 04-14-00258-CV, Fourth Court of Appeals, San Antonio, Texas.

o   *Burton Kahn v. Helvetia Asset Recovery, Inc.,* No. 04-14-00319-CV, Fourth Court of Appeals, San Antonio, Texas.

o   *In re: A Purported Lien or Claim against Helvetia Asset Recovery, Inc.,* 04-14-00357-CV, Fourth Court of Appeals, San Antonio, Texas.

o   *Burton Kahn v. Helvetia Asset Recovery, Inc.,* No. 04-14-00569-CV, Fourth Court of Appeals, San Antonio, Texas.

o   *Burton Kahn v. Helvetial Asset Recovery, Inc. and Puerto Verde Ltd. (Bahamian)* (sic), No. 14-821, Texas Supreme Court.

o   *City of San Antonio v. Burton Kahn,* Bexar County, Texas.

It is further ORDERED that the sale shall be free and clear of any and all liens, claims, security interests and encumbrances, except ad valorem tax liens if any should be due, with all liens, claims, security interests and encumbrances to attach to the sales proceeds.

This Order shall be immediately effective and enforceable upon its entry, and the effectiveness of this Order shall not be stayed pursuant to Bankruptcy Rule 6004(h) or otherwise.

# # #

_____/S/_____
Johnny W. Thomas
SBN 19856500
Trustee
1153 E. Commerce St.
San Antonio, Texas 78205
Telephone 210 226 5888
Fax 210 226 6085

# <u>Tab 02</u>

Chapter 7 Trustee's Bill of Sale and Quit Claim Deed, effective October 17, 2014[2]

---

[2] Case No. 14-50980-cag, *In re: Burton M. Kahn*, Debtor, United States Bankruptcy Court for the Western District of Texas, San Antonio Division

## BILL OF SALE AND QUIT CLAIM DEED

**NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM ANY INSTRUMENT THAT TRANSFERS AN INTEREST IN REAL PROPERTY BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.**

STATE OF TEXAS                  §
                                §    KNOW ALL PERSONS BY THESE PRESENTS:
COUNTY OF BEXAR                 §

Effective October 17, 2014, the undersigned Chapter 7 Trustee for the Debtor, Burton Kahn, in the matter of *In re: Burton M. Kahn*, Case No. 14-50980G, United States Bankruptcy Court for the Western District of Texas, San Antonio Division, for valuable consideration in hand paid, does hereby sell and quit claim to Helvetia Asset Recovery, Inc. all of the Debtor's right title and interest in all of his non-exempt assets as and to the extent authorized by the attached Order Authorizing Sale of All Non-Exempt Assets, Claims and Causes of action, which is incorporated herein by reference for all purposes.

EXECUTED on the __28__ day of October, 2014.

GRANTOR/TRUSTEE:

Johnny W. Thomas

STATE OF TEXAS          §
§
COUNTY OF BEXAR       §

BEFORE ME, the undersigned Notary Public, on this day personally appeared Johnny W. Thomas, personally known to me (or proven to me on the basis of satisfactory evidence) to be the person whose name is subscribed to the within instrument, and acknowledged to me that he executed the same in his authorized capacity as Chapter 7 Trustee for the Debtor, Burton Kahn, in the matter of *In re: Burton M. Kahn*, Case No. 14-50980G, United States Bankruptcy Court for the Western District of Texas, San Antonio Division, and that by his signature on the instrument the person executed the instrument.

SUBSCRIBED AND SWORN TO BEFORE ME this _____2 9 +h_____ day of October, 2014 to certify which witness my hand and seal of office.



Edward E Giles
My Commission Expires
02/14/2017

(PERSONALIZED SEAL)

_____

Notary Public in and for the State of Texas

# EXHIBIT A

# **Tab 03**

Kahn's October 31, 2014 Notice of Appeal to United States District Court for the Western District of Texas, appealing Bankruptcy Court's October 17, 2014 order approving sale of assets to Helvetia[3]

---

[3] Case No. 14-50980-cag, *In re: Burton M. Kahn*, Debtor, United States Bankruptcy Court for the Western District of Texas, San Antonio Division

P.A1

**FILED**

IN THE UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

OCT 3 1 2014
U.S. BANKRUPTCY COURT
BY_____DEPUTY

Bankruptcy No. Case 14- 50980- CAG
Chapter 7
In re Burton M Kahn Debtor

Adversary Proceeding No. 14- *05052* CAG
Judge Craig A. Gargotta

Helvetia Asset Recovery Inc.
Plaintiff

V.

**Burton M Kahn**
Defendant

## BURTON KAHNS NOTICE OF APPEAL

Burton Kahn, individually ("Kahn") hereby appeals to the nited States

District Court for the Western District of Texas pursuant to 28 U.S.C. §158 and FED.

R. BANKR. P. 8001 and 8002 from the Order Authorizing Sale Of All Non-Exempt

Assets, Claims And Causes Of Action, and any and all related findings of fact and

conclusions of law, orders, supplements and amendments whether entered before,

contemporaneous with or after the Order Authorizing Sale Of All Non-Exempt

Assets, Claims And Causes Of Action, A true and correct copy of the Order

Authorizing Sale Of All Non-Exempt Assets, Claims And Causes Of Action, is

attached to this Notice of Appeal as "Exhibit A."

This Notice of Appeal is filed expressly subject to, and without waiver of, any and all rights, remedies, motions, and requests, including, but not limited to, requests for stay pending appeal and direct appeal relief. This Notice of Appeal is timely filed under FED. R. BANKR, P. 8002.

The names of all parties to the judgment, order, or decree appealed from and the names, addresses, and telephone numbers of .their respective attorneys are as follows:

Attorneys For Burton Kahn
Burton Kahn Pro-se
1706 Alpine Cir.,
San Antonio, TX 78248
glentrall@,yahoo.com
Tel (210) 408-9199

Attorneys For Helvetia Asset Recovery. Inc.
Haynes and Boone LLP
Lisa Barkley
112 E. Pecan St. Suite 1200
San Antonio, TX *78205* - 1524

Via E-mail Werner.Powers@hayneshoone.com
Werner A. Powers
Natalie DuBose
Scott W. Everett,
Haynes & Boone, LLP
2323 Victory Avenue, Suite 700
Dallas, Texas 75219

US Chapter Trustee
Johnny W Thomas
1153 E. Commerce St., St. Paul Square
San Antonio, TX 78205
(210)226-5888 FAX (210)226-6085
lthomasprodigy.net

Respectfully submitted,

Burton Kahn Pro-se 1706
Alpine Cir.,
San Antonio, TX 78248
glentrall@,yahoo.com
Tel (210) 408-9199

## CERTIFICATE OF SERVICE

I certify that a copy of Plaintiff, Helvetia Asset Recovery Inc., Notice of Appeal was served on Defendant Helvetia Asset Recovery Inc. through counsel of record on October 31, 2014 Attorneys For
by
*Via Email Lisa. Barkiev(Havnesboone. com*
Haynes and Boone LLP
Lisa Barkley
112 E. Pecan St. Suite 1200
San Antonio, TX 78205 - 1524
*Via E-mail Werner.Powers@haynesboone.com*
Werner A. Powers Natalie DuBose
Scott W. Everett
Haynes & Boone, LLP
2323 Victory Avenue, Suite 700
Dallas, Texas 75219


US Chapter Trustee
Johnny W Thomas
1153 E. Commerce St., St. Paul Square
San Antonio, TX 78205
(210)226-5888 FAX (210)226-6085
lthomasprodigy.net

# EXHIBIT A



**IT IS HEREBY ADJUDGED and DECREED that the below described is SO ORDERED.**

**Dated: October 17, 2014.**

_Craig A. Gargotta_
_____

**CRAIG A. GARGOTTA**
**UNITED STATES BANKRUPTCY JUDGE**

## IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE WESTERN DISTRICT OF TEXAS
### SAN ANTONIO DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| BURTON M. KAHN, | ) | **Bankruptcy Case No. 14-50980cag** |
| | ) | |
| Debtor. | ) | |
| | ) | **Chapter 7** |

### ORDER AUTHORIZING SALE OF
### ALL NON-EXEMPT ASSETS, CLAIMS AND CAUSES OF ACTION

On this date came on to be considered the Motion for Authority to Sell all non-exempt assets, claims and causes of action, filed by Johnny W. Thomas, Trustee. Due notice having been given and one objection having been overruled, the Court is of the opinion and so finds that the Movant's sale of all non-exempt assets, claims and causes of action attached herein, is in the best interest of the estate based on the reasons stated on the record which are incorporated by reference herein. As more fully explained on the record, the Court finds the debtor has shown no value or equity in the assets to be sold and therefore the Court further finds the debtor has no standing to object to this sale. The Court has determined there is no value to exceed the debts in

i:\jwt trustee cases\order authorizing sale of personal property3.docx

this bankruptcy, and the debtor has no pecuniary interest or value in the estate assets, with the result he has no standing to object to this sale. It is accordingly,

ORDERED that movant, Johnny W. Thomas, Trustee, be and is hereby authorized and directed to sell all property owned or claimed to be owned by the Debtor to include all the Debtor's non-exempt assets, claims and causes of action now existing or hereafter arising, all rights, titles and interests in any business or business enterprise that currently exist or has ever existed to Helvetia Asset Recovery, Inc. or its assigns, for $10,000.00. This property includes, but is not limited to, the following:

- All stock and any other interest in Joabert Development Company.

- All stock and any other interest in Helvetia Asset Recovery, Inc.

- All stock and any other interest in Terob, Inc.

- All stock and any other interest in any and all of the following businesses: (1) Contour Construction and Land Corporation; (2) Trail Construction Co.; (3) Paradiv Corporation; (4) Ideal Concepts of San Antonio; (5) Burton Kahn, P.E.; (6) Puerto Verde, Ltd.; (7) Key Largo Association, Inc. (8) Key Largo Home Owners Association; (9) Royal Crest Home Owners Association; (10) Maple Bush Ltd.; (11) Maple Bush Holding Ltd.

- All stock and any other interest in any and all businesses held by or through the debtor.

- All claims or causes of action held by or for the debtor, including but not limited to the following:

  o *Burton Kahn v. Joabert Development Co., et al.*, Cause No. 2013-CI-17012, Bexar County, Texas.

i:\jwt trustee cases\order authorizing sale of personal property3.docx

- o *In re: A Purported Lien or Claim against Helvetia Asset Recovery, Inc.,* Cause No. 2013-CI-17516, Bexar County, Texas.

- o *Paradiv Corporation, et al. v. ASCBLDR, et al.,* Cause No. 2013-CI-17889, Bexar County, Texas.

- o *Helvetia Asset Recovery, Inc. v. Burton Kahn and Paradiv Corporation,* Cause No. 2013-CI-18355, Bexar County, Texas.

- o *In re: A Purported Lien or Claim against Helvetia Asset Recovery, Inc.,* Cause No. 2013-CI-18394, Bexar County, Texas.

- o *Burton Kahn v. John Ripley, et al.,* Cause No. 2014-CI00345, Bexar County, Texas.

- o *Burton Kahn v. Helvetia Asset Recovery, Inc.,* 04-14-00012-CV, Fourth Court of Appeals, San Antonio, Texas.

- o *In re: A Purported Lien or Claim against Helvetia Asset Recovery, Inc.,* No. 04-14-00258-CV, Fourth Court of Appeals, San Antonio, Texas.

- o *Burton Kahn v. Helvetia Asset Recovery, Inc.,* No. 04-14-00319-CV, Fourth Court of Appeals, San Antonio, Texas.

- o *In re: A Purported Lien or Claim against Helvetia Asset Recovery, Inc.,* 04-14-00357-CV, Fourth Court of Appeals, San Antonio, Texas.

- o *Burton Kahn v. Helvetia Asset Recovery, Inc.,* No. 04-14-00569-CV, Fourth Court of Appeals, San Antonio, Texas.

- o *Burton Kahn v. Helvetial Asset Recovery, Inc. and Puerto Verde Ltd. (Bahamian) (sic),* No. 14-821, Texas Supreme Court.

- o *City of San Antonio v. Burton Kahn,* Bexar County, Texas.

It is further ORDERED that the sale shall be free and clear of any and all liens, claims, security interests and encumbrances, except ad valorem tax liens if any should be due, with all liens, claims, security interests and encumbrances to attach to the sales proceeds.

This Order shall be immediately effective and enforceable upon its entry, and the effectiveness of this Order shall not be stayed pursuant to Bankruptcy Rule 6004(h) or otherwise.

# # #

_____/S/_____
Johnny W. Thomas
SBN 19856500
Trustee
1153 E. Commerce St.
San Antonio, Texas 78205
Telephone 210 226 5888
Fax 210 226 6085

# UNITED STATES BANKRUPTCY COURT
## *Western District of Texas*
**Hipolito F. Garcia Federal Bldg
and U.S. Courthouse
615 E. Houston Street, Suite 597
San Antonio, Texas 78205**

*YVETTE M. TAYLOR*
*CLERK OF COURT*

*(210) 472–6720*

**DATE:**    **October 31, 2014**

**RE:    Notice of Appeal (or Cross Appeal)**
Bankruptcy Case No.:    **14–50980–cag**
Case Style:    Burton M. Kahn

Dear    Mr. Kahn:

Rule 8006 of the Federal Rules of Bankruptcy Procedure states in pertinent part:

**Any party filing a designation of the items to be included in the record shall provide to the Clerk, a copy of the items designated or, if the party fails to provide the copy, the Clerk shall prepare the copy at the expense of the party.**

District Court Local Rule CV–5 requires that all copies of the record be submitted in duplicate.

If you will be providing copies of the record, they should be submitted to our office within 15 days. If you want the Clerk's office to make copies at your expense, notify the Clerk's office at the time of filing your designated items. The cost of copies, when supplied by the Clerk's Office is $.50 per page and there is an additional $30.00 search fee charge **for each paper document** when obtained from the court's manual case file.

Yvette M. Taylor
Clerk, U. S. Bankruptcy Court

BY: Emilio Luna

cc:    Interested parties per Notice of Appeal

| 903 San Jacinto, Suite 322<br>Austin, Texas 78701<br>(512) 916–5237 | 511 E. San Antonio Avenue, Suite 444<br>El Paso, Texas 79901<br>(915) 779–7362 | U.S. Post Office Annex<br>100 E. Wall Street, Room P–163<br>Midland, Texas 79701<br>(432) 683–1650 | 800 Franklin Avenue, Suite 140<br>Waco, Texas 76701<br>(254) 750–1513 |

**[Notice of Appeal Letter]** [Ltrnaplap]

# **Tab 04**

Helvetia's February 24, 2015 Appellee's Brief (without exhibits)[4]

---

[4] Cause No. 5:14-cv-01109-HLH; *Kahn v. Helvetia Asset Recovery, Inc.*; U.S District Court, Western District of Texas

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | Bankruptcy Case No. |
| BURTON M. KAHN | § | 14-50980-CAG |
| | § | |
| Appellant, | § | |
| BURTON M. KAHN | § | |
| | § | |
| HELVETA ASSET | § | |
| RECOVERY, INC | § | |
| | § | Civil Action No. |
| v. | § | 5:14-CV-1109- HLH |
| | § | |
| BURTON M. KAHN. | § | |

**APPELLEE'S BRIEF**

Werner A. Powers
State Bar No. 16218800
HAYNES AND BOONE LLP
2323 Victory Avenue, Suite 700
Dallas, Texas 75219
Telephone: (214) 651-5000
Facsimile: (2 14) 651-5940
werner.powers@haynesboone.com

Lisa S. Barkley
State Bar No. 17851450
HAYNES AND BOONE LLP
112 E. Pecan, Suite 1200
San Antonio, Texas 78205
Telephone: (210) 978-7427
Facsimile: (210) 554-0427
lisa.barkley@haynesboone.com

**COUNSEL FOR APPELLEE HELVETIA ASSET RECOVERY, INC.**

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Fed. R. App. P. 26.1, Appellee Helvetia Asset Recovery, Inc. ("Helvetia") is a Texas corporation.  Puerto Verde, Ltd. ("Puerto Verde") owns 100% of Helvetia's stock. Puerto Verde is a corporation organized under the laws of The Bahamas.  Robert Ripley owns 100% of Puerto Verde's stock.

## INTERESTED PERSONS

The following persons may have an interest in the outcome of this matter:

1.      Burton M. Kahn, Appellant, is a resident of San Antonio, Texas, and is the Chapter 7 Debtor in Case No. 14-50980-CAG.  He represents himself pro se.

2.      Helvetia Asset Recovery, Inc., Appellee, is a Texas corporation since its incorporation in 2007, with its principal place of business in San Antonio, Texas.  Helvetia is a creditor.

3.      Joabert Development Company, Inc. is a Texas corporation with its principal place of business in San Antonio, Texas.  As a result of the asset sale that is the subject of this appeal, Helvetia acquired a one-third interest in Joabert.

4.      Werner A. Powers, 2323 Victory Avenue, Suite 700, Dallas, Texas 75219, Lisa S. Barkley, 112 E. Pecan Street, Suite 1200, San Antonio, Texas, 78205, attorneys with the law firm of Haynes and Boone, LLP, are counsel for Helvetia.

5.      Johnny W. Thomas serves as the Chapter 7 Trustee for the bankruptcy proceeding.   His address is 1153 E. Commerce Street, St. Paul Square, San Antonio, Texas  78205.

6.      The Honorable Craig A. Gargotta, Bankruptcy Judge, United States District Court for the Western District of Texas, entered the orders underlying the appeal.

## <u>RECORD AND PARTY REFERENCES</u>

The following record and party references are used in Appellee's Brief:

1.     Appellant Burton M. Kahn is referred to as either "Kahn" or the "Debtor."

2.     Appellee Helvetia Asset Recovery, Inc. is referred to as "Helvetia."

3.     References to Kahn's Opening Brief are cited as "Br., p.___."

4.     The Federal Rules of Bankruptcy Procedure are referred to as FED. R. BANKR. P. "__"

5.     Filings in the Chapter 7 bankruptcy case are cited as "Dkt.___."

6.     Filings in this appellate proceeding are cited as "DC Dkt.___."

7.     Filing in the Adversary Proceeding are cited "Adv. Dkt. ___."

8.     Testimony in the October 15, 2014 transcript of the hearing on the Trustee's Motion to Sale is cited as "TR.___" followed by page and line references.

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ..........................................................i

INTERESTED PERSONS ...............................................................................i

RECORD AND PARTY REFERENCES ............................................................ iii

TABLE OF CONTENTS....................................................................................iv

TABLE OF AUTHORITIES ............................................................................vi

I.   STATEMENT OF APPELlATE JURISDICTION ...........................................1

II.   STATEMENT OF THE ISSUES ........................................................1

III.   STANDARD OF APPELLATE REVIEW .......................................................2

IV.   STATEMENT OF THE FACTS ...................................................................2

V.   SUMMARY OF THE ARGUMENT.............................................................5

VI.   ARGUMENT AND AUTHORITIES ............................................................6

I.   THE BANKRUPTCY COURT PROPERLY APPROVED THE
     SALE ...............................................................................................................6

     A.   Because Kahn held no value in the assets to be sold, and
          because the debt exceeded the value of the assets, Kahn
          lacked standing to object to the Trustee's proposed sale ......................6

          1.   The Bankruptcy Court did not err in approving the
               asset sale..................................................................................10

II.   KAHN LACKS STANDING TO PURSUE THIS APPEAL ........................11

III.   KAHN WAIVED HIS ISSUES ON APPEAL..............................................12

IV.   KAHN'S STATE COURT ISSUES WERE NOT BEFORE THE
      COURT...........................................................................................................13

      A.   Helvetia's state court judgments are final and in the estate................13

1.      This Court lacks jurisdiction over the interlocutory orders relating to Puerto Verde and, in any event, the Bankruptcy Court did not err in entering the interlocutory orders regarding Puerto Verde ............................15

V.      THE APPEAL IS MOOT BECAUSE THE SALE WAS NOT STAYED......................................................................................................16

CONCLUSION AND PRAYER ...........................................................................17

CERTIFICATE OF SERVICE ..............................................................................19

# TABLE OF AUTHORITIES

## CASES

*In re Andreuccetti*,
975 F.2d 413 (7th Cir. 1992) ...........................................................................12

*In re Camp Arrowhead, Ltd.*,
429 B.R. 546 (W.D. Tex. 2010) .......................................................................17

*In re Coho Energy Inc.*,
395 F.3d 198 (5th Cir. 2004) .....................................................................11, 12

*In re Croft*,
737 F.3d 372 (5th Cir. 2013) .......................................................................7, 10

*In re Cult Awareness Network, Inc.*,
151 F.3d 605 (7th Cir. 1998) ..............................................................................6

*In re Curry*,
409 B.R. 831 (Bankr. N.D. Tex. 2009)...............................................................6

*Diaz v. Stone*,
No. 5-10-74, 2011 WL 1882790 (S.D. Tex. May 17, 2011) .............................12

*In re Duncan*,
562 F.3d 688 (5th Cir. 2009) ..............................................................................2

*In re El San Juan Hotel*,
809 F.2d 151 (1st Cir. 1987)..............................................................................12

*In re Gilchrist*,
891 F.2d 559 (5th Cir. 1990) ............................................................................17

*Gregg Grain Co. v. Walker Grain Co.*,
285 F. 156 (5th Cir. 1922) ..................................................................................6

*Guion v. Sims (In re Sims)*,
479 B.R. 415 (S.D. Tex. 2012) .........................................................................14

*In re Hardage*,
837 F.2d 1319 (5th Cir. 1988) ..........................................................................17

*In re Laughlin*,
  602 F.3d 417 (5th Cir. 2010) ...............................................................................2

*Mahanna v. Bynum*,
  465 B.R. 436 (W.D. Tex. 2011) ...........................................................................2

*In re McClendon*,
  765 F.3d 501 (5th Cir. 2014) .............................................................................13

*In re MeCombs*,
  659 F.3d 503 (5th Cir. 2011) .............................................................................12

*In re Moore*,
  608 F.3d 253 (5th Cir. 2010) ...............................................................................7

*In re O'Connor*,
  258 F.3d 392 (5th Cir. 2001) .........................................................................1, 15

*In re Renaissance Hosp. Grand Prairie Inc.*,
  713 F.3d 285 (5th Cir.2013) .................................................................................9

*In re Richman*,
  104 F.3d 654 (4th Cir. 1997) .............................................................................12

*Rohm & Hass Texas, Inc. v. Ortiz Bros. Insulation, Inc.*,
  32 F.3d 205 (5th Cir. 1994) ...............................................................................12

*Scurlock Oil Co. v. Smithwick*,
  724 S.W.2d 1 (Tex. 1986)..................................................................................14

*Spenlinhauer v. O'Donnell*,
  261 F.3d 113 (1st Cir. 2001)................................................................................6

*In re The Watch Ltd.*,
  257 F. App'x 748 (5th Cir. 2007) (per curiam) (unpublished)...........................11

*Williams v. State*,
  406 S.W.3d 273 (Tex. App.—San Antonio 2013, pet. denied)...........................9

**STATUTES AND RULES**

11 U.S.C. § 363................................................................................................4

11 U.S.C. § 704................................................................................................4

11 U.S.C. § 363(b)(1).................................................................................................10

11 U.S.C. § 363(m) ..............................................................................................16, 17

11 U.S.C. § 523 .........................................................................................................4

11 U.S.C. § 523(a)(4).................................................................................................13

11 U.S.C. § 523(a)(6).................................................................................................13

11 U.S.C. § 541(a)(1)..................................................................................................7

11 U.S.C. § 704(a)(1).................................................................................................11

28 U.S.C. § 158(a)(1)...................................................................................................1

28 U.S.C. § 158((a)(3) ............................................................................................1, 15

FED. R. BANKR. P. 6004 .............................................................................................4

FED. R. BANKR. P. 8001(b)....................................................................................1, 15

FED. R. BANKR. P. 8003(c)....................................................................................1, 15

FED. R. BANKR. P. 8006 ........................................................................................5, 12

FED. R. BANKR. P. 8013 ............................................................................................9

FED. R. CIV. P. 16(b) ...............................................................................................16

TEX. R. APP. P. 56.1(b)............................................................................................16

## SECONDARY SOURCES

Judge Bonnie Sudderth, August 28, 2011, "When can I get a trial de novo?"........14

**I.**
**STATEMENT OF APPELIATE JURISDICTION**

This Court has jurisdiction over the Bankruptcy Court's October 17, 2014 order, pursuant to 28 U.S.C. § 158(a)(1), because it is a final order.  It does not have jurisdiction over two interlocutory orders entered on April 29, 2014 relating to Puerto Verde, Ltd.; the orders were not part of Kahn's notice of appeal and he did not seek leave to appeal the orders.  28 U.S.C. § 158((a)(3); FED. R. BANKR. P. 8001(b), 8003(c); *In re O'Connor*, 258 F.3d 392, 397-98 (5th Cir. 2001). *See* Dkt. 73.

**II.**
**STATEMENT OF THE ISSUES**

1.    Whether Kahn had standing to object to the asset sale when the value of the assets to be sold was less than the debt in the estate.

2.    Whether Kahn has standing to appeal to this Court.

3.    Whether the Bankruptcy Court erred in approving the Trustee's sale of assets.

4.    Whether Kahn waived his appellate issues by failing to designate them.

5.    Whether Puerto Verde, Ltd. may "maintain a lawsuit in Texas" or have access to the Bankruptcy Court.

- 1 -

6.     Whether Helvetia's state court judgments are not final, and therefore not part of the estate, because of error by state court trial judges in applying the doctrine of collateral estoppel or otherwise.

### III.
### STANDARD OF APPELLATE REVIEW

A district court reviews "the bankruptcy court's findings of fact for clear error and conclusions of law *de novo*." *In re Laughlin*, 602 F.3d 417, 421 (5th Cir. 2010) (quoting *In re Duncan*, 562 F.3d 688, 694 (5th Cir. 2009).  "A finding of fact is clearly erroneous only if on the entire evidence, the court is left with the definite and firm conviction that a mistake has been committed." *In re Duncan,* 562 F.3d at 694.  The standard of review for both conclusions of law and mixed questions of law and fact is *de novo.  See Mahanna v. Bynum*, 465 B.R. 436, 439 (W.D. Tex. 2011) (citing *In re Nat'l Gypsum Co.*, 208 F.3d 498, 504 (5th Cir. 2000)).

### IV.
### STATEMENT OF THE FACTS

Before filing bankruptcy, Kahn (under Helvetia's name) filed suit against Helvetia in Bexar County district court styled *In re: A Purported Lien or Claim against Helvetia Asset Recovery, Inc.*, Cause No. 2013-CI-18394.  Helvetia filed a motion for sanctions.  On April 1, 2014, after a multi-day evidentiary hearing, the Bexar County district court entered a Final Judgment and Order of Sanctions

- 2 -

against Kahn and his then-lawyer for $253,416.[1] The judgment included findings that Kahn did not own Helvetia's stock.  (Ex. 1.)  Kahn appealed the judgment to the Fourth Court of Appeals in San Antonio.

Helvetia sued Kahn in Bexar County district court in *Helvetia Asset Recovery, Inc. v. Burton Kahn and Paradiv Corp.*, Cause No. 2013-CI-18355.  A unanimous jury found Kahn breached his fiduciary duty, misapplied Helvetia's assets, and slandered its title.  Those findings were incorporated into the state court's June 11, 2014 Final Judgment.  (Ex. 2.)  Actual damages exceeded $800,000 and exemplary damages were $900,000.  Kahn has also appealed this judgment.

Kahn filed a pro se voluntary Chapter 7 petition on April 14, 2014.  (Dkt. 2.) The bankruptcy court partially lifted the automatic stay on April 28, 2014 to allow the two state court suits to proceed to judgment and appeal.[2]  (Dkt. 39.)  After the judgments were final, Helvetia filed a notice of claim in the bankruptcy case for $1,996,128.  Helvetia believes it represents about 97% of the total dollar amount of creditor claims.  (TR.24-27, 33, 76.)  All of the debt is unsecured.   (TR.24-27, 33, 76.)  Kahn's two state court appeals remain pending.

---

[1] Kahn's lawyer in that suit, L. Terry George, died in June 2014.

[2] On April 29, 2014, the Bankruptcy Court entered two interlocutory orders that Kahn appeals in his first issue.  (Br., pp. 2-4; Dkt. 28, 30, 45, 47.)

- 3 -

Helvetia filed an adversary proceeding on July 9, 2014. (Adv. Dkt. 1.)  Its October 23, 2014 motion for summary judgment is pending, where it contends the state court judgments are nondischargeable under 11 U.S.C. § 523, and collateral estoppel bars relitigation of the issues.  (Adv. Dkt. 16.)

On August 29, 2014, the Chapter 7 Trustee moved for court authorization to sell Kahn's non-exempt assets, claims and causes of action to Helvetia for $10,000, pursuant to 11 U.S.C. §§ 363 and 704, FED. R. BANKR. P. 6004, and Local Rule 6004.  (Dkt. 59, p.2.)  Kahn objected to the sale claiming the bid was insufficient because the assets were worth $6,216,349.  (Dkt. 61, p.3.)  Helvetia made the bid to buy peace from protracted litigation with Kahn.  (TR.20:1-3; 30:9-31:2.)

After notice and a hearing the Bankruptcy Court entered an order on October 17, 2014 authorizing the sale as in the best interest of the estate, incorporating its findings from the hearing.  It found Kahn lacked standing to object because he (1) had no value or equity in the assets to be sold and (2) had no pecuniary interest in the assets because their value did not exceed the debts in the estate (the "Order").  (Dkt. 70, p. 2; Ex. 3.)  On October 28, the Trustee recorded a bill of sale and quit claim deed reflecting sale of the assets to Helvetia effective October 17, 2014.  (Ex. 4.)

Kahn filed a notice of appeal on October 31, 2014.  (Dkt. 73.)  His motions to reconsider the Order and to stay proceedings pending appeal were denied on

- 4 -

November 5.  (Dkt. 72, 74, 77, 78.)  On November 17 and December 12 Kahn filed and supplemented his designation of items for the appellate record. (Exs. 5, 6.) Helvetia did likewise. (Exs. 7, 8.)  Kahn did not file a statement of the issues required by Fed. R. Bankr. P. 8006.  (Exs. 5, 6.)  He filed his appellant's brief on February 10, 2015, requesting relief that the Order approving the sale be stricken. (Br., pp. 8, 10.)

## V.
## SUMMARY OF THE ARGUMENT

The Bankruptcy Court did not err by overruling Kahn's objection and approving the Trustee's sale of the assets. Kahn lacked standing to object because he held no value in the assets and the value of the assets to be sold did not exceed the debt. Even if he had standing, Kahn waived his appellate issues by failing to designate his statement of the issues under Fed. R. Bankr. P. 8006.  The state court issues relating to Puerto Verde, Ltd. and collateral estoppel were not before the Bankruptcy Court in connection with the asset sale and, in any event, have no merit.  This Court lacks jurisdiction over the interlocutory orders regarding Puerto Verde.  The appeal overall is moot because Kahn failed to obtain a stay of the Order authorizing the sale of the assets.  The Bankruptcy Court's Order should be affirmed, and the appeal dismissed.

# VI.
## ARGUMENT AND AUTHORITIES

**I.     THE BANKRUPTCY COURT PROPERLY APPROVED THE SALE.**

    **A.     Because Kahn held no value in the assets to be sold, and because the debt exceeded the value of the assets, Kahn lacked standing to object to the Trustee's proposed sale.**

A person must have a "pecuniary interest" in the outcome of a bankruptcy proceeding in order to have standing to object to a trustee's actions. In order to establish a pecuniary interest, a debtor must demonstrate a reasonable possibility of a surplus distribution after all creditors' claims are satisfied. *See Spenlinhauer v. O'Donnell*, 261 F.3d 113 (1st Cir. 2001); *In re Cult Awareness Network, Inc.*, 151 F.3d 605 (7th Cir. 1998); *Gregg Grain Co. v. Walker Grain Co.*, 285 F. 156 (5th Cir. 1922); *see In re Curry*, 409 B.R. 831, 838 (Bankr. N.D. Tex. 2009) (debtor has pecuniary interest where the estate potentially has surplus of assets that will result in distribution back to debtor).

The Bankruptcy Court raised standing *sua sponte*, and undertook a "standing" inquiry citing *In re 60 East 80th Street Equities, Inc.*, 218 F.3d 109 (2nd Cir. 2000). *See, e.g.,* 20:18-21:20, 81:25-82:19. It properly concluded both that Kahn (1) had no value or equity in the assets to be sold and (2) had no pecuniary interest in the assets because their value did not exceed the debts in the estate.

- 6 -

The Bankruptcy Court found the estate had three categories of assets: (1) interests in small businesses; (2) Kahn's litigation, including (a) two state court suits filed by Kahn that were pending but "dormant," and (b) defensive appellate rights in Helvetia's two state court judgments; and (3) Kahn's disputed ownership of 100 shares in Joabert Development Company ("Joabert"). The Bankruptcy Court heard from Kahn, Kahn's appraiser, the Trustee, and counsel for Helvetia.

Kahn agreed the first category, the small businesses, had no value. (TR.15:25-17:6, 36:7, 44:25-47:5.)  For the second category, Kahn described his two "dormant" suits as "dead."  (TR.47:15-48:23.)  The Trustee had declined to pursue Kahn's defensive appellate rights in the two appeals because the estate lacked money and prosecution had not been taken over by anyone on its behalf. (TR.15:6-17:23, 43:22-52:10 22:20, 23:10, 70:20-71:16, 75:16.)  Consequently, the Bankruptcy Court properly found that none of the litigation had any value. (TR.51:13, 52:10, 93:14.)

Property of the estate includes "rights of action as bestowed by either federal or state law."  11 U.S.C. § 541(a)(1); *In re Moore*, 608 F.3d 253, 257-58 (5th Cir. 2010) (quoting *In re S.I. Acquisition, Inc.*, 817 F.2d 1142, 1149 (5th Cir. 1987). This extends to a debtor's defensive appellate rights, even if the judgment holder purchases the rights from the trustee in order to extinguish the appeal.  *See In re Croft*, 737 F.3d 372, 376-77 (5th Cir. 2013).

- 7 -

For the third category, Kahn argued the sale price was less than what he valued his claimed ownership of 1/3 of Joabert's stock: $3,103,736. (TR.17:21-22; 29:13-24; 45:3-55:22; 70:8-72:21; 92:8-19.)  Kahn did not offer evidence of the stock's value.  Instead, he focused on the value of real property held by Joabert. Kahn represented Joabert bought raw land outright and estimated that its debt, if any, was about $250,000.  (TR.65:4-8; 77:15-21.)  But in a 2013 lawsuit Kahn filed against Joabert he plead the real property was encumbered with $3,377,000 in debt.[3]  (TR.64:14-65:13, 70:8-72:21.)  No debt was listed on Kahn's bankruptcy schedules.  (TR.76:10-12.)

The Bankruptcy Court reasonably concluded Kahn's interest in Joabert was unproven, and thus attributed its value as zero for purposes of the sale.  (TR.91:5-9; 93:9-16.)  It found Kahn's real estate appraiser could not render an opinion on the value of Joabert's real property as of the day of the hearing, October 15, 2014. At Kahn's direction, the appraisal was performed in April 2014 and dated prospectively as of September 2014, with assumptions that during the interim the raw land would be improved with infrastructure sufficient to permit Joabert to begin selling platted lots to homebuilders. (TR.83:8-89:9.)  Even on October 15, the date of the hearing, the improvements contemplated by the appraisal were incomplete.  (TR.73:14.)  The appraiser agreed with the Bankruptcy Court the

---

[3] This is one of Kahn's dormant suits, Cause No. 2013-CI-17012. (TR.17:4; 45:19-55:21; 75:13-18; 92:16-19.)

Uniform Standards of Professional Practice did not allow him to opine on the value of Joabert's real property effective of the date of the hearing because he had not appraised the property as of that day.  (TR.89:18-90:21.)  "[A]n appraisal opinion is at best something of a speculation, and the question of market value is peculiarly one for the fact finding body." *Williams v. State*, 406 S.W.3d 273, 284 (Tex. App.—San Antonio 2013, pet. denied).

The Bankruptcy Court properly disallowed Kahn's personal offer of testimony about Joabert's real property, finding Kahn was not credible based on his earlier representations that suggested his opinion would likely reflect an inflated value.  (TR.92:10-15.)  "Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the Bankruptcy Court to judge the credibility of the witnesses."  FED. R. BANKR. P. 8013.  Factual findings "based on determinations regarding the credibility of witnesses" demand "even greater deference" because "only the trial judge can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding of and belief in what is said."  *In re Renaissance Hosp. Grand Prairie Inc.*, 713 F.3d 285, 293 (5th Cir.2013) (citing *Anderson v. Bessemer City, N.C.*, 470 U.S. 564, 575 (1985).  Lacking any evidence of Joabert's value, the Bankruptcy Court did not err in finding it had no value.  (TR.93:7.)

Even if Kahn owned Helvetia's stock, contrary to the state court judgments, combining the value he attributed it of $685,000 with the value of other assets in the estate would not exceed the amount of debt. (TR.93:23.) Consequently, no surplus would be available to Kahn after the sale under any circumstances. (TR.21:20.)

Any contention that Kahn could obtain additional equity in the future from his claims and assets was not reasonable. (TR.21:20.) Under *In re Croft*, all rights related to litigation belonged to the estate, not Kahn. Because Kahn showed no value or equity or pecuniary interest in the assets that were to be sold, he lacked standing to object to the Trustee's motion to sell the assets, and his objection to the sale was properly overruled. (TR.91:16; Dkt, 70, pp. 1-2.)

### 1. The Bankruptcy Court did not err in approving the asset sale.

Kahn's contention in his third issue that the Bankruptcy Court was "unfair and unjust" in approving the Trustee's asset sale is contrary to the evidence and law. Incorporating the arguments above, the Bankruptcy Court did not err in approving the sale of assets. A trustee is permitted to sell "property of the estate," other than in the ordinary course of business, after notice and a hearing. 11 U.S.C. § 363(b)(1). Moreover, like in *In re Croft*, where the judgment creditor sought to purchase the debtor's defensive appellate rights, the Bankruptcy Court and the

Trustee carefully observed here the necessary safeguards for proposing and approving a sale that would be in the best interests of the estate.

The Trustee followed his duty to maximize the value of the estate pursuant to 11 U.S.C. § 704(a)(1).  Before receiving Helvetia's bid, the Trustee planned to file a no-asset report in the next year where creditors would receive nothing. (TR.22:6.)   After receiving a bid from Helvetia for $5,000, he negotiated the amount to $10,000, which he estimated could provide a 3% distribution to unsecured creditors.  (TR.21:5-9.)   The Trustee assessed other options and the actual value of the assets that Kahn scheduled.  (TR.22:6-23:13.)   He sought review and approval of the proposed sale by the Bankruptcy Court.  Notice was provided of the October 15, 2014 hearing, and the Bankruptcy Court questioned and heard witnesses, reviewed demonstrative evidence, and carefully considered the terms of the sale, including the value of the assets and amount of debt, before ordering it approved. *Id.*  (TR.93:2-94:4.)   Under these facts, and because Kahn identified no error by the Bankruptcy Court in approving the Trustee's proposed sale, the Order should be affirmed.

## II.   KAHN LACKS STANDING TO PURSUE THIS APPEAL.

Kahn lacks standing to pursue this appeal.  Courts use the "person aggrieved" test to determine whether a party has standing in bankruptcy court. *In re Coho Energy Inc.*, 395 F.3d 198, 202 (5th Cir. 2004); *see In re The Watch Ltd.*,

257 F. App'x 748, 749 (5th Cir. 2007) (per curiam) (unpublished); *Diaz v. Stone*, No. 5-10-74, 2011 WL 1882790, at *2 (S.D. Tex. May 17, 2011). This "is an even more exacting standard than traditional constitutional standing." *In re Coho Energy Inc.*, 395 F.3d at 202. It requires that the party "show that he was directly and adversely affected pecuniarily by the order of the bankruptcy court." *Id*. at 203. "[T]he putative appellant shoulders the burden of alleging facts sufficient to demonstrate that it is a proper party to appeal." *Rohm & Hass Texas, Inc. v. Ortiz Bros. Insulation, Inc*., 32 F.3d 205, 208 (5th Cir. 1994). For the same reasons Kahn lacked standing to object to the Order, discussed above, he lacks standing to pursue this appeal. *See In re Richman*, 104 F.3d 654 (4th Cir. 1997); *In re Andreuccetti*, 975 F.2d 413 (7th Cir. 1992); *In re El San Juan Hotel*, 809 F.2d 151 (1st Cir. 1987).

## III.   KAHN WAIVED HIS ISSUES ON APPEAL.

Kahn failed to designate a statement of issues for appeal contrary to Fed. R. Bankr. P. 8006. (Exs. 5, 6.) In the Fifth Circuit, an appellant waives issues by not raising them in the Rule 8006 statement of issues. *In re MeCombs*, 659 F.3d 503, 510 (5th Cir. 2011). "[E]ven if an issue is argued in the bankruptcy court and ruled on by that court, it is not preserved for appeal under Bankruptcy Rule 8006 unless the appellant includes the issue in its statement of issues on appeal." *Id*., (quoting

- 12 -

*In re GGM, P.C.*, 165 F.3d 1026, 1032 (5th Cir.1999)); *see also*, *In re McClendon*, 765 F.3d 501, 506 (5th Cir. 2014).  Consequently, Kahn waived his appeal issues.

## IV.   KAHN'S STATE COURT ISSUES WERE NOT BEFORE THE COURT.

Kahn's first and second issues relate solely to the state court proceedings, and were not properly before the Bankruptcy Court.  Both issues also lack merit.

### A.   Helvetia's state court judgments are final and in the estate.

Kahn's obtuse "collateral estoppel" issue does not relate to the asset sale and, as a state court matter, is not properly before the Court. Kahn has conflated collateral estoppel arguments presently pending in Helvetia's summary judgment motion in the adversary action, with a previous state court application of the doctrine in connection with Helvetia's state court judgments against Kahn that are part of the estate.

Helvetia's sole issue in the adversary action is its state court judgments against Kahn are nondischargeable.  (Adv. Dkt. 1.)  In its summary judgment motion Helvetia asserts collateral estoppel bars the parties from relitigating dischargeability of the judgment debt because findings in the state court judgments meet the standards of nondischargeability under 11 U.S.C. § 523(a)(4) and (a)(6), including Kahn's defalcation while acting in a fiduciary capacity and his willful, malicious injury to Helvetia.  (Adv. Dkt. 16.)

- 13 -

Completely separate from that issue, Kahn contends that because the state court judgments are undergoing a *de novo* review by the Fourth Court of Appeals, including his complaint that the state court in Cause No. 2013-CI-18355 improperly applied collateral estoppel in making pre-trial limine rulings for the May 2014 jury trial, the judgments are not final and therefore are not part of the estate. His argument fails because he misconstrues *de novo* and trial *de novo* reviews.

"[F]or purposes of collateral estoppel, a judgment may be final even though an appeal is pending…" *Guion v. Sims (In re Sims)*, 479 B.R. 415, 421-22 (S.D. Tex. 2012) (citing *Prager v. El Paso Nat'l Bank*, 417 F.2d 1111, 1112 (5th Cir. 1969) (final judgment on the merits retains all of its res judicata consequences pending a decision on appeal except in the unusual situation in which the appeal involves a full trial *de novo*), and *Scurlock Oil Co. v. Smithwick*, 724 S.W.2d 1, 6 (Tex. 1986) (same, with regard to collateral estoppel)).[4] A trial de novo differs from a de novo review, and "is available to appeal cases which were originally heard in courts which are not courts 'of record,'…"[5] Examples are Texas justice of the peace and municipal courts. *Id.*

---

[4] Kahn misinterprets *Scurlock Oil*. The policy and law adopted by the Texas Supreme Court in that opinion show that both of Helvetia's state court judgments are final.

[5] Judge Bonnie Sudderth, August 28, 2011, "When can I get a trial de novo?" *see* Exh. 9; available at, https://bonniesudderth.wordpress.com/2011/08/28/when-can-i-get-a-trial-de-novo (last visited Feb. 24, 2015).

- 14 -

Here, both of Kahn's appeals arose from Bexar County district courts, and records from those proceedings were submitted to the Fourth Court of Appeals for its review. Accordingly even if the Fourth Court of Appeal is performing a "*de novo*" review, both state court judgments are final for purposes of collateral estoppel and are part of the estate.

**1.** **This Court lacks jurisdiction over the interlocutory orders relating to Puerto Verde and, in any event, the Bankruptcy Court did not err in entering the interlocutory orders regarding Puerto Verde.**

Kahn complains the Bankruptcy Court erred in finding "good cause" to deny Kahn's motions to "disqualify" Puerto Verde, Ltd.[6] from "maintaining a lawsuit in Texas," and from having "access to the bankruptcy court" on April 29, 2014. (Br. p. 4.) This Court lacks jurisdiction over Kahn's attempt to appeal these two interlocutory orders. The orders were not part of Kahn's notice of appeal and he did not seek leave to appeal the orders. 28 U.S.C. § 158((a)(3); FED. R. BANKR. P. 8001(b), 8003(c); *In re O'Connor*, 258 F.3d 392, 397-98 (5th Cir. 2001). *See* Dkt. 73.

Moreover, even if the Court had jurisdiction, Kahn's argument lacks merit The orders expressly stated the Bankruptcy Court found "good cause" to deny Kahn's motions based on evidence and arguments presented at the April 24, 2014 hearing. (Dkt. 45, 47.) Kahn did not attach the transcript and offers no other

---

[6] Kahn does not dispute that Puerto Verde, Ltd. is a corporation formed in the Bahamas.

factual support.  Consequently, Kahn's contention the court found good cause "without having any evidence or reasons" to support its ruling is unavailing.  (Br., p. 4.)  The cases cited by Kahn do not support his argument because they pertain to Fed. R. Civ. P. 16(b), a moving party's burden to show "good cause" for why it was not able to reasonably meet scheduling deadlines, and other inapposite deadline issues.

Kahn's suggestion the Texas Supreme Court had accepted "this issue" for review is demonstrably incorrect.  (Br., p. 10.)  Indeed Kahn's December 10, 2014 petition seeking review by the Texas Supreme Court contained some of the same arguments he has presented here, with the same references to "terrorist activities," "money laundering," and other unsupported and prejudicial allegations.  (Ex. 10.) None, however, related to the Fourth Court of Appeals' dismissal of his appeal in that Court from which Kahn attempted to seek review by the Supreme Court. (Ex. 10.)

On February 13, 2015, the Texas Supreme Court denied Kahn's petition for review, without requesting responsive briefing by Helvetia. Ex. 11  *See* TEX. R. APP. P. 56.1(b).

## V.   THE APPEAL IS MOOT BECAUSE THE SALE WAS NOT STAYED.

Kahn's appeal that either the Trustee's motion for authorization of the asset sale, or the Order approving the sale, be "stricken," is moot under 11 U.S.C.

- 16 -

§ 363(m) because Kahn did not obtain a stay of the Order.  (Br., pp. 8, 10.)  *In re Camp Arrowhead, Ltd.*, 429 B.R. 546, 549 (W.D. Tex. 2010); *In re Gilchrist*, 891 F.2d 559, 560 (5th Cir. 1990); *see also In re Hardage*, 837 F.2d 1319, 1323 n.3 (5th Cir. 1988) (Section 363(m) provides finality).

## CONCLUSION AND PRAYER

WHEREFORE, PREMISES CONSIDERED, Appellee Helvetia Asset Recovery, Inc. respectfully requests that the Court affirm the Bankruptcy Court's Order, or, alternatively, that it dismiss Kahn's appeal for lack of standing or for lack of jurisdiction, that it deny all other relief requested by the Appellant, and further respectfully requests all other relief to which Appellee may be entitled, at law or in equity.

Respectfully submitted,

HAYNES AND BOONE LLP

*/s/ Lisa S. Barkley*

Werner A. Powers
State Bar No. 16218800
2323 Victory Avenue, Suite 700
Dallas, Texas 75219
Telephone: (214) 651-5000
Facsimile: (2 14) 651-5940
*werner.powers@haynesboone.com*

- 17 -

Lisa S. Barkley
State Bar No. 17851450
112 E. Pecan, Suite 1200
San Antonio, Texas 78205
Telephone: (210) 978-7427
Facsimile: (210) 554-0427
*lisa.barkley@haynesboone.com*

COUNSEL FOR APPELLEE
HELVETIA ASSET RECOVERY, INC.

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on February 24, 2015 a true and correct copy of the foregoing document was served in the manner indicated upon the parties listed below and upon the parties that receive electronic notice in this case via the Court's ECF filing system:

Burton M. Kahn
1706 Alpine Circle
San Antonio, Texas 78248
(*via email*)

*/s/ Lisa S. Barkley*
Lisa S. Barkley

- 19 -



2013CI18394 –D224

CAUSE NO. 2013-CI-18394

| IN RE: A PURPORTED | § | IN THE DISTRICT COURT |
|---|---|---|
| | § | |
| LIEN OR CLAIM AGAINST | § | BEXAR COUNTY, TEXAS |
| | § | |
| HELVETIA ASSET RECOVERY, INC. | § | 224TH JUDICIAL DISTRICT |

## FINAL JUDGMENT AND ORDER OF SANCTIONS

On March 3 and 4, 2014 came to be heard the First Amended Motion for Sanctions filed by Movants Puerto Verde, Ltd. ("Puerto Verde") and Helvetia Asset Recovery, Inc. (collectively, "Helvetia") against Respondents Burton Kahn ("Mr. Kahn") and his attorney L. Terry George ("Mr. George") (the "Sanctions Motion"). Mr. Kahn represented himself pro se at this evidentiary hearing. Mr. George did not appear.[1]

The Court, having reviewed the Sanctions Motion, Mr. Kahn's response, testimony and other evidence presented, including the Temporary Injunction record in Cause No. 2013-CI-18355, argument from counsel and Mr. Kahn, and having taken judicial notice of the parties' pleadings and filings in related litigation Cause No. 2013-CI-18355, enters the following Final Judgment and Order of Sanctions:[2]

### I.
### FINDINGS AND CONCLUSIONS

A.   **Background.**

1.     Helvetia seeks sanctions under (1) Rule 13 of the Texas Rules of Civil Procedure; (2) Chapter 10 of the Texas Civil Practice & Remedies Code, Section 51.903 of the Texas Government Code; and (3) through the Court's inherent power to sanction litigants and their

---

[1] Reporter's Record, Volume 1 (RR-1), pp. 1-4.

[2] RR-2, p. 55.

Document
scanned as filed.

EXHIBIT 1

counsel.[3] Section 51.903 permits, *inter alia*, an owner of real property to appear before a court and have the court declare as fraudulent an instrument filed of record creating or purporting to create an interest in real property owned by the movant. The owner/movant "may" appear *ex parte*. The reviewing court may not consider testimony or make findings on the merits.[4]

2.      The offending pleading that is the subject of the Sanctions Motion is an *ex parte* motion (the "*Ex Parte* Motion") filed on November 5, 2013 by Mr. Kahn in the name of Helvetia.[5] This *Ex Parte* Motion was filed pursuant to Section 51.903 of the Texas Government Code. Mr. George was designated as Mr. Kahn's lead counsel on the *Ex Parte* Motion.[6] Newly-retained Jay Petterson in San Antonio ("Mr. Petterson") was designated as "associate attorney," and signed the document for Mr. George, who resides in Fort Worth, Texas.[7]

3.      As described in more detail in this Judgment and Order, the Court finds that Mr. Kahn and Mr. George committed a fraud on the court and on the Movants for the malicious purposes of claiming ownership by Kahn of Helvetia, and of clouding legal title to land owned by Helvetia and sold by Helvetia to a *bona fide* purchaser for value. One day before the Respondents filed and presented the *Ex Parte* Motion, Helvetia had filed a Petition and Application for Temporary Restraining Order in Cause No. 2013-CI-18355 seeking to enjoin Mr. Kahn from interfering with Helvetia's business or holding himself out as an authorized representative of Helvetia.

---

[3] First Amended Motion for Sanctions, filed January 15, 2014, pp. 5; *See also, In re Bennett*, 960 S.W.2d 35, 40 (Tex. 1997).

[4] TEX. GOV'T CODE §§ 51.901, 51.903.

[5] *See* Exhibit 1. The pleading was filed in the name of "Helvetia Asset Recovery, Inc." The pleading was captioned "Motion for Judicial Review of Documentation or Instrument purporting to Create a Lien or Claim."

[6] Exhibit 1, p. 6; RR-4, p. 57.

[7] *Id.*

4.     While Helvetia's counsel was negotiating with Respondents to secure a hearing on Helvetia's Application for Temporary Restraining Order, the Respondents secretly filed and presented the *Ex Parte* Motion to a Bexar County judge and secured an order (the "*Ex Parte* Order") that was then filed in the Bexar County deed records to slander Helvetia's title and cloud its buyer's title.[8]  Mr. Kahn had no authority to file a motion on behalf of, or in the name of Helvetia, and his motion was a totally fictitious pleading filed for the purpose of causing harm to others.[9]

5.     Jay Petterson, Mr. George's co-counsel who signed the motion on behalf of Mr. Kahn and Mr. George, later signed a Rule 11 Agreement whereby Mr. Kahn promised to petition the court to set aside the *Ex Parte* Order.[10]  Mr. Kahn later disavowed the Rule 11 agreement, forcing Helvetia to try a lengthy temporary injunction hearing that resulted in a temporary injunction against Mr. Kahn and an order setting aside the *Ex Parte* Order, in other words, accomplishing at great cost what Mr. Kahn had earlier promised to do in his Rule 11 agreement.[11]

6.     Helvetia was incorporated by Puerto Verde in August 2007.  Puerto Verde is a Bahamian corporation and is owned by Robert Ripley ("Mr. Ripley").[12]  Puerto Verde contributed approximately $1.2 million in cash to capitalize Helvetia in 2007, using the funds to buy Helvetia's 1,000 shares of stock at $1 per share.[13]  These 1,000 shares represented the total

---

[8] Exhibits 1, 2, 15-18; RR-3, pp. 23-27.

[9] RR-4, p. 32-37; RR-3, p. 27, 101-104.

[10] Rule 11 Agreement, attached as Exhibit B to Motion to Strike Jury Demand, filed January 10, 2014 in Cause No. 2013-CI-18355, a filing of which the Court has taken judicial notice; RR-2, p. 55; RR-4, p. 57.

[11] RR-3, pp. 100-105; Exhibit 3.

[12] Defendant's Exhibit 9: See Temporary Injunction Reporter's Record, Vol. 2 (TI-RR-2), at pp. 6-8.

[13] Defendant's Exhibit 9: TI-RR-2, pp. 9-20.

number of shares authorized by Helvetia's charter and incorporation documents.[14] Helvetia used this capital contribution in 2007 to acquire 215 real estate lots in the Key Largo subdivision in San Antonio.[15] Helvetia has already sold many of the lots to homebuilders.[16] Sales of lots began in 2010, and have increased in subsequent years.[17]

7.      Helvetia appointed Mr. Kahn in 2009 to oversee its lot sales and closings, for which he received a 3% commission.[18] Mr. Kahn was the company's director and president from 2009 until Helvetia terminated him in August, 2013.[19] Prior to 2009, Kenneth Moore served as president and director of Helvetia.[20] Unhappy with his termination, Mr. Kahn set about to get even. He emptied Helvetia's bank accounts, transferring approximately $300,000[21] into other bank accounts personally owned by Mr. Kahn or his companies.[22] He then issued to himself on September 7, 2013, a stock certificate for 1,000 shares of Helvetia common stock and purported to cancel Helvetia's 2007 offer to sell its stock to Puerto Verde.[23] Next Mr. Kahn signed and filed a warranty deed in the name of Helvetia that purported to convey the entire Key Largo subdivision to Paradiv Corporation ("Paradiv"), a corporation newly formed by

---

[14] *See* Exhibit G attached to Exhibit 1 (Helvetia Certificate of Formation For-Profit Corporation); Defendant's Exhibit 8: TI-RR-4, p. 33, 34.

[15] Exhibits 20-22, Defendant's Exhibit 9: TI-RR-2, pp. 10-20.

[16] Defendant's Exhibit 9:TI-RR-3, pp. 57-58.

[17] Defendant's Exhibit 9: TI-RR-3, 56-57.

[18] Defendant's Exhibit 9: TI-RR-Excerpts, pp. 63-68; Defendant's Exhibit 8: TI-RR-4, p. 123-124; Defendant's Exhibit 9: TI-RR-3, pp. 57, 61.

[19] Defendant's Exhibit 9: TI-RR-4, p. 17; TI-RR-3, p. 43.

[20] Defendant's Exhibit 9: TI-RR-2, pp. 20-26, 33-35; Exhibit 8: TI-RR-4, p. 17.

[21] Mr. Kahn testified that "300 some odd thousand dollars" was transferred from Helvetia to his accounts. The Court's finding is based on this testimony and is not intended to foreclose Helvetia from demonstrating at trial in Cause no. 2013-CI-18355 that more was in fact transferred into his accounts. RR-3, pp. 43-45.

[22] Defendant's Exhibit 8: TI-RR-4, pp. 38-42; Defendant's Exhibit 9: TI-RR-3, pp. 41-53, RR-3, pp. 38-50.

[23] Defendant's Exhibit 8: TI-RR-4, pp. 42-46; Defendant's Exhibit 9: TI-RR-3, pp. 18-19; Exhibit 4.

Mr. Kahn.[24]   Paradiv paid nothing for Key Largo, and the conveyance included all lots previously sold by Helvetia to others -- including lots which Mr. Kahn had personally closed and for which he had received his 3% commission.[25]   After the conveyance to Paradiv, Mr. Kahn filed his *Ex Parte* Motion to invalidate six recent sales made by Helvetia to a builder that Mr. Kahn also recently sued in a separate lawsuit in Bexar County.[26]

**B.     Mr. Kahn's Sophistication.**

8.     Mr. Kahn is well educated, graduating with an engineering degree from M.I.T.[27] He is employed as an engineer, and has owned and operated several engineering companies.[28]

9.     Mr. Kahn has represented himself pro se in numerous matters, both in district court and at the appellate level.[29]   His "practice" before the courts spans over twenty years, including multiple cases in Houston and San Antonio.[30]   Mr. Kahn is knowledgeable about liens and the sale of property.[31]   He knows how to cloud title to property and chill financing needed by builders.[32]   Mr. Kahn studies the law, performs legal research using Loislaw and O'Conner's, and is adept in using the internet.[33]   Mr. Kahn's son is a litigation attorney practicing in

---

[24] Exhibits 7 and 8; Defendant's Exhibit 9: TI-RR-3, pp. 43-46, 55-56; Defendant's Exhibit 8: TI-RR-4, pp. 46-47, 52-53.

[25] Defendant's Exhibit 8: TI-RR-Excerpts, pp. 47-48, 63-68; Defendant's Exhibit 8: TI-RR-4, p. 52-53, 123-124; Defendant's Exhibit 9: TI-RR-3, pp. 59-61.

[26] Defendant's Exhibit 8: TI-RR-Excerpts, pp. 63-68.

[27] RR-3, pp. 28-30; Defendant's Exhibit 8: TI-RR-4, p. 43.

[28] Defendant's Exhibit 9: TI-RR-4, p. 92-93; Exhibit 25, Exhibit 26 (Gillett); Exhibit 6 (Contour). Defendant's Exhibit 9: TI-RR-4, pp. 64-65 (Contour).

[29] RR-3, pp. 28-33, 60-66, 74-77, 79.

[30] *Id.*

[31] *Id; see also* RR-3, pp. 38; RR-4, pp. 57-62; Exhibits 26 and 27.

[32] *Id.*, see also, RR-3, p. 27.

[33] RR-3, p. 28-29. Justice Michol O'Connor is a respected author of a series of books relating to litigation in Texas and federal court, including *O'Connor's Texas Rules \*Civil Trials* and *O'Connor's Texas Causes of Action.*

The transcript does not reflect Mr. Kahn's reference to Loislaw; however, Helvetia counsel recalls this testimony. Loislaw is a subscription internet research service similar to Lexis or Westlaw. See www.loislaw.com.

Houston.[34] Mr. Kahn has demonstrated in this case knowledge of legal terms and concepts used in and applicable to these proceedings.[35]

## C.    Mr. Kahn's Claims.

10.    Mr. Kahn and Mr. George filed a fictitious pleading in the name of Helvetia by filing the November 5, 2013 *Ex Parte* Motion.[36] Neither had authority to file the pleading.[37] Helvetia had fired Mr. Kahn in August 2013 and relieved him of duties long before Mr. Kahn filed the *Ex Parte* Motion.[38] His claim to authority stems from an alleged purchase of Helvetia's stock on September 7, 2013, but this claim is groundless.[39]

11.    Mr. Kahn alleges that Helvetia's stock was available for him to purchase just days after he was fired in 2013 because Helvetia's stock had allegedly never been purchased by Puerto Verde, or anyone, since Helvetia's formation in 2007.[40] Mr. Kahn claims that an allegedly forged signature of Kenneth Moore, the then-president of Helvetia, on the 2007 stock certificate Helvetia delivered to Puerto Verde nullified Puerto Verde's rights to Helvetia's stock, and somehow implausibly  caused Puerto Verde to forfeit its $1.2 million investment.[41] Mr. Kahn also advances the novel legal argument of stock forfeiture by typographical error.[42] Notwithstanding Puerto Verde's payment of over $1.2 million to Helvetia in 2007, Puerto Verde, according to Mr. Kahn, owns nothing because the stock certificate was issued in the name of

---

[34] Defendant's Exhibit 8: TI-RR-4, p. 43.

[35]*See*, e.g., RR-4, pp. 64-66, 68.

[36] Defendant's Exhibit 9: Exhibit 1.

[37] Defendant's Exhibit 8: TI-RR-4, p. 19.  Mr. Kahn testified that Mr. Petterson did not have authority to sign the Rule 11 Agreement, "giving away everything we had worked very, very hard on this --- in rem case." RR-4, p. 38.

[38] TI-RR-3, pp. 38-41.

[39] RR-3, pp. 45-46.

[40] RR-3, pp. 45-56; Exhibits 5 and 6.

[41] *See* Exhibits 1, 4, 5; RR-3, pp. 90-94.

[42] Defendant's Exhibit 9: TI-RR-3, pp. 29-30, 92-94; Defendant's Exhibit 2.

"Puerto Verde, Inc.," not "Puerto Verde Ltd.," Puerto Verde's proper name.[43]  Finally, Mr. Kahn claims the infusion of $1.2 million by Puerto Verde was a loan, not a capital contribution, even though there is no note or deed of trust, and even though his position is contrary to his own sworn tax return for Helvetia for the year ending 2012, which shows no such liability.[44]

12.     Mr. Kahn's legal position as to his stock ownership is groundless.  Texas has adopted Article 8 of the Uniform Commercial Code, which governs the creation and transfer of corporate securities.  Under Article 8 complete ownership of a stock may exist without either the issuance or delivery of a stock certificate.  Texas common law is the same.  For at least 100 years, Texas has not required a stock certificate as the *sine qua non* of ownership. [45]  What controls the issue of ownership is whether stock was lawfully issued for purchase by the shareholder and whether the shareholder in fact purchased the stock.  The evidence here showed that Helvetia issued its stock for purchase to Puerto Verde, and that Puerto Verde purchased the stock.[46]

13.     Mr. Kahn knew Puerto Verde purchased Helvetia's stock in 2007, and he knew that Puerto Verde's capital contribution enabled Helvetia to acquire the Key Largo subdivision.  Both Mr. Kahn and Mr. George had personal knowledge that Helvetia issued its stock to Puerto Verde in 2007.  They both actively participated in Helvetia's incorporation.[47]  Helvetia hired

---

[43] *Id.*

[44] Exhibit 6; *see* Schedule L, liabilities (lines 16-21); RR-4, p. 40-43, 48.

[45] *See In re Seminole Walls & Ceilings Corp.*, 446 B.R. 572, 585-86 (M.D. Fla. 2011 (applying Texas law); *Yeoman v. Galveston City Co.*, 106 Tex. 389, 167 S.W. 710, 720 (Tex. 1914).

[46] Exhibits 4, 5, 21, and 22. "[A] corporation may issue shares for consideration if authorized by the board of directors of the corporation." TEX. BUS. ORGS. Code § 21.157(a); *see also*, § 21.160.  Shares may be issued by cash consideration. *Id.*, at § 21.159(2).  When the consideration is paid, the shares are considered to be issued, and are fully paid and nonassessable. *Id.*, § 21.157.  The judgment of either **the board of directors, or the shareholder is conclusive** in determining the **value and sufficiency of the consideration** received for the shares. *Id.*, § 21.162. (emphasis added).

[47] Defendant's Exhibit 5, including Exhibit 1 attached thereto (Robert Ripley's Affidavit), and Exhibit D attached thereto; Exhibit 19, 20; Defendant's Exhibit 8: TI-RR-5, pp. 4-6, 8, 18, 21-22.

Mr. George, who was Mr. Kahn's neighbor, to act as incorporator.[48]   Mr. George prepared Helvetia's 2007 organizational minutes, which showed that Helvetia issued its 1,000 shares of stock to Puerto Verde at $1 per share.[49]   Puerto Verde wired approximately $1.2 million in cash in 2007 to capitalize Helvetia in exchange for all its shares, thus enabling Helvetia to purchase the Key Largo subdivision.[50]   Mr. Kahn personally monitored and confirmed the 2007 wire transaction and the closing on Key Largo.[51]

14.     The organizational minutes, wiring instructions and confirmations, Helvetia's 2012 tax return signed by Mr. Kahn, the stock certificate itself, and Mr. Kahn's own communications between 2007 and September 2013 establish that Mr. Kahn knew his claim of ownership through a stock purchase in 2013 was groundless.[52]

15.     With regard to Mr. Kahn's claims that Mr. Moore's signature on the Puerto Verde stock certificate was forged, the Court finds this claim factually baseless and Mr. Kahn's conduct contrary to any reasonable investigation that should have been undertaken to ascertain the validity of a signature by an officer of a corporation.   Mr. Moore confirmed his signature at the temporary injunction hearing.[53]   Mr. Kahn failed to contact Mr. Moore who, like Mr. Kahn, lives in San Antonio, to ask him if his signature was valid.[54]   Instead, Mr. Kahn used the internet to locate and interview a handwriting expert, Curtis Baggett ("Mr. Baggett").[55]   Mr. Kahn secured and attached a report by Mr. Baggett to the Ex Parte Motion opining that Mr. Moore's signature

---

[48] Defendant's Exhibit 8: TI-RR-4, pp. 43-45; Defendant's Exhibit 9: TI-RR-3, pp. 54-55.

[49] Exhibit 19, 20.

[50] Exhibit 19, 21, 22.

[51] Exhibit 19.

[52] RR-4, pp. 38-48; Defendant's Exhibit 9: TI-RR-2, pp. 26-33; Exhibits 6, 19, 20, 21, 22, 23, 24, and 25.

[53] Defendant's Exhibit 8: TI-RR-4, pp. 129, 147-152.

[54] RR-3, pp. 90-92.

[55] RR-2, p. 38; RR-3, p. 84.

had been "forged."[56] Mr. Kahn conceded he did not investigate Mr. Baggett, and appeared more remorseful that he had paid Mr. Baggett, rather than failing to recognize that Mr. Baggett was "bad," as one of his lawyers described him to Mr. Kahn.[57]

16.     Mr. Baggett has been deemed incompetent to testify as a handwriting expert in numerous published court opinions, and branded a charlatan by the Dallas Court of Appeals.[58] Multiple legal opinions available in the public record before Mr. Kahn and his lawyers filed their *Ex Parte* Motion demonstrate that Mr. Baggett's affidavit would not be admissible to support Mr. Kahn's forgery allegations in this case under any theory he may claim.   Judge Xavier Rodriguez, of the United States District Court for the Western District of Texas, San Antonio Division, recently excluded Mr. Baggett in *Routh v. Bank of Am., N.A.,* SA-12-CV-244-XR, 2013 (W.D. Tex. Aug. 7, 2013).[59] In *Routh,* involving property documents recorded in the Bexar County records, Mr. Baggett used language identical to the report he provided to Mr. Kahn, changing only the name of the person whose name had purportedly been forged:

> Based upon thorough analysis of these items and from an application of accepted forensic document examination tools, principles and techniques, it is my professional expert opinion that a different person authored the name of **[Kenneth E. Moore/Jennifer Baker]** on the questioned document. Someone did indeed forge the signature of **[Kenneth E. Moore/Jennifer Baker]** on the questioned document.

(emphasis added).   Judge Rodriguez cited a number of cases where other courts had struck Mr. Baggett from testifying as a handwriting expert witness after finding multiple severe deficiencies with his expertise and analysis.[60]

---

[56] *See* Exhibit M to Exhibit 1.

[57] RR-2, pp. 38-39; RR-3, pp. 84-86.

[58] *See Brown v. State of Texas,* No. 05-97-00289-CR, 1999 WL 61858, at *8 (Tex. Crim. App. Feb. 9, 1999).

[59] Exhibit 11, 12.

[60] *See also, Primerica Life Ins. Co. v. Atkinson,* 2012 WL 6057888, at *4 (W.D. Wash. Dec. 6, 2012) (finding that Mr. Baggett's letter of opinion "provides no facts, reasoning, or analysis;) *Brown v. Primerica Life Ins. Co.,* No. 02-

FINAL JUDGMENT AND ORDER OF SANCTIONS                                    Page 9 of 29

17.     For example, in *Dracz v. American General Life*, 426 F.Supp.2d 1373 (M.D. Ga. 2006), the court struck Mr. Baggett as an expert witness finding his testimony unreliable and his qualifications "paltry" and not qualified to testify as an expert in the field of handwriting analysis.[61]  In a bench trial in *U.S. v. Revels*, 1:10-CR-110-1 (E.D. TN., May 9, 2012), the court similarly excluded Mr. Baggett pointing to his "evident deficiencies" as a handwriting expert, and referred to the Dallas Court of Appeals opinion that embraced a prosecutor's use of the term "charlatan" in reference to Mr. Baggett, which the court defined as a "pretender to medical knowledge: a quack." [62]  See *Brown v. State of Texas*, No. 05-97-00289-CR, 1999 WL 61858, at *8 (Tex. Crim. App. App. Feb. 9, 1999).  The court in *Revels* also noted that Mr. Baggett had received felony convictions for theft and aggravated assault, and a deferred adjudication after pleading guilty to Tampering with a Government Record, which stemmed from his failure to truthfully disclose his criminal history on a government form.  Mr. Kahn acknowledged that legal opinions about Mr. Baggett were publicly available before he filed the *Ex Parte* Motion, but he took no steps to investigate Mr. Baggett or his background.[63]

18.     For these factual and legal reasons, and others already stated, the Court gives no weight to Mr. Kahn's persistence that forged or fraudulent documents allowed him to buy Helvetia's stock.  Mr. Kahn's additional complaints about the incorporation of Helvetia in 2007 that he claims entitled him to buy its stock in 2013 also fail, as follows.

---

C-8175, USDC, N.D. Illinois, April 29, 2006 (court struck Mr. Baggett's affidavit and excluded his testimony, finding his affidavit "unquestionably inadequate to underlie expert testimony; ) *Wheeler v. Olympia Sports Ctr., Inc.*, No. 03-265-P-H, 2004 WL 2287759 (D. Me. Oct. 12, 2004) (court excluded Mr. Baggett noting that "'comparing' the handwriting on several documents...is insufficient...Any individual, with no training or experience whatsoever, could 'compare' the handwriting on different documents and reach a conclusion;") *Abdin v. Abdin*, 94 Ark. App. 12, 223 S.W.3d 60, 65 (2006).

[61] Exhibit 13.

[62] Exhibit 14.

[63] RR-3, pp. 87-92; RR-4, p. 94.

19.     Mr. Kahn's claim that Puerto Verde did not pay $1,000 to buy the 1,000 shares of Helvetia's stock is meritless.[64]  A company that pays $1.2 million to capitalize a corporation has by definition used the first $1,000 of the investment to buy the capital stock, as expressly provided for by Helvetia's organizational minutes.[65]  In Helvetia's 2012 tax return, signed by Mr. Kahn, Puerto Verde's investment is accounted for as purchasing Helvetia's capital stock for $1,000, with the remainder of the investment treated by Helvetia as additional paid in capital.[66]  Bearing on Mr. Kahn's credibility, Mr. Kahn claimed in Helvetia's 2012 tax return to own all of Helvetia's stock as early as 2012, even though he swore before this Court that he purchased the stock in September 2013, and that nobody owned Helvetia's stock before that time.[67]

20.     Mr. Kahn's alternative claim that Puerto Verde's $1.2 million investment was a "loan," and not capitalization of Helvetia, is baseless.  Helvetia's tax return shows that Helvetia owes no loan or liability of any nature.[68]  Further, Mr. Kahn could not identify any promissory note, deed of trust, or any other typical indicia of indebtedness to support his allegation.[69]  In fact, closing documents on Helvetia's purchase of the Key Largo real estate reflect there was no debt.[70]

21.     When the *Ex Parte* Motion was filed on November 5, 2013, Mr. Kahn was represented by legal counsel, including Mr. George.[71]  Mr. Kahn drafted the *Ex Parte* Motion

---

[64] RR-4, p. 93; RR-3, p. 12.

[65] Exhibit 5.

[66] Exhibit 6; *see* Schedule L, capital stock account, and additional paid-in capital account (lines 22 and 23).

[67] *Id.*; RR-3, pp. 48-56; Defendant's Exhibit 8: TI-RR-4, pp. 41-43.

[68] Exhibit 6; *see* Schedule L, liabilities (lines 16-21); RR-4, p. 40-43, 48.

[69] *Id., see also* RR-4, p. 48.

[70] Exhibit 22.

[71] Exhibit 1; RR-4, pp. 55-57; RR-3, pp. 63, 69, 81-82; Defendant's Exhibit 8: TI-RR-3, pp. 61-62.

and directed his lawyers to file it.[72]  Without any authority, Mr. Kahn filed the pleading in the name of Helvetia, and falsely asserted his ownership of Helvetia throughout the filing, which he reiterated in his supporting affidavit.[73]  Mr. Kahn's affidavit, containing his allegations of fraud and forgery against Puerto Verde, was later "massaged" by Mr. Petterson, who Mr. Kahn retained just days before he filed the *Ex Parte* Motion.[74]

22.    In the *Ex Parte* Motion, Mr. Kahn sought to have six warranty deeds executed by Helvetia declared invalid.[75]  The six warranty deeds represented Helvetia's six sales of lots to a homebuilder in September and October 2013, after it had terminated Mr. Kahn.[76]  Mr. Kahn claimed that because he bought Helvetia's stock on September 7, 2013, after he was terminated, only he, and not the person signing the deeds, had the authority to sell Helvetia's lots.[77]

23.    Mr. Kahn and his attorneys knew or should have known that Section 51 of the Texas Government Code only affords the extraordinary remedy of *ex parte* relief to "owners" of real property.[78]  Mr. Kahn did not meet this requirement.[79]  He did not personally own any of the six lots, he did not own Helvetia, and he had no relationship with Helvetia at the time the *Ex Parte* Motion was filed.[80]

---

[72] *Id.*; RR-4, pp. 55-57; Defendant's Exhibit 1 (Attorney Employment Agreement with Mr. Petterson, dated November 11, 2013, effective November 1, 2013).

[73] Exhibit 1; *see also*, Mr. Kahn's Affidavit attached as Exhibit 1 to the *Ex Parte* Motion.

[74] RR-4, pp. 55-57; Defendant's Exhibit 1.

[75] Exhibit 1, pp. 2-4, § IV.

[76] *Id.*, *see also*, Exhibits A-F attached to Exhibit 1.

[77] Exhibit 1; Mr. Kahn's affidavit attached as Exhibit 1 to Exhibit 1.

[78] *See* TEX. GOV'T CODE ANN. § 51.903. An obligor or debtor of the real property may also bring an action under these proceedings, but Mr. Kahn sought relief only as an "owner." Mr. Kahn makes no claim that he is either an obligor or debtor of the six lots at issue.

[79] RR-4, pp. 43-46; Exhibits 23 and 24.

[80] *Id.*

24.    Section 51.903 also limits the Court's determination to whether the six warranty deeds are fraudulent as defined by section 51.901, and does not provide for findings by the Court on the parties' underlying dispute. *See* TEX. GOV'T CODE ANN. § 51.903(a), (g). *See In re Purported Liens or Claims Against Samshi Homes, L.L.C.*, 321 S.W.3d 665, 667 (Tex.App.-Houston [14th Dist.] 2010, no pet.); *Becker v. Tropic Isles Ass'n*, No. 13-08-00559-CV, 2010 WL 877569, at *3 (Tex.App.-Corpus Christi Mar. 11, 2010, pet. denied) (mem. op.); *In re Hart*, No. 07-98-0292-CV, 1999 WL 225956, at *2 (Tex.App.-Amarillo Apr. 15, 1999, no pet.).[81] This statute was enacted after the Republic of Texas filed hundreds of frivolous liens against government officials.[82]

25.    Due to the extraordinary *ex parte* nature of the proceedings, Section 51.903(a) of the Texas Government Code requires the verified motion recite that the movant is aware that sanctions will be imposed for a frivolous filing. The *Ex Parte* Motion contained this recitation.[83]

---

[81]Section 51.903 was enacted as part of House Bill 1185, passed in 1997. *See* Act of May 10, 1997, 75th Leg., R.S., Ch. 189, § 14, sec. 51.903, 1997 TEX. SESS. LAW. SERV. 1045, 1053 (current version at TEX. GOVT. CODE ANN. § 51.903 (Vernon 2005)).

The Senate's Bill Analysis explains the impetus behind the passage of Bill 1185, as follows:

> Currently, individuals and organizations have begun to take action based on their refusal to recognize the authority and sovereignty of the government of the State of Texas. These entities have filed fraudulent judgment liens issued by so-called "common law courts" and fraudulent documents purporting to create liens or claims on personal and real property with the secretary of state and many county and district court clerks throughout the state. Many of the filings have been against the State of Texas and public officers and employees, as well as private individuals. These filings have clogged the channels of commerce and have amounted to harassment and intimidation of both public officials and ordinary citizens. This bill provides both civil and criminal remedies for those against whom such fraudulent filings have been made. . . . This bill creates an expedited judicial process that permits someone aggrieved by the fraudulent filing to obtain an expedited legal process to obtain a court order declaring the filing to be fraudulent. . . .

SENATE RESEARCH CTR., BILL ANALYSIS, TEX. H.B. 1185, 75TH LEG., R.E. (1997) (emphasis added). Thus, the bill analysis supports the view that the statute was not created to determine the legitimacy and validity of the claimed interest in the property.

[82] Texas Attorney General's summary: https://www.texasattorneygeneral.gov/alerts/alerts_view.php?id=114&

[83] Exhibit 1, p. 5.

Accordingly, both Mr. Kahn and his counsel were aware that a false filing would or could result in an assessment of sanctions.

26. The language and the suggested form of a motion brought under § 51.903 are contained within the statute itself. The language in Mr. Kahn's *Ex Parte* Motion extended far beyond the statute. First, these motions can only be brought by property owners, and as shown herein Mr. Kahn neither owned Helvetia, nor had any right or interest in Helvetia that would permit him to bring a § 51.903 action. Second, the *Ex Parte* Motion and the *Ex Parte* Order impermissibly sought and obtained partial findings by the Court on the merits of the parties' dispute, and in particular Mr. Kahn's allegations that documents were forged or fraudulent.[84]

**D.    Mr. Kahn's Delay Tactics to Maintain Cloud on Helvetia's Lots and Increase Costs.**

27. Upon learning of the *Ex Parte* Order, Helvetia immediately sought Court assistance, setting its November 8, 2013 Emergency Motion to Set Aside *Ex Parte* Order and for Sanctions (the "Emergency Motion") for hearing on November 15, 2013. Mr. Kahn, along with Mr. Petterson, and Mr. Kahn's additional new attorney, Kathleen Cassidy Goodman, appeared at the Presiding Court for the hearing. The hearing did not take place. Instead, the parties entered

---

[84] Exhibit 1, pp. 2-5; and Mr. Kahn's affidavit, attached as Exhibit 1 to Exhibit 1, are composed almost entirely of Mr. Kahn's allegations about the merits of the parties' underlying dispute, with the Ex Parte Motion in sharp variance with the "suggested form" found in § 51.903(a). *See also* Exhibit 2 and its reference to forged corporate documents.

"Unsubstantiated factual conclusions appearing in an affidavit are not competent evidence." *In re a Purported Lien or Claim Melissa Kay Bishop*, No. 07-00455-CV, (Tex. App. Amarillo, Dec. 4, 2013, n.p.h.), citing *Tex. Division – Tranter, Inc. v. Carrozza*, 876 S.W.2d 312, 314 (Tex. 1994).

On February 24, 2014, the Amarillo Court of Appeals in *Melissa Kay Bishop* entered a judgment itself, pursuant to its opinion reversing the trial court's findings that Bishop's lender's lien was fraudulent, and TEX. R. APP. P. 43.2(c), decreeing that:

> [T]he findings and conclusions executed by the trial court are reversed and **ordered to be a nullity**. It is further ordered that the Motion for Judicial Review of Documents or Instruments Purporting to Create a Lien or Claim is denied. (emphasis added)

into and filed of record their Rule 11 agreement.[85] The Rule 11 Agreement provided, among other things, to set aside the *Ex Parte* Order by submitting an agreed order to that effect within seven days.[86]

28.    On November 22, 2013, Mr. Kahn fired Mr. Petterson and Ms. Goodman and substituted himself as counsel pro se.[87] Mr. Kahn refused to execute the documents prepared by Helvetia to effectuate the Rule 11 agreement. Mr. Kahn has since asserted in pleadings and testimony that Helvetia's lawyers either bribed or coerced his lawyers into signing the Rule 11 Agreement.[88] Though Mr. Kahn claims he did not expressly authorize the signing of the Rule 11 Agreement, the Court finds no evidence that his attorneys lacked implied or apparent authority to sign the Rule 11 agreement. The Court finds no evidence to support the claim that opposing counsel bribed or coerced Mr. Kahn's counsel into signing the Rule 11 agreement.

29.    Mr. Kahn created additional delay when he appeared at the resetting of Helvetia's Emergency Motion, and its Motion to Enforce Rule 11 Agreement, on November 26, 2013 with two new lawyers, seeking a continuance. Judge Peter Sakai granted a continuance, but also entered a TRO restraining Mr. Kahn from taking any actions on behalf of either Helvetia or Paradiv, and setting the hearing on the temporary injunction for December 6, 2013. Judge Sakai found in the TRO that further attempts by Mr. Kahn to claim title to Helvetia's properties and

---

[85] Defendant's Exhibit 8: TT-RR-4, pp. 75, 77, 83-85, 87-90.

[86] Pertinent language of the Rule 11 Agreement states:

2.    The parties shall execute documents within the next 7 days sufficient to implement the following:
a.    Agreed Order setting aside the judgment of November 5, 2013, in cause 18384.
b.    A complete release and hold harmless by Burton Kahn...of any claim of ownership or title to the 6 lots at issue in Cause No. 18394.

[87] Court records do not show that Mr. George was ever discharged from his representation of Mr. Kahn in either this case or Cause No. 18355, although the Court discharged him in an least one related action, Cause No. 17016, with Mr. Kahn's approval.

[88] RR-2, p. 53; RR-3, p. 30.

ownership of Helvetia would immediately make Helvetia substantially less valuable, causing irreparable harm. The TRO ordered expedited discovery from Mr. Kahn and Mr. George, including their deposition and document production. Mr. Kahn then fired those two new lawyers and hired Robert Wachsmuth and Zachary Fanucchi, who handled the Temporary Injunction hearing.[89]

30. Despite Judge Sakai's TRO, Mr. Kahn promptly filed a counterclaim against Helvetia on December 2, 2013 in Cause No. 18355 claiming that he owned Helvetia and was entitled to all revenues it had earned after it had fired him on August 26, 2013. He also sought in his verified pleading a declaration that he was the rightful owner of Helvetia and its assets, and a TRO restraining Mr. Ripley from selling further lots that Mr. Kahn claimed he owned as "sole owner of Helvetia."[90] Mr. Kahn and Mr. Wachsmuth also filed a second set of motions to quash the depositions of Mr. Kahn and Mr. George, noticed for December 4, 2013, making it impossible for Helvetia to take their depositions before the December 6 temporary injunction hearing set by Judge Sakai.[91]

31. Helvetia sought immediate relief for Mr. Kahn's attempt to once again delay the sanctions hearing and setting aside the *Ex Parte* Order and his repeated attempts to prevent Helvetia from obtaining discovery. On December 5, 2013, Judge David Canales entered a ruling on another emergency motion filed by Helvetia that ordered Mr. Kahn and Mr. George to appear with documents for their depositions at the Bexar County Courthouse on Friday, December 6, and moved the hearing on Helvetia's temporary injunction to Monday, December 9. Judge Canales also set aside the matters Mr. Kahn had set for hearing on December 6 to a date after the

---

[89] The Court takes judicial notice of these facts from the files of Cause No. 2013-CI-18355.

[90] *Id.*

[91] *Id.*; Mr. Kahn and Mr. George had earlier refused to appear for their noticed depositions by filing motions to quash on **November 12, 2013**.

Court had fully adjudicated Helvetia's temporary injunction, its sanctions request, and its request to enforce the Rule 11 Agreement. Judge Canales declined at that time to make any contempt findings, but expressly recognized in his order that Mr. Kahn had violated Judge Sakai's TRO, that he had refused to implement the November 15, 2013 Rule 11 Agreement, and that he and Mr. George had failed to produce documents or appear for depositions as Judge Sakai had ordered. Helvetia deposed Mr. Kahn on December 6; Mr. George did not appear for his deposition though ordered to do so.[92]

32. Mr. Wachsmuth and Mr. Fanucci represented Mr. Kahn during the three-day evidentiary hearing that culminated on December 11, 2013 with Judge Karen Pozza granting Helvetia's application for a Temporary Injunction enjoining Mr. Kahn from taking further actions on behalf of Helvetia and Paradiv.[93] Judge Pozza also set aside the *Ex Parte* Order.[94] Mr. Kahn then fired Mr. Wachsmuth and Mr. Fanucci on December 13, 2013, and has since been pro se.

33. Helvetia set its First Amended Motion for Sanctions for hearing on January 21, 2014. Both Mr. Kahn and Mr. George appeared at the Courthouse on January 21 for the sanctions hearing. The presiding court assigned all of the parties' pending matters pending in Cause Nos. 18394 and 18355 to the Monitoring Court, and all counsel and Mr. Kahn met with the Monitoring Court Clerk about scheduling and resetting the hearings to March 3, 2014.[95]

---

[92] *Id.*

[93] *Id.*; an Amended and Supplementary Temporary Injunction was entered by Judge Pozza on **December 18, 2013** that expressly permitted Helvetia to continue selling its lots.

[94] Exhibit 3.

[95] *Id.*

## II.
## ORDER OF SANCTIONS

34.     Helvetia has provided evidence that overcomes the general presumption by courts that pleadings and other papers are filed in good faith.

35.     As discussed herein, the conduct by Mr. Kahn and Mr. George in failing to conduct appropriate investigation and due diligence before filing the *Ex Parte* Motion, in delaying efforts by Helvetia to set it aside, and in refusing to comply with the Rule 11 Agreement, show that their pleading and their conduct has been groundless, that the pleading was filed in bad faith and for harassment, that it was filed for an improper purpose, that it lacked in factual or legal basis, and was not supported by evidence. These findings are incorporated into the Court's findings that sanctions are appropriate under Rule 13, Chapter 10, § 51,903, and under the Court's inherent power, as described in this order and judgment.

A.     **Ruth 13, Texas Rules of Civil Procedure**

36.     Rule 13 gives the Court the option of imposing sanctions on both a party and counsel for filing a groundless pleading that is either brought in bad faith or brought for the purpose of harassment. TEX. R. CIV. P. 13; *In re C.M.V.*, 136 S.W.3d 280, 284 (Tex. App. – San Antonio 200, no pet.) The rule defines "groundless" as having "no basis in law or fact and not warranted by good faith argument for the extension, modification, or reversal of existing law," and thus turns on the legal merits of a claim. *Id.; Robson v. Gilbreath*, 267 S.W.3d 401, 405 (Tex. App.-Austin 2008, pet. denied). "Bad faith" requires the conscious doing of a wrong for a dishonest, discriminatory, or malicious purpose. *Id.*, at 407. Improper motive is an essential element of bad faith. *Elkins v. Stotts-Brown*, 103 S.W.3d 664, 669 (Tex.App.-Dallas 2003, no pet.). Rule 13 also provides, "[S]anctions under this rule may not be imposed except for good

FINAL JUDGMENT AND ORDER OF SANCTIONS                              Page 18 of 29

cause, the particulars of which must be stated in the sanction order." *See Low v. Henry*, 221 S.W.3d 609, 614 (Tex. 2007).

37.     Rule 13 permits the trial court to impose sanctions on attorneys or parties who file a "fictitious pleading" or "make statements in pleading which they know to be groundless and false." After notice and hearing, the trial court "shall impose an appropriate sanction" available under Rule 215. TEX. R. CIV. P. 13.

38.     Sanctions available under Rule 215.2(b) include attorney's fees. See TEX. R. CIV. P. 13, 215.2(b). Sanctions awarded as attorney's fees fall within the sound discretion of the Court. *Olibas v. Gomez*, 242 S.W.3d 527, 535 (Tex. App.-El Paso 2007, pet. denied); *Glass v. Glass*, 826 S.W.2d 683, 688 (Tex. App.-Texarkana 1992, writ denied) (citing *Brantley v. Etter*, 677 S.W.2d 503, 504 (Tex. 1984)).

39.     In determining whether sanctions are appropriate, the trial court examines the facts available to the litigant and the circumstances existing when the litigant filed the pleading. *Alejandro v. Bell*, 84 S.W.3d 383, 392 (Corpus Christi 2002, no pet. h.); *Home Owners Funding Corp. of Am. v. Scheppler*, 815 S.W.2d 884, 889 (Tex. App. – Corpus Christi 1991, no writ). The Court also considers the acts or omissions of the represented party or counsel, not merely the legal merit of a pleading or motion. *Griffin Indus. V. Grimes*, No. 04-02-00430-CV, 2003 WL 1911993, *4 (San Antonio Apr. 23, 2003, no pet.) (citing *New York Underwriters Ins. Co. v. State Farm Mut. Auto. Ins. Co.*, 856 S.W.2d 194, 205 (Tex. App.--Dallas 1993, no writ.).

40.     In addition, the Court is entitled to evaluate the credibility of the testimony and determine what weight to give it. *Wein v. Sherman*, 03-10-00499-CV, 2013 Tex. App. Lexis 10666, at *24 (Tex.App.-Austin Aug. 23, 2013, n.p.h.) (mem. op.) (*citing Alpert v. Crain, Caton & James, P.C.*, 178 S.W.3d 398, 412 (Tex.App.-Houston [1st Dist.] 2005, pet. denied)).

FINAL JUDGMENT AND ORDER OF SANCTIONS                                    Page 19 of 29

41.    The Court has made the necessary factual determinations about the motives and credibility of Mr. Kahn. The Court finds that sanctions against Mr. Kahn are appropriate under Rule 13. The Court is precluded from sanctioning Mr. George under a literal reading of this Rule because his associate attorney, not Mr. George, signed the *Ex Parte* Motion. *Yuen v. Gerson*, 342 S.W.3d 824 (Tex. App. – Houston [14th Dist.] 2011, pet. denied).

42.    Helvetia has not sought sanctions against the associate attorney, Mr. Petterson. Although Mr. Petterson signed the offending pleading, Mr. Petterson attempted to rectify the error within ten days by entering into the Rule 11 Agreement.

**B.    The *Ex Parte* Motion Was a Fictitious Pleading And is Groundless.**

43.    The Court finds that the *Ex Parte* Motion was a fictitious pleading and groundless, and that it was brought both in bad faith and for harassment. The *Ex Parte* Motion has no basis in law or fact, and is not warranted by good faith argument for the extension, modification, or reversal of existing law.[96] Mr. Kahn filed the pleading maliciously without any basis in fact or law.[97] Mr. Kahn also filed it as an experiment to obtain an opinion of Helvetia ownership that he could then use to bolster his egregious ownership arguments in this matter.

44.    The Court has assessed Mr. Kahn's credibility along with the evidence presented, and finds there is not a scintilla of evidence that Mr. Kahn owns Helvetia's stock, and thus finds the *Ex Parte* Motion meritless. The Court finds that Mr. Kahn has used this false allegation for improper purposes, and thus finds good cause in assessing sanctions as further particularized herein. His wrongful claims of ownerships were at the genesis of all of the proceedings herein, and spawned the litigation between the parties, unnecessarily causing Helvetia to incur substantial fees and expenses.

---

[96] RR-3, p. 93-95.
[97] RR-3, pp. 101.

45.    By claiming Mr. Kahn owned the property owner, and thus had standing to bring an action under § 51.903 of the Texas Government Code, Mr. Kahn and Mr. George made factual contentions that lacked any legal or evidentiary support.  The claim of a forged stock certificate was factually bogus and legally irrelevant.

46.    The *Ex Parte* Motion also exceeded the scope of §§ 51.901 and 51.903 of the Texas Government Code by seeking and obtaining extraneous findings as discussed herein.

47.    Mr. Kahn appears to challenge the Court's findings based on either the United States Constitution or the Texas Constitution.  Although not clearly articulated, his challenges are not relevant here because the Court has based its findings on non-constitutional grounds.[98]

C.    **The *Ex Parte* Motion was Filed In Bad Faith and for Harassment**.

48.    The Court finds that bad faith was demonstrated in that there was a conscious doing of a wrong for a dishonest or malicious purpose.  The *Ex Parte* Motion constituted harassment in that it was intended to annoy, alarm, and abuse another person. The Court finds that the *Ex Parte* Motion was filed:

a.    To avoid the probable and imminent entry of a TRO against Mr. Kahn;

b.    To maliciously "cloud the title" of the six lots, and thus to interfere and harm Helvetia's business by Mr. Kahn's claim that he owned property that Helvetia had already sold to builders;

c.    To chill Helvetia's future sales of property, as Mr. Kahn acknowledged he knew the litigation would make builders, lenders and title companies reluctant to close

---

[98] See *In re Hart*, No. 07-98-0292-CV, 1999 WL 225956, at *2 (Tex. App.-Amarillo Apr. 15, 1999, no pet.) (Court declined to address Harts' complaint that **§ 51.903 of the Texas Government Code** was unconstitutional, citing *San Antonio Gen. Drivers v. Thornton*, 156 Tex. 641, 647, 299 S.W.2d 911, 915 (1957), which directs a court not to pass upon the constitutionality of a statute if the particular case can be decided upon non-constitutional grounds).

on property sales by Helvetia if they thought Mr. Kahn would record adverse ownership claims to the property;

d.      To attempt to extort revenues earned by Helvetia after it had terminated Mr. Kahn's employment;

e.      To retaliate or "get even" against his former employer.

49.     Mr. Kahn acted with duplicity, defrauding the Court as shown herein, and defrauding Helvetia.[99]

50.     The timing of Mr. Kahn's filing of the *Ex Parte* Motion also shows bad faith and filing for an improper purpose. Email exchanges show that Helvetia sued Mr. Kahn on November 4, 2013 for various torts and injunctive relief, and were attempting to coordinate with Mr. George a time to present to the Court Helvetia's application for a temporary restraining order.[100] These types of games with the Court and opposing counsel go to the Court's core functions, and subject Mr. Kahn and Mr. George to sanctions under the Court's inherent power to control litigants.

51.     Mr. Kahn's pleadings and conduct demonstrate delay when he avoided the hearing to set aside the *Ex Parte* Order by agreeing to, and later reneging, on the Rule 11

---

[99] Defendant's Exhibit 8: TI-RR-4, pp. 82-83 ("Paradiv doesn't own [the six lots], it is Helvetia. And Paradiv was only – the only reason why I made that transaction [the Ex Parte Motion], was to try to prevent Robert Ripley from – he sold six lots when he wasn't even...president of the company.")

[100] RR-3, pp. 95-101; Exhibits 15-18.

*Helvetia Asset Recovery, Inc. v. Burton Kahn and Paradiv Corporation*, filed on November 4, 2013, in the 407th Judicial District, Bexar County, Texas.

On November 4, 2013, counsel for Helvetia emailed Mr. Kahn's lawyer, Mr. George, a newly filed petition and application for injunctive relief seeking to enjoin Mr. Kahn from taking further action on behalf of Helvetia, referring to his attempts to convey Helvetia's property to Paradiv. The email requested that Mr. George provide a convenient time for a court appearance on November 5 if he intended to contest Helvetia's request for a temporary restraining order. Mr. George offered no specifics but noted that Mr. Kahn had engaged a San Antonio attorney, Jay Petterson, as associate counsel.

Agreement.[101]   Further delay occurred on November 26, 2013 when Mr. Kahn and new counsel *de jour* sought and obtained a continuance, falsely claiming the new counsel needed to get up to speed.  Mr. Kahn fired those lawyers the same day, showing grounds for the continuance were a pretext for simply more delay.   The refusal by Mr. Kahn and Mr. George to comply with Helvetia's deposition notices on November 12, 2013, and their outright violation of Judge Sakai's orders for the same, demonstrate further delay.  Mr. Kahn's voluminous pleadings on December 2, 2013 constitute further materially bad faith conduct and harassment when they set numerous substantive motions for hearing on the day Judge Sakai set Helvetia's temporary injunction for hearing.   Their continued refusal to present themselves for deposition caused further delay and unnecessary expense, leading to Judge Canales' December 5, 2013 order to appear, in which he also expressly stated Mr. Kahn was already in violation of the TRO by his acts purporting to be on behalf of Helvetia.

52.     Mr. Kahn's attempt to trivialize his conduct is not creditable given the unrelenting efforts he took to keep his fraudulent claim intact on the six lots, through the date Judge Pozza set it aside on December 8, 2013.   Moreover, by failing to release the fraudulent lien after demand was made by Helvetia, the Court may presume Mr. Kahn had the intent to harm and defraud Helvetia and others.  Mr. Kahn claims he rightfully reneged on the Rule 11 Agreement, but by doing so he refused Helvetia's demand to release the lien, thus giving rise to such a presumption of intent.[102]

---

[101] RR-3, pp. 101-104.

[102] *See Florance v. State*, No. 05-08-00984-CR (Tex. App. – Dallas, Aug. 28, 2009).   The Florance Court affirmed a judgment that Florance was guilty, after jury trial, and affirmed his sentence of six months in jail for Florance's failure to release a lien that was fraudulent under § 51.901, Tex. Gov't Code, in violation of Tex. Penal Code § 32.49.

53.    Mr. Kahn and Mr. George filed the *Ex Parte* Motion in bad faith, as it demonstrated a conscious doing of a wrong for a dishonest and malicious purpose. Their actions were taken in part to slander title, and to make it difficult or impossible for Helvetia to continue its sales of lots. Their intent to harm Helvetia in this manner showed an improper motive. Mr. Kahn's testimony demonstrated his subjective state of mind: he knew, and intended, for the filing to stop Helvetia from further lot sales.[103]

54.    Mr. Kahn has openly admitted his motivation in filing the *Ex Parte* Motion was to interfere with Helvetia and to stop further sales of lots. Mr. Kahn is knowledgeable about title companies and title searches, and intended his conduct to chill Helvetia's future sales of its property.[104]

55.    Mr. Kahn knew or should have known, by proper investigation, that Mr. Moore's signature was not forged, and that Mr. Baggett was not reputable and could not reasonably provide an opinion contrary to Mr. Moore's own testimony.

56.    The Court can infer Mr. Kahn was additionally motivated by retaliation or vindication, or part of a strategy to cause Helvetia to expend more fees and costs and drive it to the settlement table.

57.    Mr. Kahn was motivated to claim ownership of Helvetia because after he was fired, his direct access to all revenues earned by Helvetia from lot sales was cut off.

**D.    Chapter 10, Tex. Civ. Prac. & Rem. Code, and § 51.903, Texas Government Code.**

58.    Chapter 10 authorizes a court to impose sanctions upon a person, or a party represented by the person, where an attorney files a groundless pleading or files a pleading for an improper purpose, including to harass. TEX. CIV. PRAC. & REM. CODE §§ 10.001(1-3),

---

[103] RR-3, p. 27.

[104] *Id.*; *see also*, RR-3, pp. 38; RR-4, pp. 57-62; Exhibit 26 and 27.

10.004(a).  Each allegation and factual contention in a pleading or motion must have, or be likely to have, evidentiary support after a reasonable investigation.  *Id., see also, Bravenec v. Flores*, No. 04-11-00444-CV, San Antonio, Mar. 20, 2013, citing *Low v. Henry*, 221 S.W.3d 609, 614-15 (Tex. 2007).  "A trial court may impose sanctions against a party if the court finds that the party has failed to comply with this requirement."  *Bravenec, citing Nolte v. Flournoy*, 348 S.W.3d 262, 269 (Tex. App. – Texarkana 2011, pet. denied).

59.    Chapter 10 thus permits the Court to sanction a party or an attorney for filing pleadings that lack a reasonable basis in law or fact.  See TEX. CIV. PRAC. & REM. CODE § 10.001-.006; *Low*, 221 S.W.3d at 614.  The Court may impose sanctions if the Court finds that the party has failed to comply with any one of the requirements of Section 10.001 of the Texas Civil Practices & Remedies Code.  TEX. CIV. PRAC. & REM. CODE § 10.004(a); *Nolte*, 348 S.W.3d at 269.

60.    For reasons previously described, and incorporated by reference, sanctions may be imposed against Mr. Kahn under Chapter 10 of the Texas Civil Practices and Remedies Code. The evidence shows that Mr. Kahn and Mr. George are both culpable and that both should be sanctioned for their conduct but as with Rule 13 the Court is precluded from assessing sanctions against Mr. George.

61.    More particularly, the *Ex Parte* Motion was filed for an improper purpose, and it lacks any evidentiary support as shown herein.  Section 51.903 builds in an award of sanctions if a party seeks a finding not in compliance with the statute; Mr. Kahn and Mr. George orchestrated the hearing to be ex parte despite Helvetia's contemporaneous attempts to secure a hearing on a TRO that would have precluded Mr. Kahn's filing; Mr. Kahn filed the pleading without any authority; and his ownership claims are neither factually or legally supported.

### E.  Court's Inherent Power to Sanctions

62.  The Court has inherent power to impose sanctions. Assessing sanctions under this inherent power involves a two-step process: (1) the Court should rely upon the rules and statutes expressly authorizing sanctions whenever possible, and (2) the Court, applying its inherent power to impose sanctions, must make factual findings, based on evidence, that the conduct complained of significantly interfered with the Court's legitimate exercise of its core functions. Inherent power to sanction exists where necessary to deter, alleviate, and counteract bad faith abuse of the judicial process, such as any significant interference with the traditional core functions of the Court. Core functions include hearing evidence, deciding issues of fact raised by the pleadings, deciding questions of law, rendering final judgments and enforcing judgments. Core functions also include management of its docket and the issuance and enforcement of its orders. The Court "may issue orders and, when it deems appropriate, vacate, rescind, or modify those orders. Lawyers and the litigants do not have such authority."[105] By doing so they effectively usurp the Court's role and displace the Court as the decision-maker, thus interfering with a core function of the Court.

63.  For reasons and findings previously discussed, sanctions are appropriate against both Defendants under this Court's inherent powers. Their Ex Parte Motion and ex parte hearing interfered with most of the Court's core functions. They submitted evidence not allowed by § 51.903; they made arguments and submitted an improper order under § 51.903 that affected the Court's decision-making; and they omitted disclosing to the Court prior proceedings detrimental to their legal position. Mr. Kahn also ignored the Court's setting aside of the Ex Parte Order,

---

[105] *Basaldua v. Forest Woods Subdivision*, No. 04-11-00716-CV (Tex. App. San Antonio, July 5, 2012 (citing *In re K.A.R.*, 171 S.W.3d 705, 715 (Tex. App. – Houston [14th Dist.] 2005, no pet.).

thus attempting to usurp the Court's role, by continuing to assert the same grounds that were contained in the order that had been set aside.

64.     Both Mr. Kahn and Mr. George are culpable for the groundless *Ex Parte* Motion, and their allegations that Mr. Kahn reasonably could have purchased any asset valued over $1,000,000 for $1,000. The pleading is based solely on Mr. Kahn's allegations that Helvetia had never issued its stock to Puerto Verde, thereby allowing him to buy the company, worth over $1 million, for $1,000, and only days after the company had terminated him for misconduct. Both Mr. Kahn and Mr. George participated in the 2007 incorporation of Helvetia, and Mr. Kahn additionally participated in the transaction by which Puerto Verde wired $1.2 million in cash to capitalize Helvetia. Mr. George was the incorporator for Helvetia and prepared its 2007 organizational minutes showing that Puerto Verde would be issued all 1000 shares of Helvetia's stock at $1 per share. Mr. Kahn testified that he was knowledgeable about property sales, and knew that a cloud on a title generally would preclude a sale of that parcel. He intended for the *Ex Parte* Motion to harm Helvetia's sales, which he believed would return the parties to "status quo." Mr. Kahn drafted the pleading and his affidavit, and located and hired a handwriting expert. At the time that the *Ex Parte* Motion was filed, Mr. Kahn provided the factual basis for the claims, and decided what legal claims to assert, and the manner in which to assert them, via the Texas Government Code. As part of his claim that he owned Helvetia, Mr. Kahn created the new corporation Paradiv, to which he had tried to convey all of Helvetia's property in Key Largo only days and weeks before he filed the *Ex Parte* Motion that sought to invalidate legitimate sales closed by Helvetia after it had terminated Mr. Kahn.

65.     Mr. George did not sign the *Ex Parte* Motion, but delegated that task to the newly retained local counsel Mr. Petterson. Emails on November 4 and 5, 2013 show that Helvetia's

counsel was unaware of Mr. Petterson's representation until the day the *Ex Parte* Motion was filed, November 5. After ignoring orders by Judge Sakai and Judge Canales to appear for his deposition, Mr. George voluntarily appeared at the December 2013 hearing before Judge Pozza to provide testimony during Mr. Kahn's presentation of his case. Nothing in the evidence shows that Mr. George disavowed the Parte Motion.

66.     Mr. George had notice of the sanctions motion and hearing set for March 3, 2014. He appeared on January 21, 2014, a previous setting, and participated in the monitoring court's reset of the hearing to March 3, 2014.[106]

**F.     Sanctions are Just and Not Excessive**

67.     The Court has carefully examined the two-part test adopted by the Texas Supreme Court in finding that the sanctions assessed are just. First, there is a direct nexus among the offensive conduct, the offender, and the sanction imposed, in that the sanction is directed against the abuse and toward remedying the prejudice caused the innocent party.

68.     Second, the sanction is not excessive because it is no more severe than necessary to satisfy its legitimate purposes, here, namely, to deter other litigants from similar misconduct and punish violators.[107]

Accordingly, it is hereby ORDERED, ADJUSTED AND DECREED as follows:

(1)     Sanctions be and hereby are awarded against Burton Kahn and Terry George, jointly and severally, in the amount of $253,416.00, for which let execution issue. Of this sum, the Court finds $153,416.00 to be reasonable attorneys' fees incurred by Movants as a direct and proximate result of the fictitious filings and the attempted withdrawal of the Rule 11 agreement.

---

[106] RR-4, pp. 54-55.

[107] Exhibits 29 and 30.

The remaining $100,000.00 is imposed as sanctions for lack of diligence into the facts and the law.

(2)    All other relief not expressly granted hereby is denied.  The Court's intent is that this instrument be in all things a Final Judgment and Order.

SIGNED, ORDERED, and ENTERED this /ˢᵗ day of April, 2014.

_____
JUDGE  PRESIDING

Submitted by:

HAYNES AND BOONE, LLP

_____/s/ Werner A. Powers_____
Werner A. Powers
State Bar No. 16218800
Natalie DuBose
State Bar No. 24077481
2323 Victory Avenue, Suite 700
Dallas, Texas  75219
Telephone:  (214) 651-5000
Telecopier:  (214) 651-5940


Lisa S. Barkley
State Bar No. 17851450
112 E. Pecan, Suite 1200
San Antonio, Texas 78205
Telephone No. : (210) 978-7427
Telecopier No. : (210) 554-0427

ATTORNEYS FOR
HELVETIA ASSET RECOVERY, INC.



2013CI18355 -D037

NO. 2013-CI-18355

| | | |
|---|---|---|
| HELVETIA ASSET RECOVERY, INC. | § | IN THE DISTRICT COURT |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | BEXAR COUNTY, TEXAS |
| | § | |
| BURTON KAHN and | § | |
| PARADIV CORPORATION, | § | |
| | § | 37 |
| *Defendants.* | § | 407th JUDICIAL DISTRICT |

## FINAL JUDGMENT

On May 12, 2014, the Court called this case for trial. Plaintiff Helvetia Asset Recovery, Inc. appeared through its attorneys and announced ready for trial. Defendant Burton Kahn appeared in person pro se and announced ready for trial. Defendant Paradiv Corporation did not appear except through its director and officer, Burton Kahn, who is not licensed to practice law in this state. The Court then empanelled and swore a jury consisting of twelve qualified jurors, and the case proceeded to trial. At the close of the evidence, the Court submitted questions, definitions, and instructions to the jury. On May 21, 2014, the jury returned its verdict. The Charge of the Court and the jury's verdict are attached hereto and are incorporated herein by reference. This Final Judgment expressly incorporates all findings of the jury for all purposes.

The jury's verdict was received, filed and entered of record. Plaintiff moved for judgment on the verdict, and the Court, having considered the pleadings, the evidence, the jury verdict, and the applicable law, hereby renders Final Judgment on the verdict (the "Judgment") as follows:

It is ORDERED and DECREED that Plaintiff is declared the owner of the funds in the registry of the Court that were deposited by Defendants pursuant to the Temporary Injunction

FINAL JUDGMENT

# EXHIBIT 2

23

previously entered herein, and that totaled, at the time of disbursement, the amount of $291,453.61.

It is further ORDERED that Plaintiff recover from Defendants Burton Kahn and Paradiv Corporation the sum of $854,166 in actual damages, plus pre-judgment interest from November 4, 2013, at the rate of $117.01 per day until the day before this Judgment is signed.

It is further ORDERED that Defendants receive a credit for sums Plaintiff received from the registry of the Court in the amount of $291,453.61, said credit to be applied against the actual damages and accrued interest as of the date the Judgment is signed.

It is further ORDERED that Plaintiff recover from Defendant Burton Kahn exemplary damages in the sum of $900,000.

It is further ORDERED and DECREED that Plaintiff recover its reasonable attorneys' fees as allowed by the Texas Declaratory Judgment Act and pursuant to Chapter 12 of the Texas Civil Practice & Remedies Code, § 12.002(b)(3).

It is further ORDERED that Plaintiff recover from Defendants Burton Kahn and Paradiv Corporation attorneys' fees in the sum of $280,000. In the event of an appeal to the court of appeals, Plaintiff, if successful, shall recover an additional $20,000 in fees, and, if another appeal is sought, Plaintiff shall recover another $10,000 in fees.

It is further ORDERED that Plaintiff recover all costs of court.

It is further ORDERED that Plaintiff recover on all amounts awarded herein post-judgment interest at the highest lawful rate allowed by law as of the date of this Judgment until paid.

It is further ORDERED that all amounts awarded herein, other than exemplary damages, are jointly and severally owed by Defendants Burton Kahn and Paradiv Corporation.

It is further ORDERED that Burton Kahn deliver and deposit into the registry of this Court within the next 30 days any sums that he was previously ordered to deposit into the registry of the Court and did not.

It is further ORDERED that Burton Kahn be and he is permanently enjoined from conducting business in the name of the Plaintiff or in any way interfering with Plaintiff's business activities, including but not limited to Plaintiff's sales of lots in the Key Largo subdivision, based on any fact or circumstance that exists as of the date this Judgment is entered or which has ever existed in the past.

It is further ORDERED that all writs and processes necessary or appropriate for the enforcement or collection of this Judgment or the costs of court may issue as necessary.

All relief requested in this case and not expressly granted is denied.  This Judgment finally disposes of all claims and all parties and is an appealable Final Judgment.

SIGNED this _11_ day of _June_, 2014.

_Michael E. Mery_
JUDGE PRESIDING

D-2273499_2

**FINAL JUDGMENT**                                                                 **Page 3**

# EXHIBIT A

06/17/2014 VOL 4296 PG 000041



CAUSE NO. 2013-CI-18355

| | | |
|---|---|---|
| HELVETIA ASSET RECOVERY, INC., | § | IN THE DISTRICT COURT |
| Plaintiff, | § | |
| | § | |
| V. | § | BEXAR COUNTY, TEXAS |
| | § | |
| BURTON KAHN and | § | |
| PARADIV CORPORATION, | § | |
| Defendants. | § | 407TH JUDICIAL DISTRICT |

## JURY CHARGE

LADIES AND GENTLEMEN OF THE JURY:

After the closing arguments, you will go to the jury room to decide the case, answer the questions that are attached, and reach a verdict. You may discuss the case with other jurors only when you are all together in the jury room.

### Remember my previous instructions:

Do not discuss the case with anyone else, either in person or by any other means.

Do not do any independent investigation about the case or conduct any research.

Do not look up any words in dictionaries or on the Internet.

Do not post information about the case on the Internet.

Do not share any special knowledge or experiences with the other jurors.

Do not use your phone or any other electronic device during your deliberations for any reason.

### Here are the instructions for answering the questions:

1.      Do not let bias, prejudice or sympathy play any part in your decision.

2.      Base your answers only on the evidence admitted in court and on the law that is in these instructions and questions. Do not consider or discuss any evidence that was not admitted in the courtroom.

3.      You are to make up your own mind about the facts. You are the sole judges of the credibility of the witnesses and the weight to give their testimony. But on the matters of law, you must follow all my instructions.

JURY CHARGE

Page 1

Document
scanned as filed.

4.      If instructions use a word in a way that is different from its ordinary meaning, use the meaning I give you, which will be a proper legal definition.

5.      All the questions and answers are important. No one should say that any question or answer is not important.

6.      Answer "Yes" or "No" to all questions unless you are told otherwise. A "Yes" answer must be based on a preponderance of the evidence (unless you are told otherwise). Whenever a question requires an answer other than "Yes" or "No," your answer must be based on a preponderance of the evidence (unless you are told otherwise).

The term "preponderance of the evidence" means the greater weight of credible evidence presented in this case. If you do not find a preponderance of the evidence supports a "Yes" answer, then answer "No." A preponderance of the evidence is not measured by the number of witnesses or by the number of documents admitted in evidence. For a fact to be proved by a preponderance of the evidence, you must find that the fact is more likely true than not true.

7.      Do not decide who you think should win before you answer the questions and then just answer the questions to match your decision. Answer each question carefully without considering who will win. Do not discuss or consider the effect your answers will have.

8.      Do not answer questions by drawing straws or by any method of chance.

9.      Some questions might ask you for a dollar amount. Do not agree in advance to decide on a dollar amount by adding up each juror's amount and then figuring the average.

10.     Do not trade your answers. For example, do not say, "I will answer this question your way if you answer another question my way."

11.     The answers to the questions must be based on the decision of at least ten of the twelve jurors. The same ten jurors must agree on every answer. Do not agree to be bound by a vote of anything less than ten jurors, even if it would be a majority.

As I have said before, if you do not follow these instructions, you will be guilty of juror misconduct, and I might have to order a new trial and start this process over again. This will waste your time and the parties' money, and would require the taxpayers of this county to pay for another trial. If a juror breaks any of these rules, tell that person to stop and report it to me immediately.

## Presiding Juror

1.    When you go into the jury room to answer the questions, the first thing you will need to do is choose a Presiding Juror.

2.    The Presiding Juror has these duties:

   a.   Have the complete charge read aloud if it will be helpful to your deliberations;

   b.   Preside over your deliberations, meaning manage the discussions and see that you follow these instructions;

   c.   Give written questions or comments to the bailiff who will give them to the judge;

   d.   Write down the answers you agree on;

   e.   Get the signatures for the verdict certificate, and

   f.   Notify the bailiff that you have reached a verdict.

Do you understand the duties of the Presiding Juror? If you do not, please tell me now.

## Instructions for Signing the Verdict Certificate

1.   You may answer the questions on a vote of ten jurors. The same ten jurors must agree on every answer in the charge. This means you may not have one group of ten jurors agree on one answer and a different group of ten jurors agree on another answer.

2.   If ten jurors agree on every answer, those ten jurors sign the verdict.

3.   If eleven jurors agree on every answer, those eleven jurors sign the verdict.

4.   If all twelve of you agree on every answer, you are unanimous and only the Presiding Juror signs the verdict.

5.   All jurors should deliberate on every question. You may end up with all twelve of you agreeing on some answers, while only ten or eleven of you agree on other answers. But when you sign the verdict, only those ten who agree on every answer will sign the verdict.

Do you understand these instructions? If you do not, please tell me now.

_Michael E. Mery_
JUDGE PRESIDING

JURY CHARGE                                                      Page 3

## DEFINITIONS

You are instructed to use the following definitions when the defined words appear in specific questions or instructions.

1.  "Helvetia" refers to the Plaintiff Helvetia Asset Recovery; Inc.

2.  "Puerto Verde" refers to Helvetia's sole shareholder, which is in turn wholly owned by Robert Ripley.

3.  *MEM* "Kahn" refers to Defendant Burton Kahn.

4.  *MEM* "Paradiv" refers to Defendant Paradiv Corporation

5.  The "Rule 11 Agreement" refers to the document titled "Rule 11 Agreement" and dated November 15, 2013. The Rule 11 Agreement is part of the evidence admitted by the Court and is labeled Plaintiff's Ex. 35.

## QUESTION NO. 1

Did Kahn fail to comply with his fiduciary duty to Helvetia?

> You are instructed that Kahn owed a fiduciary duty to Helvetia to conduct its affairs in the best interest of its sole shareholder, Puerto Verde, which was wholly owned by Robert Ripley.
>
> Further, Kahn was obligated to place Helvetia's interests ahead of his own and not to use his position for his personal gain at the expense of Helvetia.
>
> Further, a fiduciary owes a duty of utmost loyalty, honesty, good faith and fairness.
>
> Further, when one enters into a fiduciary relationship, he consents as a matter of law to have his conduct measured by higher ethical standards than the standards that apply to parties who are not in a fiduciary relationship.

Answer "Yes" or "No":    _YES_

JURY CHARGE                                                            Page 5

## QUESTION NO. 2

If you answered "Yes" to Question No. 1, then answer the following question. Otherwise, do not answer the following question.

What sum of money, if any, if paid now in cash, would fairly and reasonably compensate Helvetia for its damages, if any, that were proximately caused by the conduct you found in answer to Question No. 1?

Answer in dollars and cents, if any:

1.  Misappropriation, if any, of assets:    $ _721,166_

2.  Lost profits, if any:    $ _133,000_

JURY CHARGE                                                                      Page 6

## QUESTION NO. 3

Is Kahn responsible for the conduct of Paradiv Corporation?

You are instructed that Kahn is responsible for the conduct of Paradiv if Kahn used Paradiv as a means of perpetrating a fraud for the direct personal benefit of Kahn.

"Fraud" in this context means the breach of some legal or equitable duty, such as a fiduciary duty.

Answer "Yes" or "No:"        _Yes___

JURY CHARGE                                                                 Page 7

## QUESTION NO. 4

Did Kahn hold money which, in equity and good conscience, belonged to Helvetia?

Answer "Yes" or "No:"     Yes

## QUESTION NO. 5

If you answered "Yes" to Question No.4, then answer the following question. Otherwise, do not answer the following question.

What sum of money, if any, do you find that Kahn held that belonged to Helvetia?

Answer in dollars and cents, if any.

Amount:　　$ _721, 166_

## QUESTION NO. 6

Did Kahn slander Helvetia's title to lots in the "Key Largo" subdivision?

You are instructed that slander of title means a person acted deliberately and without reasonable cause to publish false and disparaging words about Helvetia's title to the "Key Largo" subdivision lots, thereby causing a specific loss of a sale or sales.

Answer "Yes" or "No:"    Yes

## QUESTION NO. 7

If you answered "Yes" to Question No. 6, then answer the following question.  Otherwise, do not answer the following question.

What damages, if any, do you find were caused by Kahn's slander of Helvetia's title to the "Key Largo" subdivision lots?

> You are instructed that the amount of damages, if any, to be awarded should be those damages which would compensate Helvetia for the loss of any sale(s) suffered as a result of the slander of title.

> Answer in dollars and cents, if any.

Amount:      $ _133,000_

QUESTION NO. 8

Did Kahn file a fraudulent court record or claim against real property owned by Helvetia?

You are instructed that a fraudulent court record or claim means it was filed:

(1) with knowledge that it was fraudulent,

(2) with the intent that it be given legal effect as a court record or document evidencing a valid claim or interest in real property, and

(3) with the intent to cause physical injury, financial injury, or mental anguish or emotional distress.

Answer "Yes" or "No:"      Yes

JURY CHARGE

Page 12

## QUESTION NO. 9

If you answered "Yes" to Question No. 8, then answer the following question. Otherwise, do not answer the following question.

What damages, if any, do you find were caused by Kahn's filing of a fraudulent court record or claim against property owned by Helvetia?

Answer in dollars and cents, if any.

Amount:    $ 133,000

QUESTION NO. 10

Answer the following only if you unanimously answered "Yes" to Question No. 1 or Question No. 3.

Do you find by clear and convincing evidence that Kahn committed the conduct you found in answer to Question No. 1 or Question No. 3 either maliciously, fraudulently or through gross neglect?

> To answer "Yes" to this question your answer must be unanimous. You may answer "No" if ten or more of you answer "No." Otherwise, do not answer the question at all.

> You are instructed that "clear and convincing evidence" means the degree of proof that produces a firm belief or conviction of the truth of the allegations sought to be established.

> "Malice" means a specific intent by a person to cause substantial injury or harm to Helvetia.

Answer "Yes" or "No:"     YES

## QUESTION NO. 11

Answer the following question only if you unanimously answered "Yes" to Question No. 10. Otherwise do not answer the following question.

You are instructed that the answer for this question must be unanimous. Otherwise, do not answer this question.

What sum of money, if any, do you find by clear and convincing evidence, if paid now in cash, should be awarded to Helvetia as exemplary damages, if any.

You are instructed that "exemplary damages" means an amount that you may in your discretion award as a penalty by way of punishment.

Factors to be considered in awarding exemplary damages, if any, are:

(1) the nature of the wrong;

(2) the character of the conduct involved;

(3) the degree of culpability;

(4) the situation and sensitivities of the parties concerned;

(5) the extent to which such conduct offends the public sense of justice and propriety;

(6) the Defendant's net worth.

Answer in dollars and cents, if any.

Amount:   $ _900,000_

JURY CHARGE                                                        Page 15

## QUESTION NO. 12

Answer the following question only if you unanimously answered "Yes" to Question No. 11. Otherwise do not answer the following question.

You are instructed that the answer for this question must be unanimous. Otherwise, do not answer this question.

Do you find, by clear and convincing evidence, that Kahn committed theft, if any, of property valued at $20,000 or greater?

> You are instructed that "theft" means that a person unlawfully appropriates property with the intent to deprive the owner of the property. Appropriating property is unlawful if it is without the owner's effective consent.

> > A person acts with intent with respect to the nature of his conduct or to a result of his conduct when it is the conscious objective or desire to engage in the conduct or cause the result.

> > "Deprive" means to withhold property from the owner permanently or for so extended a period of time that a major portion of the value or enjoyment of the property is lost to the owner.

> > "Owner" means one who has title to the property, possession of the property, whether lawful or not, or a greater right to possession of the property than Kahn or Paradiv.

> > "Property" means: (a) real property; (b) tangible or intangible personal property, including anything severed from land; or (c) a document, including money, that represents or embodies anything of value.

> > "Consent" means assent in fact, whether express or implied.

> > "Effective consent" includes consent by a person legally authorized to act for the owner. Consent is not effective if induced by deception or coercion.

Answer "Yes" or "No:"  Yes

JURY CHARGE

Page 16

## QUESTION NO. 13.

Answer the following question only if you unanimously answered ~~"Yes" to~~ Question No. 11. Otherwise do not answer the following question.

You are instructed that the answer for this question must be unanimous. Otherwise, do not answer this question.

Do you find, by clear and convincing evidence, that Kahn:

    A. intentionally misapplied the following owned by Helvetia in a manner that involved substantial risk of loss to Helvetia:

        a. money, or

        b. lots in the "Key Largo" subdivision; and

    B. that the value of the money or lots was $1,500 or greater?

> You are instructed that "misapply" means a person deals with property or money contrary to an agreement under which the person holds the property or money.
>
> Also, "substantial risk of loss" means it is more likely than not that loss will occur.
>
> A person acts with intent with respect to the nature of his conduct or to a result of his conduct when it is the conscious objective or desire to engage in the conduct or cause the result.

Answer "Yes" or "No:"    Yes

## QUESTION NO. 14

What is a reasonable fee for the necessary services of Helvetia's attorneys in this case?

In determining a reasonable and necessary fee you may consider the following factors:

- the time and labor involved;
- the novelty and difficulty of the questions involved;
- the skill required to perform the legal services properly;
- the likelihood that the acceptance of the particular employment will preclude other employment by the lawyer;
- the fee customarily charged in the locality for similar legal services;
- the amount involved and the results obtained;
- the time limitations imposed by the client or the circumstances;
- the nature and length of the professional relationship with the client;
- the experience, reputation, and ability of the lawyer or lawyers performing the services; and
- whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered.

Answer with an amount for each of the following:

a.  For preparation and trial:                    Answer:·    $ _280,000_

b.  For an appeal to the Court of Appeals:        Answer:     $ _20,000_

c.  For an appeal to the Supreme Court of Texas:  Answer:     $ _10,000_

## VERDICT CERTIFICATE

Check one:

___✓___ Our verdict is unanimous.  All twelve of us have agreed to each and every answer.  The presiding juror has signed the certificate for all twelve of us.

_____
Signature of Presiding Juror

_____ Our verdict is not unanimous.  Eleven of us have agreed to each and every answer and have signed the certificate below.

_____ Our verdict is not unanimous.  Ten of us have agreed to each and every answer and have signed the certificate below.

Signature                                              Name Printed

_____          _____

_____          _____

_____          _____

_____          _____

_____          _____

_____          _____

_____          _____

_____          _____

_____          _____

_____          _____

BY: _____
DEPUTY

14 MAY 21 PM 2:01

BEXAR COUNTY
DISTRICT CLERK
DONNA KAY McKINNEY
FILED

JURY CHARGE                                              Page 19

Document
scanned as filed.

**IT IS HEREBY ADJUDGED and DECREED that the below described is SO ORDERED.**

**Dated: October 17, 2014.**

_____

**CRAIG A. GARGOTTA**
**UNITED STATES BANKRUPTCY JUDGE**

_____

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **IN RE:** | ) | |
| | ) | |
| **BURTON M. KAHN,** | ) | **Bankruptcy Case No. 14-50980cag** |
| | ) | |
| **Debtor.** | ) | |
| | ) | **Chapter 7** |

**ORDER AUTHORIZING SALE OF**
**ALL NON-EXEMPT ASSETS, CLAIMS AND CAUSES OF ACTION**

On this date came on to be considered the Motion for Authority to Sell all non-exempt assets, claims and causes of action, filed by Johnny W. Thomas, Trustee. Due notice having been given and one objection having been overruled, the Court is of the opinion and so finds that the Movant's sale of all non-exempt assets, claims and causes of action attached herein, is in the best interest of the estate based on the reasons stated on the record which are incorporated by reference herein. As more fully explained on the record, the Court finds the debtor has shown no value or equity in the assets to be sold and therefore the Court further finds the debtor has no standing to object to this sale. The Court has determined there is no value to exceed the debts in

i:\jwt trustee cases\order authorizing sale of personal property3.docx

**EXHIBIT 3**

this bankruptcy, and the debtor has no pecuniary interest or value in the estate assets, with the result he has no standing to object to this sale. It is accordingly,

ORDERED that movant, Johnny W. Thomas, Trustee, be and is hereby authorized and directed to sell all property owned or claimed to be owned by the Debtor to include all the Debtor's non-exempt assets, claims and causes of action now existing or hereafter arising, all rights, titles and interests in any business or business enterprise that currently exist or has ever existed to Helvetia Asset Recovery, Inc. or its assigns, for $10,000.00. This property includes, but is not limited to, the following:

- All stock and any other interest in Joabert Development Company.

- All stock and any other interest in Helvetia Asset Recovery, Inc.

- All stock and any other interest in Terob, Inc.

- All stock and any other interest in any and all of the following businesses: (1) Contour Construction and Land Corporation; (2) Trail Construction Co.; (3) Paradiv Corporation; (4) Ideal Concepts of San Antonio; (5) Burton Kahn, P.E.; (6) Puerto Verde, Ltd.; (7) Key Largo Association, Inc. (8) Key Largo Home Owners Association; (9) Royal Crest Home Owners Association; (10) Maple Bush Ltd.; (11) Maple Bush Holding Ltd.

- All stock and any other interest in any and all businesses held by or through the debtor.

- All claims or causes of action held by or for the debtor, including but not limited to the following:

  o *Burton Kahn v. Joabert Development Co., et al.,* Cause No. 2013-CI-17012, Bexar County, Texas.

i:\jwt trustee cases\order authorizing sale of personal property3.docx

- *In re: A Purported Lien or Claim against Helvetia Asset Recovery, Inc.,* Cause No. 2013-CI-17516, Bexar County, Texas.

- *Paradiv Corporation, et al. v. ASCBLDR, et al.,* Cause No. 2013-CI-17889, Bexar County, Texas.

- *Helvetia Asset Recovery, Inc. v. Burton Kahn and Paradiv Corporation,* Cause No. 2013-CI-18355, Bexar County, Texas.

- *In re: A Purported Lien or Claim against Helvetia Asset Recovery, Inc.,* Cause No. 2013-CI-18394, Bexar County, Texas.

- *Burton Kahn v. John Ripley, et al.,* Cause No. 2014-CI00345, Bexar County, Texas.

- *Burton Kahn v. Helvetia Asset Recovery, Inc.,* 04-14-00012-CV, Fourth Court of Appeals, San Antonio, Texas.

- *In re*: *A Purported Lien or Claim against Helvetia Asset Recovery, Inc.,* No. 04-14-00258-CV, Fourth Court of Appeals, San Antonio, Texas.

- *Burton Kahn v. Helvetia Asset Recovery, Inc.,* No. 04-14-00319-CV, Fourth Court of Appeals, San Antonio, Texas.

- *In re: A Purported Lien or Claim against Helvetia Asset Recovery, Inc.,* 04-14-00357-CV, Fourth Court of Appeals, San Antonio, Texas.

- *Burton Kahn v. Helvetia Asset Recovery, Inc.,* No. 04-14-00569-CV, Fourth Court of Appeals, San Antonio, Texas.

- *Burton Kahn v. Helvetial Asset Recovery, Inc. and Puerto Verde Ltd. (Bahamian)* (sic), No. 14-821, Texas Supreme Court.

- *City of San Antonio v. Burton Kahn,* Bexar County, Texas.

It is further ORDERED that the sale shall be free and clear of any and all liens, claims, security interests and encumbrances, except ad valorem tax liens if any should be due, with all liens, claims, security interests and encumbrances to attach to the sales proceeds.

This Order shall be immediately effective and enforceable upon its entry, and the effectiveness of this Order shall not be stayed pursuant to Bankruptcy Rule 6004(h) or otherwise.

# # #


_____/S/_____
Johnny W. Thomas
SBN 19856500
Trustee
1153 E. Commerce St.
San Antonio, Texas 78205
Telephone 210 226 5888
Fax 210 226 6085

United States Bankruptcy Court
Western District of Texas

In re:                                                          Case No. 14-50980-cag
Burton M. Kahn                                                  Chapter 7
        Debtor

# CERTIFICATE OF NOTICE

District/off: 0542-5          User: sanchezc          Page 1 of 1          Date Rcvd: Oct 17, 2014
                              Form ID: pdfintp        Total Noticed: 2


Notice by first class mail was sent to the following persons/entities by the Bankruptcy Noticing Center on
Oct 19, 2014.
db              +Burton M. Kahn,    1706 Alpine Circle,    San Antonio, TX 78248-2104
aty             +W. Abigail Ottmers,    Haynes and Boone, LLP,    112 E Pecan St, Suite 1200,
                  San Antonio, TX 78205-1540

Notice by electronic transmission was sent to the following persons/entities by the Bankruptcy Noticing Center.
NONE.                                                                                  TOTAL: 0

             ***** BYPASSED RECIPIENTS *****
NONE.                                                                                  TOTAL: 0

Addresses marked '+' were corrected by inserting the ZIP or replacing an incorrect ZIP.
USPS regulations require that automation-compatible mail display the correct ZIP.


**I, Joseph Speetjens, declare under the penalty of perjury that I have sent the attached document to the above listed entities in the manner shown, and prepared the Certificate of Notice and that it is true and correct to the best of my information and belief.**

**Meeting of Creditor Notices only (Official Form 9): Pursuant to Fed. R. Bank. P. 2002(a)(1), a notice containing the complete Social Security Number (SSN) of the debtor(s) was furnished to all parties listed. This official court copy contains the redacted SSN as required by the bankruptcy rules and the Judiciary's privacy policies.**

Date: Oct 19, 2014                              Signature:  /s/Joseph Speetjens

---

# CM/ECF NOTICE OF ELECTRONIC FILING


The following persons/entities were sent notice through the court's CM/ECF electronic mail (Email)
system on October 17, 2014 at the address(es) listed below:
            Johnny W Thomas    on behalf of Trustee Johnny W Thomas 1thomas@prodigy.net,
             peggyjmorris@prodigy.net;jt@trustesolutions.net
            Johnny W Thomas    1thomas@prodigy.net,   peggyjmorris@prodigy.net;jt@trustesolutions.net
            Scott W. Everett    on behalf of Plaintiff    Helvetia Asset Recovery, Inc.
             scott.everett@haynesboone.com,   kim.morzak@haynesboone.com
            Scott W. Everett    on behalf of Creditor    Helvetia Asset Recovery, Inc.
             scott.everett@haynesboone.com,   kim.morzak@haynesboone.com
            United States Trustee - SA12    USTPRegion07.SN.ECF@usdoj.gov
                                                                            TOTAL: 5

## BILL OF SALE AND QUIT CLAIM DEED

**NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM ANY INSTRUMENT THAT TRANSFERS AN INTEREST IN REAL PROPERTY BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.**

STATE OF TEXAS        §
                             §      KNOW ALL PERSONS BY THESE PRESENTS:
COUNTY OF BEXAR     §

Effective October 17, 2014, the undersigned Chapter 7 Trustee for the Debtor, Burton Kahn, in the matter of *In re: Burton M. Kahn*, Case No. 14-50980G, United States Bankruptcy Court for the Western District of Texas, San Antonio Division, for valuable consideration in hand paid, does hereby sell and quit claim to Helvetia Asset Recovery, Inc. all of the Debtor's right title and interest in all of his non-exempt assets as and to the extent authorized by the attached Order Authorizing Sale of All Non-Exempt Assets, Claims and Causes of action, which is incorporated herein by reference for all purposes.

EXECUTED on the ___28___ day of October, 2014.

GRANTOR/TRUSTEE:

_____
Johnny W. Thomas

# EXHIBIT 4

STATE OF TEXAS                §
                              §
COUNTY OF BEXAR               §

BEFORE ME, the undersigned Notary Public, on this day personally appeared Johnny W. Thomas, personally known to me (or proven to me on the basis of satisfactory evidence) to be the person whose name is subscribed to the within instrument, and acknowledged to me that he executed the same in his authorized capacity as Chapter 7 Trustee for the Debtor, Burton Kahn, in the matter of *In re: Burton M. Kahn*, Case No. 14-50980G, United States Bankruptcy Court for the Western District of Texas, San Antonio Division, and that by his signature on the instrument the person executed the instrument.

SUBSCRIBED AND SWORN TO BEFORE ME this ___2 9+h___ day of October, 2014 to certify which witness my hand and seal of office.



Edward E Giles
My Commission Expires
02/14/2017
(PERSONALIZED SEAL)

Notary Public in and for the State of Texas

Burton Kahn
1706 Alpine Cir.,
San Antonio, TX 78248
210-408-9199
glentrail@yahoo.com
November 15, 2014

RECEIVED

NOV 1 7 2014

U.S. BANKRUPTCY COURT
BY_____DEPUTY

UNITED STATES BANKRUPTCY COURT
Western District of Texas
Hipolito F. Garcia Federal Bldg
and U.S. Courthouse
615 E. Houston Street, Suite 597
San Antonio Texas 78205

FILED

NOV 1 7 2014

U.S. BANKRUPTCY COURT
BY_____DEPUTY

Attn. Emilo Luna:

Re: Bankruptcy case number 14-50980-CAG Appeal

Case style Burton M .Kahn,

Dear Mr Luna:

The following items are designations to include in the record for the appeal of order authorizing sale of Kahn's property.

28 Motion To Disqualify Puerto Verde LTD To Have Direct Access To This Court filed by Debtor Burton M. Kahn (Attachments: # 1 Proposed Order)(Paez, Daniel)

45 Order Regarding (related document(s): 28 Motion To Disqualify Puerto Verde LTD To Have Direct Access To This Court filed by Debtor Burton M. Kahn (Attachments: # 1 Proposed Order)) (Order entered on 4/29/2014) (Paez, Daniel)

59 Trustee's Motion to Sell All Non-Exempt Assets, Claims and Causes of Action) (Order entered on 10/17/2014))) (Order entered on 11/5/2014)) Notice Date 11/07/2014. (Admi

61 Objection Filed by Debtor Burton M. Kahn (Attachments: # 1 SFR LOTS SALE #14-FORM 424 # 2 CONTINUATION OF EXHIBIT C -EXHIBIT F # 3 Proposed Order) (Paez, Daniel) (related document(s):

**EXHIBIT 5**

68 Supplemental Objection Filed by Debtor Burton M. Kahn (Attachments: # 1 Proposed Order) (Paez, Daniel) (related document(s):

70 Order Regarding (related document(s):

72 Motion to Reconsider Order Authorizing Sale of All Non-Exempt Assets, Claims and Causes of Action filed by Debtor Burton M. Kahn (Attachments: # 1 Proposed Order)(Luna, Emilio) (Related Document(s):

77 Order Regarding (related document(s): 72 Motion to Reconsider Order Authorizing Sale of All Non-Exempt Assets, Claims and Causes of Action filed by Debtor Burton M. Kahn (Attachments: # 1 Proposed Order)(Luna, Emilio) (Related Document(s): 70 Order Regarding (related document(s): 59 Trustee's Motion to Sell All Non-Exempt Assets, Claims and Causes of Action) (Order entered on 10/17/2014))) (Order entered on 11/5/2014) (Paez, Daniel)


73. Notice of Appeal

Exhibit at Haring-Appraisal of property.
*BILL OF SALE*
Enclosed please find two copies of the above.


Hank you very much,

Burton Kahn

Burton Kahn
1706 Alpine Cir.,
San Antonio, TX 78248
210-408-9199
glentrail@yahoo.com
December 12, 2014

UNITED STATES BANKRUPTCY COURT
Western District of Texas
Hipolito F. Garcia Federal Bldg
and U.S. Courthouse
*615* E. Houston Street, Suite 597
San Antonio Texas 78205
Attn.Daniel Paez:
Re: Bankruptcy case number 150980-CAG Appeal

**FILED**

DEC 1 2 2014

U.S. BANKRUPTCY COURT
BY _____ DEPUTY

Case style Burton M .Kahn,

Dear Mr Paez:

The following items are supplemental designations to include in the record for the appeal of order authorizing sale of Kahn's property.

28  Motion To Disqualify Puerto Verde LTD To Maintain a Lawsuit In Texas. t filed by Debtor Burton M. Kahn (Attachments: # 1 Proposed Order)(Paez, Daniel)

30 Motion To Disqualify Puerto Verde LTD To Have Direct Access To This Court filed by Debtor Burton M. Kahn (Attachments: # 1 Proposed Order)(Paez, Daniel

73. Notice of Appeal

Enclosed please find two copies of the above.

Thank you very much,

Burton Kahn

# EXHIBIT 6

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | **Chapter 7** |
| | § | |
| **BURTON M. KAHN** | § | **Case No. 14-50980-cag** |
| | § | |
| **Debtor.** | § | |

**APPELLEE'S DESIGNATION OF ADDITIONAL ITEMS**
**TO BE INCLUDED IN THE RECORD ON APPEAL PURSUANT**
**TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 8006**

Comes now Helvetia Asset Recovery, Inc. ("Helvetia" or "Appellee") and files this Designation of Additional Items to be Included in the Record on Appeal Pursuant to Federal Rule of Bankruptcy Procedure 8006.

On October 31, 2014, Debtor and Appellant Burton M. Kahn filed a Notice of Appeal [Docket No. 73] from the Bankruptcy Court's Order Authorizing Sale of All Non-Exempt Assets, Claims and Causes of Action [Docket No. 70]. On November 17, 2014, Appellant filed his Designation of Clerk's Record and Issues on Appeal [Docket No. 81]. Helvetia designates the following additional items to be included in the record on appeal.

| No. | Filing Date | Docket No. | Title of Document |
|---|---|---|---|
| 1 | 4/14/2014 | 2 | Debtor Burton Kahn's Voluntary Petition under Chapter 7 |
| 2 | 4/15/2014 | 6 | Amended List of Creditors and Amended Schedules and Without Summary with D, E, or F filed by Debtor Burton M. Kahn. (Modified on 4/16/2014. Modified on 4/23/2014.) |
| 3 | 4/17/2014 | 9 | Motion To Lift or Modify The Automatic Stay filed by Creditor Helvetia Asset Recovery, Inc. (Modified on 4/21/2014). |
| 4 | 4/17/2014 | 10 | Motion to Expedite Hearing filed by Creditor Helvetia Asset Recovery, Inc. |

# EXHIBIT 7

| 5 | 4/23/2014 | 27 | Response Filed by Debtor Burton M. Kahn to Motion To Lift or Modify The Automatic Stay. |
|---|---|---|---|
| 6 | 4/23/2014 | 32 | Amended Schedules and Summary: Amended Schedule(s): B,F, I and J. |
| 7 | 4/28/2014 | 39 | Order Regarding Motion To Lift or Modify The Automatic Stay |
| 8 | 7/9/2014 | 56 | Adversary case 14-05052. Complaint to Determine Dischargeability of Debt Pursuant to 11 U.S.C. § 523(a) filed by Helvetia Asset Recovery, Inc. |
| 9 | 7/11/2014 | 57 | Amended Schedules and Summary: (Amended Schedule(s): "B"). |
| 10 | 10/31/2014 | 74 | Emergency Motion for Stay of Proceedings Pending Appeal Pursuant to Bankruptcy Rule 8005 filed by Debtor Burton M. Kahn |
| 11 | 11/5/2014 | 77 | Order Regarding Motion to Reconsider Order Authorizing Sale of All Non-Exempt Assets, Claims and Causes of Action filed by Debtor Burton M. Kahn |
| 12 | 11/5/2014 | 78 | Order Regarding Emergency Motion for Stay of Proceedings Pending Appeal Pursuant to Bankruptcy Rule 8005 filed by Debtor Burton M. Kahn |
| 13 | 10/15/2014 | | Transcript of hearing on Trustee's Motion to Sell Non-Exempt Assets. |

Additionally, Helvetia designates the following items from the related Adversary Proceeding No. 14-05052-cag, *Helvetia Asset Recovery, Inc. v. Burton M. Kahn,* in the U.S. Bankruptcy Court for the Western District of Texas, San Antonio Division:

| No. | Filing Date | Docket No. | Title of Document |
|---|---|---|---|
| 14 | 07/09/2014 | 1 | Plaintiff's Complaint to Determine Dischargeability of Debt Pursuant to 11 U.S. C. § 523(a) |
| 15 | 10/23/2014 | 16 | Plaintiff's Motion for Summary Judgment – Plaintiff's Claims Against Burton M. Kahn are Not Dischargeable |

Dated: December 2, 2014

HAYNES AND BOONE, LLP

_/s/ Lisa S. Barkley_

Scott W. Everett, TBN 00796522
Werner A. Powers, TBN 16218800
2323 Victory Avenue, Suite 700
Dallas, Texas 75219
Telephone: 214.651.5000
Facsimile: 214.651.5940

Lisa S. Barkley, TBN 17851450
HAYNES AND BOONE, L.L.P.
112 E. Pecan, Suite 1200
San Antonio, Texas 78205
Telephone: 210.978-7427
Facsimile: 210-554-0427

scott.everett@haynesboone.com
werner.powers@haynesboone.com
lisa.barkley@haynesboone.com

ATTORNEYS FOR PLAINTIFF
HELVETIA ASSET RECOVERY, INC.

## CERTIFICATE OF SERVICE

This certifies that on December 2, 2014, a true and correct copy of the foregoing instrument was served via e-mail on the parties who receive electronic notice in this case pursuant to the Court's ECF filing system, and upon the parties identified below in the manner indicated, in accordance with the Federal Rules of Bankruptcy Procedure.

Burton M. Kahn                                        _Via email: glentrail@yahoo.com_
1706 Alpine Circle
San Antonio, Texas 78248
*Debtor*

Johnny Thomas                                        _Via email: 1thomas@prodigy.net_
St. Paul Square
1153 E. Commerce
San Antonio, Texas 78205
*Chapter 7 Trustee*

_/s/ Lisa S. Barkley_
Lisa S. Barkley

Case 5:14-cv-01109-HLH   Document 14-8   Filed 02/24/15   Page 1 of 1

**Bonnie Sudderth's Blog**
*Judge Bonnie Answers Courtroom FAQs...*

## When Can I Get a Trial De Novo?

Posted on August 28, 2011

In Texas, trials *de novo* are available in both civil and criminal cases, but only cases of certain types. Generally speaking, trial *de novo* is available to appeal cases which were originally heard in courts which are not courts "of record," meaning that no official record or transcript of the trial was taken. Texas justice of the peace courts are not courts of record, as well as *most* Texas municipal courts. (In the larger urban communities, it is more common for municipal courts to be courts of record. Check the enabling statute for the court or the city's charter to be certain.) So, generally speaking, appeals from these courts, which hear small claims actions and fine-only criminal cases, are *de novo*.

Usually a trial *de novo* from these justice and municipal courts would be heard by the county court which has jurisdiction to hear these appeals. In counties with a distinction between county courts at law and county criminal courts, small claims (civil) appeals would be tried *de novo* in the county court at law, which has civil jurisdiction, while a fine-only misdemeanor criminal case would be tried *de novo* in the county criminal court. In such appeals, an entirely new trial will be held as if the case had never been heard or decided in the lower court.

A trial *de novo* may also be available from certain administrative agency rulings, such as decisions from the Texas Workforce Commission. It is also sometimes available from rulings from certain magistrates and associate judges (judges who aren't the presiding judges of the court in which the case was filed). These types of *de novo* appeals are generally heard in at the district court level.

– Bonnie Sudderth, Judge of the 352nd District Court of Tarrant County, Texas

*Caveat: Trials de novo are not automatic and they are not guaranteed. A party desiring to appeal de novo must follow the applicable rules and deadlines to initiate the process, including filing a notice of appeal and, in many cases, the filing an appeal bond. There is usually a very narrow window of opportunity to pursue an appeal de novo – normally, just a few days. As always, it is advisable to consult an attorney if you want to seek a trial de novo.*

About these ads

**EXHIBIT 8**

○ Follow

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| IN RE: | § | Chapter 7 |
| | § | |
| BURTON M. KAHN | § | Case No. 14-50980-cag |
| | § | |
| Debtor. | § | |

**APPELLEE'S SUPPLEMENTAL DESIGNATION OF ADDITIONAL ITEMS
TO BE INCLUDED IN THE RECORD ON APPEAL PURSUANT
TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 8006**

Comes now Helvetia Asset Recovery, Inc. ("Helvetia" or "Appellee") and files this Supplemental Designation of Additional Items to be Included in the Record on Appeal Pursuant to Federal Rule of Bankruptcy Procedure 8006.

On December 2, 2014, Appellee filed its Designation of Additional items to be Included in the Record on Appeal Pursuant to Federal Rule of Bankruptcy Procedure 8006 [Docket No. 82], which is incorporated by reference herein.

Appellee now files its Supplemental Designation of Additional items to be Included in the Record on Appeal Pursuant to Federal Rule of Bankruptcy Procedure 8006 to include one additional item, Docket No. 47, Order regarding Motion to Disqualify Puerto Verde Ltd. to Maintain a Lawsuit in Texas, filed on April 29, 2014. On December 12, 2013 Debtor Burton Kahn supplemented his designation of items for his appeal by designating the corresponding Motion, but his designation omitted the Order.

In addition, docket entry number 84 has now been added the October 15, 2014 transcript of the hearing on the Trustee's Motion to Sell Non-Exempt Assets, a document which Appellee previously designated.

**EXHIBIT 9**

| No. | Filing Date | Docket No. | Title of Document |
|-----|-------------|------------|-------------------|
| 16  | 4/29/2014   | 47         | Order Regarding Motion to Disqualify Puerto Verde Ltd. to Maintain a Lawsuit in Texas |
| 14  | 10/15/2014  | 84         | Transcript of hearing on Trustee's Motion to Sell Non-Exempt Assets. |

Dated: December 15, 2014

HAYNES AND BOONE, LLP

_/s/ *Lisa S. Barkley*_____
Scott W. Everett, TBN 00796522
Werner A. Powers, TBN 16218800
2323 Victory Avenue, Suite 700
Dallas, Texas 75219
Telephone: 214.651.5000
Facsimile: 214.651.5940

Lisa S. Barkley, TBN 17851450
HAYNES AND BOONE, L.L.P.
112 E. Pecan, Suite 1200
San Antonio, Texas 78205
Telephone: 210.978-7427
Facsimile: 210-554-0427

scott.everett@haynesboone.com
werner.powers@haynesboone.com
lisa.barkley@haynesboone.com

ATTORNEYS FOR APPELLEE
HELVETIA ASSET RECOVERY, INC.

## <u>CERTIFICATE OF SERVICE</u>

This certifies that on December 15, 2014, a true and correct copy of the foregoing instrument was served via e-mail on the parties who receive electronic notice in this case pursuant to the Court's ECF filing system, and upon the parties identified below in the manner indicated, in accordance with the Federal Rules of Bankruptcy Procedure.

Burton M. Kahn                                                                 *Via email: glentrail@yahoo.com*
1706 Alpine Circle
San Antonio, Texas 78248
*Debtor*

Johnny Thomas                                                             *Via email: 1thomas@prodigy.net*
St. Paul Square
1153 E. Commerce
San Antonio, Texas 78205
*Chapter 7 Trustee*

                                      /s/ *Lisa S. Barkley*
                                      Lisa S. Barkley

FILED
14-0821
12/10/2014 5:29:41 PM
tex-3448609
SUPREME COURT OF TEXAS
BLAKE A. HAWTHORNE, CLERK

No 140821

# In the Supreme Court of Texas
# Austin, Texas

## BURTON KAHN
Petitioner

## V.

## HELVETIA ASSET RECOVERY INC.
## ( PUERTO VERDE LTD BAHAMIAN CORPORATION).
Respondent

## A PETITION FOR REVIEW_

From The Fourth Court Of Appeals At San Antonio
No  04-14-00012-CV

Burton Kahn Pro-se

██████████████████
████████████████████████
██████████████████
██████████████████████

# EXHIBIT 10

## IDENTITY OF PARTIES AND COUNSEL

Appellant certifies that the following is a complete list of the parties,

attorneys and any other person who has any interest in the outcome of this lawsuit:

**Attorneys for Appellants:**    Burton Kahn Pro-se

███████████████

██████████████████

███████████████

████████████████

████████████████████

                  Haynes and Boone LLP
Lisa Barkley
112 E. Pecan St. Suite 1200
San Antonio, TX 78205 – 1524
Tel (210) 978-7427
Fax (210) 0427
Lisa.Barkley@ haynesboone.com

                  Haynes & Boone, LLP
Werner A. Powers
Natalie DuBose
2323 Victory Avenue, Suite 700
Dallas, Texas 75219
Tel (214) 651-5487
Fax (214) 200-0468
Werner.Powers@hayneshoone.com

████████████████    Puerto Verde Ltd. (Bahamian)

████████████

███████               Hon. Martha . Tanner
224 th Judicial District Court
Bexar County, Texas

Previous Attorney Appellant

Appellant has represented himself pro se since December 14, 2013. His previous counsel was:

L. Terry George died on June 29, 2014.
Fort Worth, Texas


Jay R. Petterson
Jay R. Petterson, Attorney at *Law,* PLLC 12274
12274 Bandera Road, Suite 210
Helotes, Texas 78023

Kathleen A. Cassidy Goodman
Law Office of Kathleen Cassidy Goodman
12274 Bandera Road, Suite 210
Helotes, Texas 78023

Richard H. Sommer
8610 N. New Braunfels Ave., Suite
309 San Antonio, Texas 78217

Robert W. Wachsmuth
Zachary J. Fanucci
Robert Wachsmuth & Associates
9311 San Pedro, Suite 707
San Antonio, Texas 78216

iii

## RELATED LITIGATION

The following litigation matters are related to this appeal:

I.   APPEALS IN THE FOURTH COURT OF APPEALS:

   1. Appeal No. 04-14-00258-CV

      *In re a Purported Lien or Claim Against Helvetia Asset Recovery, Inc.* The Court dismissed this appeal on August 20, 2014.

   2. Appeal No. 04-14-00012-CV

      *Burton Kahn v. Helvetia Asset Recovery, Inc.* The Court dismissed this appeal on July 16, 2014 and denied Kahn's motion for en banc consideration on September *25,* 2014. Kahn's deadline for filing his Petition for Review to the Texas Supreme Court has been extended to December 10, 2014.

   3. Appeal No. 04-14-00319-CV

      *Burton Kahn v. Helvetia Asset Recovery, Inc.* The Court dismissed this appeal on July 9, 2014.

   4. Appeal No. 04-14-00569-CV

      *Burton Kahn v. Helvetia Asset Recovery, Inc.* This appeal is pending.

II.  BANKRUPTCY PROCEEDINGS, PENDING:

   1. *In re: Burton M. Kahn*, Debtor, Case No. *14-50980*, United States Bankruptcy Court for the Western District of Texas, San Antonio Division.

   2. *In re: Burton M. Kahn, Debtor, Helvetia Asset Recovery, Inc. v. Burton Al. Kahn,* Adversary Proceeding Case No. 14-5052, United States Bankruptcy Court for the Western District of Texas, San Antonio Division.

1

***IlL***   <u>PENDING BEXAR COUNTY DISTRICT COURT LITIGATION:</u>

## PENDING BEXAR COUNTY LITIGATION

1.   *Burton Kahn v. Joabert Development Company and John Ripley,* Cause No. 2013-CI-17012, 37th Judicial District, Bexar County, Texas.

2.   *Paradiv Corporation and [Helvetia Asset Recovery,Inc.] v. ACSBLDR and Robert Ripley,* Cause No. 2013-CI-17889, 166th Judicial District, Bexar County Texas. (Burton Kahn filed this action under Helvetia's name).

3.   *Burton Kahn v. Robert Ripley, et al.,* Cause No. 2014-CI-3453, 225th Judicial District, Bexar County, Texas. (This action was severed from Cause No. 2013-Cl-1 8355 in May 2014.)

iv

## TABLE OF CONTENTS

**Page**

IDENTITY OF PARTIES ……………………… . ...... …………………ii

RELATED LITIGATION…………………… . ...... ………………iv..
. .

TABLE OF CONTENTS……………………. . ...... …………………vi

INDEX OF AUTHORITIES……………….. . ...... …………………ix

STATEMENT OF THE CASE……………………. . ...... ………………xi .

STATEMENT OF JJURISDICTION……………… . ...... ………………xii .

RECORD REFERENCES……………………….. . ...... ………………xiii

ISSUES PRESENTED …… … … … … … … … … … … … … xiv

STATEMENTOF FACTS …………………………… ………… ………………3

      COURT OF APPEALS DISPOSITION …………………………… 3

      BACKGROUND ………………………………………… 3

      CLAIM OF OWNERSHIP ……………………………………....4

      PLAINTIFF'S EXHIBIT 9 WIRE INSTRUCTIONS …………………… 7

      MINUTES OIF AUGUST 8, 2007…………………………………....8

SUMMARY OF THE ARGUMENT………………………………………10

ARGUMENT AND AUTHORITIES…………………………………… 11

 APPELLATE REVIEW …………………………………………………5

**ISSUE 1** …………………………………………………………11

RESPONDENT HELVETIA ASSET RECOVERY INC.
("HELVETIA"), PUERTO  VERDE  LTD ( BAHAMIAN
CORPORATION) IS  A FOREIGN CORPORATION CANNOT
MAINTAIN A SUIT WITHOUT A CERTIFICATE OF AUTHORITY.

PUERTO VERDE'S POSITION……………………………….....11

 NOT REGISTERED …………………….   …..……………........12

 PRECEDENTS ON POINT………….…  …………..………….…14

NOTICE OF LACK OF CERTIFICATE OF AUTHORITY …….16

 EXCLUSIONS …………………………….………………….....16

 CONCLUSION ………………………….……………….……17

**ISSUE 2** ……………………………………………………  ..17

PUERTO VERDE LTD DOES NOT HAVE STANDING
TO MAINTAIN  LAW SUITS IN TEXAS AND TRIAL COURTS
DO NOT HAVE SUBJECT MATTER JURISDICTION

**ALTERNATIVE ISSUE A** ………………………………………..19

TRIAL COURT ABUSES DISCRETION BY ADMITTING
PLANTIIF'S EXHIBIT 9  WIRING INSTRUCTIONS (EXHIBIT F)
PLANTIIF'S EXHIBIT 39  KIT  ( EXHIBIT G)
PLANTIIF'S  7 STOCK CERTIFICATE  (EXHIBIT F)

PLAINTIFF'S EXHIBIT 9  WIRING INSTRUCTIONS
(EXHIBIT F)……………………………………………………19

CONCLUSION OF WIRING INSTRUCTION………………………22

EXHIBIT 39  KIT -  MINUTES  THE ORGANIZATION MEETING
DATED AUGUST 8, 2007  EXHIBIT G …………………….……22

CONCLUSION  MINUTES OF ORGANIZATION MINUTES ……..23

i v

EXHIBIT 7 STOCK CERTIFICATE 001
DATED AUGUST  20, 2007  EXHIBIT H...................................24

CONCLUSION STOCK CERTIFICATE ...................................25

CONCLUSION OF ISSUE ALTERNATE A...........................25

PRAYER'...........................................................................26

VERIFICATION.................................................................27

CERTIFICATE OF SERVICE..............................................27

APPENDIX .......................................................................28

EXHIBIT A. Temporary Injunction Order

EXHIBIT B . None

EXHIBIT C. Court of Appeals denial of En Banc Reconsideration;

    a.  Court of Appeals opinion;

    b.  Motion for  En Banc Reconsideration;

EXHIBIT D. Tex, Bus. Code 9.051

EXHIBIT E. Tex, Bus. Code 9.251

EXHIBIT F. Wiring Instructions Exhibit 9 dated September 17, 2007

EXHIBIT G.  Kit dated August  8, 2007

EXHIBIT  H. Stock Certificate 001 dated August 20, 2007

APPELLATE REVIEW  ...................................................................5

# INDEX OF AUTHORITIES

**Cases**

*Coastal Liquids Transportation, L.P,v. Harris County Transportation, L.P*
  46 S.W.3d  880 (Tex. 2001)................................................15

*Duncan v Smith,*
  393 S W 2d 798, 80304 (Tëx. 1 965))........................................20

*First Coppell Bank v. Smith,*
  742 S.W.2d 454, 460 (Tex.App.-Dallas 1987, no writ),......................21

*Fortune Prod. Co. v. Conoco, Inc.,*
  52 S.W.3d 671, 678 (Tex. 2000)...........................................21

*Guerrero v. Standard Alloys  Co.,*
  598 S.W.2d 656, 657-58 (Tex. Civ. App-Beaumont 1980,
  writ ref d n.r.e.))......................................................14

*Harris County Transportation, L.P,, vCoastal Liquids Transportation, L.P,*
  7 S.W.3d 183 (Tex.App.-Houston [1st Dist.] 1999),........................14

In *Conner v, Johnson,*
  02-03-31 6-cv (Tex App -Ft Worth 10-28-.2004)............................20

*In re Estate of Flores,*
  76 S.W.3d 624, 630 (Tex.App.-Corpus Christi 2002, no pet.) ..............21

*In RE Gonzalez,*
  04-14-00485-cv (Tex.App.-San Antonio 10-1-2014) ........................18

*Jay-Lor Text V. Pacific Compress Warehouse Company et al,*
  47 S.W.2d 738 (Tex.Civ.App.-Corpus Christi 1977 ,writ ref'd n.r.e) ....14

*Krishnan v. Ramirez,*
  42 S.W.3d 205, 224 (Tex. App-Corpus Christi 2001, pet. denied)....14

*Prudential Ins. Co. Of America V. J.R. Franclen,*
  710 S.W.2d 568 (Tex. 1986),..............................................15

*Rusk State Hosp. v. Black,*
 392 S.W.3d 88 (Tex. 2012) ……………………………………………..18

*Solano v. Landamerica Commw.,*
 02-07-152-cv (Tex.App.-Ft. Worth 12-4-2008)…………………………..21

*Taub v. Aquila S.W. Pipeline Corp.,*
 93 S.W.3d 451, 461 (Tex. App.—Houston [14th Dist.] 2002,
  no pet.))……………………………………………………………2,19

*Tex. Ass'n of Bus. v. Tex. Air Control Bd.,*
 852 S.W.2d 440  (Tex. 1993)…………………………………..1, 17, , 18, 19

*Travelers Companies. v. Wolfe*
 838 S.W.2d 708, 714 … … … … … … … … … … … … … … … … .. … … 20

*Valley Forge Christian College v. Americans United for Separation*
*of Church and State,*
 454 U.S. 464, 471-74, 102 S.Ct. 752, 757-60, 70 L.Ed.2d 700 (1982);….18

*Warth v. Seldin,*
 422 U.S. 490, 498, 95 S.Ct. 2197, 2204, 45 L.Ed.2d 343 (1975)…………18

**Statutes, Rules and Constitutional Provisions**

Appendix to Title 32 Corporation  Art\1302 [121'[642][56] Purposes ………… 12

TEX.CONST. art. II, § 1;…………………………………………………… 18

Tex. Bus. Org. Code Ann. § 9.051(2)(b) …………………….. 12, 13, 14, 16, 17

Tex. Bus. Org. Code Ann. § 9.251……………………………………….17

# STATEMENT OF CASE

*(1* Nature  the case:      The Courts not having a subjects jurisdiction over a case whereas the Respondent  a  Foreign Corporation that is not registered the  Secretary of State according to Texas Business Organization Code  § 9.051 and not ruling on the motion;

(2) Trail Court:      Hon. Karen H. Pozza;

(3) Designation :      2013-CI-18355 in the 407tth District in Bexar County;

*(4)*Trial Court  Disposition:      The trial court issued a Temporary Injunction order;

(5) Parties in  court of Appeals:      Appellant: Burton Kahn

      Appellee: Helvetia Asset Recovery Inc.

(6)District of the Court of Appeals:      Fourth District, Sam Antonio;

(7)Justices who participated;      Karen Angelini, Justice, Sandee Bryan Marion, Justice and Marialyn Barnard Justice. The author of the opinion for the court was Per Curiam.

(8) Citation of  Court of Appeals:      Kahn v. Helvetia Asset Recovery , Inc. 04-14-00012-CV (Tex.App.-San Antonio 7-16-2014);

((9)Disposition   Court of Appeals: Dismissed as Moot. Motion for En Banc Reconsideration  was  Denied.

xi

## STATEMENT OF JURISDICTION

The Texas Supreme Court has jurisdiction to review the Court of Appeals' final judgment in this case under Tex. Civ. Prac. &Rem. Code § 51.014 because this is an injunction case.

The Texas Supreme Court has jurisdiction to review the Court of Appeals' final judgment in this case under Rule 53.4, Texas Rules of Appellate Procedure because no ruling was made on  TEX. BUS. ORGS. CODE § 9.051.

The Texas Supreme Court has jurisdiction to review because the issue of not registering foreign corporations is of great importance to the jurisprudence of the State. *Id.* § 22.001(a)(6).

## RECORD REFERENCES

The Reporter's Record will be cited as

follows: [Vol.] RR [page]

The Clerk's Record will be cited as follows:

[Vol.] CR [page] Case 2013-CI-18355 Submitted ton Court of Appeals on January 14, 2014

[Vol.] CRA [page] Case 2013-CI-18355 Submitted ton Court of Appeals on October 3, 2014

[Vol.] CRB [page] Case 2013-CI-18394 Submitted ton Court of Appeals on May 23, 2013 (Year in Error should be 2014)


t 22,, 2007 pages 879-880

## ISSUES WAS PRESENTED

Issue 1)  A  Foreign Corporation that is not registered the  Secretary of State according to Texas Business Organization Code  § 9.051 may not maintain an action, suit, or proceeding in a court of this state, brought either directly by the entity or in the form of a derivative action in the entity's name, on a cause of action that arises out of the transaction of business in this state unless the foreign filing entity is registered in accordance with this chapter,

Issue  2 ) Subject matter jurisdiction occurs when a party has no standing and can be  heard for the first time on appeal.

Alternate A)  Abuse of Discretion of the Trial  Court when it admits evidence that  cannot be  legally sufficient to allow admission..

xiv

No 140821

# In the Supreme Court of Texas
# Austin, Texas

BURTON  KAHN
Petitioner

V.

HELVETIA ASSET RECOVERY INC.
( PUERTO VERDE LTD BAHAMIAN CORPORATION).
Respondent

A PETITION FOR REVIEW_

TO THE HONORABLE SUPREME COURT OF TEXAS

Registration for a foreign Corporation is a very important issue. Foreign Corporation can camouflaged their operations    and can  avoid taxes and enable   illegal activities such as money laundering   and terrorist activities.

In this case the foreign corporation,, Puerto Verde Ltd did not obtain a certificate of authority from the Secretary of State and has lost its standing. Standing is a component of subject matter jurisdiction. *Tex. Ass'n of Bus. v. Tex.*

1

*Air Control Bd.*, 852 S.W.2d 440, 444-45 (Tex. 1993). ] Because subject matter jurisdiction is essential to the authority of a court to decide a case, it cannot be waived and may be raised for the first time on appeal. "An absence of standing deprives the trial court of subject matter jurisdiction and renders any trial court action void." *H.G.*, 267 S.W.3d at 125 (*citing Taub v. Aquila S.W. Pipeline Corp.*, 93 S.W.3d 451, 461 (Tex. App.—Houston [14th Dist.] 2002, no pet.)). Thus all judgments in thus case and in other related casers are void.

2

## STATEMENT OF FACTS

### *COURT OF APPEALS DISPOSITION*

The Fourth Court of Appeals did not comment on the issue of Foreign corporation maintaining suit without a certificate of authority from the Secretary of State.

### *BACKGROUND*

Burton Kahn ("Kahn") ("Petitioner") and John Ripley founded the Joabert Development Company ("Joabert") in 2006, to develop and sell housing lots in Northeast San Antonio.  Petitioner did all the work and John supplied the funds. **EX 1RR P1.** Agreement was that John Ripley was to supply the funds and  the Petitioner to do all of the day-to-day were which included purchasing of the property, bookkeeping and  control of the funds,  engineering design subdivision, coordination with government officials for approval and  constructing  the infrastructure and roadway  according to the approved plans.

Petitioner never got any compensation for the eight years that he worked and never took a salary. **4RR 44 , 3RR 114**

John Ripley sold two shopping centers and the money went to a 1031 tax evasion exchange company in California and then the Exchange Company returned the funds (fewer commissions) to a Construction Corporation that I owned 100%, in which Kahn spent the money working on the Joabert  project .  **4RR 115**

3

John Ripley had another development named Key Largo, but it had of Lis Pendens on it and could not be used for funding. **2RR 33**

Kahn contacted an attorney Terry George ("George"), who did the paperwork for foreclosure and formed Texas Corporation named Helvetia. **5RR4**

John Ripley owed Falcon International Bank for a construction loan on  Key Largo. **1RR 33**

A Bahamian Corporation Maple Bush Holding Ltd ("Maple Bush") paid off the note Falcon International Bank  and then foreclosed on Key Largo. **1RR34**

Robert Ripley, brother of John Ripley  claimed he owned Maple Bush **2RR86**  but his name is not on any of  documents of Maple Bush. **2RR103.**

Maple Bush limited is a foreign Corporation not registered with the Secretary of State. **2RR 86**

Key Largo , the foreclosed property was sold to a newly formed holding corporation named Helvetia Asset Recovery, Inc. ("Helvetia").  **Ex1 RR P15, P17.**

Funds were earmarked to be used  to develop a subdivision known as well Royal Crest  (Joabert Property) in North east  San Antonio Texas., **1 CR 3 , 4RR 116**

The first phase of Joabert was within one month of completion, the partnership ended and lawsuits began (August 26, 2013) **1RR41, Ex1RRP21**

### *CLAIM OF OWNERSHIP*

4

Robert Ripley, John's brother was not an owner of Joabert. **2RR97** wanted to take the Helvetia property for himself.

On September 5, 2013 Robert Ripley sent Kahn an e-mail stating. Puerto Verde Ltd. was taking over Helvetia. **EX1RR P 24**

Puerto Verde Ltd. is a Bahamian Corporation not registered with the Secretary of State . **3RR 111**

Kahn realized that the shares of Helvetia had never been purchased and on September 7, 2013 Kahn paid to Helvetia $1000 for the shares **EX1 RR P 25**

On September 16, 2013 John Ripley and Robert Ripley went to Randolph Brooks Federal Credit Union and took approximately 50 pages of documents showing that they own the shares in Helvetia **3RR 81.** The Bank did not give them access.

On October 23, 2013, Puerto Verde Ltd. a Bahamian Corporation , claimed to be a 100% stockholder of Helvetia filed a lawsuit 2013-CI-17516 , **1CRA 69-108** in the style of "Action on Fraudulent Lien on Property." Robert Ripley swore that the documents in this suit were true, showing proof that Puerto Verde Ltd. is the owner of Helvetia . These documents were of Certificate of Formation **1CRA 75**, Minutes Of The Organizational Meeting Of The Board Of Directors Of Helvetia Asset Inc. A for-profit Corporation dated August 17, 2015 ("Original Minutes") **1CRA 76** and a stock certificate 001 dated August 20, 2007. **1CRA 81**

5

The Original Minutes stated that the offer of stock was to Puerto Verde Ltd. **1CRA 61** But the stock certificate stated Puerto Verde Inc. The stock certificate was signed by Kenneth Moore ("Moore") who was named president in the initial minutes. **1CRA 60**

On November 5, 2013, Kahn claiming 100% stockholder of Helvetia filed  a lawsuit 2013-CI-18394 , in the style of "Action on Fraudulent Lien on Property, Motion **1CRB 1,** Order 1**CRB 76,**

 The form of the stock certificate was not the correct form. 3**RR 30 , 3RR84**

Robert Ripley did not contact Terry George ("George ") the organizer and attorney for Helvetia for the proper form of certificate.  **2RR 54**

George testified that he never provided any copies of the minutes to Robert Ripley, . **5RR 20**

Robert Ripley testified that he did not have the form of the stock certificate so he made one up and faxed the certificate to his brother John Ripley from Toronto, Canada. **2RR 30**.  There are no fax markings on the certificate.

Ripley never contacted George until about` 90 days before hearing (September 2013), **5 RR 19**.

Moore testified that he never issued any shares, testified that he never sold any shares, testified that he never received any money for shares.  4**RR 136**

Moore testified that two of his signatures were Moore's but not the third signature. 4**RR 142**

Moore testified he was not the custodian of records **4 RR 137**

Moore testified only signed documents once at closing on December 6, 2**00**7 4**RR 144**

### PLAINTIFF'S EXHIBIT 9 WRING INSTRUCTIONS

On August 21, 2**00**7 the Title Company sent Kahn an email wiring instructions for the $1.2 million money trail exchange. **EX1RR P8**

Robert Ripley took this document and crossed out sender and in his own handwriting that stated "Please transfer 1.2 million USD to my escrow agent as outlined in these instructions. The funds will be used to capitalize a Texas holding (-hold) co. and in return Puerto Verde will receive 1**00**0 shares." **EX1RR P9**

Robert Ripley crossed out the name of the Title Company's sender and testified that this document was a receipt from the title company 3**RR 118**

Robert Ripley testified that the funds for the transfer came from the Ripley family trust. **2RR 12** Robert Ripley also testified that the funds for the transfer a computer company 3**RR 33**

There are no Bank records of this transfer and there are no records of the title company that this document was in existence and was given or received.

7

Robert Ripley testified that Scott Morrison ("Morrison") was the trust officer for the Bahamian bank **2RR 14**

**A**s of October 22, 2**0**07 Morrison **d**i**d** not have any **d**ocumentation on the ownership. **EX1 RR R1**

These instructions were never sent to Morrison  but Morrison sent the transfer fun**d**s. **EX1 RR R2**

Robert Ripley  testifie**d** that he owns both Puerto Ver**d**e Lt**d** an**d**  Maple Bush are not registere**d** Texas **2RR86**

On February 8, 2**0**08.  Robert Ripley's sent email to  Kahn again questioning ownership **EX1 RR R2**.

Robert Ripley **d**oes not have the original stock certificate 3**RR  88** nor the receipt from the Title Company nor the minutes of the original meeting, that he claime**d** in his affi**d**avits of case 2**0**13-CI-17516 an**d** testimony previously cite**d** above.

### MINUTES OF AUGUST 8, 2007

Robert Ripley submitte**d** to the court Exhibit 39  **EX1RR P39** which he calle**d** a kit. **2RR37**

Robert Ripley claime**d** that was provi**d**e**d** by Mr. Terry George. **2RR37**

Exhibit 39 **EXHIBIT G** was comprise**d** of transmittal an**d** instruction letter, **EX1RR P39 p 5-p11;** By laws  **EX1RR P3 p 12 -p36** an**d** the Minutes Of The

8

Organizational Meeting Of The Board Of Directors Of Helvetia Asset Inc. A for-profit Corporation dated of August 8, 2,007. ("August 8, 2007 minutes"). **EX1RR P39 p 38-p42**

The transmittal does not have any information on who has sent it nor is there a signature but it does state to review and call writer if there are any changes. **EX1RR P39 p5**

The By laws **EX1RR P39 p 33** and August 8, 2007 minutes **EX1RR P39 p 42** have George's signature on dated August 8, 2007 as if these documents are final.

George testified that he never provided any copies to Robert Ripley. **5RR 20**

George testified that the Exhibit 39 **EXHIBIT G** was not his work. **5RR 23**

The shares to be issued to Puerto Verde, Inc. 1000. are written in pencil. **5RR 27-28**

Robert Ripley testified that he received Exhibit 39 **EXHIBIT G** by courier in Canada but does not have any envelope that it came in. **3RR 25**

Robert Ripley testified that this document was specially flown in to San Antonio from Canada for the injunction hearing. **2RR 37**

The bylaws state in pencil the offices to be 6751 Walzem, San Antonio, Texas 78239 which is different from the minutes of August 17, 2007 which has George's address. **5RR 32.**

9

Attorney George in his last words stated "39 ● I'm starting to wonder bout-about some criminal activity myself" **5RR 32**

## SUMMARY OF THE ARGUMENT

Puerto Verde Ltd.  a Bahamian Corporation has not complied with statute Tex. Bus. Org. Code Ann. § 9.051(b).  by not registering with the Secretary of State.  By not complying with the laws of registration, taxes are avoided and illegal activities such as money laundering  and terrorist activities are enabled.

This practice must stop.

10

## ARGUMENT AND AUTHORITIES \

## ISSUE 1

## RESPONDENT HELVETIA ASSET RECOVERY INC. ("HELVETIA"), PUERTO VERDE LTD ( BAHAMIAN CORPORATION) IS A FOREIGN CORPORATION CANNOT MAINTAIN A SUIT WITHOUT A CERTIFICATE OF AUTHORITY.

## PUERTO VERDE'S POSITION

Plaintiff's Verified Original Petition And Application For Temporary And Permanent Injunctive Relief states, "that Puerto Verde td. Acquired 100% and common stock of Helvetia for valuable consideration. **1CR1.**

Defendant's Original Answer, Alternative Defenses A, Verified Denials, Third Party Claims, Motion To Show Authority And Application For Temporary And Permanent Relief. States:

" Defendants deny that Robert Ripley ("Ripley") and Puerto Verde Ltd (" Puerto Verde") have the legal capacity or standing to bring suit on behalf of Helvetia. "

"Defendants deny that Ripley and/or Puerto Verde are entitled to recover capacity of Helvetia."

"Defendants deny by the genuineness of certificate 001 wherein Puerto Verde Inc. (and not Puerto Verde Ltd.) allegedly owns 1000 shares of Helvetia stock ."**1CR57**

11

There were no additional pleadings prior to the hearings on December 9, 2013 to December 11, 2013. Clearly the issue between parties is the ownership of the stock of Helvetia. Puerto Verde Ltd. was acting as a Corporation whose business was buying stock as per the Appendix to Title 32 Corporation Art\1302 [121'[642][56] Purposes

"The purpose for which private corporations may be formed...

> 50. To subscribe for, purchase, invest in, hold, own, assign, pledge and otherwise deal in and dispose of shares of capital stock, bonds, mortgages, debentures, notes and other securities, obligations, contracts and evidences of indebtedness of foreign or domestic corporations not competing with each other in the same line of business; provided the powers and authority herein conferred shall in no way affect any provision of the anti-trust laws of this State.

Puerto Verde Ltd. a Bahamian Corporation is using Helvetia to circumvent a statute Tex. Bus. Org. Code Ann. § 9.051(b). Puerto Verde Ltd. by not registering with the Secretary of State can circumvent Texas Franchise Taxes and other taxes.

### NOT REGISTERED

Puerto Verde Ltd. a Bahamian Corporation (who claims 100% share holder of Helvetia Asset Recovery Inc.) does not have a certificate of authority from the Secretary of State. **3RR86** The Appellee according to Tex. Bus. Org. Code Ann. § 9.051(b) cannot maintain a suit in Texas.

12

The purported shareholder of Helvetia Asset Recovery, Inc. is a foreign corporation and in order for it to maintain a suit he must get a certificate of authority. Tex. Bus. Org. Code Ann. § 9.051(b).

The   Tex. Bus. Org. Code Ann. § 9.051 states:

> § 9.051 BUS. ORG. Transacting Business or Maintaining Court Proceeding Without Registration
>
> (a) On application by the attorney general, a court may enjoin a foreign filing entity or the entity's agent from transacting business in this state if:
>
> (1) the entity is not registered in this state; or
>
> (2) the entity's registration is obtained on the basis of a false or misleading representation.
>
> (b) A foreign filing entity or the entity's legal representative may not maintain an action, suit, or proceeding in a court of this state, brought either directly by the entity or in the form of a derivative action in the entity's name, on a cause of action that arises out of the transaction of business in this state unless the foreign filing entity is registered in accordance with this chapter.

The issue in this case is who owns the stock of Helvetia, Puerto Verde Ltd. or  Kahn.   Puerto Verde Ltd. has  brought this action as a derivative in the entity's name  of Helvetia Asset Recovery, Inc.,  The filing is styled as Plaintiff , Helvetia but the real Plaintiff is Puerto Verde Ltd .  The legal effect of a pleading in Texas is not determined by its style or name, but by its contentions and purpose."

*Becker,* citing *Krishnan v. Ramirez,* 42 S.W.3d 205, 224 (Tex. App-Corpus

13

Christi 2001, pet. denied) (quoting *Guerrero v. Standard Alloys   Co.*, 598 S.W.2d *656*, 657-58 (Tex. Civ. App-Beaumont 1980, writ ref d n.r.e.)). Puerto Verde Ltd has filed a First Amended Emergency Motion and entitled itself, Intervenor in case number 2013 –CI-18394 **11CRC 116**  This is in direct violation of Tex. Bus. Org. Code Ann. § 9.051(2)(b) because Puerto Verde Ltd . is a foreign corporation without a certificate of authority.

## PRECEDENTS ON POINT

### I

In *Jay-Lor Text V. Pacific Compress Warehouse Company et al*, 547 S.W.2d 738 (Tex.Civ.App.-Corpus Christi 1977 ,writ ref'd n.r.e)  Pacific Compress Warehouse Company was a foreign Corporation that did not have a certificate of authority.  The court found that Pacific Compress Warehouse Companies was not allowed to maintain a suit and judgment was reversed.

### II

In *Harris County Transportation, L.P,, V. Coastal Liquids Transportation, L.P*, 7 S.W.3d 183 (Tex.App.-Houston [1st Dist.] 1999),  Coastal Liquids Transportation LP ("Coastal") was a foreign limited partnership that did not have a certificate of authority.  Coastal claimed it would is exempt because it was defensive in action. Costal filed to Secretary of State in June 1995.  The district court rendered judgment for the Harris County Appraisal District ("District") for

14

the 1994 tax year and rendered judgment for Coastal for the 1995 tax year. The appellate court affirmed the judgment of the trial court. Both parties appealed to the Supreme Court.

In *Coastal Liquids Transportation, L.P,V. Harris County Transportation, L.P*, 46 S.W.3d 880 (Tex. 2001) The Supreme Court did not agree with the Appellate Court, that Costal action was defensive because Coastal did not have the capacity to file suit. The Supreme Court affirmed the court of appeals' judgment for tax year 1994, reverse the court of appeals' judgment for tax year 1995, and render judgment that Coastal take nothing. Thus sustaining the need to have a certificate of authority.

### III

In *Prudential Ins. Co. Of America V. J.R. Franclen*, 710 S.W.2d 568 (Tex. 1986), Franclen a foreign Corporation did not have to a certificate of authority. The trial Court allowed Franclen 6 months to get a certificate. Franclen was beyond the statute of limitations and the trial court rendered final judgment dismissing the action of Franclen with prejudice. The court of appeals in an unpublished opinion reversed the trial courts judgment but did so on the ground that Franclen's acquisition of a certificate of authority related back to the time the suit was filed. The Supreme Court reversed the judgment of the court of appeals and affirmed the judgment of the trial court.

15

## NOTICE OF LACK OF CERTIFICATE OF AUTHORITY

Respondent has had noticed that Petitioner has complained about the lack of the certificate of authority since November 26, 2013 at Hearing for Motion for Continuance.  Petitioner filed a verified Defendant's Original Answer Affirmative Defenses Verified Denials Third-Party Claims Motion To Show Authority And Application For Temporary And Permanent Injunction Relief on December 2, 2013. **1CR 57** "It is believed that Robert Ripley is the sole owner of Puerto Verde, Ltd. Bahamas Corporation not authorized to conduct business in the State.  of Texas."    The original answer may consist of the motions to transfer venue, pleas to the jurisdiction in abatement of any other... Tex. R. Civ. P. R. Rule 85.  At the Temporary Injunction Hearing on December of 9, 2013 to December 11, 2013 a request for judicial notice was registered regarding Puerto Verde Ltd. not having a certificate of authority. **3CR 111.  113**   Many times Petitioner has noticed Respondent in court that a certificate of authority is a requirement to maintain a suit in Texas.  Respondent has ignored all these warnings and intentionally did not obtain the certificate of authority and therefore Respondent has waived any consideration.

## EXCLUSIONS

16

Tex. Bus. Org. Code Ann. § 9.251 lists activities not constituting transacting business in this state for purposes of this chapter,. Puerto Verde Ltd. does not fall under any of these activities because it initiated the suit so that was not defending.

## CONCLUSION

By not complying with the laws of registration, taxes are avoided and illegal activities such as money laundering and terrorist activities are enabled.

### ISSUE 2
### PUERTO VERDE LTD DOES NOT HAVE STANDING TO MAINTAIN LAW SUITS IN TEXAS AND TRIAL COURTS DO NOT HAVE SUBJECT MATTER JURISDICTION

Puerto Verde Ltd did not obtain a certificate of authority from the Secretary of State and has lost its standing According to Tex. Bus. Org. Code Ann. § 9.051(b). A foreign filing entity or the entity's legal representative may not maintain an action, suit, or proceeding in a court of this state, brought either directly by the entity or in the form of a derivative action in the entity's name, on a cause of action that arises out of the transaction of business in this state unless the foreign filing entity is registered in accordance with this chapter.

. Standing is a component of subject matter jurisdiction, In. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440 (Tex. 1993) states:

> *"I. Standing* Before we reach the merits of this case, we
> first consider the matter of the trial court's jurisdiction, as
> well as our own; specifically we determine whether TAB
> has standing to challenge the statutes and regulations in

17

question. Because TAB's standing to bring this action is not readily apparent, and because our jurisdiction as well as that of the trial court depends on this issue, we requested supplemental briefing on standing at the oral argument of this case. In response, the parties insist that any question of standing has been waived in the trial court and cannot be raised by the court for the first time on appeal. We disagree. Subject matter jurisdiction is essential to the authority of a court to decide a case. Standing is implicit in the concept of subject matter jurisdiction. The standing requirement stems from two limitations on subject matter jurisdiction: the separation of powers doctrine and, in Texas, the open courts provision. Subject matter jurisdiction s never presumed and cannot be waived.[fn5] One limit on courts' jurisdiction under both the state and federal constitutions is the separation of powers doctrine. *See* TEX.CONST. art. II, § 1; *Valley Forge Christian College v. Americans United for Separation of Church and State,* 454 U.S. 464, 471-74, 102 S.Ct. 752, 757-60, 70 L.Ed.2d 700 (1982); *Warth v. Seldin,* 422 U.S. 490, 498, 95 S.Ct. 2197, 2204, 45 L.Ed.2d 343 (1975)"\

In *Rusk State Hosp. v. Black,* 392 S.W.3d 88 (Tex. 2012) the issue of whether

subject matter jurisdiction  can re raised for the first time on appeal states:

"[T]he court [of appeals] concluded that standing and ripeness were not properly preserved for its review. We disagree. We decided in [*Texas Association of Business v. Texas Air Control Board,* 852 S.W.2d 440, 445 (Tex.1993)] that because subject matter jurisdiction is essential to the authority of a court to decide a case, it cannot be waived and may be raised for the first time on appeal."

18

The trial court did not rule on the issue of foreign Corporation not being able to maintain a lawsuit to Texas several judgments and occur.  These judgments are void as per  *In RE Gonzalez*, 04-14-00485-cv (Tex.App.-San Antonio 10-1-2014)

> "Standing is a component of subject matter jurisdiction. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 444-45 (Tex. 1993). "An absence of standing deprives the trial court of subject matter jurisdiction and renders any trial court action void." *H.G.*, 267 S.W.3d at 125 (*citing Taub v. Aquila S.W. Pipeline Corp.*, 93 S.W.3d 451, 461 (Tex. App.—Houston [14th Dist.] 2002, no pet.))."

Because subject matter jurisdiction is essential to the authority of a court to decide a case, it cannot be waived and may be raised for the first time on appeal. "An absence of standing deprives the trial court of subject matter jurisdiction and renders any trial court action void." *H.G.*, 267 S.W.3d at 125 (*citing Taub v. Aquila S.W. Pipeline Corp.*, 93 S.W.3d 451, 461 (Tex. App.—Houston [14th Dist.] 2002, no pet.)). Thus all judgments in thus case and in other related casers are void.

**ALTERNATIVE ISSUE A**
**TRIAL COURT ABUSES DISCRETION BY ADMITTING**
**PLANTIIF'S EXHIBIT 9  WIRING INSTRUCTIONS (EXHIBIT F)**
**PLANTIIF'S EXHIBIT 39  KIT  ( EXHIBIT G)**
**PLANTIIF'S  7 STOCK CERTIFICATE  (EXHIBIT F)**

**I**

**PLAINTIFF'S EXHIBIT 9  WIRING INSTRUCTIONS**
**(EXHIBIT F)**

19

Robert Ripley claims that he received a receipt 3**RR 118** from the Land America Lawyers Title of San Antonio ("Title Company") for $1.2 million and payment of $1,000 for shares in a Hold co on September 17, 2007 2**RR 14** **EX1RR P9 EXHIBIT F.** This receipt is written on a Tile Company 's email of August 21, 2013. Robert Ripley crossed out the senders Mary Ellen Gonzales. The document does not state who received it. If it is wiring instructions why would the title company give a receipt?. Who in the title company gave this receipt? Who did these wiring instruction go to? If its instructions to somebody, why does Robert Ripley have the original?

When **EXHIBIT F** was submitted to the Court it was objected by Petitioners attorney Robert Wachsmuth on the grounds of hearsay and authenticity. Afterward Respondent's attorney Werner Powers asked "this is your handwriting. Right? Answer by Robert Ripley was "That is my handwriting. The court then admitted the document. **2RR 14** This document was written on Title Company s email on August 21, 2007 and the document was handwritten on September 17, 2007. The self serving handwriting, does not make the document authentic. .

In *Conner v, Johnson,* 02-03-31 6-cv (Tex App -Ft Worth 10-28-.2004)

> "*The* facts: stated :should not be. self-serving.
> *Travelers Companies. v. Wolfe* 838 S.W.2d 708, 714
> *(citing Duncan v Smith,* 393 S W 2d 798, 80304 (Tëx. 1
> 965)) (holding that not only should the statement be
> against interest but also that the "facts stated" should be

20

aghast interest because that increases the. likelihood of. its truth)

The document **EXHIBIT F** was not presented in 2013-Cl-17516 as an exhibit to show Ownership. Ownership was questioned by Robert Ripley in a email dated February 8, 2008 .**EX1RR R2**  The Banker Scott Morrison, **2RR 14** who issued the $1.2 million transfer on September 17, 2007 but  on  October 22, 2007 did not  have any documentation as to the ownership of the stock of Helvetia . **EX1RR R1**    If Morrison did not have any documentation , then Morrison did not get  **EXHIBIT F.**  Robert Ripley testified that the funds came from a computer company. 3 **RR33**, Robert Ripley testified that the funds came from the Ripley family trust.**2RR12**,

It **EXHIBIT F** is proof  of ownership, then the stock certificate mentioned above must be  forgery.  There were only 1000 shares available so there can be only one sale.

In *Solano v. Landamerica Commw.*, 02-07-152-cv (Tex.App.-Ft. Worth 12-4-2008)  states:

> If a person signs another's name to a document with authority to do so, there is no forgery. *See In re Estate of Flores*, 76 S.W.3d 624, 630 (Tex.App.-Corpus Christi 2002, no pet.) (explaining that "forgery is defined as altering, making, completing, executing, or authenticating a writing so that it purports to be the act of another who did not authorize that act"); *First Coppell Bank v. Smith*, 742 S.W.2d 454, 460 (Tex.App.-Dallas 1987, no writ), *overruled on other grounds, Fortune*

21

*Prod. Co. v. Conoco, Inc.*, 52 S.W.3d 671, 678 (Tex. 2000) (concluding that forgery was established because the witness testified "unequivocally that she did not authorize anyone to sign her name to the deed of trust");

In this case the stock certificate **14   EX1RR P9   EXHIBIT F** was altered by placing a signature that was

Moore's and thus is a forgery.

## CONCLUSION OF WIRING INSTRUCTION

This document **EXHIBIT F** is completely self-serving combined with the conflicting evidence exhibited  should not have been admitted by the Court due to authenticity.  The trial court abused  its discretion by allowing **EXHIBIT F** to be in evidence and has caused an improper judgment of the Temporary Injunction. Hearing of  December 9-11,2013 and other rulings that followed the myriad  of cases.

## II
## EXHIBIT 39  KIT -  MINUTES  THE ORGANIZATION MEETING
## DATED AUGUST 8, 2007
## EXHIBIT G

Robert Ripley  submitted to the court Exhibit 39 **EXHIBITG, EX1RR P39** , **3RR29** which he called a kit. Ripley claimed that was provided by Mr. Terry George.  **2RR37** George testified that he never provided any copies to Robert Ripley.   **5RR 20** George testified that Exhibit 39 **EXHIBIT G** was not his work.

**5RR 23** Exhibit 39 **EXHIBIT G** was comprised of an instructional transmittal

22

letter **EX1RR P39  p4** , By Laws **EX1RR P39  p 1** and the initial meeting minutes of August 8, 2,007. **EX1RR P39 p38**

The transmittal does not have any information on who has sent it nor a signature but it does state to review and call if there are any changes.

The By Laws and initial minutes have George's signature  dated August 8, 2007 as if to make these documents  final. George testified that the signatures were not his. **5RR 27**   George testified  the book (kit) and form George never seen. **5RR 23**

The bylaws state in pencil the offices to be 6751 Walzem, San Antonio, Texas 78239,  which is different from the minutes of August 17, 2007 which has George's address., of  1715 Hadbury Lane, Scan Antonio, Texas 78248  **5RR 388.**

The shares to be issued to Puerto Verde, Inc. 1000. is written in pencil .

**5RR 27-28** , **EXHIBIT G p40**  Robert Ripley  testified that he received Exhibit 39 **EXHIBIT G** by courier in Canada  but does not have any envelope that it came in. **3RR 25**   Ripley testified that this document was specially flown in to San Antonio from Canada for the injunction hearing. **2RR37**

Exhibit 39 **EXHIBIT G** was objected  for form and authenticity. **3RR 28** Exhibit 39 **EXHIBIT G**  was admitted.**3RR 29**

### CONCLUSION  MINUTES OF ORGANIZATION MINUTESE

23

The trial court has admitted to versions of the minutes of the e organizational meeting.  One dated August 8, 2007 the other dated August 17, 2007. The author was George for both these versions and George testified that the offering any 2007 was not his work.  Besides the variation and insertions  in pencil the \ Exhibit 39 **EXHIBIT G** was an abuse of discretion and should not have been admitted .

## III

### EXHIBIT 7 STOCK CERTIFICATE 001
### DATED AUGUST  20, 2007
### EXHIBIT H

Robert Ripley claims that he purchased the shares for Helvetia from Moore on August 20, 2007. **2RR 35**    Robert Ripley's claim is based on the stock certificate.  **EX1RR P7  EXHIBIT H**.  **EXHIBIT H**  was offered.  Petitioner objection was authenticity and forgery but it was admitted . **2RR 35**

Robert Ripley  claims that he did not have correct form of certificate **3RR 30, 3RR 84**  so he made one on his computer 3**RR 30**  and did not contact George the originator and attorney of Helvetia. **3RR 54**

Robert  Ripley who was in Canada then faxed the blank certificate which he had just created to his brother John  in San Antonio. **2RR 30**  There are no fax documentation on the certificate { similar to the fax sent by Respondent  Secretary of State.}1**1CRB 52,**   Robert Ripley then claims that he was faxed back the

24

certificate after Moore signed the certificate but does not have the original. **3RR 88** Again there are no fax documentation marks on the certificate.

Moore testified that he did not issue any stock. 4**RR 136** Moore testified that he did not get any money. 4**RR 136** Moore testified that two of the three signatures on his but not the third signature. 4**RR 142** Moore testified that he was not the custodian of records which the stock certificate stated he was. **4RR 137** .

The name on the site certificate is Puerto Verde Inc, yet Ripley is claiming that the owner is Puerto Verde Ltd.

The trial court has admitted to stock certificate 001 **EXHIBIT H** over the objection of authenticity.  The testimony shows that the  inconsistencies about this document  is not authentic and the trial court abuses discretion for admitting the document and using it as legally sufficient evidence.

## CONCLUSION STOCK CERTIFICATE

Documentation of the stock certificate:

Robert Ripley claimed that he faxed without faxed  documentation on the form that  was not according to the official minutes to his brother John  Ripley who had Moore sign and issue the certificate that Moore claimed he never issued with 3 signatures of which only 2 were  Moore's,  This contrary evidence cannot be legally sufficient to allow admission,

## CONCLUSION OF ALTERNATE A

Trial Court abused its discretion by admitting the Wiring Instructions, Minutes Of The Meeting Kit, and Stocks Certificate no. 001. The admitting these documents has caused harm as a Sanction Order was made claiming that Puerto Verde Ltd. Was the owner of the shares of Helvetia without having a trial on the merits. A jury trial was conducted but collateral estoppel from the Sanctioning Hearing eliminated the trial on the merits and only allow the damages. Being the jury trial concluded made the Appeal in the Fourth Court of Appeals for the temporary injunction to be moot.

## PRAYER

. For the reasons above Petitioner prays that this Hon. Supreme Court finds that Puerto Verde Ltd. Does not have standing to maintain a lawsuit in Texas because they have certificate of authority. Petitioner also prays that this Hon. Supreme Court vacate all rulings in regards to Puerto Verde Ltd. as the trial courts did not have subject matter jurisdiction.

Alternatively, Petitioner prays that this Hon. Supreme Court find that the trial court had abused its discretion by allowing and using documents which caused a string of wrongful decisions and that this court reversed and remand this case to a temporary injunction hearing based on this court's findings. That the sanction hearing in case 2013-CI-18394 and the jury trial of this case 2013-CI-18355 be reversed and remanded for a new trial.

26

Respectfully submitted,

Burton Kahn. Pro-se
1706 Alpine Cir.,
San Antonio, TX 78248
glentrail@yahoo.com
Tel (210) 408-9199

| | | |
|---|---|---|
| State of Texas | § | **VERIFICATION** |
| County of Bexar | § | Tex. Civ. Prac. & Rem. Code §132.001 |

My name is Burton Kahn. I am over the age of 18 and am fully competent to make this unsworn declaration. My date of birth is in August 1933 and my address is 1706 Alpine Circle, San Antonio, Texas 78248. I declare under penalty of perjury that the foregoing is true and correct. Executed in Bexar County, State of Texas on the   day of December 10, 2014.

## CERTIFICATE OF SERVICE

I certify that a copy of this Motion was served on Appellee, Helvetia Asset Recovery Inc. through counsel of record on December 10, 2014 by

Via Email Lisa. Barkley@ haynesboone.com
Haynes and Boone LLP
Lisa Barkley
112 E. Pecan St. Suite 1200
San Antonio, TX 78205 - 1524

Via E-mail Werner.Powers@hayneshoone.com
Werner A. Powers
Natalie DuBose
Haynes & Boone, LLP
2323 Victory Avenue, Suite 700
Dallas, Texas 75219

Burton Kahn Pro-se

27

**STATE OF TEXAS**   §

**BEXAR COUNTY**   §

## VERIFICATION

Before me, the undersigned notary on this day personally appeared Burton Kahn the affiant, a person whose identity is known to me. After I administered the oath to affiant, affiant testified:

"My name is Burton Kahn I am overv18 years of age, sound mind, and capable of making this affidavit I have read the brief attached hereto. The facts stated in a within my personal knowledge and are true and correct."

Burton Kahn

Sworn to and subscribed before me by Burton Kahn on December 10, 2014

GILBERT FRAGA, JR.
Notary Public
State of Texas
My Comm. Exp. 12-06-2016

Notary Public in and for
the State of Texas

My commission expires  12-6-16

FILE COPY

RE: Case No. 14-0821                    DATE: 2/13/2015
COA #: 04-14-00012-CV    TC#: 2013-CI-18355
STYLE: BURTON KAHN
   v. HELVETIA ASSET RECOVERY, INC.

     Today the Supreme Court of Texas denied the
petition for review in the above-referenced case.


                    MS. LISA S. BARKLEY
                    HAYNES AND BOONE, L.L.P.
                    112 EAST PECAN STREET, SUITE 1200
                    SAN ANTONIO, TX  78205


# EXHIBIT 11

FILE COPY

RE: Case No. 14-0821                    DATE: 2/13/2015
COA #: 04-14-00012-CV     TC#: 2013-CI-18355
STYLE: BURTON KAHN
   v. HELVETIA ASSET RECOVERY, INC.

     Today the Supreme Court of Texas denied the
petition for review in the above-referenced case.


                    MR. KEITH E. HOTTLE
                    CLERK, FOURTH COURT OF APPEALS
                    BEXAR COUNTY JUSTICE CENTER
                    300 DOLOROSA, STE. 3200
                    SAN ANTONIO, TX  78205

FILE COPY

```
     RE: Case No. 14-0821              DATE: 2/13/2015
     COA #: 04-14-00012-CV    TC#: 2013-CI-18355
STYLE:BURTON KAHN
   v. HELVETIA ASSET RECOVERY, INC.
```

Today the Supreme Court of Texas denied the petition for review in the above-referenced case.

```
                    MS. DONNA KAY MCKINNEY
                    BEXAR COUNTY DISTRICT CLERK
                    PAUL ELIZONDO TOWER
                    101 W. NUEVA, SUITE 217
                    SAN ANTONIO, TX  78205-3411
```

FILE COPY

```
     RE: Case No. 14-0821              DATE: 2/13/2015
     COA #: 04-14-00012-CV    TC#: 2013-CI-18355
STYLE:BURTON KAHN
   v. HELVETIA ASSET RECOVERY, INC.
```

Today the Supreme Court of Texas denied the petition for review in the above-referenced case.

```
              BURTON  KAHN
              1706 ALPINE CIR.
              SAN ANTONIO, TX  78248
```

# **Tab 05**

Judicial Finding of Fact and Conclusion of Law
Regarding a Document or Instrument Purporting to Create a Lien or Claim[5],
entered October 23, 2013

---

[5] Cause No. 2013-CI-17516; In Re: A Purported Lien or Claim Against Helvetia Asset Recovery, Inc.; In the 438th Judicial District Court, Bexar County, Texas

SCANNED





2013CI17516 -0438

MISC. DOCKET NO. 2013-CI-17516

| | | |
|---|---|---|
| IN RE: A PURPORTED LIEN | § | IN THE DISTRICT COURT OF BEXAR |
| OR CLAIM AGAINST HELVETIA | § | |
| ASSET RECOVERY, INC. | § | 438TH JUDICIAL DISTRICT |
| | § | |
| Property Owner | § | BEXAR COUNTY, TEXAS |
| | § | |

### JUDICIAL FINDING OF FACT AND CONCLUSION OF LAW REGARDING A DOCUMENT OR INSTRUMENT PURPORTING TO CREATE A LIEN OR CLAIM

On the 23rd day of __October__, 2013, in the above entitled and numbered cause, this Court reviewed a motion, verified by affidavit, of Robert Ripley and the documentation attached thereto. Additionally, the Court reviewed the "Warranty Deed" and "Correction Warranty Deed" attached hereto. No testimony was taken from any party, nor was there any notice of the Court's review, the Court having made the determination that a decision could be made solely on review of the documentation under the authority vested in the Court under Subchapter J, Chapter 51 of the Texas Government Code.

The Court finds as follows: the Warranty Deed, attached hereto as Exhibit 1; the Revised Warranty Deed, attached hereto as Exhibit 2; and the Correction Warranty Deed, attached hereto as Exhibit 3 (collectively, the "Warranty Deeds"), are NOT created by implied or express consent or agreement of the obligor, debtor, or the owner of the real property or by implied or express consent or agreement of an agent, fiduciary, or other representative of that person. The Warranty Deeds, attached hereto as Exhibits 1-3, do not grant Paradiv Corporation any interest in the property described therein.

The Court makes no finding as to any underlying claims of the parties involved, and expressly limits its finding of fact and conclusion of law to the review of a ministerial act. The

county clerk shall file this finding of fact and conclusion of law in the same class of records as the subject documentation or instrument was originally filed, and the court directs the county clerk to index it using the same names that were used in indexing the subject documentation or instrument.

Signed on this the 23rd day of October, 2013 .

_____
DISTRICT JUDGE
~~438 Judicial District~~
Bexar County, Texas

NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OF THE FOLLOWING INFORMATION FROM THIS INSTRUMENT BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVERS LICENSE NUMBER.

# WARRANTY DEED

**Grantor:**     **HELVETIA ASSET RECOVERY, INC.**
                 BEXAR COUNTY TEXAS

**GRANTEE :**     PARADIV CORPORATION
                 BEXAR COUNTY, TEXAS

PI2-20130205230-3

Consideration: TEN AND NO/100 DOLLARS and other good and valuable consideration

Property (including any improvements)
BLOCK 3 LOT1 , BLOCK 3 LOT 2 , BLOCK 3 LOT 3 , BLOCK 3 LOT 4 , BLOCK 3 LOT 5 .
BLOCK 3 LOT 6 , BLOCK 3 LOT 7 , BLOCK 3 LOT 8 , BLOCK 3 LOT 9 , BLOCK 3 LOT 10 ,
BLOCK 3 LOT 11 , BLOCK 3 LOT 12 , BLOCK 3 LOT 13 , BLOCK 3 LOT 16 , BLOCK 3 LOT 17 ,
BLOCK 3 LOT 18 , BLOCK 3 LOT 19

, BLOCK 4 LOT 1 , BLOCK 4 LOT 6 , BLOCK 4 LOT 7 , BLOCK 4 LOT 8 , BLOCK 4 LOT 9 ,
BLOCK 4 LOT 10 , BLOCK 4 LOT 11 , BLOCK 4 LOT 12 , BLOCK 4 LOT 13 , BLOCK 4 LOT 14 ,
BLOCK 4 LOT 15 , BLOCK4 LOT 16 , BLOCK 4 LOT 17 , BLOCK 4 LOT 18 , BLOCK 4 LOT 19 ,
BLOCK 4 LOT 20 , BLOCK 4 LOT 21 , BLOCK 4 LOT 22 , BLOCK 4 LOT 23 , BLOCK 4 LOT 24 ,
BLOCK 4 LOT 25 , BLOCK 4 LOT 26 , BLOCK 4 LOT 27 , BLOCK 4 LOT 28

, BLOCK 5 LOT 1 , BLOCK 5 LOT 2 , BLOCK 5 LOT 3 , BLOCK 5 LOT 4 , BLOCK 5 LOT 5 ,
BLOCK 5 LOT 6 , BLOCK 5 LOT 7 , BLOCK 5 LOT 8 , BLOCK 5 LOT 9 , BLOCK 5 LOT 10 ,
BLOCK 5 LOT 11 , BLOCK 5 LOT 12 , BLOCK 5 LOT 13 , BLOCK 5 LOT 14 , BLOCK 5 LOT 15 ,
BLOCK 5 LOT 16 , BLOCK 5 LOT 17 , BLOCK 5 LOT 18 BLOCK 5 LOT 19 , BLOCK 5 LOT 20 ,
BLOCK 5 LOT 21 , BLOCK 5 LOT 22 , BLOCK 5 LOT 23 , BLOCK 5 LOT 24 , BLOCK 5 LOT 25 ,
BLOCK 5 LOT 26 , BLOCK 5 LOT 27 , BLOCK 5 LOT 28 , BLOCK 5 LOT 29 , BLOCK 5 LOT 30 ,
BLOCK 5 LOT 31 , BLOCK 5 LOT 32 ,

BLOCK 6 LOT 1 , BLOCK 6 LOT 2 , BLOCK 6 LOT 3 , BLOCK 6 LOT 4 , BLOCK 6 LOT 5 ,
BLOCK 6 LOT 6 , BLOCK 6 LOT 7 , BLOCK 6 LOT 8 , BLOCK 6 LOT 9 , BLOCK 6 LOT 10 ,
BLOCK 6 LOT 11 , BLOCK 6 LOT 12 , BLOCK 6 LOT 13 , BLOCK 6 LOT 14 , BLOCK 6 LOT 15
, BLOCK 6 LOT 16 , BLOCK 6 LOT 17 , BLOCK 6 LOT 18 , BLOCK 6 LOT 19 , BLOCK 6 LOT 20 ,
BLOCK 6 LOT 21 , BLOCK 6 LOT 22 , BLOCK 6 LOT 23 , BLOCK 6 LOT 24 , BLOCK 6 LOT 25 ,
BLOCK 6 LOT 26 , BLOCK 6 LOT 27 , BLOCK 6 LOT 28 , BLOCK 6 LOT 29 , BLOCK 6 LOT 30 ,
BLOCK 6 LOT 31 , BLOCK 6 LOT 32 ,

BLOCK 7 LOT 1 , BLOCK 7 LOT 2 , BLOCK 7 LOT 3 , BLOCK 7 LOT 4 , BLOCK 7 LOT 5 ,
BLOCK 7 LOT 6 , BLOCK 7 LOT 7 , BLOCK 7 LOT 8 , BLOCK 7 LOT 9 , BLOCK 7 LOT 10 ,
BLOCK 7 LOT 11 , BLOCK 7 LOT 12 , BLOCK 7 LOT 13 , BLOCK 7 LOT 14 , BLOCK 7 LOT 15
, BLOCK 7 LOT 16 , BLOCK 7 LOT 17 , BLOCK 7 LOT 18 , BLOCK 7 LOT 19 , BLOCK 7 LOT 20 ,
BLOCK 7 LOT 21 , BLOCK 7 LOT 22 , BLOCK 7 LOT 23 , BLOCK 7 LOT 24 , BLOCK 7 LOT 25 ,
BLOCK 7 LOT 26 , BLOCK 7 LOT 27 , BLOCK 7 LOT 28 , BLOCK 7 LOT 42 , BLOCK 7 LOT 43 ,

Book 16367   Page 870   3pgs

EXHIBIT 1

BLOCK 7 LOT 44 , BLOCK 7 LOT 45 , BLOCK 7 LOT 46 , BLOCK 7 LOT 47 , BLOCK 7 LOT 48 , BLOCK 7 LOT 49 , BLOCK 7 LOT 50 , BLOCK 7 LOT 51 , BLOCK 7 LOT 52 , BLOCK 7 LOT 53 , BLOCK 7 LOT 54 , BLOCK 7 LOT 55 , BLOCK 7 LOT 56 , BLOCK 7 LOT 57 , BLOCK 7 LOT 58 , BLOCK 7 LOT 59 , BLOCK 7 LOT 60 , BLOCK 7 LOT 61 , BLOCK 7 LOT 62 , BLOCK 7 LOT 63 , BLOCK 7 LOT 64 , BLOCK 7 LOT 65 , BLOCK 7 LOT 66 , BLOCK 8 LOT 1 ,

BLOCK 8 LOT 2 , BLOCK 8 LOT 3 , BLOCK 8 LOT 4 , BLOCK 8 LOT 5 , BLOCK 8 LOT 6 , BLOCK 8 LOT 18 , BLOCK 8 LOT 19 , BLOCK 8 LOT 20 , BLOCK 8 LOT 21 , BLOCK 8 LOT 22 , BLOCK 8 LOT 23 , BLOCK 8 LOT 24 , BLOCK 8 LOT 25 , BLOCK 8 LOT 26 , BLOCK 8 LOT 27 , BLOCK 8 LOT 28 , BLOCK 8, LOT 29 , BLOCK 8, LOT 30 , BLOCK 8, LOT 31 , BLOCK 8, LOT 32 , BLOCK 8, LOT 33 , BLOCK 8, LOT 34 ,

BLOCK 9 LOT 1 , BLOCK 9 LOT 2 , BLOCK 9 LOT 3 , BLOCK 9 LOT 4 , BLOCK 9 LOT 5 , BLOCK 9 LOT 6 , BLOCK 9 LOT 7 , BLOCK 9 LOT 8, BLOCK 9 LOT 9 , BLOCK 9 LOT 10 , BLOCK 9 LOT 11 , BLOCK 9 LOT 12 , BLOCK 9 LOT 13 , BLOCK 9 LOT 14 , BLOCK 9 LOT 15 , BLOCK 9 LOT 16 , BLOCK 9 LOT 17 , BLOCK 9 LOT 18, , BLOCK 9 LOT 19 , BLOCK 9 LOT 20 , BLOCK 9 LOT 21 , BLOCK 9 LOT 22 , BLOCK 9 LOT 23 , BLOCK 9 LOT 24 , BLOCK 9 LOT 25 , BLOCK 9 LOT 26 , BLOCK 9 LOT 27 , BLOCK 9 LOT 28, BLOCK 9 LOT 29 , BLOCK 9 LOT 30 , BLOCK 9 LOT 31 , BLOCK 9 LOT 32 , BLOCK 9 LOT 33 , BLOCK 9 LOT 34 , KEY LARGO SUBDIVISION CB 05065 IN BEXAR COUNTY, TEXAS AS PLAT RECORDED IN VOLUME 9573 PAGE 13 Property Records, Bexar County, Texas.

RESERVATION From and Exceptions to Conveyance and Warranty:

Easements, rights-of-way, and prescriptive rights, whether of record or not; all presently recorded instruments, other than liens and conveyances, that affect the property; taxes for the current year, the payment of which Grantee assumes.

Grantor, for the consideration, receipt of which is acknowledged, and subject to the reservations from and exceptions to conveyance and warranty, grants, sells and conveys to Grantee the property, together with all and singular the rights and appurtenances thereto in any wise belonging to have and hold it to Grantee, Grantee's heirs, executor, administrators, successors or assigns forever. Grantor binds Grantor and Grantor's heirs, executors, administrators and successors to warrant and forever defend all and singular the property to Grantee and Grantee's heirs, executors; administrators, successors and assigns against every person whomsoever lawfully claiming or to claim the same or any part thereof, except as to the reservations from and exceptions to conveyance and warranty.

When the context requires, singular nouns and pronouns include the plural.

HELVETIA ASSET RECOVERY, INC.
BURTON KAHN, PRESIDENT
ACKNOWLEDGMENT

This instrument was acknowledged before me on September 30, 2013 by Burton Kahn, President, Helvetia Asset Recovery, Inc.

ALICIA A. HINOJOSA
My Commission Expires
June 16, 2014



Any provision herein which restricts the sale, or use of the described real property because of race is invalid and unenforceable under Federal law
STATE OF TEXAS, COUNTY OF BEXAR
I hereby Certify that this instrument was FILED in File Number Sequence on this date and at the time stamped hereon by me and was duly RECORDED in the Official Public Record of Real Property of Bexar County, Texas on:

## SEP 3 0 2013

COUNTY CLERK BEXAR COUNTY, TEXAS

Doc# 20130205231 Fees: $24.00
09/30/2013    3:21PM # Pages 3
Filed & Recorded in the Official
Public Records of   BEXAR COUNTY
GERARD C. RICKHOFF COUNTY CLERK

NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OF THE FOLLOWING INFORMATION FROM THIS INSTRUMENT BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVERS LICENSE NUMBER.

# ~~REVISED~~ WARRANTY DEED

**Grantor :**      HELVETIA ASSET RECOVERY, INC.
BEXAR COUNTY TEXAS

**GRANTEE :**      PARADIV CORPORATION
BEXAR COUNTY, TEXAS

Consideration: TEN AND NO/100 DOLLARS and other good and valuable consideration

Property (including any improvements)
BLOCK 3 LOT1 , BLOCK 3 LOT 2 , BLOCK 3 LOT 3 , BLOCK 3 LOT 4 , BLOCK 3 LOT 5 .
BLOCK 3 LOT 6 , BLOCK 3 LOT 7 , BLOCK 3 LOT 8 , BLOCK 3 LOT 9 , BLOCK 3 LOT 10 ,
BLOCK 3 LOT 11 , BLOCK 3 LOT 12 , BLOCK 3 LOT 13 , BLOCK 3 LOT 16 , BLOCK 3 LOT 17 ,
BLOCK 3 LOT 18 , BLOCK 3 LOT 19

, BLOCK 4 LOT 1 , BLOCK 4 LOT 6 , BLOCK 4 LOT 7 , BLOCK 4 LOT 8 , BLOCK 4 LOT 9 ,
BLOCK 4 LOT 10 , BLOCK 4 LOT 11 , BLOCK 4 LOT 12 , BLOCK 4 LOT 13 , BLOCK 4 LOT 14 ,
BLOCK 4 LOT 15 , BLOCK4 LOT 16 , BLOCK 4 LOT 17 , BLOCK 4 LOT 18 , BLOCK 4 LOT 19 ,
BLOCK 4 LOT 20 , BLOCK 4 LOT 21 , BLOCK 4 LOT 22 , BLOCK 4 LOT 23 , BLOCK 4 LOT 24 ,
BLOCK 4 LOT 25 , BLOCK 4 LOT 26 , BLOCK 4 LOT 27 , BLOCK 4 LOT 28

, BLOCK 5 LOT 1 , BLOCK 5 LOT 2 , BLOCK 5 LOT 3 , BLOCK 5 LOT 4 , BLOCK 5 LOT 5 ,
BLOCK 5 LOT 6 , BLOCK 5 LOT 7 , BLOCK 5 LOT 8 , BLOCK 5 LOT 9 , BLOCK 5 LOT 10 ,
BLOCK 5 LOT 11 , BLOCK 5 LOT 12 , BLOCK 5 LOT 13 , BLOCK 5 LOT 14 , BLOCK 5 LOT 15 ,
BLOCK 5 LOT 16 , BLOCK 5 LOT 17 , BLOCK 5 LOT 18 BLOCK 5 LOT 19 , BLOCK 5 LOT 20 ,
BLOCK 5 LOT 21 , BLOCK 5 LOT 22 , BLOCK 5 LOT 23 , BLOCK 5 LOT 24 , BLOCK 5 LOT 25 ,
BLOCK 5 LOT 26 , BLOCK 5 LOT 27 , BLOCK 5 LOT 28 , BLOCK 5 LOT 29 , BLOCK 5 LOT 30 ,
BLOCK 5 LOT 31 , BLOCK 5 LOT 32 ,

 BLOCK 6 LOT 1 , BLOCK 6 LOT 2 , BLOCK 6 LOT 3 , BLOCK 6 LOT 4 , BLOCK 6 LOT 5 ,
BLOCK 6 LOT 6 , BLOCK 6 LOT 7 , BLOCK 6 LOT 8 , BLOCK 6 LOT 9 , BLOCK 6 LOT 10 ,
BLOCK 6 LOT 11 , BLOCK 6 LOT 12 , BLOCK 6 LOT 13 , BLOCK 6 LOT 14 , BLOCK 6 LOT 15
, BLOCK 6 LOT 16 , BLOCK 6 LOT 17 , BLOCK 6 LOT 18 , BLOCK 6 LOT 19 , BLOCK 6 LOT 20 ,
BLOCK 6 LOT 21 , BLOCK 6 LOT 22 , BLOCK 6 LOT 23 , BLOCK 6 LOT 24 , BLOCK 6 LOT 25 ,
BLOCK 6 LOT 26 , BLOCK 6 LOT 27 , BLOCK 6 LOT 28 , BLOCK 6 LOT 29 , BLOCK 6 LOT 30 ,
BLOCK 6 LOT 31 , BLOCK 6 LOT 32 ,

 BLOCK 7 LOT 1 , BLOCK 7 LOT 2 , BLOCK 7 LOT 3 , BLOCK 7 LOT 4 , BLOCK 7 LOT 5 ,
BLOCK 7 LOT 6 , BLOCK 7 LOT 7 , BLOCK 7 LOT 8 , BLOCK 7 LOT 9 , BLOCK 7 LOT 10 ,
BLOCK 7 LOT 11 , BLOCK 7 LOT 12 , BLOCK 7 LOT 13 , BLOCK 7 LOT 14 , BLOCK 7 LOT 15
, BLOCK 7 LOT 16 , BLOCK 7 LOT 17 , BLOCK 7 LOT 18 , BLOCK 7 LOT 19 , BLOCK 7 LOT 20 ,
BLOCK 7 LOT 21 , BLOCK 7 LOT 22 , BLOCK 7 LOT 23 , BLOCK 7 LOT 24 , BLOCK 7 LOT 25 ,
BLOCK 7 LOT 26 , BLOCK 7 LOT 27 , BLOCK 7 LOT 28 , BLOCK 7 LOT 42 , BLOCK 7 LOT 43 ,

Book 16376   Page 1057   3pgs

EXHIBIT 2

BLOCK 7 LOT 44, BLOCK 7 LOT 45, BLOCK 7 LOT 46, BLOCK 7 LOT 47, BLOCK 7 LOT 48, BLOCK 7 LOT 49, BLOCK 7 LOT 50, BLOCK 7 LOT 51, BLOCK 7 LOT 52, BLOCK 7 LOT 53, BLOCK 7 LOT 54, BLOCK 7 LOT 55, BLOCK 7 LOT 56, BLOCK 7 LOT 57, BLOCK 7 LOT 58, BLOCK 7 LOT 59, BLOCK 7 LOT 60, BLOCK 7 LOT 61, BLOCK 7 LOT 62, BLOCK 7 LOT 63, BLOCK 7 LOT 64, BLOCK 7 LOT 65, BLOCK 7 LOT 66, BLOCK 8 LOT 1,

BLOCK 8 LOT 2, BLOCK 8 LOT 3, BLOCK 8 LOT 4, BLOCK 8 LOT 5, BLOCK 8 LOT 6, BLOCK 8 LOT 18, BLOCK 8 LOT 19, BLOCK 8 LOT 20, BLOCK 8 LOT 21, BLOCK 8 LOT 22, BLOCK 8 LOT 23, BLOCK 8 LOT 24, BLOCK 8 LOT 25, BLOCK 8 LOT 26, BLOCK 8 LOT 27, BLOCK 8 LOT 28, BLOCK 8, LOT 29, BLOCK 8, LOT 30, BLOCK 8, LOT 31, BLOCK 8, LOT 32, BLOCK 8, LOT 33, BLOCK 8, LOT 34,

BLOCK 9 LOT 1, BLOCK 9 LOT 2, BLOCK 9 LOT 3, BLOCK 9 LOT 4, BLOCK 9 LOT 5, BLOCK 9 LOT 6, BLOCK 9 LOT 7, BLOCK 9 LOT 8, BLOCK 9 LOT 9, BLOCK 9 LOT 10, BLOCK 9 LOT 11, BLOCK 9 LOT 12, BLOCK 9 LOT 13, BLOCK 9 LOT 14, BLOCK 9 LOT 15, BLOCK 9 LOT 16, BLOCK 9 LOT 17, BLOCK 9 LOT 18,, BLOCK 9 LOT 19, BLOCK 9 LOT 20, BLOCK 9 LOT 21, BLOCK 9 LOT 22, BLOCK 9 LOT 23, BLOCK 9 LOT 24, BLOCK 9 LOT 25, BLOCK 9 LOT 26, BLOCK 9 LOT 27, BLOCK 9 LOT 28, BLOCK 9 LOT 29, BLOCK 9 LOT 30, BLOCK 9 LOT 31, BLOCK 9 LOT 32, BLOCK 9 LOT 33, BLOCK 9 LOT 34, KEY LARGO SUBDIVISION CB 05065 IN BEXAR COUNTY, TEXAS AS PLAT RECORDED IN VOLUME 9573 PAGE 13 Property Records, Bexar County, Texas.

RESERVATION From and Exceptions to Conveyance and Warranty:

Easements, rights-of-way, and prescriptive rights, whether of record or not; all presently recorded instruments, other than liens and conveyances, that affect the property; taxes for the current year, the payment of which Grantee assumes.

Grantor, for the consideration, receipt of which is acknowledged, and subject to the reservations from and exceptions to conveyance and warranty, grants, sells and conveys to Grantee the property, together with all and singular the rights and appurtenances thereto in any wise belonging to have and hold it to Grantee, Grantee's heirs, executor, administrators, successors or assigns forever. Grantor binds Grantor and Grantor's heirs, executors, administrators and successors to warrant and forever defend all and singular the property to Grantee and Grantee's heirs, executors; administrators, successors and assigns against every person whomsoever lawfully claiming or to claim the same or any part thereof, except as to the reservations from and exceptions to conveyance and warranty.

When the context requires, singular nouns and pronouns include the plural.

HELVETIA ASSET RECOVERY, INC.
BURTON KAHN, PRESIDENT
ACKNOWLEDGMENT

This instrument was acknowledged before me on October 4, 2013 by Burton Kahn, President, Helvetia Asset Recovery, Inc.

ALICIA A. HINOJOSA
My Commission Expires
June 16, 2014



Any provision herein which restricts the sale, or use of the described real property because of race is invalid and unenforceable under Federal law
STATE OF TEXAS, COUNTY OF BEXAR
I hereby Certify that this instrument was FILED in File Number Sequence on this date and at the time stamped hereon by me and was duly RECORDED in the Official Public Record of Real Property of Bexar County, Texas on:

**OCT 4 2013**



COUNTY CLERK BEXAR COUNTY, TEXAS



Doc# 20138208748 Fees: $24.00
10/04/2013    12:38PM # Pages 3
Filed & Recorded in the Official
Public Records of  BEXAR COUNTY
GERARD C. RICKHOFF COUNTY CLERK

NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OF THE FOLLOWING INFORMATION FROM THIS INSTRUMENT BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVERS LICENSE NUMBER.

# CORRECTION
# WARRANTY DEED

Grantor: **HELVETIA ASSET RECOVERY, INC.**
BEXAR COUNTY TEXAS

GRANTEE: PARADIV CORPORATION
BEXAR COUNTY, TEXAS

P12-20130213342-3

Consideration: TEN AND NO/100 DOLLARS and other good and valuable consideration

Property (including any improvements)
BLOCK 3 LOT 1 , BLOCK 3 LOT 2 , BLOCK 3 LOT 3 , BLOCK 3 LOT 4 , BLOCK 3 LOT 5 .
BLOCK 3 LOT 6 , BLOCK 3 LOT 7 , BLOCK 3 LOT 8 , BLOCK 3 LOT 9 , BLOCK 3 LOT 10 ,
BLOCK 3 LOT 11 , BLOCK 3 LOT 12 , BLOCK 3 LOT 13 , BLOCK 3 LOT 16 , BLOCK 3 LOT 17 ,
BLOCK 3 LOT 18 , BLOCK 3 LOT 19

, BLOCK 4 LOT 1 , BLOCK 4 LOT 6 , BLOCK 4 LOT 7 , BLOCK 4 LOT 8 , BLOCK 4 LOT 9 ,
BLOCK 4 LOT 10 , BLOCK 4 LOT 11 , BLOCK 4 LOT 12 , BLOCK 4 LOT 13 , BLOCK 4 LOT 14 ,
BLOCK 4 LOT 15 , BLOCK 4 LOT 16 , BLOCK 4 LOT 17 , BLOCK 4 LOT 18 , BLOCK 4 LOT 19 ,
BLOCK 4 LOT 20 , BLOCK 4 LOT 21 , BLOCK 4 LOT 22 , BLOCK 4 LOT 23 , BLOCK 4 LOT 24 ,
BLOCK 4 LOT 25 , BLOCK 4 LOT 26 , BLOCK 4 LOT 27 , BLOCK 4 LOT 28

, BLOCK 5 LOT 1 , BLOCK 5 LOT 2 , BLOCK 5 LOT 3 , BLOCK 5 LOT 4 , BLOCK 5 LOT 5 ,
BLOCK 5 LOT 6 , BLOCK 5 LOT 7 , BLOCK 5 LOT 8 , BLOCK 5 LOT 9 , BLOCK 5 LOT 10 ,
BLOCK 5 LOT 11 , BLOCK 5 LOT 12 , BLOCK 5 LOT 13 , BLOCK 5 LOT 14 , BLOCK 5 LOT 15 ,
BLOCK 5 LOT 16 , BLOCK 5 LOT 17 , BLOCK 5 LOT 18 BLOCK 5 LOT 19 , BLOCK 5 LOT 20 ,
BLOCK 5 LOT 21 , BLOCK 5 LOT 22 , BLOCK 5 LOT 23 , BLOCK 5 LOT 24 , BLOCK 5 LOT 25 ,
BLOCK 5 LOT 26 , BLOCK 5 LOT 27 , BLOCK 5 LOT 28 , BLOCK 5 LOT 29 , BLOCK 5 LOT 30 ,
BLOCK 5 LOT 31 , BLOCK 5 LOT 32 ,

BLOCK 6 LOT 1 , BLOCK 6 LOT 2 , BLOCK 6 LOT 3 , BLOCK 6 LOT 4 , BLOCK 6 LOT 5 ,
BLOCK 6 LOT 6 , BLOCK 6 LOT 7 , BLOCK 6 LOT 8 , BLOCK 6 LOT 9 , BLOCK 6 LOT 10 ,
BLOCK 6 LOT 11 , BLOCK 6 LOT 12 , BLOCK 6 LOT 13 , BLOCK 6 LOT 14 , BLOCK 6 LOT 15
, BLOCK 6 LOT 16 , BLOCK 6 LOT 17 , BLOCK 6 LOT 18 , BLOCK 6 LOT 19 , BLOCK 6 LOT 20 ,
BLOCK 6 LOT 21 , BLOCK 6 LOT 22 , BLOCK 6 LOT 23 , BLOCK 6 LOT 24 , BLOCK 6 LOT 25 ,
BLOCK 6 LOT 26 , BLOCK 6 LOT 27 , BLOCK 6 LOT 28 , BLOCK 6 LOT 29 , BLOCK 6 LOT 30 ,
BLOCK 6 LOT 31 , BLOCK 6 LOT 32 ,

BLOCK 7 LOT 1 , BLOCK 7 LOT 2 , BLOCK 7 LOT 3 , BLOCK 7 LOT 4 , BLOCK 7 LOT 5 ,
BLOCK 7 LOT 6 , BLOCK 7 LOT 7 , BLOCK 7 LOT 8 , BLOCK 7 LOT 9 , BLOCK 7 LOT 10 ,
BLOCK 7 LOT 11 , BLOCK 7 LOT 12 , BLOCK 7 LOT 13 , BLOCK 7 LOT 14 , BLOCK 7 LOT 15
, BLOCK 7 LOT 16 , BLOCK 7 LOT 17 , BLOCK 7 LOT 18 , BLOCK 7 LOT 19 , BLOCK 7 LOT 20 ,
BLOCK 7 LOT 21 , BLOCK 7 LOT 22 , BLOCK 7 LOT 23 , BLOCK 7 LOT 24 , BLOCK 7 LOT 25 ,
BLOCK 7 LOT 26 , BLOCK 7 LOT 27 , BLOCK 7 LOT 28 , BLOCK 7 LOT 42 , BLOCK 7 LOT 43 ,

Book 16385   Page 1547   3pgs

EXHIBIT 3

BLOCK 7 LOT 44 , BLOCK 7 LOT 45 , BLOCK 7 LOT 46 , BLOCK 7 LOT 47 , BLOCK 7 LOT 48 , BLOCK 7 LOT 49 , BLOCK 7 LOT 50 , BLOCK 7 LOT 51 , BLOCK 7 LOT 52 , BLOCK 7 LOT 53 , BLOCK 7 LOT 54 , BLOCK 7 LOT 55 , BLOCK 7 LOT 56 , BLOCK 7 LOT 57 , BLOCK 7 LOT 58 , BLOCK 7 LOT 59 , BLOCK 7 LOT 60 , BLOCK 7 LOT 61 , BLOCK 7 LOT 62 , BLOCK 7 LOT 63 , BLOCK 7 LOT 64 , BLOCK 7 LOT 65 , BLOCK 7 LOT 66 , BLOCK 8 LOT 1 ,

BLOCK 8 LOT 2 , BLOCK 8 LOT 3 , BLOCK 8 LOT 4 , BLOCK 8 LOT 5 , BLOCK 8 LOT 6 , BLOCK 8 LOT 18 , BLOCK 8 LOT 19 , BLOCK 8 LOT 20 , BLOCK 8 LOT 21 , BLOCK 8 LOT 22 , BLOCK 8 LOT 23 , BLOCK 8 LOT 24 , BLOCK 8 LOT 25 , BLOCK 8 LOT 26 , BLOCK 8 LOT 27 , BLOCK 8 LOT 28 , BLOCK 8, LOT 29 , BLOCK 8, LOT 30 , BLOCK 8, LOT 31 , BLOCK 8, LOT 32 , BLOCK 8, LOT 33 , BLOCK 8, LOT 34 ,

BLOCK 9 LOT 1 , BLOCK 9 LOT 2 , BLOCK 9 LOT 3 , BLOCK 9 LOT 4 , BLOCK 9 LOT 5 , BLOCK 9 LOT 6 , BLOCK 9 LOT 7 , BLOCK 9 LOT 8, BLOCK 9 LOT 9 , BLOCK 9 LOT 10 , BLOCK 9 LOT 11 , BLOCK 9 LOT 12 , BLOCK 9 LOT 13 , BLOCK 9 LOT 14 , BLOCK 9 LOT 15 , BLOCK 9 LOT 16 , BLOCK 9 LOT 17 , BLOCK 9 LOT 18, , BLOCK 9 LOT 19 , BLOCK 9 LOT 20 , BLOCK 9 LOT 21 , BLOCK 9 LOT 22 , BLOCK 9 LOT 23 , BLOCK 9 LOT 24 , BLOCK 9 LOT 25 , BLOCK 9 LOT 26 , BLOCK 9 LOT 27 , BLOCK 9 LOT 28, BLOCK 9 LOT 29 , BLOCK 9 LOT 30 , BLOCK 9 LOT 31 , BLOCK 9 LOT 32 , BLOCK 9 LOT 33 , BLOCK 9 LOT 34 , KEY LARGO SUBDIVISION CB 05065 IN BEXAR COUNTY, TEXAS AS PLAT RECORDED IN VOLUME 9573 PAGE 13 Property Records, Bexar County, Texas.

RESERVATION From and Exceptions to Conveyance and Warranty:

Easements, rights-of-way, and prescriptive rights, whether of record or not; all presently recorded instruments, other than liens and conveyances, that affect the property; taxes for the current year, the payment of which Grantee assumes.

Grantor, for the consideration, receipt of which is acknowledged, and subject to the reservations from and exceptions to conveyance and warranty, grants, sells and conveys to Grantee the property, together with all and singular the rights and appurtenances thereto in any wise belonging to have and hold it to Grantee, Grantee's heirs, executor, administrators, successors or assigns forever. Grantor binds Grantor and Grantor's heirs, executors, administrators and successors to warrant and forever defend all and singular the property to Grantee and Grantee's heirs, executors, administrators, successors and assigns against every person whomsoever lawfully claiming or to claim the same or any part thereof, except as to the reservations from and exceptions to conveyance and warranty.

When the context requires, singular nouns and pronouns include the plural.

This correction Deed is filed to correct the acknowledgement of the original.

HELVETIA ASSET RECOVERY, INC.
BURTON KAHN, PRESIDENT

ACKNOWLEGEMENT

This instrument was acknowlege before meon October 11, 2013 by Burton Kahn President, Helvetia Asset Recovery,Inc.on behalf of that corporation

NOTARY PUBLIC, STATE OF TEXAS

HEATHER SILVA
Notary Public
State of Texas
My Comm. Exp. 03-20-2016

Any provision herein which restricts the sale, or use of the described real property because of race is invalid and unenforceable under Federal law
STATE OF TEXAS, COUNTY OF BEXAR
I hereby Certify that this instrument was FILED in File Number Sequence on this date and at the time stamped hereon by me and was duly RECORDED in the Official Public Record of Real Property of Bexar County, Texas on:

**OCT 1 1 2013**



COUNTY CLERK BEXAR COUNTY, TEXAS

Doc# 20130213342 Fees: $24.00
10/11/2013    11:31AM # Pages 3
Filed & Recorded in the Official
Public Records of  BEXAR COUNTY
GERARD C. RICKHOFF COUNTY CLERK

Document scanned as filed.

CERTIFIED COPY CERTIFICATE STATE OF TEXAS
I, DONNA KAY McKINNEY, BEXAR COUNTY DISTRICT
CLERK, CERTIFY THAT THE FOREGOING IS A TRUE
AND CORRECT COPY OF THE ORIGINAL RECORD AS
INDICATED BY THE VOLUME, PAGE AND COURT ON
SAID DOCUMENT. WITNESSED MY OFFICIAL HAND
AND SEAL OF OFFICE ON THIS:

*October 24, 2013*

**DONNA KAY McKINNEY**
**BEXAR COUNTY, TEXAS**

By: _Alex Lewicke_

ALEX LEWICKE, Deputy District Clerk
*(NOT VALID WITHOUT THE CLERKS'S ORIGINAL SIGNATURE.)*

Doc# 20130221775 Fees: $60.00
10/24/2013    3:42PM # Pages 12
Filed & Recorded in the Official
Public Records of BEXAR COUNTY
GERARD C. RICKHOFF COUNTY CLERK

Any provision herein which restricts the sale, or use of the described real
property because of race is invalid and unenforceable under Federal law
STATE OF TEXAS, COUNTY OF BEXAR
I hereby Certify that this instrument was FILED in File Number Sequence on
this date and at the time stamped hereon by me and was duly RECORDED
in the Official Public Record of Real Property of Bexar County, Texas on:

**OCT 2 4 2013**

COUNTY CLERK BEXAR COUNTY, TEXAS

# **Tab 06**

Plaintiff's Verified Original Petition and Application
for Temporary and Permanent Injunctive Relief[6],
entered November 4, 2013.

---

[6] Cause No. 2013-CI-18355; *Helvetia Asset Recovery, Inc. v. Burton Kahn and Paradiv Corporation*; In the 37th District Court, Bexar County, Texas

Filed
13 November 4 P5:49
Donna Kay McKinney
District Clerk
Bexar District
Accepted by:
Annabelle Kung

CAUSE NO. _____

HELVETIA ASSET RECOVERY, INC. § IN THE DISTRICT COURT
§
*Plaintiff,* §
§
v. § BEXAR COUNTY, TEXAS
§
BURTON KAHN and §
PARADIV CORPORATION, §
§
*Defendants.* § ____ JUDICIAL DISTRICT

## PLAINTIFF'S VERIFIED ORIGINAL PETITION AND APPLICATION FOR TEMPORARY AND PERMANENT INJUNCTIVE RELIEF

Plaintiff Helvetia Asset Recovery, Inc. ("Helvetia") files its Verified Original Petition and Application for Temporary and Permanent Injunctive Relief and respectfully shows the Court as follows:

I.

## INTRODUCTION

Robert Ripley ("Ripley") formed Helvetia in order to acquire and develop certain property in San Antonio. Puerto Verde, Ltd. ("Puerto Verde"), a company owned by Ripley, acquired 100% of the common stock of Helvetia for valuable consideration. As owner of Puerto Verde, Ripley later elected Burton Kahn ("Kahn") as president and sole director of Helvetia. Unbeknownst to Ripley and while still on officer and director of Helvetia, Kahn formed another corporation, Paradiv Corporation ("Paradiv"), as part of a plan and scheme to divert assets from Helvetia. After Ripley removed Kahn as an officer of Helvetia, he learned Kahn had drained over $400,000.00 from Helvetia's accounts. Additionally, Kahn purported to transfer Helvetia's lots—including those previously sold years before to third parties—to Paradiv. Kahn persists in

his attempts to sell these lots as Paradiv property. As a result of Kahn's flagrant breaches of his fiduciary duties to Helvetia, Helvetia has suffered substantial losses and continues to suffer losses every day it is unable to develop and sell its lots. In conjunction with its Original Petition, Helvetia applies to the Court for temporary and permanent injunction to protect against further loss of its assets, properties and further injury to its goodwill.

## II.

## DISCOVERY

1.    Plaintiff intends to conduct discovery under Level 2 described in Texas Rule of Civil Procedure 190.3.

## III.

## PARTIES

2.    Plaintiff Helvetia Asset Recovery, Inc. is a Texas corporation with its principal place of business at 13123 Feather Point Drive, San Antonio, Texas 78233.

3.    Defendant Burton Kahn is an individual and former officer and director of Plaintiff. Kahn may be served at his residence at 1706 Alpine Circle, San Antonio Texas 78248, or where found.

4.    Defendant Paradiv Corporation is a Texas corporation with its principal place of business at 1706 Alpine Circle, San Antonio, Texas 78248 and may be served by serving its officer and registered agent, Kahn.

## IV.

## JURISDICTION AND VENUE

5.    This Court has subject matter jurisdiction over Plaintiff's claims against Defendants under Texas common law and various equity principles. The claims raised in this

Petition involve an amount in controversy that exceeds the minimum jurisdictional limits of this Court.

6.      In accordance with Texas Rule of Civil Procedure 47, Plaintiff seeks monetary relief over $1,000,000 and all other relief requested below and to which Plaintiff is justly entitled.

7.      Venue is proper in this Court based on Sections 15.002(a)(1), 15.002(a)(2), and 15.002(a)(3) of the Texas Civil Practice & Remedies Code.

## V.

## FACTUAL BACKGROUND

8.      Since its inception in 2007, Helvetia has been owned by a single shareholder—Puerto Verde. Ripley has been the sole shareholder of Puerto Verde since its incorporation in 2006.

9.      In or around the summer of 2007, Helvetia acquired the property at issue in this lawsuit, lots in a subdivision known as "Key Largo," in San Antonio, Texas.

10.     On or about October 23, 2009, Ripley, as owner of Puerto Verde, elected Burton Kahn as president, secretary, and sole director of Helvetia.

11.     As an officer and director of Helvetia, Kahn had a fiduciary relationship with Helvetia and owed Helvetia a duty of utmost good faith, loyalty, fairness, and honesty. Kahn, as a signatory to Helvetia's bank accounts, was also a trustee for funds deposited there.

12.     Helvetia kept the funds from the Key Largo lot sales in accounts at Randolph Brooks Federal Credit Union ("RBFCU") (the "Trust Funds"). The Trust Funds were intended to be kept separate from other funds or accounts owned by Burton Kahn and were earmarked to be used to develop a subdivision known as "Royal Crest" in San Antonio, Texas.

13. By mid-2013, Kahn's relationship with Ripley had deteriorated. Kahn was no longer performing as expected, and Ripley desired to replace Kahn at Helvetia.

14. On or about September 3, 2013, Kahn formed Paradiv.

15. On or about September 8, 2013, Kahn was advised that Puerto Verde would be holding an extraordinary shareholder meeting to elect a new president, secretary, and director of Helvetia.

16. On or about September 16, 2013, Ripley, as sole owner and director of Puerto Verde, elected Helvetia's new officers as follows: Robert Ripley as president and director, Fred Seehusen as vice president, and John Ripley as secretary.

17. On or about that same day, Ripley, as the sole owner and director of Puerto Verde, resolved to remove Kahn as a signatory on all Helvetia's bank accounts, including its accounts held at RBFCU.

18. On or about September 17, 2013, Kahn established "Puerto Verde Ltd.," a Texas company with the same name as Helvetia's owner, Puerto Verde.

19. On or about September 20, 2013, Ripley notified Kahn that he was not to act in any capacity on behalf of Helvetia and must immediately turn over all business records, payroll records, IRS filings and returns, bank accounts, and any contracts or other materials related to Helvetia, and must provide a complete account for all receipts and disbursements to date.

20. Despite this notice, Kahn continued to act purportedly as "president of Helvetia," notwithstanding Helvetia's direct order not to act as such.

21. As the purported "president of Helvetia," Kahn attempted to transfer the Key Largo lots Helvetia owned—including lots previously sold to developers and homeowners—to Paradiv.[1]

22. Kahn's deliberate actions with respect to the Key Largo lots were done without reasonable cause and have impaired Helvetia's ability to sell the lots, resulting in a loss of specific sales of property.

23. Additionally, between July and September 2013, Kahn drained more than $400,000.00 out of Helvetia's savings account at RBFCU without Helvetia's consent.

24. Kahn has continued to interfere with Helvetia's business affairs and unless enjoined, will cause irreparable damage to Helvetia's business reputation and good will.

25. As a result of Kahn's acting in violation of his fiduciary duties and with knowledge and malice, Helvetia has suffered a disruption of its business, loss of business opportunity, loss of goodwill and its competitive position in the marketplace.

## VI.

## CAUSES OF ACTION

### COUNT ONE – BREACH OF FIDUCIARY DUTY

26. Plaintiff incorporates the preceding paragraphs in the Petition.

27. As described in this Petition, Kahn was Helvetia's fiduciary.

28. Kahn breached his fiduciary duties to Helvetia.

---

[1] *See* Ex. 1 ("Warranty Deed," purportedly transferring a block of approximately 216 lots from Helvetia to Paradiv Corporation on September 30, 2013); Ex. 2 ("Revised Warranty Deed," purportedly transferring the same block of lots from Helvetia to Paradiv Corporation on October 4, 2013); Ex. 3 ("Correction Warranty Deed," purportedly transferring the same block of lots again from Helvetia to Paradiv Corporation on October 11, 2013) (collectively, the "Deed Transfers").

29. Plaintiff seeks to recover all damages caused by this breach and the imposition of a constructive trust on the stock of Paradiv and on all real and personal property acquired with embezzled funds or through the breach of fiduciary duties.

## COUNT TWO – CONVERSION

30. Plaintiff incorporates the preceding paragraphs in the Petition.

31. Helvetia owned, possessed or had the right to immediate possession of personal property.

32. Kahn wrongfully exercised dominion or control over the property.

33. Kahn's actions were committed with malice.

34. Plaintiff has incurred and continues to incur financial damages resulting from Defendants' wrongful control over the property.

## COUNT THREE – MONEY HAD AND RECEIVED

35. Plaintiff incorporates the preceding paragraphs in the Petition.

36. Helvetia owned, possessed, or had a right to possess personal property, namely $400,000 held in a savings account at RBFCU.

37. Defendants wrongfully removed the $400,000.00 from Helvetia's bank account without authorization.

38. In equity and good conscience, the money in Defendants' possession, including all real and personal property acquired with such funds, belongs to Helvetia.

## COUNT FOUR – SLANDER OF TITLE

39. Plaintiff incorporates the preceding paragraphs in the Petition.

40. Helvetia owned, possessed, or had a right to possess real property.

41. Defendants uttered and/or published a false and disparaging statement about title to Helvetia's property.

42. Defendants acted with legal malice.

43. Defendants caused plaintiff special damages, the loss of sales of property.

## VII.

## EXEMPLARY DAMAGES

44. Plaintiff incorporates the preceding paragraphs in the Petition.

45. Defendants' conduct was fraudulent, willful, and malicious. The conduct violates Texas Penal Code Sections 32.21, 32.42, and 31.03. Helvetia is entitled to exemplary damages as a result of Defendants' tortious conduct, as alleged in this Petition.

## VIII.

## APPLICATION FOR TEMPORARY AND PERMANENT INJUNCTIVE RELIEF

46. Plaintiff incorporates the preceding paragraphs in the Petition.

47. There is a substantial likelihood that Helvetia will prevail on the merits of its claims against Defendants.

48. Unless enjoined, Defendants' wrongful interference with Helvetia's business operations and theft of and control over Helvetia's Trust Funds and properties will cause Helvetia irreparable harm which there is no adequate remedy at law, including, without limitation, loss of unique real property, disruption of business, loss of business opportunity, loss of goodwill, and loss of its competitive position in the marketplace.

49. This action for injunctive relief is Helvetia's only means of securing relief. The resulting damage, injury, interruption and harm to Helvetia exceeds any remedy that could be afforded by a monetary award, even if Defendants were able to respond in payment of money damages.

50.     The harm to Helvetia is imminent. Without the Court's immediate intervention, Helvetia's Trust Funds will likely become co-mingled with other funds, and Helvetia could lose its ability to impose a trust on and collect the Trust Funds.

51.     Helvetia respectfully requests that the Court issue an order temporarily:

(a)     enjoining Kahn and his respective agents, servants, employees and representatives, from taking any action on behalf of Helvetia or Paradiv;

(b)     enjoining Defendants and their respective agents, servants, employees, members and representatives from transferring, encumbering or disposing of the proceeds from their sale of lots in Key Largo;

(c)     enjoining Defendants and their respective agents, servants, employees, members and representatives from transferring, encumbering or disposing of any real or personal property in which the proceeds from the sale of lots in Key Largo have been invested;

(d)     enjoining Defendants and their respective agents, servants, employees, members and representatives from transferring, encumbering or disposing of the Trust Funds, and to the extent the Trust Funds have been invested into real or personal property, freezing that in which it has been invested.

(e)     imposing a constructive trust over the Trust Funds to prevent dissipation of ill-gotten gains.

## IX.

## PRAYER

WHEREFORE, Plaintiff Helvetia Asset Recovery, Inc. respectfully requests that this Court:

(i)     award Plaintiff its actual damages in an amount to be determined at trial;

(ii)     award Plaintiff exemplary damages in an amount to be determined at trial;

(iii)    impose a constructive trust in favor of Plaintiff on the stock of Paradiv and on all proceeds, funds, or real and personal property improperly obtained by Defendants;

(iv)    convert the preliminary injunction into a permanent injunction enjoining Kahn from acting on behalf of Helvetia;

(v)     permanently enjoin Defendants from migrating assets belonging to Plaintiff;

(vi)    award Plaintiff its attorneys' fees, expenses, and court costs in connection with this action, as well as conditional awards in the event of post-verdict proceedings and appeals;

(vii)   award Plaintiff pre- and post-judgment interest at the maximum amounts permitted by law; and

(viii)  grant Plaintiff all other relief, both special and general, at law or in equity, to which it may show itself justly entitled.

Respectfully submitted,

Werner A. Powers
State Bar No. 16218800
Natalie DuBose
State Bar No. 24077481

HAYNES AND BOONE, LLP
2323 Victory Avenue, Suite 700
Dallas, Texas 75219
Telephone: (214) 651-5000
Telecopier: (214) 651-5940

**ATTORNEYS FOR PLAINTIFF
HELVETIA ASSET RECOVERY, INC.**

D-2211145_3

## VERIFICATION

STATE OF TEXAS  §
                §
COUNTY OF BEXAR §

BEFORE ME, the undersigned authority, on this day personally appeared, Robert Ripley, who, being by me duly sworn, on his oath deposed and said that he is duly qualified in all respects to make this verification, that he has read the allegations in the above and foregoing Verified Original Petition, Application for Temporary and Permanent Injunction, and that the statements of fact contained herein are true and correct.

_____
ROBERT RIPLEY

SUBSCRIBED AND SWORN TO BEFORE ME, the undersigned authority, on this ____ day of November, 2013, to certify which witness my hand and official seal.

CYNTHIA K HUNTER INKENBRANDT
Notary Public
STATE OF TEXAS
My Comm. Exp. 11-02-14

Notary Public Signature

_____
(PERSONALIZED SEAL)

# Tab 07

Order Denying Kahn's Motion for Reconsideration[7],
entered April 11, 2014.

---

[7] Cause No. 2013-CI-18394; In Re: A Purported Lien or Claim Against Helvetia Asset Recovery, Inc.; In the 224th District Court, Bexar County, Texas

| IN RE: A PURPORTED | § | IN THE DISTRICT COURT |
|---|---|---|
| | § | |
| LIEN OR CLAIM AGAINST | § | BEXAR COUNTY, TEXAS |
| | § | |
| | § | |
| HELVETIA ASSET RECOVERY, INC. | § | 224TH JUDICIAL DISTRICT |

## ORDER

On April 11, 2014, came to be heard the Motion to Reconsider, Vacate, Modify, Correct or Reform Sanctions Order of April 1, 2014 ("Motion to Reconsider") filed by Burton Kahn as "Individually Defendant and Co-Plaintiff"

The Court, after reviewing the Motion and hearing arguments of Intervenor's counsel and Mr. Kahn, is of the opinion that the Motion to Reconsider shall be DENIED. Accordingly, the Motion to Reconsider, Vacate, Modify, Correct or Reform Sanctions Order of April 1, 2014 is DENIED.

Signed this _____ day of April, 2014.

_____
PRESIDING JUDGE

Submitted by:

HAYNES AND BOONE, LLP

_____/s/ Werner A. Powers_____
Werner A. Powers, SBN 16218800
2323 Victory Avenue, Suite 700
Dallas, Texas 75219
Telephone: (214) 651-5000
Telecopier: (214) 651-5940

Lisa S. Barkley, SBN 17851450
112 E. Pecan, Suite 1200
San Antonio, Texas 78205
Telephone: (210) 978-7427
Telecopier: (210) 554-0427

ATTORNEYS FOR INTERVENOR
HELVETIA ASSET RECOVERY, INC.

# **Tab 08**

Order Granting Helvetia Asset Recovery, Inc.'s Motion to Lift or Modify the
Automatic Stay[8],
entered April 28, 2014.

---

[8] Case No. 14-50980-cag, *In re: Burton M. Kahn*, Debtor, United States Bankruptcy Court for the Western District
of Texas, San Antonio Division



**IT IS HEREBY ADJUDGED and DECREED that the below described is SO ORDERED.**


**Dated: April 28, 2014.**

_____
**CRAIG A. GARGOTTA
UNITED STATES BANKRUPTCY JUDGE**
_____


IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| **IN RE:** | § | **Chapter 7** |
| | § | |
| **BURTON M. KAHN** | § | **Case No. 14-50980-cag** |
| | § | |
| **Debtor.** | § | |

**ORDER GRANTING HELVETIA ASSET RECOVERY, INC.'S
MOTION TO LIFT OR MODIFY THE AUTOMATIC STAY**

Came on for hearing on April 24, 2014, the Motion to Lift or Modify the Automatic Stay (the "Motion") filed by Helvetia Asset Recovery, Inc. ("Helvetia"),[1] the Chapter 7 trustee's response to the Motion, the Debtor's response to the Motion and additional motions by the Debtor challenging the Motion.[2] The Court heard evidence and considered the arguments of counsel for Helvetia, the Chapter 7 trustee, and the Debtor, who appeared *pro se*. The Court announced on the record that the Motion was granted, overruling the

---

[1] Capitalized terms not defined herein shall have the meaning ascribed to them in the Motion.

[2] In addition to his response, the Debtor filed and urged the following opposing motions: (1) Motion to Disqualify Puerto Verde Ltd. to Maintain a Lawsuit in Texas; (2) Motion to Disqualify Puerto Verde Ltd. to Have Direct Access to this Court; and (3) Motion to Disqualify Motion to Modify the Automatic Stay Because Filing was not a Correct Style.

S-227205_5

responses and motions in opposition by the Chapter 7 trustee and the Debtor.  The findings of fact and conclusions of law announced on the record at the hearing are incorporated herein by reference for all purposes.  The Court finds that good cause exists to grant the Motion; accordingly, it is hereby

ORDERED that the Motion is GRANTED as set forth herein; it is further

ORDERED that the stay of 11 U.S.C. § 362 is modified immediately to allow the parties to proceed with litigation in the case numbered and styled Cause No. 2013-CI-18394, *In re: A Purported Lien or Claim Against Helvetia Asset Recovery, Inc.,* pending in the 224th Judicial District Court, in Bexar County, Texas (the "18394 Action"),[3] including any appellate proceedings related to the 18394 Action; it is further

ORDERED that the automatic stay is modified immediately to permit Helvetia to take all steps necessary to liquidate its claim against the Debtor in the 18394 Action and Helvetia may likewise take all steps necessary to prosecute its claims against the Debtor and any non-debtor defendants in the 18394 Action; it is further

ORDERED that the modification of the automatic stay in the 18394 Action, however, does not permit Helvetia to collect any judgment against the Debtor as a result of the 18394 Action; it is further

ORDERED that the stay of 11 U.S.C. § 362 is modified immediately to allow the Bexar County district court to enter any order regarding the Plaintiff's Motion for Release of Funds in the Registry of the Court, or any subsequent motion or relief requested seeking release of funds held in the registry of the Bexar County district court, as filed in case numbered and styled Cause No. 2013-CI-18355, *Helvetia Asset Recovery, Inc. v. Burton*

---

[3] Referred to in the Motion and at the hearing as the Barratry Action.

S-227205_5

*Kahn and Paradiv Corporation*, pending in the 407th Judicial District, Bexar County Texas (the "18355 Action");[4] it is further

ORDERED that the Debtor has not identified the funds held in the registry of the Court as assets of the Debtor's estate and the Debtor at the hearing on the Motion did not provide a colorable claim of ownership to the funds in the registry of the Court; it is further

ORDERED that nothing herein precludes Helvetia from enforcing any order from the Bexar County district court, or some appellate court thereof, finding that the monies in the registry of the court belong to Helvetia; it is further

ORDERED that the stay of 11 U.S.C. § 362 is modified immediately to allow the parties to proceed with litigation in the 18355 Action, including any appellate proceedings related to the 18355 Action; it is further

ORDERED that the automatic stay is modified to permit Helvetia to take all steps necessary to liquidate its claim against the Debtor in the 18355 Action, including but not limited to trying the lawsuit on its present trial setting of May 12, 2014, and Helvetia may likewise take all steps necessary to prosecute its claims against the Debtor and any non-debtor defendants in the 18355 Action; it is further

ORDERED that the modification of the automatic stay in the 18355 Action, however, does not permit Helvetia to collect any judgment against the Debtor as a result of the 18355 Action; it is further

ORDERED that this Order is effective immediately and this order shall not be subject to the 14-day stay imposed by FED. R. BANKR. P. 4001(a)(3); it is further

---

[4] Referred to in the Motion and at the hearing as the Embezzlement Action.

S-227205_5

ORDERED that this Court shall retain jurisdiction to hear any matter or dispute relating to the interpretation or implementation of the terms and provisions of this Order.

# # #

Submitted by:

HAYNES AND BOONE, LLP
Werner Powers
Texas State Bar No. 16218800
Lisa Barkley
Texas State Bar No. 17851450
Abigail Ottmers
Texas State Bar No. 24037225
112 East Pecan Street, Suite 1200
San Antonio, Texas 78205
Telephone: (210) 978-7000
Facsimile: (210) 978-7450
werner.powers@haynesboone.com
lisa.barkley@haynesboone.com
abigail.ottmers@haynesboone.com

S-227205_5

# **Tab 09**

Trustee's Motion to Sell All Non-Exempt Assets, Claims and Causes of Action[9], entered August 29, 2014.

---

[9] Case No. 14-50980-cag, *In re: Burton M. Kahn*, Debtor, United States Bankruptcy Court for the Western District of Texas, San Antonio Division

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

IN RE:                                        }
                                              }
BURTON M. KAHN                                } CASE NO. 14-50980G
                                              }
        DEBTOR(S)                             } CHAPTER 7

**TRUSTEE'S MOTION TO SELL**
**ALL NON-EXEMPT ASSETS, CLAIMS AND CAUSES OF ACTION**

**THIS PLEADING REQUESTS RELIEF THAT MAY BE ADVERSE TO YOUR INTERESTS.**

**IF NO TIMELY RESPONSE IS FILED WITHIN TWENTY ONE (21) DAYS FROM THE DATE OF SERVICE, THE RELIEF REQUESTED HEREIN MAY BE GRANTED WITHOUT A HEARING BEING HELD.**

**A TIMELY FILED RESPONSE IS NECESSARY FOR A HEARING TO BE HELD.**

TO THE DEBTOR, THEIR CREDITORS, AND ALL OTHER PARTIES IN INTEREST:

Johnny W. Thomas, Trustee makes and files this Motion, and in support thereof respectfully represents to the Court as follows:

I.

On April 14, 2014, this case was filed as a Chapter 7 proceeding. Johnny W. Thomas was appointed as the Chapter 7 Trustee. This Motion is filed pursuant to the provisions of Sec. 363 and 704 of the Bankruptcy Code, Federal Rule of Bankruptcy Procedure 6004 and Local Rule 6004.

II.

Among the assets of the bankruptcy estate are: All the debtor's non-exempt assets, to include all claims and causes of action now existing or hereafter arising, all rights, titles and interests in any business or business enterprise that currently exists or has ever existed.

III.

The Trustee requests authority from the Court to sell all the assets and receivables, free and clear of any and all liens, claims, security interests and encumbrances, but as is, where is, with all faults, without recourse on the Trustee or the bankruptcy estate and without any warranties.

IV.

The Trustee does not believe that the tax liability will exceed $500.00. If there are liens on the property, then creditors are herein properly notified to file claims against the proceeds.

V.

The Trustee requests that the stay provided by Federal Rule of Bankruptcy Procedure 6004(g) be waived immediately so that this sale can be completed after entry of an Order on the docket.

VI.

The Trustee proposes to sell the assets and receivables to Helvetia Asset Recovery, Inc. or it's assigns, c/o Haynes and Boone, LLP, 112 East Pecan Street, Suite 1200, San Antonio, Texas 78205 for $10,000.00.

WHEREFORE, PREMISES CONSIDERED, the Trustee prays that he be authorized to sell the aforesaid property, and for such other and further relief, as is just.

Respectfully submitted this ___29th___ day of August, 2014.

I:\JWT TRUSTEE CASES\motion to sell personal property Burton Kahn.doc                    2

Johnny W. Thomas
Chapter 7 Trustee
1153 E. Commerce Street
St. Paul Square
San Antonio, TX 78205
(210) 226-5888 Fax: (210) 226-6085


By: _____/S/_____
JOHNNY W. THOMAS
SBN 19856500


## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing Motion for

Authority to Sell all assets and receivables has been mailed to the Debtor, all parties in

interest and all creditors as indicated on the attached creditors matrix, by first-class mail,

postage prepaid, on this the 29th day of August, 2014.


Debtors:                                  Debtor Attorney:
Burton M. Kahn                            Pro Se
1706 Alpine Circle
San Antonio, Texas 78248


United States Trustee                     John Ripley
P. O. Box 1539                            c/o Haynes and Boone, LLP
San Antonio, Texas  78295-1539            112 East Pecan Street, Ste. 1200
                                          San Antonio, Texas 78205


_____/S/_____
JOHNNY W. THOMAS

Label Matrix for local noticing
0542-5
Case 14-50980-cag
Western District of Texas
San Antonio
Fri Aug 29 10:33:04 CDT 2014

U.S. BANKRUPTCY COURT
615 E. HOUSTON STREET, ROOM 597
SAN ANTONIO, TX 78205-2055

Atlas Acquisitions LLC
294 Union St.
Hackensack, NJ 07601-4303

DARYL WATSON
16607 BLANCO RD.
SAN ANTONIO, TX 78232-1913

HELVETIA ASSET RECOVERY, INC.
13123 FEATHERPOINT
SAN ANTONIO, TX 78233-4561

NCO PORTFOLIO MGT
140 CORPORATE BLVD.
NORFOLK, VA 23502-4952

R. WACHSMUTH
9311 SAN PEDRO, #707
SAN ANTONIO, TX 78216-4468

RICHARD SOMMERS
8610 N. NEW BRAUNFELS
SAN ANTONIO, TX 78217-6370

United States Trustee - SA12
US Trustee's Office
615 E Houston, Suite 533
PO Box 1539
San Antonio, TX 78295-1539

Burton M. Kahn
1706 Alpine Circle
San Antonio, TX 78248-2104

Johnny W Thomas
johnnywthomas.trusteblogs.com
St Paul Square
1153 E Commerce
San Antonio, TX 78205-3305

End of Label Matrix
Mailable recipients    10
Bypassed recipients     0
Total                  10

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

IN RE:                                            )
                                                  )
BURTON M. KAHN                                    )      Case No. 14-50980G
                                                  )
                                                  )
                    Debtor(s)                     )      Chapter 7

**ORDER AUTHORIZING SALE OF PERSONAL PROPERTY
ALL NON-EXEMPT ASSETS, CLAIMS AND CAUSES OF ACTION**

On this date came on to be considered the Motion for Authority to Sell all

non-exempt assets, claims and causes of action, filed by Johnny W. Thomas,

Trustee.  Due notice having been given and no objections having been filed, the

Court is of the opinion and so finds that the Movant's sale of all non-exempt assets,

claims and causes of action  attached herein, is in the best interest of the estate.  It

is accordingly,

1

ORDERED that movant, Johnny W. Thomas, Trustee, be and is hereby authorized and directed to sell all property owned by the Debtor to include all the Debtor's non-exempt assets, claims and causes of action now existing or hereafter arising, all rights, titles and interests in any business or business enterprise that currently exist or has ever existed to Helvetia Asset Recovery, Inc. or it's assigns, for $10,000.00.

It is further ORDERED that the sale shall be free and clear of any and all liens, claims, security interests and encumbrances, except ad valorem tax liens, with all liens, claims, security interests and encumbrances to attach to the sales proceeds.

# # #

# Tab 10

*In re Croft,* 737 F.3d 372 (5th Cir. 2013)

IN RE: CROFT (W.D.Tex. 12-10-2012)

IN RE: BRADLEY L. CROFT, Debtor. JEANETTE BARBARA LOWRY, AMS SA MANAGEMENT,

LLC, and SHAVANO ROGERS RANCH SWIM CLUB, INC., Appellants, v. BRADLEY L.

CROFT, Appellee.

Civil Action No. SA-12-CV-535-XR.

United States District Court, W.D. Texas

December 10, 2012.

**ORDER AND OPINION** Xavier Rodriguez, District Judge

The issues presented to the Court on this bankruptcy appeal appear to be ones of first impression in both Texas and the Fifth Circuit. The Court is asked to determine whether the right to appeal a judgment entered prior to bankruptcy on a claim asserted against the debtor is property of the estate, as defined by 11 U.S.C. § 541, and thus subject to sale by the trustee pursuant to 11 U.S.C. § 363(b). In other words, the Court must determine if a "defensive appellate right" is a saleable asset of the estate. Because the Court answers affirmatively, the bankruptcy court's Order Granting Limited Relief from Automatic Stay to Proceed with State Court Appeals (Bankr.Docket No. 72) must be vacated.

## I. Facts

Prior to filing bankruptcy, Bradley Croft ("Croft") was involved in two lawsuits against AMS SA Management LLC d/b/a Association Management Services and Shavano Rogers Ranch

**Page 2**

Swim Club Inc. (collectively "Appellants")[fn1] in Bexar County District Court.[fn2] In both lawsuits, the state court ordered sanctions against Croft and Croft subsequently appealed both court orders to the Fourth Court of Appeals in Bexar County.[fn3]

After filing both of his appeals, Croft filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code.[fn4] The Fourth Court of Appeals accordingly abated both appeals and Croft filed a motion in the bankruptcy court for limited relief from the automatic stay in order to proceed with the appeals.[fn5] Appellants opposed Croft's motion, arguing that the appellate rights had become property of the bankruptcy estate and thus could be sold by the trustee pursuant to a proposed sale procedure.[fn6] At a hearing on the matter, the bankruptcy court found that the appellate rights are not property of the estate and consequently granted Croft's motion, thereafter issuing an order that the automatic stay be lifted for the purpose of reinstating both appeals and permitting either Croft or the chapter[fn7] trustee to prosecute the appeals.7 The bankruptcy court denied Appellants motion to reconsider so Appellants timely appealed to this Court pursuant to 28 U.S.C. § 158(a). Appellants ask this Court to find that the defensive appellate rights are property of the estate and thus subject to sale by the chapter 7 trustee.

**Page 3**

## II. Standard of Review

When a bankruptcy court's decision is appealed to a district court, the district court

reviews "the bankruptcy court's findings of fact for clear error and conclusions of law *de novo*." *In re Laughlin*, 602 F.3d 417, 421 (5th Cir. 2010) (quoting *Cadle Co. v. Duncan (In re Duncan)*, 562 F.3d 688, 694 (5th Cir. 2009) (per curiam)). Mixed questions of fact and law are reviewed *de novo. In re ASARCO, L.L.C.*, 650 F.3d 593, 601 (5th Cir. 2011).

### III. Applicable Federal Bankruptcy Law and Texas Property Law

Pursuant to section 363 of the Bankruptcy Code, a trustee may sell "property of the estate," other than in the ordinary course of business, after notice and a hearing. 11 U.S.C. § 363(b)(1). The Bankruptcy Code defines "property of the estate" to include, among other things, "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1).

To determine whether something is property of the bankruptcy estate, a court must look to both state and federal law. Specifically, a debtor's property rights are determined by state law, while federal bankruptcy law applies to establish the extent to which those rights are property of the estate. *Mitchell v. BankIllinois*, 316 B.R. 891, 896 (S.D. Tex. 2004); *see also Butner v. U.S.*, 440 U.S. 48, 55 (1979) (holding that "[p]roperty interests are created and defined by state law"); *Stanley v. Trinchard*, 500 F.3d 411, 418 (5th Cir. 2007) (holding that while a debtor's pre-petition rights in property are determined according to state law, federal bankruptcy law determines the extent of a debtor's bankruptcy estate).

"Texas law defines 'property broadly." *Winger v. Pianka*, 831 S.W.2d 853, 857 (Tex. App.-Austin 1992, writ denied). The Texas Supreme Court has recognized property as "a word of comprehensive meaning" that "extends to every species of valuable right and interest."
**Page 4**

*Womack v. Womack*, 141 Tex. 299, 301 (Tex. 1943) (citations and internal quotation marks omitted). Likewise, the Fifth Circuit has interpreted the language of section 541 broadly, finding that the phrase "all legal or equitable interests of the debtor in property" is "all-encompassing" and that "Congress meant for it to be construed commensurately." *In re MortgageAmerica Corp.*, 714 F.2d 1266, 1274 (5th Cir. 1983); *see also In re Moore*, 608 F.3d 253, 257 (5th Cir. 2010) (holding that the term "all legal and equitable interests of the debtor in property" is all-encompassing).

It is well established that any causes of action belonging to the debtor are property that become part of the estate once the bankruptcy petition is filed. *Douglas v. Delp*, 987 S.W.2d 879, 882 (Tex. 1999); *Kane v. Nat'l Union Fire Ins. Co.*, 535 F.3d 380, 385 (5th Cir. 2008) (per curiam) ("Section 541 of the Bankruptcy Code provides that virtually all of a debtor's assets, including causes of action belonging to the debtor at the commencement of the bankruptcy case, vest in the bankruptcy estate upon the filing of a bankruptcy petition."). Because they become property of the estate, the causes of action may therefore be sold by the bankruptcy trustee. *Moore*, 608 F.3d at 258 ("A trustee may sell litigation claims that belong to the estate, as it can other estate property, pursuant to § 363(b).").[fn8]

At least one Texas appellate court case, *Valenciana v. Hereford Bi-Products Management, Ltd.*, No. 07-05-0051-CV, 2005 WL 3803144, at *1 (Tex. App.-Amarillo Feb. 24, 2005, no pet.), has specifically recognized that, like causes of action, appellate rights are also property that belong to the estate. The *Valenciana* case, however, concerned an appeal of a
**Page 5**
judgment that had been entered on a claim asserted *by* the debtor prior to filing for bankruptcy.[fn9] Here, on the other hand, the

appeals at issue arise from judgments that were entered on claims asserted *against* the debtor. Whether the rights to pursue such purely defensive appeals constitute property, and whether the rights become saleable assets of the bankruptcy estate, remain open questions in both Texas and the Fifth Circuit.[fn10]

## IV. Similar Cases

Because the parties and the bankruptcy court were not aware of any Texas or Fifth Circuit case law discussing whether solely defensive appellate rights are saleable property of the estate, the bankruptcy court examined two cases from outside the circuit, *In re Mozer*, 302 B.R. 892 (C.D. Cal. 2003) and *In re Morales*, 403 B.R. 629 (Bankr.N.D. Iowa 2009), that each considered the issues but reached opposite conclusions. Because the courts analyses are instructive, this Court will summarize the relevant portions of their opinions in detail.

In *Mozer*, 302 B.R. 892, the district court found that defensive appellate rights do constitute a saleable asset of the estate. The court looked to the California Civil Code, which defines property as being "ownership of ... rights created or granted by statute." *Id.* at 895 (quoting CAL. CIV. CODE § 655). Because the right to appeal in California is created by statute, the court agreed that appellate rights are therefore "necessarily property under California law." *Id.* at 895-96. The court further reasoned that "[t]he right to appeal is valuable in nature" and that defensive appellate rights "are not qualitatively different" with respect to their status as property than appellate rights arising from a judgment on a debtor's claims. *Id.* at 896.

**Page 6**

In *Morales*, 403 B.R. 629, however, the bankruptcy court explicitly disagreed with the *Mozer* court's reasoning and conclusion. In *Morales*, the bankruptcy court found that defensive appellate rights are qualitatively different from appellate rights arising from a debtor's claim, holding that "the nature of the appellate right ... depend[s] on the nature of the underlying judgment." *Id.* at 633. In reaching its holding, the court distinguished between a "chose in action," which constitutes the right to payment,[fn11] from a "debt," which constitutes an obligation to pay. *Id.* at 632 (citing *Smead & Powell v. D.W. Chandler & Co.*, 76 S.W. 1066, 1068 (1903)).[fn12] Based on this distinction, the court reasoned that an appeal based solely on a judgment against the debtor on a debt does not make the appellate action an asset; rather, because the debtor in the case had not filed any claim against the creditor, the court found that her appellate right did not constitute an asset under Iowa law. *Id.* at 632-33. The *Morales* court further held that even if a defensive appellate right were considered property under Iowa law, it would still not be property of the bankruptcy estate. *Id.* at 633. The court reasoned that as long as a debtor has a pecuniary interest in the outcome of a bankruptcy proceeding, she has a right to object to a claim against her. *Id.* The court concluded that if the trustee could dispose of the debtor's appeal by selling it, then the trustee would be improperly destroying the debtor's right to object to the claim. *Id.*

Upon consideration of both *Mozer* and *Morales*, the bankruptcy court in this case found that *Morales* "has the better argument." (Bankr.Ct. Hrg Tr. 34:12-13, March 5, 2012.) Specifically, the bankruptcy court found that purely defensive appellate rights are not property, and thus cannot be sold, because they are not a "chose in action." (*Id.* at 36:20-24.) Additionally,

**Page 7**

the bankruptcy court reasoned that it was not appropriate to pursue the appeal by way of a claims objection in the bankruptcy court because it would "unduly upset[] the ... [appellate]

procedures that are available in state court." (*Id.* at 34:22-35:2.)

## V. Analysis

Upon review, this Court finds that Texas state property law and federal bankruptcy law compel a finding that defensive appellate rights *do* constitute saleable property of the bankruptcy estate.

As described *supra*, Texas defines "property" very broadly, construing the term to include "every species of valuable right and interest." *See Womack*, 141 Tex. at 301. A right to appeal is certainly a "valuable right" because it grants a party the prerogative to unilaterally invoke the court system upon request. This ability to compel a higher court authority to review a lower court's judgment is a unique privilege that is intrinsically valuable regardless of what type of judgment underlies the appeal. Accordingly, in bankruptcy, this valuable right becomes property of the estate pursuant to section 541.

Not only does an appellate right constitute property itself, but it also represents a "valuable interest" in the property underlying a judgment. A judgment against property directly affects the propertys value and character, and because a judgment can be modified or vacated on appeal, the right to appeal a judgment constitutes an interest in the underlying property. In this case, the monetary sanctions against Croft lowered the value of his assets. By giving Croft a means to potentially lessen the monetary sanctions against him, Croft's appellate rights granted him a means by which he could potentially raise the value of his assets. Thus, the appellate rights granted Croft a particular type of interest in his property, and this interest became part of the estate pursuant to section 541 once Croft filed his bankruptcy petition.

Both the bankruptcy court and the court in *Morales* focused on determining whether a right to appeal constitutes a "chose in action," holding that if an appeal does not constitute a chose in action then the appeal does not constitute property of the estate. This Court, respectfully, disagrees and finds that making such a determination is unnecessary. Neither Texas's definition of property nor the plain language of section 541 suggests that property of the estate should be restricted to only those appellate rights that constitute a chose in action.[fn13]

Likewise, the bankruptcy court's concern of unduly upsetting the state court appellate procedure cannot dissuade this Court from finding that defensive appellate rights are saleable property of the estate. This Court has found that defensive appellate rights constitute property under Texas law and are therefore property of the bankruptcy estate pursuant to section 541. Accordingly, since defensive appellate rights are property of the estate, federal bankruptcy law controls how a trustee may dispose of them. *See In re Segerstrom*, 247 F.3d 218, 224 (5th Cir. 2001) (holding that once the determination has been made that a debtor has rights in property according to state law, federal law controls the trustee's conduct). Because federal bankruptcy law permits a trustee to sell property of the estate, see section 363(b)(1) and *In re Moore* 608 F.3d at 257, a trustee may therefore sell defensive appellate rights.

The court in *Morales* also expressed concern that a debtor's right to object to a claim would be vitiated if the sale of defensive appellate rights were permitted. However, such a concern is not present in this case because, if necessary, Croft will be afforded the opportunity to object to any proposed sale of the appellate rights. The proposed sale procedure for the appellate

rights, as discussed at the bankruptcy hearing held on March 5, 2012, provides that if the trustee receives an offer he deems viable that the

parties will have the opportunity to object to the sale and the bankruptcy court will conduct a hearing on the objections. (*See* Bankr. Ct. Hrg Tr. 5:22-6:19.) Therefore, the proposed sale procedure ensures that the appellate rights will not be sold without a party in interest being able to properly object.

Furthermore, regardless of the proposed sale procedure or whether Croft objects to the sale, at least two other safeguards are in place to avoid an improper disposition of the appellate rights. The first safeguard is that the trustee has the duty to maximize the value of the estate, *Moore*, 608 F.3d at 263, and that the trustee owes this duty to all parties in interest. 11 U.S.C. § 704(a)(1) ("The trustee shall collect and reduce to money the property of the estate ... and close such estate as expeditiously as is compatible with the best interests of *parties in interest*." (emphasis added)); *see also In re Smyth*, 207 F.3d 758, 761-62 (5th Cir. 2000) (holding that trustees may be subjected to personal liability if found to have acted with gross negligence in violation of their fiduciary duties under section 704). Thus, if presented with an offer to purchase the appellate rights, the trustee may only accept the offer if he determines that a sale of the rights would be in the best interests of all parties in interest. Additionally, any sale of the appellate rights would be subject to approval by the bankruptcy court. The Fifth Circuit has held that "a sale of assets under § 363 requires notice and a hearing and is subject to court approval," and that in determining whether to approve the transaction the court looks "to the trustee's articulated business justification or sound business reasons for the proposed sale." *In re Moore*, 608 F.3d at 262. Therefore, even if the trustee in this case determines that a sale of the appellate rights would be in the best interests of the parties in interest, the bankruptcy court can still overrule the sale if

**Page 10**

the court finds that the sale lacks a sufficient justification. In this way, the bankruptcy court provides an additional safeguard against an improper sale of the appellate rights.

**VI. Conclusion**

The Court finds that, as a matter of law, a purely defensive appellate right is property of the bankruptcy estate and may be sold by the trustee.

Accordingly, the bankruptcy court's Order Granting Limited Relief from Automatic Stay to Proceed with State Court Appeals (Bankr.Docket No. 72) is VACATED and the case is REMANDED to the bankruptcy court for further proceedings consistent with this opinion.

It is so ORDERED.

[fn1] Jeanette Lowry, another appellant in this case, is the member manager of AMS SA Management LLC and is the principal of Shavano Rogers Ranch Swim Club Inc. (Appellants Br. i.)

[fn2] The first lawsuit, filed in 2009, was styled *Bradley L. Croft v. AMS SA Management, LLC*, Cause No. 2009-CI-15857. The second lawsuit, filed in 2010, was styled *Richard Snell and Brad Croft, Trustee of Willaw all Investments Trust v. Jason S. Gadsby, Shavano Rogers Ranch Swim Club, Inc. et al.*, Cause No. 2010-CI-09853. (*Id.* at 2.)

[fn3] (*Id.*) The sanctions ordered against Croft were in excess of $100,000. (*See* Bankr. Ct. Hrg Tr. 6:22-24, March 5, 2012.)

[fn4] (Appellees Br. 2.) The case was originally filed as a no-asset case, but it subsequently became apparent that a dividend could possibly be declared for creditors. (*See id.* at 9 & Ex. 2.)

[fn5] (*Id.* at 5; *see also* Debtors Mot. for Limited Relief from Automatic Stay, February 10, 2012.)

[fn6] (*See* Resp. to Debtor's Mot. for Limited Relief from Automatic Stay, February 27, 2012; *see also* Bankr. Ct. Hrg Tr. 5:22-7:10, March 5, 2012.) The proposed sale procedure provided that the trustee would solicit bids for Croft's appellate rights for a period of twenty-one days. If the trustee were to receive an offer he deemed viable within that time period, the procedure provided that the parties would have the opportunity to object to the sale and that the bankruptcy court would conduct a hearing on the objections. If there were no bids on the appellate rights or if the bankruptcy court did not approve the sale, the proposed procedure provided that the appellate rights would be abandoned and that the stay would be lifted in order for Croft to go forward with his appeals. (Bankr.Ct. Hrg Tr. 5:22-6:19, March 5, 2012.)

[fn7] (*See id.* at 34:12-36:2; Order Granting Limited Relief from Automatic Stay to Proceed with State Ct. Appeals, March 9, 2012.)

[fn8] Additionally, since the causes of action belong to the estate, the trustee has exclusive standing to prosecute them. *Kane*, 535 F.3d at 385 ("[A] trustee, as the representative of the bankruptcy estate, is the real party in interest, and is the only party with standing to prosecute causes of action belonging to the estate once the bankruptcy petition has been filed.").

[fn9] In *Valenciana*, the debtor had brought a personal injury claim against his employer and, after a trial, the jury returned a verdict denying recovery. A take-nothing judgment was entered on the verdict and the debtor timely appealed. While the appeal was pending the debtor filed a petition for chapter 7 bankruptcy. The court of appeals in *Valenciana* found that, once the debtor filed for bankruptcy, his appellate rights became property of the bankruptcy estate and the trustee had exclusive standing to pursue them.

[fn10] Neither the bankruptcy court nor the parties pointed to any case in Texas or the Fifth Circuit that addresses the issues. This Court has found no such case law either.

[fn11] A "chose in action" is defined as the "right to bring an action to recover a debt, money, or thing," or as "[p]ersonal property that one person owns but another person possesses, the owner being able to regain possession through a lawsuit." Black's Law Dictionary (9th ed. 2009).

[fn12] The *Morales* court also pointed out that the Bankruptcy Code makes a similar distinction, defining a "claim" as a "right to payment" and defining a "debt" as a "liability on a claim." *Id.* (quoting 11 U.S.C. §§ 101(5), (12)).

[fn13] At least one bankruptcy court has explicitly recognized that defenses, as well as causes of action, are property interests of the estate under section 541. *See In re Gainesville Venture, Ltd.*, 159 B.R. 810, 811 (Bankr.S.D. Ohio 1993) (holding that, in a chapter 11 bankruptcy where the debtor was a limited partnership, "any causes of action or defenses" belonging to the limited partnership were property of the estate pursuant to section 541). The court's holding that a defense, which would not be considered a chose in action, is part of the estate lends further support to this Court's finding that an appeal need not constitute a chose in action in order to be considered property of the estate.

Copyright © 2014 CCH Incorporated or its affiliates

# Tab 11

*Lowry v. Croft (In re Croft)*, 2012 BL 321154 (W.D. Tex. Dec. 10, 2013)

# United States 5th Circuit Court of Appeals Reports

IN RE CROFT, 737 F.3d 372 (5th Cir. 12-10-2013)

In the Matter of Bradley L. CROFT Debtor. Bradley L. Croft, Appellant v.

Jeanette Barbara Lowry; AMS SA Management, L.L.C., also known as Association

Management Services; Shavano Rogers Ranch Swim Club, Incorporated,

Appellees.

No. 13-50020 Summary Calendar.

United States Court of Appeals, Fifth Circuit.

December 10, 2013.

**Page 373**
David Thornton Cain, Attorney, San Antonio, TX, for Appellant.

R. Glen Ayers, Jr., Esq., Allen Mahlon DeBard, Esq., Langley & Banack, Inc., **Page 374** San Antonio, TX, Charles B. Gorham, San Antonio, TX, for Appellees.

Appeal from the United States District Court for the Western District of Texas.

Before JOLLY, SMITH, and CLEMENT, Circuit Judges.

PER CURIAM.

This Texas bankruptcy case presents a question of first impression in this circuit and under Texas law. The issue is whether defensive appellate rights are considered property under Texas law. If so, they will be considered property of the bankruptcy estate and may be sold by the trustee; if not, then the debtor retains his right to appeal a judgment against him. We AFFIRM the district court's determination that defensive appellate rights are property under Texas law and saleable by the bankruptcy estate.

## STATEMENT OF FACTS

Bradley Croft (Croft) was involved in two lawsuits against AMS SA Management LLC a/k/a Association Management Services and Shavano Rogers Ranch Swim Club Inc. (collectively Appellees) in Bexar County, Texas District Court. Both lawsuits resulted in sanctions against Croft and attorney's fees in favor of Appellees. Croft subsequently appealed both sanction orders to the Texas Fourth Court of Appeals.

After filing both appeals, Croft filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code. The Fourth Court of Appeals abated both appeals and Croft filed a motion in the bankruptcy court for limited relief from the automatic stay in order to proceed with the appeals. Appellees opposed Croft's motion, arguing that the appellate rights had become property of the bankruptcy estate and thus could be sold by the trustee pursuant to a proposed sale procedure.

The bankruptcy court found that Croft's defensive appellate rights were not property of the estate because they were purely defensive — i.e., they appealed an adverse judgment, not a chose in action held by Croft — and granted Croft's motion. It ordered that the automatic stay be lifted for the purpose of reinstating both appeals and permitting either Croft or the Chapter 7 trustee to prosecute the appeals. The

bankruptcy court denied Appellees' motion to reconsider and Appellees timely appealed to the Western District of Texas pursuant to 28 U.S.C. § 158(a). The district court reversed, finding that the defensive appellate rights are property of the estate and thus subject to sale by the Chapter 7 trustee. Croft appeals.

## STANDARD OF REVIEW

This Court reviews the decision of a district court, sitting as an appellate court, by applying the same standards of review to the bankruptcy court's findings of fact and conclusions of law as applied by the district court. *In re SI Restructuring, Inc.*, 542 F.3d 131, 134-35 (5th Cir.2008). We thus review factual findings for clear error and conclusions of law de novo. *Id.* at 135.

## DISCUSSION

To determine whether something is property of the bankruptcy estate, a court must look to both state and federal law. Specifically, a debtor's property rights are determined by state law, while federal bankruptcy law applies to establish the extent to which those rights are property of the estate. *Mitchell v. BankIllinois*, 316 B.R. 891, 896 (S.D.Tex.2004); *see also Butner v. United States*, 440 U.S. 48, 55, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979) (holding that [p]roperty interests are created

**Page 375**

and defined by state law); *Stanley v. Trinchard*, 500 F.3d 411, 418 (5th Cir. **2007)** (holding that while a debtor's pre-petition rights in property are determined according to state law, federal bankruptcy law determines the extent of a debtor's bankruptcy estate). The determinative question is whether Croft's interest in appealing a judgment against him constitutes property under Texas law — and is therefore part of the estate — or not.

The Supreme Court of Texas has recognized that Texas law defines property broadly, extending to every species of valuable right and interest. *Womack v. Womack*, 141 Tex. 299, 301, 172 S.W.2d 307 (1943). It is well established that any causes of action belonging to the debtor are property that becomes part of the estate once the bankruptcy petition is filed. *Kane v. Nat'l Union Fire Ins. Co.*, 535 F.3d 380, 385 (5th Cir.2008) (per curiam) (Section 541 of the Bankruptcy Code provides that virtually all of a debtor's assets, including causes of action belonging to the debtor at the commencement of the bankruptcy case, vest in the bankruptcy estate upon the filing of a bankruptcy petition.); *Douglas v. Delp*, 987 S.W.2d 879, 882 (Tex. 1999). Once a claim belongs to the estate, the trustee has exclusive standing to assert the claim. *In re Educators Grp. Health Trust*, 25 F.3d 1281, 1284 (5th Cir. 1994); *Delp*, 987 S.W.2d at 882. Because causes of action become property of the estate, they may be sold by the bankruptcy trustee. *In re Moore*, 608 F.3d 253, 258 (5th Cir.2010) (A trustee may sell litigation claims that belong to the estate, as it can other estate property, pursuant to § 363(b).).

Property rights in legal causes of action include not only causes of action themselves, but also any appellate rights related to those causes. *Valenciana v. Hereford Bi-Products Mgmt, Ltd.*, No. 07-05-0051-CV, 2005 WL 3803144, *1 (Tex.App.-Amarillo Feb. 24, 2005, no pet.) (internal citations omitted). At issue is whether an appellate right that is *not* based on a cause of action — i.e., an appeal of a judgment against the debtor — is property under Texas law.

Only two courts — neither of which addresses Texas law — have considered this question. In *In re Mozer*, the Central District of California found that defensive appellate rights were property under California law.[fn1] 302 B.R. 892, 896 (C.D.Cal.2003). In examining the nature of defensive appeals, the court found that Defensive Appellate Rights arising from a judgment against

the Debtor are not qualitatively different with respect to their status as property than appellate rights arising from a judgment on the Debtors' claims. *Mozer*, 302 B.R. at 896. Analogizing to a cause of action to set aside a foreclosure, it concluded that successful exercise of the Defensive Appellate Rights has the same analytic effect as the pursuit of an action to set aside, i.e., it would increase the debtor's assets. *Id.* So even though the judgment underlying the appeal had no value to the estate, the *appeal* from that judgment had value in **Page 376** that it could reduce the debtor's liabilities, and thereby increase the value of the estate.

In *In re Morales*, the Bankruptcy Court for the Northern District of Iowa explicitly rejected the reasoning in *Mozer* and determined that defensive appellate rights were not property under Iowa law. 403 B.R. 629 (Bankr.N.D.Iowa 2009). Iowa Code § 4.1(21) defines personal property to include money, goods, chattels, evidences of debt, and things in action. Things in action, or choses in action, are rights that can be enforced by legal action (e.g., debts or causes of action in tort). Bryan A. Garner, *Garner's Dictionary of Legal Usage* 155 (3d ed.2011). Rejecting the argument that defensive appellate rights may be alienated separately from the underlying obligation on judgment debt, the court found that an appeal of the judgment against her on a debt does not make the appellate action an asset. *Morales*, 403 B.R. at 632-33. The court held that [t]he nature of the appellate right . . . does depend on the nature of the underlying judgment. *Id.* at 633. It further held that defensive appellate rights would not be considered property of the estate, even if they were property under Iowa law, since allowing the trustee to dispose of the debtor's right to appeal an adverse judgment would effectively destroy any right to object to the claim. *Id.*

The bankruptcy court agreed with the reasoning in *Morales*, finding that purely

defensive appellate rights, are not a 'chose in action' and because they are not a 'chose in action' they're not property. Bankr. Ct. Hr'g Tr. 36:21-23. It further held that both the Debtor and the Trustee do have standing to pursue that appeal. Bankr. Ct. Hr'g Tr. 35:12-13. The district court reversed, finding whether the appellate right is a chose in action irrelevant to the inquiry, as [n]either Texas's definition of property nor the plain language of section 541 suggests that property of the estate should be restricted to only those appellate rights that constitute a chose in action. Op. 377-78. Focusing instead on Texas's broad definition of property as including every species of valuable right and interest, the district court found that defensive appellate rights constituted both (1) a right, because it grants a party the prerogative to unilaterally invoke the court system, and (2) a valuable interest, as a judgment against property directly affects the property's value and character, and because a judgment can be modified or vacated on appeal, the right to appeal a judgment constitutes an interest in the underlying property. Op. 376-77.

We agree with the district court's analysis. As the court stated in *Mozer*, the right to appeal is valuable in nature, 302 B.R. at 896, irrespective of whether the underlying judgment has any value to the debtor. While it is true that a judgment against the debtor is an obligation and has no value to the estate — and would therefore not be included in a list of property — the right to appeal that judgment certainly has a quantifiable *value*[fn2] to the **Page 377** debtor, and therefore constitutes property under Texas law. And while the debtor may not have a legal interest in the cause of action underlying the judgment against him, he certainly retains a legal interest in the assets that will be used to satisfy that judgment and in ensuring that the damage to these interests is minimized. Croft's defensive appellate rights are property under Texas law, and became part of the estate when he filed for bankruptcy. *See* 11 U.S.C. § 541(a)(1)

(providing that all legal or equitable interests of the debtor in property as of the commencement of the case become part of the estate).

The impropriety of the bankruptcy court's decision to the contrary is apparent from its conclusion that both the Debtor and the Trustee do have standing to pursue that appeal. This holding conflicts with the well-established principle that [o]nce a claim belongs to the estate, 'then the trustee has exclusive standing to assert the claim.' *In re Educators Grp. Health Trust*, 25 F.3d at 1284. If the claim does not belong to the estate, then the trustee lacks standing to pursue the appeal; if it does, then only the trustee has standing. *See In re Seven Seas Petroleum, Inc.*, 522 F.3d 575, 584 (5th Cir.2008) (If a claim belongs to the estate, then the bankruptcy trustee has exclusive standing to assert it. However, the trustee has no right to bring claims that belong solely to the estate's creditors.) (internal citations omitted); *In re Maple Mortg., Inc.*, 81 F.3d 592, 595 (5th Cir.1996) (trustee's power limited to an interest of the debtor in property).

Croft further objects that his defensive appellate rights are not saleable by the estate because it would effectively destroy any right that he has to object to the Appellees' claim. To the extent Croft is arguing that he will not be able to object to the sale of the claim, his argument is without merit. As discussed at the bankruptcy proceeding:

[i]f there are bids — viable bids that the trustee is willing to accept, he will file a motion with the Court to sell the property. The parties will have an opportunity to object. If there — If there is an objection, there will be a hearing before the Court and any parties that want to will have the opportunity to bid at the hearing.

Bankr. Ct. Hr'g Tr. 6:8-14. Croft argues that this opportunity to object is farcical, as the only party with any interest in his defensive appellate rights would be the holder of the judgment, who will then extinguish the appeal. While that may be true, the trustee remains bound by its duty to maximize the value of the estate, 11 U.S.C. § 704(a)(1), and will sell only if the price offered exceeds the expected value of litigating the appeal. *See* Bankr.Ct. Hr'g Tr. 6:8-9 (If there are bids — viable bids that the trustee is willing to accept. . . .). As an additional safeguard, the sale must be approved by the bankruptcy judge. If it is not, the appellate rights will be deemed abandoned and revert back to Croft, who will then be free to pursue his appeal in state court. Bankr.Ct. Hr'g Tr. 6:15-19 (Then if for some reason the sale is not approved by the Court, again, the property would be abandoned and the stay would be lifted, for the — in order for the Debtor to go forward with his appeal in the Fourth Court of Appeals.).

Croft's objection can also be understood as objecting to the simple fact that he can no longer appeal the merits of the judgment. This argument fails because it is well established that the right to appeal is

**Page 378**

property of the estate. Because Croft has presented no arguments demonstrating why losing defensive appellate rights would create a greater injustice than losing cause-of-action appellate rights, there is no reason to treat them differently. Croft's final argument is that selling his defensive appellate rights forbids him from objecting to enforcement of the judgment against the estate. When a claim is submitted against the estate, the claimant must submit a proof of claim. If a party wishes to object—be it Croft or the trustee—that party must present evidence establishing the basis of the objection. 3 Norton Bankr.L. & Prac.3d § 48:28. This is a separate concern from mounting an appeal against the merits of the judgment. Objecting to a claim against the estate requires evidence that the judgment was not valid or was for a different amount than claimed; it has nothing to do with the merits of the underlying case. Nothing in the

sale of the appellate right indicates that the estate will not be allowed to challenge the sufficiency of the creditors' proofs.

Croft possessed a valuable right and interest in his defensive appellate rights. Those rights became a part of the estate when he commenced his Chapter 7 bankruptcy proceedings. The decision of whether to pursue the appeal or sell his defensive appellate rights is now the exclusive province of the trustee.

**CONCLUSION**

For the foregoing reasons, the judgment of the district court is AFFIRMED.

[fn1] California Civil Code § 655 defines property, in relevant part, as ownership of all inanimate things . . .; of all obligations; of such products of labor or skill as the composition of an author; the good will of a business, trade marks and signs, and of *rights created or granted by statute.* (Emphasis added.). Because the California Code of Civil Procedure created the right to appeal, the court found that all appellate rights constitute property under the statute. As in California, the Texas Rules of Civil Procedure provide appeal as of right from civil judgments. Tex.R. Civ. P. 506.1. But unlike California, Texas property law does not define property to include rights created or granted by statute. So while *Mozer* provides persuasive rationale, it is not directly on point.

[fn2] The expected value of a defensive appeal is (1) the probability of success on appeal, multiplied by (2) the expected decrease in liability. The appeal certainly has value for the estate, which has every incentive to pursue the appeal against the assets of the estate, thereby reducing its liability to creditors. If the expected value of the appeal is less than either (1) the cost of pursuing the appeal or (2) the price offered to purchase the right to appeal, the trustee will maximize the value of that right by selling it for the best price possible. The defensive appellate right is also of value to the judgment holder, who may be willing to pay some amount to the estate-essentially functioning as a settlement-to avoid (1) incurring additional litigation costs to enforce the judgment and (2) the risk of reversal. Whether the defensive appellate rights are sold depends upon whether the parties can agree on the value of those rights, *not* whether they have any value at all.

Copyright © 2014 CCH Incorporated or its affiliates

# Tab 12

Transcript excerpts from hearing before the Hon. Craig Gargotta on the
Trustee's Motion to Sell All Non-Exempt Assets, Claims and Causes of Action[10],
October 15, 2014

---

[10] Case No. 14-50980-cag, *In re: Burton M. Kahn*, Debtor, United States Bankruptcy Court for the Western District
of Texas, San Antonio Division

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE WESTERN DISTRICT OF TEXAS

SAN ANTONIO DIVISION

IN RE:                          * Case No. 14-50980-cag
                                *
BURTON M. KAHN,                 *
                                *
     Debtor.                    * October 15, 2014


-------------------------------------------------

BEFORE THE HONORABLE CRAIG A. GARGOTTA

BANKRUPTCY JUDGE

-------------------------------------------------


#59 - Trustee's Motion to Sell All Non-Exempt Assets,
Claims and Causes of Action.

**********

Proceedings recorded by electronic sound recording,
transcript produced by transcription service.

---

If you all want to talk for a minute, get situated, and then we'll start the matter. I might -- To be fair to you all -- or, I'm sorry, I might break to take up the other matter. All right?

MR. POWERS: Yes, sir.

THE COURT: So, just to let you know.

All right, ladies and gentlemen. We'll take a five-minute recess. Okay? Thank you.

COURTROOM DEPUTY: All rise.

(Recess.)

THE COURT: Mr. Thomas, could you -- could you come to the podium, please?

MR. THOMAS: Good morning, Judge.

THE COURT: Good morning. This is on your motion to sell. We have two interested parties. We have the Debtor, Mr. Kahn, and also we have -- Is it Helvetia, is how you pronounce it?

MR. THOMAS: Yes, your Honor.

THE COURT: And they're the purchaser of the -- of the cause of action, and, I'll just say, generically, the nonexempt assets, claims --

MR. THOMAS: That's correct, Judge.

THE COURT: -- and causes of action.

I think this is going to take a little bit of time. Were you aware of that?

---

that.

(Sotto voce exchange.)

(Other matter taken up.)

THE COURT: I'm going to take, like, a three-minute recess, and then we're going to start, Mr. Kahn.

MR. KAHN: Thank you, your Honor.

THE COURT: Thank you, sir.

All right. So, just a very short recess, and then we'll begin with the Kahn matter.

COURTROOM DEPUTY: All rise.

(Recess.)

THE COURT: All right, Mr. Thomas. This is your motion. We're going to start with you first, then I'll hear from the other interested parties.

MR. THOMAS: Mr. Johnny Thomas, Trustee and Movant.

This is an application to sell the nonexempt property of the estate. It mainly involves some shares in Helvetia, a thousand shares; a hundred shares in another corporation called Joabert; and, then, numerous lawsuits that he -- that Mr. Kahn, the Debtor, claims are valued at $1,470,940.

THE COURT: A million or a hundred million?

MR. THOMAS: One million.

---

THE COURT: Okay.

MR. THOMAS: And the -- the shares, he's valued at 3,734,309.

THE COURT: So, may we break it down, just -- I know I asked you to go through a recitation, but help me out. So, we -- You want to sell a hundred shares of stock in Helvetia?

MR. THOMAS: Yes -- Oh, Helvetia, 1,000 shares.

THE COURT: One thousand. Then a hundred shares in what?

MR. THOMAS: Joabert, J-O-A-B-E-R-T.

THE COURT: Do you know what Joabert is?

MR. THOMAS: Where it is?

THE COURT: No, what it is, what kind of entity it is.

MR. THOMAS: Oh, these are development companies. They --

THE COURT: Development companies?

MR. THOMAS: Yes, sir.

THE COURT: All right. Then you said some causes of action, the rest are causes of action?

MR. THOMAS: Yes, sir. Item 21 on Schedule B outlines those lawsuits involving --

THE COURT: How many are there, please?

MR. THOMAS: Seven.

THE COURT: All right. Can we -- Just for purposes of the record, and I appreciate you -- you trying to get to the point, but let's break these down. Go -- Go through them one-by-one so I have a record of what -- what these causes of action are.

MR. THOMAS: Yes, sir. There's one lawsuit against Haynes and Boone, --

THE COURT: Okay.

MR. THOMAS: -- 1,400,000.

There's a lawsuit against the City of San Antonio for 70,000.

There's a lawsuit against -- Burton Kahn versus Helvetia. He doesn't value that lawsuit.

THE COURT: Okay.

MR. THOMAS: There's another lawsuit. If I can give you the case number, Judge: The last four digits 0014, Burton Kahn versus Helvetia; the last four 0258, Burton Kahn versus Helvetia; 0319, Burton Kahn versus Helvetia; --

These are all state court cases. I'm sorry. These are all, yeah, state court cases that are now on appeal.

-- 0357, Burton Kahn versus Helvetia.

The cases now still in district court, 2013

cases: Last four 8355, Helvetia Recovery versus Kahn; and then, 2013, 8394, Helvetia Recovery.

Those are the lawsuits, as I understand them, Judge.

THE COURT: Very -- If I may interrupt you again, because I'm trying to get some context.

Have -- You mentioned appeals. Have there been a number of determinations on these causes of action?

MR. THOMAS: Yes, Judge. I believe they were all against Mr. Kahn, but he appealed them.

THE COURT: Okay. So, we -- For purposes of the record, on the causes of action, even though it appears that Mr. Kahn was the plaintiff in all of these, there was a determination at the trial level in favor of the -- collectively, of the defendants, --

You'll get your turn, Mr. Kahn.

-- and those matters are up on appeal; is that correct?

MR. THOMAS: That's my -- According to his schedules.

THE COURT: All right.

MR. THOMAS: That's what he's indicated.

THE COURT: Okay. So, what other assets are you trying to sell?

MR. THOMAS: Then there were some other

small businesses that -- Some are operating and some are not. In addition to Joabert and Helvetia, there was something called Trail Construction Company; Puerto Verde, Ltd.; Key Largo Homeowners Association; Royal Crest Homeowners Association; Contour Construction; Ideal Travel Company; Paradiv, P-A-R-A-D-I-V, Corporation; and Terob, T-E-R-O-B, Corporation.

And some of these, he says they're presently operating, some he says are not operating. We're not clear on all of them. But we want to --

THE COURT: Does he ascribe a value to them?

MR. THOMAS: He did not, to these corporations, Judge.

THE COURT: Is there -- Is it listed as unknown, or just no value listed?

MR. THOMAS: No bank account, unknown. Some are unknown and some say no bank account.

THE COURT: All right. Please continue. Is there -- Are there any other assets?

MR. THOMAS: These are the assets, as I understand them, Judge. And I think these are the assets that the buyer was mainly interested in recovering, your Honor.

THE COURT: All right. So, let me -- let me

just stop you right there. And there's a reason why I'm going through this.

So, we have shares of stock in two entities. We have, I believe you indicated, seven causes of action. Then we have these businesses that may or may not be operating.

You've conducted -- Have you concluded the 341 meeting?

MR. THOMAS: Yes, Judge. We -- I think there were at least four resets. The last one was completed in July.

I did have an attorney assist me at the beginning. We made a determination that it'd be hard to litigate all these lawsuits. And we just -- I just didn't feel -- or the attorney didn't feel it was marketable. It would take several thousands of dollars to litigate the claims, and so forth. And even the ownership interest, it would take some -- some litigation to resolve the actual -- whether or not he owns that interest.

The clearest might be that he owns one/third of Joabert, but then it doesn't appear that Joabert has any equity.

THE COURT: Okay.

MR. THOMAS: And so, with that, I --

toward -- I guess in August, after we concluded the 341 meetings, the -- Helvetia offered $10,000 to buy all of these properties, --

THE COURT: When you say "properties," --

MR. THOMAS: -- which would amount --

THE COURT: May I -- May I interrupt you again? Everything?

MR. THOMAS: Everything. Yes, sir.

THE COURT: Stock, causes of action, interest in whatever these -- these entities are. Is that correct?

MR. THOMAS: Yes, sir. That's correct.

THE COURT: All right.

MR. THOMAS: And for about $10,000, I think we would get somewhere between two and three percent interest for the unsecured.

THE COURT: Okay.

MR. THOMAS: And, so, it's above one percent. If it's above one percent and -- I've always considered that incon- -- more than inconsequential. So, I think there's some value, and something for creditors, as opposed to nothing.

THE COURT: In your capacity as the Trustee -- And how long have you been a Panel Trustee?

MR. THOMAS: Since '96. 1996.

THE COURT: So, you have -- And I genuinely mean this. You have considerable experience in this regard.

MR. THOMAS: Yes, sir.

THE COURT: Obviously, you conducted the 341 meeting. Did you -- Based upon -- As you understand the facts of this case, and you've analyzed this case both for its own facts and based upon your experience as a trustee, do you think -- I mean, did you think it was appropriate to market these assets, or simply seek -- I mean, how did you go about the $10,000 number with Helvetia?

MR. THOMAS: Judge, I was in the process of probably no-asseting the case, or at least holding on to see what would happen to the litigation as it was proceeding. And, in the middle of that, I was offered the $10,000. It was initially five, but at least ten -- five would have -- $5,000 would have been less than one percent, which I didn't think would have -- have much value to the estate. Ten thousand would get at least -- get me to at least two or three thousand, and that was the offer on the table.

And part of my concern was that something like this sometimes needs to be brought to the attention of the Court, and that's what I wanted to do, also.

THE COURT: No, you did exactly right, because essentially--I mean, let's be honest, we're all adults here--they're buying peace.

MR. THOMAS: That's correct.

THE COURT: If I -- If I approve the sale to them, it cuts off Mr. Kahn's ability to pursue these cases as the Debtor.

MR. THOMAS: That's correct.

THE COURT: I think you would agree with this statement. First of all, these are all prepetition causes of action, so they enure to the Chapter 7 estate, of which you're the Panel Trustee. Would you agree with that statement?

MR. THOMAS: I agree. And that's -- I think Mr. Kahn agrees with that, also.

THE COURT: All right. From the perspective, if you have a position, does Mr. Kahn, as the Debtor, have any standing to object to this based upon the fact that they're -- You know, a lot of times when we look at objections to claim, the analogy where I'm going is, is if a debtor wants to intervene in a trustee's claims objection, one of the things I have to evaluate is whether or not there's any -- there's going to be any return to the debtor. If there isn't, the debtor doesn't have standing to object to the

claim.

Does Mr. Kahn have any standing to object to the sale, given that there's only going to be a, we'll say, three percent distribution to unsecureds?

MR. THOMAS: Judge, if everything went right, I don't think there'd be money back to Mr. Kahn. If most of -- You know, if -- if even fifty percent, ten percent of the values come out right, I don't see any money going back to Mr. Kahn.

THE COURT: All right.

MR. THOMAS: And, so, I certainly don't see $10,000 giving any benefit to Mr. Kahn.

THE COURT: So, let's --

MR. THOMAS: And, so, I do question it.

THE COURT: So, you agree with me that there may -- Is there or is there not a standing issue?

MR. THOMAS: I think there's a standing issue, Judge. If you look at his value, he thinks that these have some equity down the road. I just think it's totally unreasonable.

THE COURT: All right. So, let's -- let's focus back on one other thing for a minute, and then I'll hear anything else you have to say, is, let's assume that you got no tender from Helvetia of any monies, you know, the case proceeded along. How long

would you keep this case open, given the administrative costs versus what might happen with regard to the lawsuits, and the value of the business entities, and the value of the shares? What would you do? Would you -- Would you file a no-asset report?

MR. THOMAS: Yes, sir. A lot of times, when a lot of litigation is going on like this, I would hold off on the no-asset report and at least let some of the cases resolve. So, hopefully, within a year I'd be able to let it -- go ahead and file the no-asset case, and the creditors would get nothing.

THE COURT: All right. So, you would delay closing the case to see what would unfold with regard to these causes of action?

MR. THOMAS: That's correct, Judge.

THE COURT: All right. What else do you wish to tell me?

MR. THOMAS: Judge, that was the -- those were all the issues I had in mind. And, also, I would add that the estate has no money to pursue a lot of the litigation.

THE COURT: Thank you. That was the last point. Let's talk briefly about that.

Now, what's your commission on a case like this?

MR. THOMAS: Twenty-five the first 5,000.

from it, so that appeal, I think, is pending.

THE COURT: Okay.

MR. POWERS: There's a question as to whether it will -- well, as to whether he can appeal, given some orders of the appellate court, which I'll talk about in a minute.

In addition to that, there is a judgment for over $2 million, a unanimous verdict returned against Mr. Kahn in Judge Bery's (sic) court, for breach of fiduciary duty --

THE COURT: Which Judge Biery --

MR. POWERS: B-E-R- --

MS. BARKLEY: Michael Mery.

MR. POWERS: Michael Bery (sic). Okay.

THE COURT: Okay. I thought you said Biery. That's why I asked.

MR. POWERS: Oh, no. The state --

THE COURT: I'm thinking of -- So, state court?

MR. POWERS: Yes.

THE COURT: Michael Bery (sic). Go ahead, sir.

MR. POWERS: Yeah, Bery (sic). Michael --

MS. BARKLEY: Mery, M-E- --

MR. POWERS: B-E-R- --

MS. BARKLEY: M-E-R-Y.

MR. POWERS: Oh, Mery. I said Bery. Excuse me. Mery. And --

THE COURT: Thank you.

MR. POWERS: Thank you. And -- I tried the case for two weeks. I should know that. But, anyway.

So, it's about -- approximately $2 million, findings of breach of fiduciary duty, embezzlement of funds belonging to Helvetia, punitive damages of about a million dollars, as I recall. I think that judgment is, in all things, final. Mr. --

THE COURT: No further appeals?

MR. POWERS: Well, let me explain my position. Mr. -- Mr. Kahn filed a notice of appeal. He then dismissed his appeal. Okay? He now has filed a second appeal of that judgment -- not of the judgment, but of an order that refused to grant him a new trial.

THE COURT: Okay.

MR. POWERS: The appellate court recently issued an order, I think last week, saying -- explaining why we should not dismiss this because you can't appeal that type of an order. The time to appeal the final judgment's over. You only get one appeal. He dismissed his appeal. I think it's final.

So, I took $60,000 out of Helvetia and put it into -- I believe I put it into Joabert because Joabert is the one who put -- spent the money. I don't know. Then --

THE COURT: But is this part of the lawsuit that's pending in state court?

MR. KAHN: Yes.

THE COURT: Stop. Stop. You're missing the essential point. I'm not going to make a determination on any of that. That's -- Don't -- Don't --

MR. KAHN: Well, I'm not asking you to --

THE COURT: Focus. Focus on what I'm trying to ask you.

So, the merits of those lawsuits will be determined by a state court. Do you disagree -- Listen to my question. Do you disagree that what Mr. Powers said about all of the lawsuits that you filed, that judgment has been entered against you?

MR. KAHN: Judgment has been entered against me, and it is on appeal, your Honor.

THE COURT: All right. So, it's on appeal. But right now, right now, as it stands right now, those -- those lawsuits are worth nothing, because you lost. Would you agree with that?

MR. KAHN: That's correct.

THE COURT: All right. So, your point is what on going through this rendition on the lawsuits? They're on appeal. I understand that. You might get them reversed. But the value of the lawsuits right now is nothing.

MR. KAHN: Well, it's -- Well, that's -- that's because it's in the negative -- negative amount.

Now, one of the things is, what they did on the same -- on the sanction motion hearing, which -- which I was unsuccessful on, the -- But it was -- Number one, it -- it was -- It's got all to do with this man named Daggett (phonetic).

THE COURT: You're arguing the merits again.

MR. KAHN: I -- I -- I -- I know. I'm just trying to --

THE COURT: You're missing the point. You're -- With all due respect to you, you're missing the point. My job, as it stands right now, is the Trustee's filed a motion before this Court, and says, Judge, I need to administer this estate, and here are the assets I need to administer.

He's described -- You've already agreed as to, I have three categories of assets. I have interest in

THE COURT: All right. So, Mr. Mowrey was unable to give an opinion because he wasn't asked to give an opinion of the as-is value of the property. He can only give a prospective opinion.

As a result, Mr. Kahn, you have not established what the value of Joabert is -- or -- or Royal Crest is today. So, you do not have a pecuniary interest in this case. And as a result, you don't have standing to object to the motion to sell.

So, for purposes of the record, I'm going to make the finding that, given that the Debtor has not established that there is a value that exceeds the debts in this case, let alone the debt against Royal Crest property, that he does not have a pecuniary interest in this motion to sell.

So, I'm going to overrule your objection and grant the motion to sell.

MR. KAHN: Your Honor? Your Honor?

THE COURT: We're done. We're done. I gave you your chance. You can't establish --

MR. KAHN: (Indiscernible.)

THE COURT: Don't interrupt me. Do not interrupt me. Let me -- Let me -- Let me help you out and just tell you this.

I have been exceedingly patient this morning.

MR. KAHN: Joabert

THE COURT: -- Joabert; causes of action that you have filed as the plaintiff, Mr. Kahn; and then your interest in several business entities.

You acknowledged on the record that, as to business entities, they've either closed, ceased operations or have no value.

MR. KAHN: Right.

THE COURT: As -- As to the causes of action, all those causes of action, you've lost, as the plaintiff, several matters on appeal. There is Fifth Circuit precedent that recites, notwithstanding the pendency of an appeal, a ruling by a trial court is a final judgment. So, I can ascribe a value to those causes of action, and I ascribe a value of zero.

That leaves only the shares of stock in Helvetia and Joabert -- or Joabert. Forgive me. As to Helvetia, accepting as true your listing of value of your share -- a thousand shares of stock of $685,000, you would still have to demonstrate to the Court that your interest in the other entities, the Royal Crest property, when added to that value, exceeds the amount of debts in this case. It doesn't.

So, for purposes of the record, I'm first going

to find that you don't have standing based upon my conclusion about value. And I'm also going to find that your objections are not well taken.

So, Mr. Thomas, the motion is approved.

MR. THOMAS: Thank you, Judge.

THE COURT: All right. We're done.

COURTROOM DEPUTY: Order in the file?

THE COURT: Order -- May I sign the order in the file?

(Sotto voce exchange.)

MR. KAHN: Your Honor, I --

(Sotto voce exchange.)

MR. THOMAS: I'll let them look at it first, your Honor, you know, and then...

THE COURT: All right.

MR. KAHN: I -- I do object, and I will appeal it.

THE COURT: Your appeal -- You may -- You certainly, as a litigant, have the right to appeal. And I've explained my reasoning on the record. You can certainly, if you want, have the District Court consider the Court's ruling. But for purposes of this morning, I've made my decision.

MR. KAHN: Now, whether --

THE COURT: We're -- We're done. When I

make a ruling, we're done, sir.  You're excused.

Ma'am?

COURTROOM DEPUTY:  (Indiscernible?)

THE COURT:  No.  He didn't ask for them to be admitted.  You may return them to him.

All right.  Thank you.

MR. POWERS:  Thank you, your Honor.

COURTROOM DEPUTY:  All rise.

MR. POWERS:  Thank you for your time.

(Recess.)

************

I, Court approved transcriber, certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter.

/s/ Darla Messina                    December 12, 2014
Signature of Approved Transcriber    Date

Darla Messina
Typed or Printed Name

# Tab 13

Appellee's Brief in *In re a Purported Lien or Claim Against Helvetia Asset Recovery, Inc.*, No. 04-14-00357-CV, filed November 3, 2014, pp. 34-36

ACCEPTED
04-14-00357-CV
FOURTH COURT OF APPEALS
SAN ANTONIO, TEXAS
11/4/2014 11:53:12 AM
KEITH HOTTLE
CLERK

**NO. 04-14-00357-CV**

IN THE COURT OF APPEALS
FOR THE FOURTH DISTRICT OF TEXAS

IN RE:

A PURPORTED LIEN OR CLAIM
AGAINST HELVETIA ASSET RECOVERY, INC.

ON APPEAL FROM THE 224TH JUDICIAL DISTRICT COURT
BEXAR COUNTY, TEXAS
CAUSE NO. 2013-CI-18394

BRIEF OF APPELLEE HELVETIA ASSET RECOVERY, INC.
IN RESPONSE TO APPELLANT'S AMENDED BRIEF

HAYNES AND BOONE LLP

Werner A. Powers
State Bar No. 16218800
2323 Victory Avenue, Suite 700
Dallas, Texas 75219
Telephone: (214) 651-5000
Facsimile: (214) 651-5940
werner.powers@haynesboone.com

HAYNES AND BOONE LLP

Lisa S. Barkley
State Bar No. 17851450
112 E. Pecan, Suite 1200
San Antonio, Texas 78205
Telephone: (210) 978-7427
Facsimile: (210) 554-0427
lisa.barkley@haynesboone.com

**COUNSEL FOR APPELLEE**

Second, the record establishes the trial court imposed sanctions because Kahn acted in bad faith by filing a fictitious and groundless lawsuit on November 5, 2013 that was intended to harm Helvetia's business. 3CR 248-249. Kahn's subsequent act of reneging on his Rule 11 Agreement to release the cloud on Helvetia's title caused by his fictitious suit was further evidence of his intent to harm Helvetia. 3CR 250-251. Kahn's own counsel recommended he release the lien right away by performing under the Rule 11 Agreement, and Kahn fired him. 5SRR 149; 3RR 30, 102-104. As the trial court noted, Kahn knew how to chill sales with fraudulent liens. 3CR 232, 3CR 255; 3RR 59-60. By disavowing the Rule 11 Agreement, Kahn succeeded in keeping the fraudulent lien intact until it was finally set aside after a lengthy evidentiary hearing, multiple other hearings and the entry of two TROs against him. 2CR1, 5, 8, 42 11; 1CR 161; 5SRR 162. It was but one act by Kahn "in a pattern of tactical gamesmanship to delay the inevitable dismissal" of his claim. *See Bennett v. Reynolds,* No. 03-12-00568-CV, 2014 WL 4179452 (Tex App.—Austin Aug. 22, 2014m no pet. h.). Had Kahn performed under the Rule 11 Agreement and promptly released the lien, substantial sums of attorneys' fees would have been avoided.

**C.** **A sanctions motion predicated on a party filing a fictitious lawsuit necessarily required the trial court to determine ownership issues.**

In Kahn's second issue, he appears to complain the trial court's sanction was based on its finding Kahn did not own Helvetia, an issue Kahn contends was not

34

before the trial court. Am. Br. p. 11. Kahn argues ownership was neither set for hearing nor a matter within the trial court's subject matter jurisdiction. *Id.* These arguments are unavailing.

The trial court did not abuse its discretion by finding Kahn held no ownership interest in Helvetia. Helvetia's motion for sanctions expressly argued Kahn did not own Helvetia when he filed the underlying lawsuit, making it a fictitious lawsuit and conduct sanctionable under the various grounds sought. 2CR 121, 123, 126, 130, 132, 133, 137. Based on the motions, Kahn knew the trial court would necessarily adjudicate ownership of Helvetia as it evaluated whether sanctions were warranted. 3CR 230, 235-242.

Further, Kahn's conclusion that the trial court "declared" that "the ownership of stock was not in her subject matter jurisdiction," is contrary to the record. Am. Br., pp. 11-15. In the soliloquy cited by Kahn, the context shows Judge Tanner explaining to Kahn the trial court could not comply with Kahn's request that it "make" Helvetia's counsel Werner Powers "prove who he is" absent Kahn setting before the court a motion under Rule 12 of the Texas Rules of Civil Procedure challenging Powers' authority to prosecute a lawsuit on behalf of Helvetia:

> Mr. Kahn: …And another thing is this: **The issue in this particular case is who owns the stock, who owns the company**. And there's no – he [Mr. Powers] just all of a sudden says I'm Helvetia, I'm this. So we need to

35

have – when he presents his case, he needs to prove – I'm requesting that he needs to prove who he is before [he] can even ask any questions. (emphasis added – see above)

The Court: Well, that's a subject of a different type of motion than is before me right now. But you're certainly welcome to urge that to some court when you file a proper motion.

3RR 20-21. *See* TEX. R. CIV. P. 12 ("A party to a suit or proceeding pending in a court of this state may, by sworn written motion stating he believes the suit or proceeding is being prosecuted or defended without authority, cause the attorney to be cited to appear before the court and show his authority to act"); *In re Guardianship of Benavides*, 403 S.W.3d 370, 376 (Tex. App.—San Antonio 2013, pet. denied) (a trial court considers and weighs the evidence presented at the hearing on a Rule 12 motion to show authority). App. 16. Nothing in the trial court's comments could reasonably be construed as a comment on jurisdiction.

### D. Kahn was not sanctioned under § 10.001(2).

In Kahn's third issue he argues the trial court erred in assessing monetary sanctions against him because TEX. CIV. PRAC. & REM. CODE § 10.004(d) prohibits sanctioning a party under § 10.001(2) if he is represented by counsel. Am. Br. p. 15. As Kahn correctly argues, a represented party cannot be sanctioned for asserting a claim or legal contention that is not warranted by existing law or by a

Respectfully submitted,

HAYNES AND BOONE, LLP

*/s/ Lisa S. Barkley*

Werner A. Powers
State Bar No. 16218800
2323 Victory Avenue, Suite 700
Dallas, Texas 75219
Telephone: (214) 651-5000
Facsimile: (2 14) 651-5940
Werner.Powers@haynesboone.com

Lisa S. Barkley
State Bar No. 17851450
112 E. Pecan, Suite 1200
San Antonio, Texas 78205
Telephone: (210) 978-7427
Facsimile: (210) 554-0427
Lisa.Barkley@haynesboone.com

**ATTORNEYS FOR APPELLEE
HELVETIA ASSET RECOVERY, INC.**

41

## CERTIFICATE OF SERVICE

In accordance with the Texas Rules of Appellate Procedure, the undersigned certifies that a copy of the attached instrument was served on Appellant via email and at the following address on this 3rd day of November, 2014:

Burton Kahn, *pro se*
1706 Alpine Circle
San Antonio, Texas  78248
glentrail@yahoo.com

*/s/ Lisa S. Barkley*
Lisa S. Barkley

## CERTIFICATE OF COMPLIANCE WITH RULE 9.4(e), (i)

This brief complies with the type-volume limitation of Texas Rule of Appellate Procedure 9.4(i) because, according to the Microsoft Word 2010 word count function, it contains <u>9,079</u> words on pages 1–40, excluding the parts of the brief exempted by Texas Rule of Appellate Procedure 9.4(e)(i)(1).

This brief complies with the typeface requirements of Texas Rule of Appellate Procedure 9.4(e) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2010 software in Times New Roman 14 point font in text and Times New Roman 12 point font in footnotes.


*/s/ Lisa S. Barkley*
Lisa S. Barkley